1    GORDON P. ERSPAMER (CA SBN 83364)
     MORRISON & FOERSTER LLP
2    101 Ygnacio Valley Road, Suite 450
     P.O. Box 8130
3    Walnut Creek, California  94596-8130
     Telephone: (925) 295-3300
4    Facsimile: (925) 946-9912

5    Attorney for Plaintiff(s) All Class Members
     Except Reason Warehime and NARS

6

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10   NATIONAL ASSOCIATION OF RADIATION            Case No.      C-83-1861-MHP
     SURVIVORS, et al.,
11                                                **ADMINISTRATIVE MOTION
                        Plaintiffs,              TO CONSIDER WHETHER
12                                               CASES SHOULD BE RELATED
         v.                                      (CIVIL L.R. 3-12, 7-11)**
13
     THOMAS K. TURNAGE, et al.,
14                                                  (Class Action)
                        Defendants.
15

16   I.    INTRODUCTION

17          *Veterans for Common Sense, et al. v. Nicholson, et al.,* No. C-07-3758 (SC), filed in the

18   Northern District of California on July 23, 2007, arises out of the same complex and unfair set of

19   statutes, procedures and practices used by the United States Department of Veterans Affairs ("VA")

20   to process benefits and care to disabled veterans, as was previously challenged in this district in

21   *National Association of Radiation Survivors, et al. v. Walters* ("*NARS*"), No. C-83-1861 (MHP).  The

22   VA is currently failing to meet our nation's legal and moral obligations to provide appropriate

23   support and care for the hundreds of thousands of veterans with Post-Traumatic Stress Disorder

24   ("PTSD") who have fought in Iraq and Afghanistan.  As alleged in detail in the *Veterans for Common*

25   *Sense* ("*VCS*") complaint, the VA's archaic systems for delivering benefits and care to veterans have

26   largely collapsed with the unprecedented number of service-members suffering from this mental

27   disorder.  Mired in a backlog of over 600,000 claims, with waiting times that often exceed ten years,

28

1  seriously injured veterans face insurmountable obstacles to receive the help and care they urgently

2  need and are entitled to under the law.  The ultimate result is the wholesale violation of veterans'

3  constitutional rights to due process, to petition for redress of grievances, and to have meaningful

4  access to the courts.

5      The *VCS* plaintiffs challenge, in particular, the constitutionality of several provisions of the

6  Veterans Judicial Review Act of 1988 ("VJRA"), in conjunction with related, pre-existing statutes,

7  and a pattern of illegal policies and practices of the VA.  Among the challenged provisions of the

8  VJRA and other federal statutes are:  (1) restrictions on veterans' procedural rights, such as the

9  inability to obtain discovery to support claims for service-connected death or disability compensation

10  ("SCDDC"),[1] the inability to compel the attendance of VA employees to testify as witnesses at

11  hearings, and the inability to obtain expedited relief in urgent cases (e.g., imminent suicide threats);

12  (2) the absence of any mechanism to enforce judicial decisions or compel the VA's agency of

13  original jurisdiction (regional offices) to comply with the rule of law; and (3) the attorney's fee

14  prohibition, which prevents veterans from compensating counsel to represent them in agency

15  proceedings, and the related provision for criminal penalties for attorneys who violate the fee

16  prohibition.  The challenged VA policies and procedures include:  (1) protracted delays in the

17  adjudication of SCDDC claims and the provision of medical care to claimants and recipients; (2) the

18  premature denial of SCDDC claims before required initial claim development has been completed;

19  and (3) the exertion by VA officials in Washington, D.C. of pressure and influence upon the

20  adjudication of SCDDC claims by VA regional offices.

21      The *VCS* case is substantially similar, in multiple respects, to the *NARS* case, which was a

22  class action litigated by one of the *VCS* plaintiffs' lead attorneys, Gordon Erspamer of Morrison &

23  Foerster, before Judge Marilyn Hall Patel.  The *NARS* case also involved the failure of the VA to

24  provide for wounded veterans.  The *NARS* plaintiffs specifically challenged two of the statutory

25

26

27      [1] The term "service-connected" means that the disability is a result of a disease or injury
incurred through, or aggravated during, active military service.

28

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

2

provisions at issue in the *VCS* case: the attorney's fee limitation and the related criminal penalties.[2] In the original *NARS* complaint, the plaintiffs argued that the fee limitation was unconstitutional both on its face, and as applied to veterans with SCDDC claims based on PTSD or exposure to Agent Orange and/or ionizing radiation, because it deprived them of their Fifth Amendment rights to procedural due process and their First Amendment rights to petition for redress of grievances and to associate freely. After remand from the Supreme Court, the *NARS* plaintiffs narrowed the case to include only as applied claims based on exposure to ionizing radiation.[3]

Although the *NARS* plaintiffs challenged fewer statutory provisions and practices than the plaintiffs in the *VCS* case, the evidence necessary to prove their claims is substantially similar to that which will be presented in *VCS, et al. v. Nicholson*. In addition, the parties are substantially the same, as are many of the factual and legal issues. Moreover, given the great complexity of VA statutes, regulations, procedures, and systems, it would be an unduly burdensome duplication of labor and judicial resources for a different judge to adjudicate these issues. The *VCS* plaintiffs therefore request, for the reasons set forth below, that their action be deemed related to the *NARS* case and that it be assigned to Judge Marilyn Hall Patel.

## II.    OVERVIEW OF THE *VCS* CASE

Long before the U.S. military became involved in Operation Enduring Freedom ("OEF") and Operation Iraqi Freedom ("OIF"),[4] Congress identified serious and longstanding problems with the

---

[2] When the *NARS* case was brought, the attorney's fee limitation, codified at 38 U.S.C. §§ 3404-05, prohibited veterans from paying attorneys more than $10 from their own funds to represent them concerning VA service-connected death and disability compensation claims. Post-trial statutory amendments, codified in the VJRA and considered by the *NARS* court in post-trial briefing, provide that a fee may be paid to attorneys *only* after an appeal has been initiated by the filing of a Notice of Disagreement ("NOD"). Thus, the fee limitation at issue in *VCS*, which is codified at 38 U.S.C. §§ 5904-05, still leaves veterans unrepresented at the critical regional office stage, which is when the factual record for a veteran's claim is developed.

[3] The *VCS* case challenges the attorney's fee limitation and related criminal penalties, among other issues, as applied to veterans with PTSD, and is therefore not precluded by the adverse appellate decision in *NARS*. *See National Ass'n of Radiation Survivors, et al. v. Walters,* 994 F.2d 583 (9th Cir. 1992), *cert denied,* 510 U.S. 1023 (1993). While the class members in *VCS* suffer from a different type of service-connected disability than the class members in *NARS*, the evidence required to challenge the current attorney's fee limitation will be substantially the same, as explained in detail below. *See infra,* at II.A.

[4] OEF and OIF are the official titles for the wars in Afghanistan and Iraq, respectively.

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

3

1   VA's claims process that affect the ability of veterans to obtain access to disability benefits and

2   health care, although they have a statutory right to such benefits and care.  The huge influx of

3   OEF/OIF veterans into the VA's claims process has aggravated the previously identified problems,

4   and led to a virtual meltdown in the VA's ability to provide appropriate health care and benefits for

5   the troops who have been casualties of the current wars.

6       For years, the VA's claims process has been plagued by a large backlog of claims (many

7   going back to the Vietnam era), lengthy processing times for initial claims, high error rates in claims

8   processing, and inconsistency across regional offices.  With the surge in new claims from about

9   579,000 to about 806,000 over the last six years, the VA is experiencing record backlogs at all levels,

10  resulting in delays of up to fifteen years for a claim to be fully adjudicated.  By contrast, the private

11  sector health care industry processes thirty billion claims annually at an average of approximately

12  ninety days per claim, including the time required for resolution of disputed claims.

13      Among those troops who have suffered the most due to the disintegration of the VA's claims

14  system are those with PTSD – a psychiatric disorder that can develop in a person who experiences,

15  witnesses, or is confronted with a traumatic event, often an event that is life-threatening.  The Iraq

16  and Afghanistan wars are resulting in an extraordinary number of veterans suffering from this mental

17  disorder.  Some of the reasons why PTSD is so widespread among returning troops include:  multiple

18  rotations into combat, the absence of battle lines, the moral ambiguity of killing combatants dressed

19  as civilians, and the increased use of National Guard and Reserve troops.  While precise statistics on

20  the prevalence of PTSD in OEF/OIF veterans are not available, recent studies and reports suggest that

21  at least 30% of returning veterans is experiencing PTSD.  The prevalence of PTSD is even greater for

22  female veterans (who may have been sexually assaulted during military service) and members of the

23  National Guard and Reserves (who typically receive less training and preparation for deployment

24  than active duty troops).

25      For veterans with PTSD, the results of the extraordinary delays in the VA's claims process

26  can be catastrophic.  Symptoms of PTSD include intense anxiety, persistent nightmares, depression,

27  uncontrollable anger, and difficulties coping with work, family, and social relationships.  Delays in

28  treatment of PTSD can lead to addiction, homelessness, anti-social behavior, or suicide.

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

4

1   Like the claims processing system, the VA's health care system has also collapsed with the

2   drastic increase in demand for services, particularly in the area of mental health, leaving the promise

3   of treatment for wounded soldiers a hollow one.  Veterans tell horror stories not only of having to

4   wait weeks and sometimes months for PTSD treatment, but also of insufficient and overworked staff,

5   and the absence of any mental health care in many rural areas.  Frances Murphy, the Under-Secretary

6   for Health Policy Coordination at the VA, has conceded that many VA facilities do not provide any

7   mental health care or maintain long waiting lists that render the care inaccessible.  A number of

8   veterans have committed suicide shortly after having been turned away from VA medical facilities

9   either because they were told they were ineligible for treatment or because the wait was too long.

10   In addition to the long delays for benefits and care, there are a number of other VA policies

11   and practices that work together to unfairly deny veterans with service-connected disabilities the

12   support and care they need.  For example, the VA's incentive compensation system financially

13   rewards employees for prematurely denying claims without completing the required factual

14   development steps.  In addition, the VA's bureaucracy has exerted pressure on adjudicators in the

15   VA's regional offices to deny valid claims or deliberately underrate the severity of disabilities in an

16   effort to save money.  There is also a strong financial motivation to delay the processing of claims

17   because if a veteran dies while a disability claim is pending, his or her survivors and estate often must

18   forfeit most of the accrued benefits.  Moreover, numerous veterans suffering from PTSD are being

19   deprived of care because they were coaxed by a military doctor to accept a "personality disorder"

20   discharge from the military, not knowing such a discharge would later render them ineligible for

21   benefits and treatment because "personality disorder" is considered a "pre-existing condition."

22   The VJRA, in conjunction with other federal statutes, has enabled these unfair policies and

23   practices of the VA to flourish because it provides no meaningful remedy for veterans to challenge

24   the VA's illegal actions.  Veterans have limited procedural rights in pursuing benefits claims (e.g.,

25   they are unable to initiate discovery, compel the attendance of VA employees as witnesses at

26   hearings, obtain injunctive or declaratory relief, or request expedited relief in urgent cases).  They are

27   deprived of counsel at the critical regional office stage where the record for their claim is developed

28   and the vast majority of cases are resolved.  There is also no class action procedure for veterans to

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

5

1   challenge systemic policies or procedures. More importantly, there is no mechanism for the VA to

2   enforce judicial decisions or require the regional offices to obey or comply with the rule of law.

3       At a time when service members are in harm's way in both Iraq and Afghanistan, veterans

4   have been exposed to a system-wide pattern of abusive and discriminatory policies and practices,

5   including some of the same practices revealed in the *NARS* discovery. Unless systemic and drastic

6   measures are instituted immediately, the costs to veterans, their families, and our nation will be

7   incalculable, including broken families, a new generation of unemployed and homeless veterans, and

8   crushing burdens on the health care delivery system and other social services in our communities.

9   **III.   THE *VCS* CASE AND THE *NARS* CASE ARE RELATED**

10       **A.   The Actions Contain Substantially the Same Parties, Property,**

11              **Transaction, or Event**

12       Many of the parties in the *VCS* case are substantially the same as those in the *NARS* case.

13   Three of the defendants in *VCS* were defendants in *NARS*: the Veterans Administration (now called

14   the Department of Veterans Affairs); the chief official of the VA (formerly known as the

15   Administrator and now called the Secretary); and the Attorney General of the United States.[5] The

16   organizational plaintiffs in *VCS* are very similar to the lead plaintiff group in *NARS*, the National

17   Association of Radiation Survivors and Swords to Plowshares Veterans Rights Organization (original

18   filing only), in that they are non-profit organizations, whose members include recipients and potential

19   claimants for SCDC, dedicated to protecting the interests of veterans. Moreover, both actions were

20   brought by the plaintiffs on behalf of all other veterans similarly situated who have applied for or

21   receive SCDDC compensation.

22       Both cases also involve precisely the same property interest; namely, the Fifth Amendment

23   property interest of applicants and recipients to SCDDC benefits.

24

25   _____

26       [5] The Attorney General was added as a defendant in the second amended complaint in *NARS*. *See NARS* Second Amended Complaint ¶ 39.

27

28

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

6

1    Finally, both cases challenge federal statutory provisions that limit veterans from paying an

2    attorney to represent them throughout VA proceedings and subject attorneys who violate the

3    provisions to criminal penalties.  *See* 38 U.S.C. §§ 5904-05.  In order to prove that the current

4    incarnation of the attorney's fee prohibition violates the constitutional rights of veterans, the *VCS*

5    plaintiffs will need to present the same types of evidence presented in *NARS*, regarding:  (a) the way

6    the claims process functions and whether it tends to be adversarial; (b) the extent to which VA

7    employees or service organization representatives are able to aid veterans in gathering supporting

8    materials and presenting their claims; (c) the special difficulties posed by complex claims, such as

9    those caused by exposure to nuclear radiation or psychological stressors; (d) the way in which the

10   lack of an attorney renders veterans unable to present their claims adequately; and (e) the hardship

11   imposed on veterans by the attorney's fee limitation.  The *VCS* plaintiffs will also have to present

12   statistical evidence regarding the success rates of various types of SCDDC claims before the several

13   levels of the VA, as did the plaintiffs in *NARS*.  *See NARS v. Derwinski*, 782 F. Supp. 1392, 1396-

14   1407 (summarizing trial evidence).

15       Although the *VCS* case challenges several additional statutory provisions, policies, and

16   practices of the VA, in addition to the attorney's fee prohibition, there is substantial overlap in the

17   factual and legal claims in both cases, as well as in the evidence necessary to prove those claims.  For

18   example, both cases involve factual claims that:  (a) VA claimants have limited procedural rights,

19   such as no right to compel the attendance of government witnesses and no right to subpoena

20   documents to obtain material in support of benefit claims, *compare NARS* Complaint ¶ 32 *with VCS*

21   Complaint ¶¶ 30, 201-02; (b) the vast majority of VA claims initially denied by regional offices are

22   withdrawn or abandoned before exhaustion of the appeals process, *compare NARS* Complaint ¶¶ 34,

23   36 *with VCS* Complaint ¶¶ 240-43; (c) a high percentage of Board of Veterans Appeals ("BVA")

24   decisions involve remands for development of further evidence, and it is quite common for a claim to

25   be remanded multiple times, *compare NARS* Complaint ¶ 37 *with VCS* Complaint ¶¶ 161-63; (d) the

26   VA does not assist claimants in developing facts supporting SCDDC claims or even attempt a search

27   for information, witnesses, or documents that might support such claims, *compare NARS* Complaint

28   ¶¶ 42 *with VCS* Complaint ¶¶ 228-233; and (e) decisions of the Court of Appeals for Veterans Claims

1  ("CAVC") are not followed as precedent by the VA regional offices or the BVA, *compare NARS*

2  Complaint ¶¶ 43 *with VCS* Complaint ¶¶ 139-141.

3      In addition, the legal claims in the two cases are virtually the same.  Both cases allege

4  violations of veterans' Fifth Amendment right to due process and First Amendment right to petition

5  for redress of grievances.  In order to determine what process is due, both cases require application of

6  the three-factor test set forth in *Matthews v. Eldridge,* 424 U.S. 319, 335 (1976).  To adjudicate the

7  First Amendment claims, both cases require consideration of whether the restrictions on meaningful

8  access to the VA and courts serve substantial government interests, and are narrowly drawn to serve

9  those interests.  *See United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217, 222-23, 225 (1967);

10  *Brotherhood of Railroad Trainmen v. Virginia State Bar*, 377 U.S. 1, 7-8 (1964).  Lastly, both cases

11  seek declaratory and injunctive relief, and neither case seeks to adjudicate individual benefits claims.

12      In order to prove the above factual and legal claims, *VCS*, like *NARS,* will involve extensive

13  evidence regarding:  (a) the way the VA claims adjudication process functions, from the regional

14  office level to the Board of Veterans Appeals to the Court of Appeals for Veterans Claims, and the

15  process for challenging decisions at each of those levels; (b) how the adjudication process fails to

16  safeguard the interests of claimants; and (c) how the VA fails to follow applicable statutes and

17  regulations.  *See NARS v. Derwinski,* 782 F. Supp. 1392, 1396-97, 1402-06 (N.D. Cal. 1993)

18  (summarizing trial evidence).  Thus, while the *VCS* case is broader than the *NARS* case in a number

19  of respects, the parties, property right, factual issues, legal claims, and evidence are substantially the

20  same.

21  **B.    There Will be an Unnecessary and Unduly Burdensome Duplication of
22        Labor if the Cases Are Conducted before Different Judges**

23      As Judge Patel herself acknowledged in *NARS*, VA rules, regulations, and procedures

24  concerning SCDDC are set forth in multiple sources and are intricate and extensive, comprising many

25  thousands of pages.  *NARS,* 782 F. Supp. 1392, 1396 (N.D. Ca. 1992) ("Veterans' law encompasses

26  an extensive body of statutes, regulations and other materials . . . SCDD[C] claims are governed by

27  regulations codified in the Code of Federal Regulations; a body of VA General Counsel opinions and

28  Board of Veterans' Appeals ('BVA') decisions; VA circulars; and adjudication and program

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

8

1   manuals.  These materials interface with each other and form a complex web of governing

2   authority.") (internal citations omitted).  Each of the sources contains complicated rules and

3   procedures concerning available benefits, claims development, eligibility, ratings, computation,

4   elections, presumptions, severance, fraud, forfeitures, recoupment, appeals, and a host of other

5   subjects.

6          Of all the judges in the Northern District of California, Judge Patel is in the best position to

7   make sense of this complex body of law because of her extensive experience with it in *NARS*.  In the

8   *NARS* case, Judge Patel authored four decisions (including a trial decision),[6] totaling eighty pages in

9   length, in which she addressed many of the factual and legal issues that will arise in *VCS*.  She also

10  heard and evaluated evidence regarding many of the present issues during the two-month bench trial.

11  For any other judge to have to learn what Judge Patel has already mastered over the course of a

12  decade of litigation about the complex system of VA benefits and care for people with service-

13  connected disabilities would be a gross waste of time and judicial resources.  Plaintiffs therefore ask

14  that the *VCS* case be deemed related to the *NARS* case and assigned to Judge Patel.

15  Dated: July 24, 2007                          MORRISON & FOERSTER LLP

16

17

18                                                By:    /s/ Gordon P. Erspamer
                                                         Gordon P. Erspamer

19                                                Attorneys for Plaintiffs

20

21

22

23

24

25

26
    _____

27      [6]They were actually two trial decisions, an original and an amended decision.  Because the
    two trial decisions are almost identical, they are treated as one decision here.

28

# CERTIFICATE OF SERVICE BY MAIL
### (Fed. R. Civ. Proc. rule 5(b))

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 101 Ygnacio Valley Road, Suite 450, P.O. Box 8130, Walnut Creek, California  94596-8130; I am not a party to the within cause; I am over the age of eighteen years and I am readily familiar with Morrison & Foerster's practice for collection and processing of correspondence for mailing with the United States Postal Service and know that in the ordinary course of Morrison & Foerster's business practice the document described below will be deposited with the United States Postal Service on the same date that it is placed at Morrison & Foerster with postage thereon fully prepaid for collection and mailing.

I further declare that on the date hereof I served a copy of:

## ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED (CIVIL L.R. 3-12)

on the following by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and mailing at Morrison & Foerster LLP, 101 Ygnacio Valley Road, Suite 450, P.O. Box 8130, Walnut Creek, California  94596-8130 , in accordance with Morrison & Foerster's ordinary business practices:

Matthew L. Larrabee
Stephen M. Hankins
Steven S. Kimball
Heller Ehrman White & McAuliffe
333 Bush Street
San Francisco, CA  94104-2878
*Attorneys for National Association of Radiation Survivors*

William C. Knox-Morison
Morison-Knox, Holden, Melendez & Prough, LLP
500 Ygnacio Valley Road, Suite 450
Walnut Creek, CA  94596
*Attorney for Reason F. Warehime*

Stephen L. Schirle, AUSA
William T. McGivern, Jr.
Stuart M. Gerson
US Attorney's Office
450 Golden Gate Avenue, Room 100
PO Box 36055
San Francisco, CA  94102
*Attorneys for Paul D. Ising, Harry N. Walters, Veterans Administration, and Edward J. Derwinski*

Theodore C. Hirt
Dennis G. Linder
US Department of Justice
Civil Division
901 E. Street NW
Washington, DC  20530
*Attorneys for Paul D. Ising, Harry N. Walters, Veterans Administration, and Edward J. Derwinski*

Thomas H. Peebles
US Department of Justice Civil Division, Federal Programs Branch
901 E. Street, NW, Suite 1000
Washington, DC  20530
*Attorney for Paul D. Ising, Harry N. Walters, Veterans Administration, and Edward J. Derwinski*

Case No. C-83-1861-MHP
Admin. Motion to Consider Whether Cases Should Be Related
wc-131970

10

1    I declare under penalty of perjury that the above is true and correct.

2    Executed at Walnut Creek, California, this 24th day of July 2007.

3

4

5

6    _____          _____
              Kathy Beaudoin                            /s/ Kathy Beaudoin
                 (typed)                                    (signature)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28