GORDON P. ERSPAMER (CA SBN 83364)
GErspamer@mofo.com
STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
MORRISON & FOERSTER LLP
101 Ygnacio Valley Road, Suite 450
P.O. Box 8130
Walnut Creek, California 94596-8130
Telephone: 925.295.3300
Facsimile: 925.946.9912

SIDNEY M. WOLINSKY (CA SBN 33716)
SWolinsky@dralegal.org
MELISSA W. KASNITZ (CA SBN 162679)
MKasnitz@dralegal.org
JENNIFER WEISER BEZOZA (CA SBN 247548)
JBezoza@dralegal.org
KATRINA KASEY CORBIT (CA SBN 237931)
KCorbit@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Telephone: 510.665.8644
Facsimile: 510.665.8511

**[see next page for additional counsel for plaintiffs]**

Attorneys for Plaintiff(s)
VETERANS FOR COMMON SENSE and
VETERANS UNITED FOR TRUTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs, *et al.*,<br><br>Defendants. | Case No.  C-07-3758-SC<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:    December 14, 2007<br>Time:    10:00 a.m.<br>CRM:    Courtroom 1, 17th Floor<br>Judge:   Hon. Samuel Conti<br><br>Complaint Filed:  July 23, 2007 |

1

**ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2

ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com

3

HEATHER A. MOSER (CA SBN 212686)
HMoser@mofo.com

4

MORRISON & FOERSTER LLP
425 Market Street

5

San Francisco, California 94105-2482
Telephone: 415.268.7000

6

Facsimile: 415.268.7522

7

BILL D. JANICKI (CA SBN 215960)
WJanicki@mofo.com

8

MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600

9

Sacramento, California 95814
Telephone: 916.448.3200

10

Facsimile: 916.448.3222

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
                                                                                            Page

3    TABLE OF AUTHORITIES ...................................................................................iii

4    I.     INTRODUCTION ..................................................................................... 1

5    II.    STATEMENT OF THE CASE ................................................................. 2

6    III.   LEGAL STANDARD ............................................................................... 3

7    IV.    ARGUMENT ............................................................................................ 4

8           A.    Organizational Plaintiffs Have Standing on Behalf of Their
                  Members. ......................................................................................... 4
9
            B.    The APA Contains an Unequivocal Waiver of Sovereign
10                 Immunity. ........................................................................................ 6

11          C.    This Court Has Subject-Matter Jurisdiction. ................................ 10

12                1.    Section 511 Does Not Preclude Jurisdiction in Article III
                        Courts over Constitutional Challenges to Statutes and
13                      System-wide Practices. ....................................................... 10

14                      a.    Congress Did Not Express the Requisite "Clear Intent"
                              to Restrict This Court's Jurisdiction in Either the Plain
15                            Language of the Statute or Its Legislative History. ............. 11

16                      b.    *Robison* Establishes District Court Jurisdiction over
                              Plaintiffs' Constitutional Claims. .......................................... 14
17
                        c.    Section 511 Permits Article III Judicial Review of
18                            Claims Not Requiring the Courts to Second-Guess an
                              Individual Benefits Determination by the
19                            Administrator. ....................................................................... 15

20                      d.    VA Concedes that Section 511 Does Not Affect This
                              Court's Jurisdiction to Hear Plaintiffs' Facial
21                            Challenges. ........................................................................... 19

22                      e.    Even If Plaintiffs' Claims Could Be Construed as As-
                              Applied Challenges, the Class Would Be Without Any
23                            Remedy, Raising Irreconcilable Constitutional
                              Problems. ............................................................................. 20
24
                  2.    Section 502 Is Inapplicable Because Plaintiffs Do Not
25                      Challenge the Constitutionality of VA Regulations. ................... 22

26                3.    Plaintiffs' Claimed Right to Medical Care Is Justiciable. ........... 22

27                4.    This Court Has Clear Jurisdiction over Plaintiffs'
                        Rehabilitation Act Claim. ............................................................ 23
28

1

D.   Plaintiffs' Complaint Far Surpasses the Minimal Pleadings
Threshold Required to Survive a Motion to Dismiss for

2          Failure to State a Claim. ................................................................... 25

3          1.   The Veterans' Benefits System Is Subject to the Minimum
Requirements of Procedural Due Process. ................................... 26

4
5                a.   VA's Benefits System Is Adversarial. ................................ 26

6                b.   The Due Process Analysis Is a Fact-Intensive Inquiry
Inappropriate for Dismissal on the Pleadings. ..................... 27

7          2.   Plaintiffs' Challenge to the Attorneys' Fee Prohibition Is
Expressly Allowed Under Supreme Court and Ninth

8                Circuit Precedent. ....................................................................... 29

9          3.   Plaintiffs Sufficiently Pled VA's Failure to Provide Health
Care. ........................................................................................... 30

10
     V.   CONCLUSION ................................................................................... 30

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*,
    829 F.2d 933 (9th Cir. 1987) ........................................................................5

*Ardestani v. I.N.S.*,
    502 U.S. 129 (1991) ....................................................................................7

*Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas
    Conservation of State of Mont.*,
    792 F.2d 782 (1986) ..................................................................................6, 8

*Baby Neal for and by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ..........................................................................28

*Bailey v. West*,
    160 F.3d 1360 (Fed. Cir. 1998) .................................................................26

*Ballard v. C.I.R.*,
    544 U.S. 40 (2005) ....................................................................................17

*Bartlett v. Bowen*,
    816 F.2d 695 (D.C. Cir. 1987) ....................................................................7

*Bates v. Nicholson*,
    398 F.3d 1355 (Fed. Cir. 2005) .................................................................11

*Beamon v. Brown*,
    125 F.3d 965 (6th Cir. 1997) .................................................14, 17, 19, 28

*Bell Atlantic Corp. v. Twombly*,
    __ U.S. __, 127 S. Ct. 1955 (2007) ............................................................4

*Bell v. Hood*,
    327 U.S. 678 (1946) ....................................................................................3

*Bennett v. Spear*,
    520 U.S. 154 (1997) ....................................................................................7

*Berkley v. United States*,
    287 F.3d 1076 (Fed. Cir. 2002) .................................................................20

*Bowen v. Mass.*,
    487 U.S. 879 (1988) ..............................................................................6, 7, 9

*Bowen v. New York*,
    476 U.S. 467 (1986) ..................................................................................18

*Bowles v. Seminole Rock & Sand Co.*,
    325 U.S. 410 (1945) ..................................................................................17

*Broudy v. Mather,*
   460 F.3d 106 (D.C. Cir. 2006) ...................................................................................12, 16

*Brown v. Dep't of Veterans Affairs,*
   451 F. Supp. 2d 273 (D. Mass. 2006).........................................................................14, 25

*Brown v. Gardner,*
   513 U.S. 115 (1994) ...........................................................................................................11

*Caminetti v. United States,*
   242 U.S. 470 (1917) ...........................................................................................................11

*Canatella v. Stovitz,*
   365 F. Supp. 2d 1064 (N.D. Cal. 2005)............................................................................21

*Cano-Merida v. INS,*
   311 F.3d 960 (9th Cir. 2002) .............................................................................................18

*Chavez v. Blue Sky Natural Beverage Co.,*
   No. C 06-6609-SC, 2007 WL 1691249 (N.D. Cal. June 11, 2007) ...................................25

*Chinnock v. Turnage,*
   995 F.2d 889 (9th Cir. 1993) ................................................................................15, 16, 17

*City of Chicago v. Morales,*
   527 U.S. 41 (1999) .............................................................................................................20

*Cleary v. Brown,*
   8 Vet. App. 305 (1995).........................................................................................................9

*Cleveland Bd. of Educ. v. Loudermill,*
   470 U.S. 532 (1985) ...........................................................................................................27

*Collaro v. West,*
   136 F.3d 1304 (Fed. Cir. 1998) ........................................................................................26

*Czerkies v. U.S. Dep't of Labor,*
   73 F.3d 1435 (7th Cir. 1996).......................................................................................15, 21

*Dacoron v. Brown,*
   4 Vet. App. 115 (1993)............................................................................................14, 17, 19

*Daye v. Nicholson,*
   20 Vet. App. 512 (2006).....................................................................................................28

*Demarest v. United States,*
   718 F.2d 964 (9th Cir. 1983) .......................................................................................16, 17

*Desert Outdoor Advertising v. City of Oakland,*
   C 03-1078 MJJ, 2003 WL 23925000 (N.D. Cal. June 16, 2003).........................................30

*Devine v. Cleland,*
   616 F.2d 1080 (9th Cir. 1980) ..........................................................................................27

*Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs,*
  962 F.2d 136 (2d Cir. 1992) ..............................................................................14

*E. Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affairs,*
  257 F.3d 1352 (Fed. Cir. 2001) ..............................................................5, 6, 22, 30

*Ecology Ctr., Inc. v. U.S. Forest Serv.,*
  192 F.3d 922 (9th Cir. 1999) ..............................................................................8

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
  498 F.3d 1031 (9th Cir. 2007) ..........................................................................20

*Erspamer v. Derwinski,*
  1 Vet. App. 3 (1990) ................................................................................10, 28

*Everest & Jennings, Inc. v. Am. Motorists Ins. Co.,*
  23 F.3d 226 (9th Cir. 1994) ..............................................................................25

*Fed. Trade Comm'n v. Standard Oil Co.,*
  449 U.S. 232 (1980) ....................................................................................8

*Forshey v. Principi,*
  284 F.3d 1335 (Fed. Cir. 2002) ..........................................................................26

*Friscia v. Brown,*
  7 Vet. App. 294 (1994) ..................................................................................28

*Gete v. I.N.S.,*
  121 F.3d 1285 (9th Cir. 1997) ......................................................................14, 21

*Glacier Park Found. v. Watt,*
  663 F.2d 882 (9th Cir. 1981) ..............................................................................23

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ....................................................................................27

*Hall v. U.S. Dep't Veterans' Affairs,*
  85 F.3d 532 (11th Cir. 1996) ......................................................................14, 15, 19

*Hamilton v. Ky. Distilleries & Warehouse Co.,*
  251 U.S. 146 (1919) ....................................................................................25

*Hanlin v. United States,*
  214 F.3d 1319 (Fed. Cir. 2000) ..........................................................................16

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ....................................................................................4

*Hicks v. Small,*
  69 F.3d 967 (9th Cir. 1995) ..............................................................................16

*Hicks v. Veterans Admin.,*
  961 F.2d 1367 (8th Cir. 1992) ............................................................................15

*Hotel & Motel Ass'n of Oakland v. City of Oakland*,
   344 F.3d 959 (9th Cir. 2003) ...................................................................20

*Hunt v. Wash. State Apple Adver. Comm'n.*,
   432 U.S. 333 (1977) .................................................................................4

*In re Russell*,
   155 F.3d 1012 (8th Cir. 1998) ...............................................................18

*Indep. Equip. Dealers Ass'n v. Envtl. Prot. Agency*,
   372 F.3d 420 (D.C. Cir. 2004) .................................................................7

*Janklow v. Planned Parenthood, Sioux Falls Clinic*,
   517 U.S. 1174 (1996) .............................................................................20

*Johnson v. Robison*,
   415 U.S. 361 (1974) ....................................................................... *passim*

*Kaplan v. Brown*,
   7 Vet. App. 425 (1995)........................................................................9, 10

*Kerr v. United States Dist. Ct.*,
   426 U.S. 394 (1976) ...............................................................................28

*Koulizos v. Derwinski*,
   2 Vet. App. 350 (1992).............................................................................28

*Kreschollek v. S. Stevedoring Co.*,
   78 F.3d 868 (3d Cir. 1996) ....................................................................15

*Lane v. West*,
   11 Vet. App. 506 (1998)...........................................................................28

*Larrabee v. Derwinski*,
   968 F.2d 1497 (2d Cir. 1992) ................................................................19

*League of United Latin Am. Citizens v. City of Salinas Fire Dep't*,
   88 F.R.D. 533 (N.D. Cal. 1980) ...............................................................6

*Lefkowitz v. Derwinski*,
   1 Vet. App. 439 (1991) ...........................................................................10

*Lepre v. Dep't of Labor*,
   275 F.3d 59 (D.C. Cir. 2001) .................................................................15

*Lytran v. Department of Treasury*,
   No. 05-4124 JAR, 2006 WL 516754 (D. Kan. Feb. 28, 2006) .............15

*Mace v. Skinner*,
   34 F.3d 854 (9th Cir. 1994) ...................................................................14

*Marozsan v. United States*,
   852 F.2d 1469 (7th Cir. 1988) ...............................................................21

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...........................................................................22, 27

*McKelvey v. Turnage*,
    792 F.2d 194 (D.C. Cir. 1986) ...............................................................16

*Moore v. Derwinski*,
    1 Vet. App. 83 (1990)...............................................................................10

*Moore v. Johnson*,
    582 F.2d 1228 (9th Cir. 1978) ...............................................................16

*Murrhee v. Principi*,
    364 F. Supp. 2d 782 (C.D. Ill. 2005)..............................................15, 19

*NGV Gaming, Ltd. v. Upstream Point Molgate, LLC*,
    355 F. Supp. 2d 1061 (N.D. Cal. 2005)...................................................4

*Nagler v. Derwinski*,
    1 Vet. App. 297 (1991)...........................................................................9, 10

*Nat'l Ass'n of Radiation Survivors v. Derwinski*,
    994 F.2d 583 (9th Cir. 1992) ..................................................................29

*Natural Res. Def. Council, Inc. v. Sec. & Exch. Comm'n*,
    606 F.2d 1031 (D.C. Cir. 1979) ...............................................................6

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ...................................................................................8

*Price v. United States*,
    228 F.3d 420 (D.C. Cir. 2000) ...............................................15, 16, 18

*Quiban v. Veterans Admin.*,
    928 F.2d 1154 (D.C. Cir. 1991) .............................................................14

*Ramsey v. Nicholson*,
    20 Vet. App. 16 (2006).............................................................................28

*Ribaudo v. Nicholson*,
    21 Vet. App. 137 (2007).........................................................................10

*Roberts v. Corrothers*,
    812 F.2d 1173 (9th Cir. 1987)..................................................................4

*Rosen v. Walters*,
    719 F.2d 1422 (9th Cir. 1983) ...........................................................16, 17

*Rostker v. Goldberg*,
    453 U.S. 57 (1981) .................................................................................25

*San Carlos Apache Tribe v. United States*,
    417 F.3d 1091 (9th Cir. 2005)................................................................23

*Sanchez-Cruz v. INS*,
    255 F.3d 775 (9th Cir. 2001) ........................................................................................18

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ........................................................................................................4

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986) .......................................................................................4

*Staacke v. United States Secretary of Labor*,
    841 F.2d 278 (9th Cir. 1998) .......................................................................................23

*State of Cal. ex rel. Lockyer v. F.E.R.C.*,
    329 F.3d 700 (9th Cir. 2003) .......................................................................................27

*Steffens v. Brown*,
    8 Vet. App. 142 (1995) .................................................................................................28

*Sugrue v. Derwinski*,
    26 F.3d 8 (2d Cir. 1994) ..............................................................................................15

*Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*,
    711 F.2d 138 (9th Cir. 1983) .........................................................................................3

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) .....................................................................................16

*Tietjen v. U.S. Veterans Admin.*,
    884 F.2d 514 (9th Cir. 1989) .................................................................................15, 16

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992) .......................................................................................6

*Traynor v. Turnage*,
    485 U.S. 535 (1988) ......................................................................................................24

*Tumey v. State of Ohio*,
    273 U.S. 510 (1927) ......................................................................................................27

*Vietnam Veterans of Am., Inc. v. McNamara*,
    No. 02-2123 (RMC), 2003 WL 24063631 (D.D.C. 2003) ........................................22

*Walters v. Nat'l Ass'n of Radiation Survivors*,
    473 U.S. 305 (1985) ................................................................................................27, 29

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1139 (9th Cir. 2003) .......................................................................................3

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................................4, 5

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ................................................................................................19, 20

*Webster v. Doe*,
   486 U.S. 592 (1988) ...........................................................................................11

*ZN v. Brown*,
   6 Vet. App. 183 (1994)......................................................................................28

*Zuspann v. Brown*,
   60 F.3d 1156 (5th Cir. 1995) ......................................................................15, 19

## STATUTES, RULES & CONGRESSIONAL REPORTS

U.S. Const. amend. V ...........................................................................................27

5 U.S.C.
   § 551(4) ............................................................................................................7
   § 551(13) ..........................................................................................................7
   § 702 ................................................................................................................6
   § 704 ................................................................................................................7
   § 706(2)(B) ......................................................................................................7
   § 706(2)(C) ......................................................................................................7

28 U.S.C.
   § 1331 ..............................................................................................................6
   § 1361 ..............................................................................................................6
   § 1651(a)........................................................................................................10
   §§ 2201-02 ......................................................................................................6

29 U.S.C.
   § 794(a).........................................................................................................23

38 U.S.C.
   § 511(a)................................................................................................. *passim*
   § 511(b)..........................................................................................................11
   § 7252(a)..........................................................................................................9

38 C.F.R.
   § 3.103(a)......................................................................................................26

H.R. Rep. No. 100-963 (1988) ......................................................................... *passim*

## OTHER AUTHORITIES

Matthew D. Adler, *Rights Against Rules: The Moral Structure of American
   Constitutional Law*,
   97 Mich. L. Rev. 1 (1998) ..............................................................................21

American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*,
   (4th ed. 2000) ............................................................................................23, 24

Comptroller General, *VA Claims Adjudication Process*,
   1989 WL 240227 (1989) ................................................................................29

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS,
   (4th ed. 2002) ..................................................................................................6

1

4 K. Davis, *Administrative Law Treatise*,
   (2d ed. 1983)...................................................................................................................6

2

Michael C. Dorf, *Facial Challenges to State and Federal Statutes*,
   46 STAN. L. REV. 235 (1994) ...................................................................................21

3

4

David M. Driesen, *Standing for Nothing: The Paradox of Demanding Concrete
   Context for Formalist Adjudication*,
   89 CORNELL L. REV. 808, 884-86 (2004) ............................................................21

5

6

Richard H. Fallon, Jr., *As Applied and Facial Challenges and Third-Party Standing*,
   113 HARV. L. REV. 1321, 1324 (2000) ..................................................................21

7

8

Gillian E. Metzger, *Facial Challenges and Federalism*,
   105 COLUM. L. REV. 873, 877 (2005) ...................................................................21

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

x

1    **I.    INTRODUCTION**

2         Plaintiffs bring suit on behalf of veterans of the Iraq and Afghanistan wars and earlier conflicts

3    who have sought medical care or filed disability claims based on Post-Traumatic Stress Disorder

4    ("PTSD").  Plaintiff organizations, on behalf of veteran members with PTSD, seek declaratory and

5    injunctive relief to remedy unconstitutional procedures and practices by Defendants that systematically

6    deprive PTSD veterans of the disability benefits and medical care to which they are statutorily entitled.

7    Defendants (hereinafter collectively "VA") move to dismiss Plaintiffs' Complaint pursuant to a dizzying

8    panoply of jurisdictional theories and for failure to state a claim.  The sheer number of theories advanced

9    underscores their individual weaknesses; not a single one survives scrutiny.

10        The primary jurisdictional argument advanced by VA is undercut by its own admissions.  VA

11   reads Section 511 of the Veterans' Judicial Review Act ("VJRA"), which grants jurisdiction to an

12   Article I court to review appeals from *individual* disability decisions, as precluding review of any

13   constitutional issue by this Court.  Although the parties disagree about the scope of Article III review

14   post-enactment of the VJRA, VA concedes that facial constitutional challenges are properly brought in

15   this Court and that at least a number of Plaintiffs' challenges are facial.  Facial challenges

16   notwithstanding, VA's motion adroitly sidesteps the long-standing body of federal law interpreting

17   Section 511 to permit review of constitutional challenges that, like Plaintiffs', do not require review of

18   individual benefits decisions by VA.  VA also ignores the fact that the VJRA provides no redress for

19   claims related to medical care. Equally important, VA points to no remedy other than this action and no

20   alternate adequate forum for Plaintiffs' claims.  In essence, VA's argument boils down to the idea that

21   this Court should refuse to exercise jurisdiction and force Plaintiffs to adjudicate their due process

22   challenge to VA's benefits system in the same dysfunctional system of which they complain.

23        VA also contends that the doctrines of standing and sovereign immunity bar this action.  The

24   standing argument misreads the organizational standing requirements to necessitate specific

25   identification and participation of individual plaintiffs, which is wholly inconsistent with the purpose of

26   organizational standing.  VA's invocation of sovereign immunity is no bar to jurisdiction because an

27   Article I court cannot provide an adequate forum for systemic constitutional problems or for medical

28   care issues.

1    VA's arguments on its motion to dismiss for failure to state a claim do not acknowledge the

2    relevant standard.  First, the burden for facial challenges and the alleged deference due congressional

3    enactments made pursuant to war powers are irrelevant to the sufficiency of the pleadings.  Second,

4    Plaintiffs' procedural due process challenges raise factual issues that cannot be resolved in a pleadings

5    motion.  For these reasons and those set forth below, the Court should deny VA's Motion to Dismiss.

6    **II.    STATEMENT OF THE CASE**

7        VA's Motion to Dismiss ("MTD") lacks any description of the facts and claims in the Complaint

8    or any reasoned analysis of them.  Instead, VA repeatedly implies that Plaintiffs are seeking review of

9    VA decisions regarding veterans' benefits claims and makes other characterizations that are simply

10    inaccurate (such as its claim that Plaintiffs challenge VA regulations).  For these reasons, it is important

11    to review the actual nature of Plaintiffs' claims.

12        First, the Complaint outlines the statutory provisions requiring VA to provide medical care and

13    SCDDC to returning veterans.  It then describes the virtual meltdown of VA's health care and

14    adjudication systems, primarily as a result of the massive influx of returning troops from the wars in Iraq

15    and Afghanistan.  It further establishes that no procedures exist for veterans to obtain expedited care or

16    to remedy the denials of needed health care.  The MTD ignores these issues and incorrectly assumes that

17    health care disputes can be raised under the system for adjudicating service-connected disability or death

18    compensation ("SCDDC").  Protracted adjudication delays have now resulted in over 600,000 SCDDC

19    claims pending at regional offices; it now takes a decade or more to complete the full appellate process.

20    Compl. ¶¶ 145-68.

21        Second, the Complaint sets forth due process challenges to the VJRA's procedures for

22    adjudicating SCDDC, listing a series of limitations upon veterans' rights, both separately and in

23    combination ("Statutory Defects").  Compl. ¶¶ 30, 94-144, 201-03.  These include:  (1)  veterans' total

24    inability to call VA witnesses (such as a VA doctor) to support their claims or to challenge an

25    unfavorable diagnosis; (2) the absence of any neutral decision-maker at the regional office stage; (3) the

26    admitted lack of authority by Court of Appeals for Veterans Claims' ("CAVC") to enforce its own

27    decisions;  (4)  the absence of any provisions for injunctive or declaratory relief or meaningful

28    procedures for expedited relief in urgent cases, such as suicide threats; (5) the absence of any procedures

to obtain any relief extending beyond that applying to a single claim; (6) the total absence of any discovery procedures; and (7) the statutory prohibition on the veteran's ability to personally pay a lawyer at the critical regional office stage. Compl. ¶¶ 30, 133, 138-44, 202. The Complaint then details how the Statutory Defects have enabled a wide variety of improper policies or practices to flourish ("Challenged Practices"), Compl. ¶ 31, including protracted delays in the adjudication of benefits claims, the dictation of results by the VA Central Office in certain categories of claims, the premature denial of claims, an incentive compensation system that encourages misbehavior by adjudicators in order to reap easy work credits, the wholesale elimination of veterans' PTSD claims by miscategorizing veterans as having pre-existing "personality disorders," (thus depriving them of eligibility), and other patterns of extra-judicial misconduct. Compl. ¶¶ 216-21, 227-34. None of these practices can be discovered or corrected because of the very limited rights and procedures provided to veterans in the VJRA, and the truncated scope of the CAVC's powers.

The Complaint also contains detailed supporting information. For example, the Complaint: (1) details the huge and swelling backlogs of claims at each stage of the adjudication process, Compl. ¶¶ 145-68; (2) highlights the growing suicide trend amongst returning veterans from Iraq and Afghanistan who were improperly denied care by VA, and the rationing of mandated health care generally, Compl. ¶¶ 169-73, 184-200; and (3) explains criminal activity by senior VA attorneys seeking high incentive compensation awards. Comp. ¶¶ 227-3. None of the claims raised in the Complaint asks for money damages or seeks relief respecting an individual veteran's claim for benefits. Compl. ¶ 39.

## III.    LEGAL STANDARD

"Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional." *Sun Valley Gasoline, Inc. v. Ernst Enters.*, *Inc.*, 711 F.2d 138, 140 (9th Cir. 1983). VA's MTD disregards the fact that dismissal is warranted only where "the alleged claim under the Constitution or federal statute clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). "The nature of the [12(b)(1)] dismissal requires [the court] to accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where jurisdiction is intertwined with the merits,

1  the court must "assume[ ] . . . the truth of [the] allegations in a complaint . . . unless controverted by

2  undisputed facts in the record." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

3       A complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) if "it may

4  be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*

5  *Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1969 (2007).  "In reviewing the motion, a court must

6  assume all factual allegations to be true and construe them in the light most favorable to the nonmoving

7  party." *NGV Gaming, Ltd. v. Upstream Point Molgate, LLC*, 355 F. Supp. 2d 1061, 1063 (N.D. Cal.

8  2005) (quoting *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983)).  A

9  complaint cannot be dismissed even if it appears "that a recovery is very remote and unlikely."

10  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Assessing the sufficiency of the pleadings on a motion to

11  dismiss, a court must merely ensure that plaintiffs have "nudged their claims across the line from

12  conceivable to plausible."  *Bell Atlantic*, 127 S. Ct. at 1974.  In the rare event that a complaint is

13  dismissed, "leave to amend should be granted unless the court determines that the allegation of other

14  facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib.*

15  *Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

16  **IV.    ARGUMENT**

17       **A.      Organizational Plaintiffs Have Standing on Behalf of Their Members.**

18       Plaintiff organizations, Veterans for Common Sense ("VCS") and Veterans United for Truth

19  ("VUFT"), have standing to bring the claims in the Complaint on behalf of their members.  *Warth v.*

20  *Seldin*, 422 U.S. 490, 511 (1975).[1]  An organization has standing to sue for its members if it can meet the

21  three-prong test set forth in *Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 343 (1977),

22  which requires that: "(a) its members would otherwise have standing to sue in their own right; (b) the

23  interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted

---

24  [1]An organization also has standing to "seek judicial relief from injury to itself and to vindicate whatever
25  rights and immunities the association itself may enjoy." *Id.*  Both Plaintiff organizations have suffered
    injury because they have expended significant resources trying to address the systemic issues raised in
26  the Complaint.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (stating that a
    "consequent drain on the organization's resources [] constitutes far more than simply a setback to the
27  organization's abstract social interests" and constitutes a "concrete and demonstrable injury") (citing
    *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

28

1   nor the relief requested requires the participation of individual members in the lawsuit." Plaintiffs meet

2   all three prongs of this test.

3       First, both VCS and VUFT have members with PTSD who are seeking SCDDC benefits and/or

4   medical care from the VA, and have been subject to the challenged policies, practices, and procedures.

5   Compl. ¶¶ 35-37. As a result of VA's illegal actions, Plaintiffs' members have suffered actual harm,

6   including, but not limited to, gaps and delays in mental health treatment, resulting in some instances in

7   suicide, and delays in benefits awards, leading in some cases to extreme poverty and homelessness.

8   These members have standing in their own right to bring constitutional and statutory challenges to VA's

9   failure to provide meaningful access to its benefits and medical care systems. Second, the mission of

10  both Plaintiff organizations is to ensure that returning veterans receive the benefits and care from VA to

11  which they are entitled. Compl. ¶¶ 35, 36. As such, the claims raised in the Complaint are germane to

12  the organizations' purposes, which VA does not dispute. Third, individual participation is not required

13  in order to obtain the requested relief. Where a complaint raises systemic legal violations rather than

14  individual grievances, and seeks declaratory and injunctive relief rather than damages, as it does here,

15  the individual participation of each injured party is not required.[2]

16      VA focuses its argument on the erroneous assumption that Plaintiffs are required to identify

17  specific members of the Plaintiff organizations who have been injured by VA's conduct and, without

18  making the showing required by Federal Rule of Civil Procedure 19, argues that the participation of

19  those members is "indispensable" to the resolution of this case. MTD at 4:22-5:11. VA cites no cases

20  requiring that a complaint brought by organizational plaintiffs must list the names of its members.[3] The

21  lack of citation is not surprising, for if plaintiffs were required to identify specific members in their

22  complaint, there would be no purpose to the doctrine of organizational standing, which permits

23  organizations to bring claims *on behalf of* their members. *See, e.g., E. Paralyzed Veterans Ass'n, Inc. v.*

---

[2] *See Warth*, 422 U.S. at 515; *see also Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) ("[B]ecause the Fund seeks declaratory and prospective relief rather than money damages, its members need not participate directly in the litigation.") (citation omitted). The cases upon which VA relies are inapposite, because the organizations in those cases were seeking monetary damages for their members, which requires individualized proof. MTD at 5:4-10.

[3] Ostensibly, this argument is intended to help shore up VA's Section 511(a) jurisdictional argument, which founders due to the absence of any request for review of an individual veteran's claim.

1    *Sec'y of Veterans Affairs*, 257 F.3d 1352, 1356 (Fed. Cir. 2001) (upholding standing of veterans'

2    organization).[4]

3    **B.    The APA Contains an Unequivocal Waiver of Sovereign Immunity.**

4    Plaintiffs' claims are not barred by sovereign immunity.  Since 1976, the Administrative

5    Procedure Act ("APA") has included an explicit waiver of sovereign immunity for suits challenging

6    agency actions and seeking "relief other than money damages."  Section 702 of the APA states:

7
> An action in a court of the United States seeking relief other than money damages and
8    stating a claim that an agency or officer or employee thereof acted or failed to act in an
> official capacity or under color of legal authority shall not be dismissed nor relief
> therein be denied on the ground that it is against the United States . . . .
9
10   5 U.S.C. § 702. [5]  "[I]t is undisputed that the 1976 amendment to § 702 was intended to broaden the

     avenues for judicial review of agency action" and to remove a "technical" obstacle to access to the
11
     federal courts— the defense of sovereign immunity.  *Bowen v. Mass.*, 487 U.S. 879, 891-92, 896 (1988)
12
     (discussing legislative history of Section 702).  The Supreme Court has noted that the APA's "'generous
13
     review provisions' must be given a 'hospitable' interpretation."  *Id.* at 904 (quoting *Abbott Labs. v.*
14
     *Gardner*, 387 U.S. 136, 140-41 (1967));   *see also Natural Res. Def. Council, Inc. v. Sec. & Exch.*
15
     *Comm'n*, 606 F.2d 1031, 1043 (D.C. Cir. 1979) (APA "creates a strong presumption of reviewability").
16
     Where constitutional rights are at stake, federal courts are even more reluctant to deny jurisdiction on the
17

18   _____

19   [4] VA coalesces its standing argument with the requirements for class certification, but these inquiries are
     legally distinct. "Care must be taken, when dealing with apparently standing-related concepts in a class
20   action context, to analyze individual standing requirements separately and apart from Rule 23 class
     prerequisites." ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 2:9 (4th ed. 2002).
21   A motion to dismiss is not an appropriate procedural vehicle for VA's class certification arguments. In
     any event, organizations may properly serve as class representatives. *See, e.g., League of United Latin*
22   *Am. Citizens v. City of Salinas Fire Dep't*, 88 F.R.D. 533, 543 (N.D. Cal. 1980).

23   [5] Federal court jurisdiction over claims permitted under the APA's waiver of sovereign immunity is
     proper in federal district court under the federal question statute, 28 U.S.C. § 1331, the declaratory
24   judgment statute, *id.* §§ 2201-02, or the mandamus statute, *id.* § 1361.  *See Transohio Sav. Bank v. Dir.,*
     *Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992), *questioned on other grounds in Tucson*
25   *Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641 (9th Cir. 1998).  It is unnecessary for parties to
     specifically allege the APA's waiver of sovereign immunity in a complaint, and failure to do so is not
26   grounds for dismissal.  *See Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil &*
     *Gas Conservation of State of Mont.*, 792 F.2d 782, 792-93 (9th Cir. 1986) (finding waiver of defense of
27   sovereign immunity under 5 U.S.C. § 702 although plaintiffs failed to plead the APA as a jurisdictional
     basis); *see also* 4 K. Davis, *Administrative Law Treatise* § 23:19 at 195 (2d ed. 1983).  In any event, on
28   October 16, 2007, Plaintiffs filed an *erratum* correcting a typographical error in their citation to Sections
     702 and 703 of the APA in paragraph 33 of the Complaint.

1   basis of sovereign immunity. *See Bartlett v. Bowen*, 816 F.2d 695, 709 (D.C. Cir. 1987) (citation

2   omitted).

3          Despite Congress's clear intent to expand judicial review of agency action, Section 704 limits the

4   APA's waiver of sovereign immunity to "final agency action for which there is no other adequate

5   remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The Supreme Court has made clear,

6   however, that Section 704 should be read narrowly and "should not be construed to defeat the central

7   purpose of providing a broad spectrum of judicial review of agency action." *Bowen*, 487 U.S. at 903;

8   *see also Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) ("[O]nce Congress has waived sovereign

9   immunity . . . , the Court should be careful not to 'assume the authority to narrow the waiver that

10  Congress intended'.") (citations omitted).

11         VA contends that Plaintiffs' Complaint is barred by the APA because:  (1) Plaintiffs do not

12  challenge any "final agency actions"; and (2) Plaintiffs have an adequate remedy for their systemic,

13  constitutional claims in the CAVC.  MTD at 7:1-8:19.  VA's first argument that Plaintiffs are not

14  challenging any "final agency actions" is based on a faulty reading of the term "agency action" and a

15  mischaracterization of the Complaint.  The APA authorizes courts to review "final agency action,"

16  5 U.S.C. § 704, to determine if it is "contrary to constitutional right, power, privilege, or immunity[,]"

17  5 U.S.C. § 706(2)(B), or "in excess of statutory jurisdiction, authority, or limitations, or short of

18  statutory right[,]" 5 U.S.C. § 706(2)(C).  The term "agency action" is defined broadly to include "the

19  whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or

20  failure to act[,]"[6] 5 U.S.C. § 551(13), and "undoubtedly has a broad sweep[,]" *Indep. Equip. Dealers

21  Ass'n v. Envtl. Prot. Agency*, 372 F.3d 420, 427 (D.C. Cir. 2004).  An agency action is "final" under the

22  APA where:  (1) the action must mark the consummation of the agency's decision-making process—it

23  must not be of a merely tentative nature; and (2) the action must be one by which rights or obligations

24  have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-

25  78 (1997).  Put differently, an agency action is "final" if it has direct and immediate effects on the

26

27  _____
    [6] The APA defines "agency rule" as "the whole or part of an agency statement of general or particular
    applicability and future effect designed to implement, interpret, or prescribe law or policy . . ." 5 U.S.C.

28  § 551(4).

1    plaintiff.  *Fed. Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 239 (1980).[7]

2         The MTD does not apply the correct finality standard.  Rather, VA erroneously argues that

3    Plaintiffs do not challenge "*any* final agency actions" because their Complaint does not seek review of

4    individual claims.  MTD at 7:13 (emphasis added).  The fact that Plaintiffs are not challenging agency

5    action on *individual* benefit claims, while dispositive of VA's exclusive jurisdiction argument, is

6    irrelevant to the issue of final agency action.  Plaintiffs' Complaint makes clear that they are challenging

7    a series of VA's policies, procedures, and practices, all of which fall within the broad definitions of the

8    terms "agency action" and "agency rules."  Compl. ¶ 30 (challenging restrictions on veterans' procedural

9    rights), ¶ 31a (challenging the premature denial of PTSD claims), ¶ 31b (challenging rules encouraging

10   tampering with records in veterans' claims files), ¶¶ 216-21 (challenging VA's reliance upon improper

11   "personality disorder" discharges), ¶¶ 227-34 (challenging VA's incentive compensation program).

12   Each of those policies or procedures is "final" in that it represents VA's ultimate decision on its

13   activities and has a direct effect on the delivery of mandated health care and benefits to veterans.  The

14   absence of individual veterans or individual claims has no bearing on the finality of the agency's action

15   in establishing the challenged rules.

16        Even assuming that the challenged policies do not constitute final agency action, Plaintiffs'

17   claims regarding VA's failure to make timely decisions on benefits claims and provide timely medical

18   care, Compl. ¶¶ 31a, 145-68, 184-200, are also ripe for judicial review pursuant to APA Section 706(a),

19   which specifically permits the court to review claims to compel "agency action unlawfully withheld or

20   unreasonably delayed."  *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999)

21   (noting courts have permitted jurisdiction under an exception to the finality doctrine for a genuine failure

22   to act); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) ("failure to act" includes

23   the failure to make timely decisions).

24        VA also argues that the CAVC constitutes an adequate, alternative forum, which ignores United

25   States Supreme Court precedent, greatly exaggerates the authority of the CAVC, and disregards the

26   Statutory Defects.  The Supreme Court has already ruled that courts with limited jurisdiction, like the

---

27   [7] "Finality" should be interpreted in a flexible and pragmatic way.  *Assiniboine*, 792 F.2d at 789 (citation omitted).

28

1    CAVC, cannot provide an adequate remedy in a case seeking prospective injunctive relief.  In *Bowen v.*

2    *Massachusetts*, 487 U.S. 879 (1988), Massachusetts appealed  a decision of the Secretary of

3    the Department of Health and Human Services denying reimbursement under Medicaid for services

4    provided to persons residing in state-owned intermediate care facilities for the mentally retarded.  The

5    Secretary argued that APA Section 704 precluded district court review because an adequate and

6    alternative remedy was available in the Court of Claims ("COC").  The Supreme Court disagreed,

7    holding:  "The Secretary's novel submission that the entire action is barred by § 704 must be rejected

8    because the doubtful and limited relief available in the Claims Court is not an adequate substitute for

9    review in the District Court."  *Id.* at 901.  The COC "does not have the general equitable powers of a

10   district court to grant prospective relief." *Id.* at 905.

11           Like the COC, the CAVC cannot provide the relief sought by Plaintiffs in this action.  The

12   CAVC is purely an Article I appellate court, created in 1998 by the VJRA.  It has jurisdiction to affirm,

13   reverse, or remand decisions of the Board of Veterans Appeals on *individual* claims for benefits.  *See*

14   38 U.S.C. § 7252(a).  Thus, the CAVC's ability to address constitutional issues is strictly limited to

15   those raised by an individual veteran based upon the facts in his or her claim file.

16           Given the CAVC's limited authority, there is no potential for relief at the CAVC with respect to

17   the systemic practices and procedures about which Plaintiffs complain.[8]  First, unlike in district court

18   (*see* Section IV.A, *supra*), Plaintiffs would lack standing in the CAVC to challenge VA's policies and

19   procedures because they are organizations with no individual claims for benefits pending and no

20   individual decisions from the BVA from which to appeal.  Second, as an appellate court, the CAVC

21   cannot develop a factual record necessary for a decision in this case; it has no rules permitting discovery

22   or the holding of a trial on the merits.  Nor does the CAVC have the authority to enforce its decisions,

23   Compl. ¶¶ 138-141, to enter injunctions[9] or issue declaratory judgments, *see Nagler v. Derwinski*, 1 Vet.

---

24   [8] The CAVC has recognized that its power to provide relief from systemic violations of law is virtually
     nonexistent.  "[I]t must be borne in mind that the jurisdiction of this Court is over final decisions of the
25   BVA . . . .  Nowhere has Congress given this Court either the authority or the responsibility to supervise
     or oversee the ongoing adjudication process which results in a BVA decision." *Cleary v. Brown*, 8 Vet.
26   App. 305, 308 (1995).

27   [9] The CAVC lacks explicit statutory authority to issue injunctions outside of an individual veteran's
     benefits determination.  On isolated occasions, the CAVC has considered injunctive relief requests in the
28   context of relief sought by an individual veteran, *see, e.g., Kaplan v. Brown*, 7 Vet. App. 425, 427

                                                                        (Footnote continues on next page.)

App. 297, 306-07 (1991), or to certify class actions, *see Lefkowitz v. Derwinski*, 1 Vet. App. 439 (1991) (*per curiam*).[10]  Finally, the CAVC's jurisdiction is limited to VA's benefits adjudication system, leaving Plaintiffs with no forum in which to bring their constitutional and statutory claims about VA's crumbling health care system.  The CAVC's inability to provide redress for Plaintiffs' systemic claims about VA's policies and procedures concerning benefits and health care places this case squarely under the precedent of *Bowen*.[11]

**C.     This Court Has Subject-Matter Jurisdiction.**

**1.     Section 511 Does Not Preclude Jurisdiction in Article III Courts over Constitutional Challenges to Statutes and System-wide Practices.**

VA's primary subject-matter jurisdiction argument is premised on the misconception that "Congress has . . . expressly directed with 38 U.S.C. § 511(a) that determinations by VA that affect veterans' benefits are not reviewable in district court."  MTD at 9:9-10.  To reach this mistaken conclusion, VA mischaracterizes Plaintiffs' claims, ignores the plain language of Section 511, selectively excerpts its legislative history, and fails to meaningfully distinguish a long-standing body of jurisprudence allowing review of constitutional claims that do not involve individual veterans' benefits determinations.

---

(Footnote continued from previous page.)

(1995); *Moore v. Derwinski*, 1 Vet. App. 83, 84 (1990), but ultimately decided not to enter an injunction. Plaintiffs are unaware of any injunctions issued by the CAVC or its predecessor entity.

[10] The CAVC's ability to provide relief is also tainted by the fact that the adjudication system is impossibly backlogged.  Over 600,000 regional office claims are currently pending, Compl. ¶ 146, and there are at least one million new claims per year. *Ribaudo v. Nicholson*, 21 Vet. App. 137, 144 (2007). On average, the appellate review process would take nearly a decade to complete in an individual case. Compl. ¶¶ 145-68.  The CAVC has both acknowledged the existence of systemic delay and held that a decade is clearly unreasonable for resolution of an individual claim.  *See Ribaudo*, 21 Vet. App. at 144; *Erspamer v. Derwinski*, 1 Vet. App. 3, 10 (1990).

[11] The CAVC does have authority to issue writs of mandamus on an individual basis, but even this limited power is not a meaningful remedy for delay.  The CAVC's authority is limited to issuing writs "in aid of its jurisdiction," 28 U.S.C. § 1651(a), and thus is constrained to *individual* claims for VA benefits; it cannot be used to order the VA to implement the system-wide changes sought by Plaintiffs. As a result, the CAVC's mandamus power is virtually never used.  *See Erspamer*, 1 Vet. App. at 7 (noting mandamus in connection with agency matters has been rare and the scope of relief granted in these cases has been narrow).  None of the few writs issued by either the CAVC or the Federal Circuit over the last twenty years have addressed delay.  Even in the unlikely event that an individual veteran were fortunate enough to secure a writ expediting a decision on his or her claim for benefits, the veteran would simply advance in the line, leaving the other approximately 599,999 veterans with the same interminable wait.

1

2

### a.    Congress Did Not Express the Requisite "Clear Intent" to Restrict This Court's Jurisdiction in Either the Plain Language of the Statute or Its Legislative History.

3    "[W]here Congress intends to preclude judicial review of constitutional claims, its intent to do so

4    must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988).  That intent is not clear from the plain text or

5    the VJRA's legislative history.  In construing a statute, the "meaning of a statute must, in the first

6    instance, be sought in the language in which the act is framed, and if that is plain,. . . the sole function of

7    the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

8    Where a veterans' benefits statute is ambiguous, "interpretive doubt is to be resolved in the veteran's

9    favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).  Section 511(a) states:

10

11

12
> The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

13    38 U.S.C. § 511(a).[12]  Section 511 does not read nearly as restrictively as VA would have the Court

14    believe; the plain language of Section 511(a) reveals an intent to limit the jurisdictional restriction only

15    to ***individual*** benefits determinations by the Secretary.  Section 511(a) specifically states that "[t]he

16    Secretary shall decide all questions of law and fact *necessary to a decision* by the Secretary under a law

17    that *affects the provision of benefits by the Secretary to veterans* or the dependents or survivors of

18    veterans."  *Id.* (emphasis added).  Moreover, Section 511 merely prevents district courts from

19    "review[ing]" the Secretary's *individual* decision once made:  "the decision of the Secretary as to any

20    such question shall be final and conclusive and may not be reviewed by any other official or by any

21    court." *Id. See also Bates v. Nicholson*, 398 F.3d 1355, 1365 (Fed. Cir. 2005) ("Section 511(a) does not

22    apply to every challenge to an action by the VA.  As we have held, it only applies where there has been a

23    'decision by the Secretary.'   In the context of the history of this provision, the statute plainly

24    contemplates a formal 'decision' by the Secretary or his delegate" on individual claims brought by

25    veterans) (citation omitted).

26

27

28

---

[12] Section 511(b) provides for four exceptions, none of which is relevant here.  38 U.S.C. § 511(b).

1    Congress may have denied Article III courts' jurisdiction to hear claims revisiting individual

2    benefits determinations made by the Secretary, but that fact does not affect this Court's jurisdiction over

3    the claims raised in this action.  The plain language of the statute expresses no intent, clear or otherwise,

4    to preclude jurisdiction over either systemic constitutional challenges to adjudication practices or the

5    delivery of medical care, for which veterans lack any remedy.  This Court's jurisdiction to hear broad

6    questions of constitutional law separate from individual benefits decisions made by the Secretary is not

7    restricted by Section 511.

8        The D.C. Circuit adopted this very construction of Section 511 in *Broudy v. Mather*, 460 F.3d

9    106, 112 (D.C. Cir. 2006), which rejected the government's motion to dismiss for lack of jurisdiction:

10   In the defendants' view, § 511(a) prevents a district court from exercising jurisdiction over any case that would require it to decide a "question of law [or] fact" that arises

11   "under a law that affects the provision of benefits."  Put another way, the defendants argue that § 511(a) gives the Secretary *exclusive* jurisdiction to decide these

12   questions . . . This argument misreads the statute.  **Section 511(a) does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans benefits**

13   **or to consider all issues that might somehow touch upon whether someone receives veterans benefits.  Rather, it simply gives the VA authority to consider such**

14   **questions when making a decision about benefits** . . . .

15   *Id*. at 112 (emphasis added).

16       Consistent with *Broudy*, the legislative history and case law do not read Section 511 as an

17   exclusive grant of jurisdiction over all challenges to the VJRA, but merely challenges to individual

18   benefits determinations.  Instead, they confirm the plain text's limitation to individual determinations.

19   VA relies upon selective quotations from a single House Report in support of its expansive interpretation

20   of the bar in Section 511.  MTD at 11. [13]  Yet, the cited House Report does not support as circumscribed

21   a view of original Article III review as VA would have this Court believe.  VA misleadingly cites a

22   portion of the House Report authorizing review over constitutional, statutory, and regulatory issues.

23   MTD at 11:2-11.  However, the MTD fails to acknowledge that under Section 211(a) as revised

---

[13] VA misleadingly quotes part of a sentence from the House Report for the proposition that "district courts would no longer have jurisdiction to entertain challenges to the constitutionality of any matter affecting veterans benefits."  MTD at 11:9-11.  The entire sentence makes it clear that the preclusion is limited to ratings schedules:  "*In the event that a constitutional question arises concerning the rating schedule*, it must be resolved in accordance with the procedure envisioned in this chapter, since district courts would no longer have jurisdiction to entertain challenges to the constitutionality of any matter affecting veterans benefits." H.R. Rep. No. 100-963 at *30 (1988) (emphasis added).  Plaintiffs do not directly challenge the constitutionality of the ratings schedule.

1    (subsequently renumbered 38 U.S.C. § 511(a)), the Secretary has the power to resolve all legal and

2    factual questions, including constitutional challenges, only "if it is necessary to a decision in a case."

3    H.R. Rep. No. 100-963 at *27.  VA mistakenly conflates its power to review constitutional questions

4    that arise in the context of *individual* benefits determinations by the Secretary with the exclusive

5    jurisdiction to consider *all* constitutional questions, including systemic challenges.

6        Though VA may be correct that Congress intended to limit judicial review of *individual*

7    veterans' benefits determinations, the legislative history consistently shows that review of other issues

8    by Article III courts was to be maintained.  38 U.S.C. § 211(a), the predecessor to Section 511(a),

9    provided that courts could not review VA decisions on any questions of law or fact arising in the

10   administration of a statute that provides for veterans' benefits.  This provision was extensively litigated

11   to establish the jurisdictional scope of Article III courts in cases involving veterans' benefits.  In

12   *Johnson v. Robison*, 415 U.S. 361, 362, 373 (1974), the Supreme Court held that a district court has

13   jurisdiction to hear a suit challenging the constitutionality of the statutory provisions providing benefits

14   to veterans because such challenges do not involve a review of a specific benefits decision made by VA.

15   VA concedes, as it must, that *Robison* at the very least established district court jurisdiction over

16   constitutional challenges to veterans' benefits statutes.  MTD at 10:2-3.  As set forth in Section IV.C.1.b,

17   *infra*, *Robison* is still good law.

18       The legislative history of the VJRA, as meager as it is, nonetheless clearly indicates that it was

19   not intended to overturn *Robison* or to foreclose all judicial review of constitutional claims in Article III

20   courts.  H.R. Rep. No. 100-963 at **20-22 (1988) (stating Committee's belief that "*Johnson v. Robison*

21   was correct in asserting judicial authority to decide whether statutes meet constitutional muster").[14]  The

22   House Report clarifies that Congress merely sought to restrict judicial forays "into individual decision

23   making."  *Id.* at *22.  Moreover, the House Report contemplates that Article III review would survive

24   the passage of the VJRA:  "To the extent that the committee bill allows Article III courts to review VA

25   policy," such review will "aid in the achievement of a more fair and accurate system."  *Id.* at *26.  Given

26   ────────────────────
     [14] *See also id.* at **20-21 ("The result in *Johnson v. Robison* is generally accepted as being in accord
27   with a line of decisions stretching back to *Marbury v. Madison*[,] which hold that the courts have a
     constitutional responsibility to determine whether Congressional enactments meet constitutional
28   muster.").

1  the limitation to individual determinations coupled with the concessions regarding *Robison* and

2  Article III review, the congressional record lacks the requisite intent to bar review of Plaintiffs'

3  constitutional claims.

### b.  *Robison* Establishes District Court Jurisdiction over Plaintiffs' Constitutional Claims.

4

5  VA questions whether *Robison* survived the passage of the VJRA.  MTD at 10:7-11.  In

6  accordance with the principles articulated in *Robison*, federal courts have continued to exercise

7  jurisdiction over constitutional challenges to veterans' benefits after the passage of the VJRA.  *See*

8  *Dacoron v. Brown*, 4 Vet. App. 115, 118-19 (1993) ("[N]othing in the VJRA or in the current provisions

9  of 38 U.S.C. § 511(a) changes the Supreme Court's above-quoted analysis in *Johnson* [*v. Robison*] as to

10  whether . . . such a challenge may be brought in U.S. district court without regard to those statutory

11  provisions.").  The Second Circuit, for example, has continued to rely upon *Robison* after the passage of

12  the VJRA in the context of veterans' benefits, *see Disabled Am. Veterans v. U.S. Dep't of Veterans*

13  *Affairs*, 962 F.2d 136, 138, 140-41 (2d Cir. 1992) (equal protection); *Quiban v. Veterans Admin.*,

14  928 F.2d 1154 (D.C. Cir. 1991) (same); *Brown v. Dep't of Veterans Affairs*, 451 F. Supp. 2d 273, 280-81

15  (D. Mass. 2006) (same).  *But see Beamon v. Brown*, 125 F.3d 965, 973 (6th Cir. 1997) (distinguishing

16  case from *Robison* because plaintiffs "do not challenge the constitutionality of an act of Congress");

17  *Hall v. Dep't Veterans' Affairs*, 85 F.3d 532, 534-35 (11th Cir. 1996).

18  Although the Ninth Circuit has not specifically addressed the status of *Robison* in light of the

19  VJRA, it has, however, reaffirmed the basic holding of *Robison* in the analogous context of a

20  constitutional challenge to immigration forfeiture statutes:

21

22  > A challenge to an agency's procedures on constitutional grounds may properly be brought in federal court. . . . . [A] challenge to the validity of the administrative procedure itself . . . presents an issue beyond the competence of the [agency] to hear and determine.  Adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.

23

24  *Gete v. I.N.S.*, 121 F.3d 1285, 1291 (9th Cir. 1997) (citing *Robison*, 415 U.S. at 368); *cf. also Mace v.*

25  *Skinner*, 34 F.3d 854, 859 (9th Cir. 1994) ("[A]ny examination of the constitutionality of the FAA's

26  revocation power should logically take place in the district courts, as such an examination is neither

27  peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'").

28

1    Other circuits have also upheld *Robison* in the context of similar benefits schemes.  *See, e.g., Lepre v.*

2    *Dep't of Labor*, 275 F.3d 59, 67-68 (D.C. Cir. 2001) (holding the "Supreme Court has remained faithful

3    to *Robison*'s teachings" in the context of Federal Employees Compensation Act ("FECA"));

4    *Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1439 (7th Cir. 1996) (en banc) (FECA); *Kreschollek v. S.*

5    *Stevedoring Co.*, 78 F.3d 868, 873-75 (3d Cir. 1996) (Longshore and Harbor Workers' Compensation

6    Act).  Any construction of Section 511 that precludes jurisdiction in Article III courts over constitutional

7    challenges would constitute a reversal of *Robison* and its progeny and raise the very type of

8    irreconcilable constitutional questions *Robison* sought to avoid.

9
      **c.**  **Section 511 Permits Article III Judicial Review of Claims Not**
          **Requiring the Courts to Second-Guess an Individual Benefits**
10
          **Determination by the Administrator.**

11       The MTD relies principally on a series of inapposite decisions involving individual veterans

12    seeking to obtain judicial review of VA decisions denying their claims.  Each veteran ran headlong into

13    38 U.S.C. § 511(a), which precludes Article III courts from adjudicating *individual* statutory or

14    constitutional claims regarding a veteran's right to benefits.[15]  As numerous as these cases are, they do

15    not speak to the types of claims brought by Plaintiffs.  Applicable case law makes it clear that Article III

16    review of constitutional challenges to systemic problems with the administration of veterans' benefits

17    survives the VJRA's passage.

18

19

            

20    [15]  All but one of VA's citations are irrelevant cases seeking review of **individual benefits
**  **determinations from which the VA has plucked misleading language**.  MTD at 11 n.8.  *See Zuspann*,
21    60 F.3d 1156, 1159 (5th Cir. 1995) ("Although Zuspann attempts to fashion his complaint in
  constitutional terms, his complaint is an individualized challenge to the VA's decision to deny him
22    benefits."); *Lytran v. Dep't of Treasury*, No. 05-4124 JAR, 2006 WL 516754, at *2 (D. Kan. Feb. 28,
  2006) (granting unopposed motion to dismiss plaintiff's "claims against the VA, [which] in essence,
23    seek judicial review of the VA's determination concerning an individual benefit claim"); *see also
  Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000); *Hall*, 85 F.3d at 532-33, 535; *Sugrue v.
24    Derwinski*, 26 F.3d 8, 9 (2d Cir. 1994); *Chinnock v. Turnage*, 995 F.2d 889, 891, 893 (9th Cir. 1993);
  *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1370 (8th Cir. 1992); *Murrhee v. Principi*, 364 F. Supp. 2d
25    782, 789 (C.D. Ill. 2005).  The remaining case is distinguishable because it interprets the predecessor
  statute to the VJRA, which precluded judicial review altogether.  *See Tietjen v. U.S. Veterans Admin.*,
26    884 F.2d 514, 515 (9th Cir. 1989).

27

28

1    The Ninth Circuit has not squarely addressed this issue,[16] but another Circuit has.  In *Broudy v.*

2    *Mather*, 460 F.3d 106 (D.C. Cir. 2006), which VA glosses over in a footnote, MTD at 12 n.9, veterans

3    exposed to atomic radiation during active duty brought a class action in district court challenging the

4    denial of their constitutional right to meaningful access to the administrative proceedings before the VA

5    based on the alleged suppression of their medical test records by the Department of Defense.  VA moved

6    to dismiss the veterans' complaint for lack of jurisdiction, arguing that the Article I courts have

7    exclusive review over veterans' benefits.  460 F.3d at 112.  The D.C. Circuit rejected VA's reading of

8    Section 511,[17] concluding that "the District Courts have jurisdiction to consider questions arising out of

9    laws that affect the provision of benefits as long as the Secretary has not actually decided them in the

10    course of a benefits proceeding . . . [;] Where there has been no such decision, § 511(a) is no bar."  *Id.* at

11    114.  The *Broudy* court held that plaintiffs were not asking the district court to "revisit any decision

12    made by the Secretary in the course of making benefits determinations,"[18] and thus jurisdiction was

13    proper.[19]  *Id.* at 115.

14    _____

15    [16] Since the passage of the VJRA, the Ninth Circuit has published only one opinion that even touches upon jurisdictional questions under Section 511.  That opinion is confined to a veteran's challenge to an individual benefits determination, the type of claim that falls within the scope of Section 511.  *See*

16    *Hicks v. Small*, 69 F.3d 967 (9th Cir. 1995) (finding court lacked jurisdiction over individual tort claims for the reduction of benefits because "determination of Hicks' tort claims would necessitate a

17    'consider[ation of] issues of law and fact involving the decision to reduce [Hicks'] benefits'").

18    [17] In rejecting VA's arguments, the D.C. Circuit relied on two Court of Appeal decisions, both of which upheld jurisdiction because the veterans' claims had not been "resolved by an actual decision of the Administrator."  *McKelvey v. Turnage*, 792 F.2d 194, 198 (D.C. Cir. 1986), *aff'd on other grounds*,

19    *Traynor v. Turnage*, 485 U.S. 535 (1988) (emphasis omitted); *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000) ("We do not read the statute to require the Secretary, *and only the Secretary*, to

20    make all decisions related to laws affecting the provision of benefits.") (emphasis added).

21    [18] The *Broudy* court distinguished two prior D.C. Circuit cases involving individual benefits determinations.  *See Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000) (dismissing plaintiff's

22    tort claims predicated on alleged failure of VA to reimburse medical expenses, based on fact that "a determination whether the VA acted in bad faith or with negligence would require the district court to

23    determine first whether the VA acted properly in handling Price's request for reimbursement"); *see also Thomas v. Principi*, 394 F.3d 970, 975 (D.C. Cir. 2005) (relying upon *Price* and dismissing for lack of

24    jurisdiction because "adjudicating these allegations—failure to 'render appropriate medical services' and 'denial of . . . necessary medical care treatment'—would require the district court to determine first

25    whether the VA acted properly in providing [plaintiff] benefits").

26    [19] VA asserts, without citation, that *Broudy* "conflicts with Ninth Circuit authority."  MTD at 12 n.9. However, all Ninth Circuit authorities cited by VA are immaterial to the *Broudy* decision because they address either the predecessor statute or interpretations of VA regulations, not the VJRA itself.  *See*

27    *Tietjen*, 884 F.2d at 515 (predecessor statute); *Rosen v. Walters*, 719 F.2d 1422, 1425 (9th Cir. 1983) (same); *Demarest v. United States*, 718 F.2d 964, 965-66 (9th Cir. 1983) (same); *Moore v. Johnson*,

28    582 F.2d 1228, 1232 (9th Cir. 1978) (same); *see also Chinnock v. Turnage*, 995 F.2d 889 (9th Cir. 1993)

(Footnote continues on next page.)

1    Even the Court of Veterans Appeals *itself* is in accord with *Broudy*.  In a case VA cites

2    favorably, *Dacoron v. Brown*, 4 Vet. App. 115, 118 (1993), the predecessor to the CAVC, the Court of

3    Veterans Appeals ("CVA"), denied a widow's petition for a writ of mandamus with respect to her

4    constitutional challenges to the 1945 Recruitment Act.  MTD at 13 n.10.  The CVA held that petitioner

5    had an adequate alternative forum for her constitutional challenges:

6    > A claim which alleges only the unconstitutionality of a statute is not a claim "under a
> law that affects the provision of benefits by the Secretary" under § 511(a), but rather is
7    > a claim under the Constitution of the United States.  As such, it is beyond the purview
> of section 511(a).  **Nothing in title 38 prohibits a constitutional challenge to any of**
8    > **the provisions of that title from being litigated in U.S. district court.**

9    *Id.* at 118-19 (emphasis added).  The CVA's construction of its own jurisdiction is entitled to

10    deference.[20]  Despite citing *Dacoron* with approval, VA makes no attempt to explain how the CVA's

11    interpretation of its own jurisdiction is incorrect.  MTD at 10 n.10.

12    Instead of meaningfully addressing *Broudy* or *Dacoron*, VA heavily relies on a single Court of

13    Appeals decision from the Sixth Circuit, *Beamon v. Brown*, 125 F.3d 965, 972 (6th Cir. 1997).  MTD at

14    12-14.  In *Beamon*, three veterans challenged lengthy delays in benefits processing of their pending

15    claims, purporting to represent other local veterans seeking SCDDC from the Cleveland VA office.  The

16    *Beamon* court held that Section 511 "preclude[d] district court jurisdiction over VA decisions relating to

17    benefits claims, including decisions of constitutional issues."  125 F.3d at 974.

18    *Beamon* is readily distinguishable and is not binding.[21]  First, although styled as a "class action,"

19    the *Beamon* plaintiffs were three individual veteran claimants challenging processing delays experienced

20    in the Cleveland Regional Office, and no class certification motion was ever decided.  *Id.* at 970-71;

---

21    (Footnote continued from previous page.)

22    (interpretation of VA regulation).  Furthermore, VA's citations are consistent with *Broudy*'s reasoning.

23    *See, e.g., Rosen* at 1423 (Section 211 precludes "only review of decisions of law or fact concerning the
administration of benefits legislation; it does not preclude constitutional attacks on legislation governing
the provision of VA benefits"); *Demarest*, 718 F.2d at 966.  VA does not and cannot point to a single

24    case that has foreclosed this issue in the Ninth Circuit.

25    [20] *Cf. Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (holding agency's interpretation
of its own rule or regulation is entitled to "controlling weight unless it is plainly erroneous or
inconsistent with the regulation"); *Ballard v. C.I.R.*, 544 U.S. 40, 70 n.4 (2005) (extending *Seminole*
26    *Rock* deference to Article I court's interpretation of its own procedural rules) (internal citation omitted).

27    [21] Even assuming the decision were binding on this Court and not distinguishable, *Beamon* was not
properly decided due to its failure to apply the principles underlying the *Robison* decision, which
survived the passage of the VJRA as set forth in Section IV.C.1.b, *supra*.

28

Plaintiffs' Request for Judicial Notice ("RJN"), filed herewith, Ex. A.  In contrast, Plaintiffs represent a nationwide class of veterans for whom a system-wide meltdown has led to unconscionable delays throughout the adjudication and health care systems.  Plaintiffs' Complaint goes far beyond *Beamon* because it alleges that the adjudication system lacks procedures or effective remedies to address a variety of systemic problems independent of delay.  For example, VA fails to provide medical care to returning veterans, in violation of federal statutes, Compl. ¶¶ 84-93, and eliminates PTSD claims by categorizing veterans as having pre-existing "personality disorders," depriving them of eligibility.  Compl. ¶¶ 216-21. *See, e.g., Bowen v. New York*, 476 U.S. 467, 475, 487 (1986) (improper denial of Social Security benefits pursuant to "a clandestine policy" of the Agency that created an incentive among employees to deny claims resulting in claimants being "denied the fair and neutral procedure required by the statute and regulations").  Second, unlike the *Beamon* plaintiffs, Plaintiff organizations cannot access the VA system at all.  As set forth in Section IV.B, *supra*, the CAVC's jurisdiction is limited to review of individual claims and the VJRA's system provides an inadequate forum for Plaintiffs' systemic constitutional challenges.  More importantly, the VA adjudication system only addresses entitlement to SCDDC; there is no procedure or remedy whatsoever for systemic denial of medical care or treatment delay by the Veterans Health Administration ("VHA").  Third, Section 511 is only a barrier to subject-matter jurisdiction when the district court would be required to revisit a decision of the VA Secretary.[22] That is not the case here, as the Complaint clearly alleges: "[n]othing herein is intended or should be construed as an attempt to obtain review of any decision relating to benefits sought by any veteran or any Class Member."  Compl. ¶ 39.  Additionally, in *Beamon*, the Chief Judge of the CAVC was not a defendant.  VA fails to explain how it would be consistent with due process for the CAVC to decide this case in which its own Chief Judge is a defendant.[23]

---

[22]  The published Circuit decisions outside the Sixth Circuit to follow *Beamon*'s Section 511 jurisdictional analysis are distinguishable as cases in which individual benefits determinations would have required scrutiny by the district court. *See, e.g., Price*, 228 F.3d at 422; *In re Russell*, 155 F.3d 1012 (8th Cir. 1998) (delay in individual benefits processing).

[23]  A basic requirement of due process is a right to a neutral decision-maker. *See Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002) ("'A neutral judge is one of the most basic due process protections.'"); *Sanchez-Cruz v. INS*, 255 F.3d 775, 779 (9th Cir. 2001) (same).  Judge Greene's inclusion as a defendant is not nominal; he presides over a court that currently averages more than 1,286 days to decide an appeal and has a backlog of over 6,000 appeals.  Compl. ¶¶ 150-52, 157, 164.

1

**d.     VA Concedes that Section 511 Does Not Affect This Court's Jurisdiction to Hear Plaintiffs' Facial Challenges.**

2

3         VA does not even seriously dispute the proposition that facial challenges to the constitutionality

4    of congressional statutes are properly within a district court's jurisdiction, and the VJRA was not

5    intended to disturb this principle. MTD at 14:23-15:5. Nor can it. *See Larrabee v. Derwinski*, 968 F.2d

6    1497, 1501 (2d Cir. 1992) ("[D]istrict courts continue to have 'jurisdiction to hear facial challenges of

7    legislation affecting veterans' benefits.'") (quotation omitted).[24]  Although the Ninth Circuit has not

8    addressed expressly this question, the legislative history of the VJRA and the case law from other

9    Circuits and the CVA support VA's concession. The House Report states: "the Committee believes that

10   *Johnson v. Robison* is correct in asserting judicial authority to decide whether statutes meet

11   constitutional muster."  H.R. Rep. No. 100-963 at *22.  After the passage of the VJRA, the CVA

12   confirmed that challenges to the constitutionality of a statute are properly within the district court's

13   jurisdiction. *See Dacoron*, 4 Vet. App. at 188 ("Nothing in title 38 prohibits a constitutional challenge to

14   any of the provisions of that title from being litigated in U.S. district court.").

15        In a half-hearted attempt to inject doubt upon a settled question, VA relies upon *dicta* in a non-

16   binding case, *Hall v. U.S. Dep't Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996).  MTD at 14:27-

17   15:1.  Both *Hall* and the case it relies upon, *Hicks v. Veterans Admin*., 961 F.2d 1367, 1370 (8th Cir.

18   1992), are inapposite because neither addressed a facial constitutional challenge. *Hall*, 85 F.3d at 535.

19   Here, Plaintiffs' Complaint raises constitutional challenges to the procedures contained in the VJRA.

20   Compl. ¶¶ 29, 39 (seeking "declaratory and injunctive relief challenging the constitutionality of

21   provisions of the [VJRA]" but excluding review of any "decision relating to benefits sought by any

22   veteran or any Class Member").)  Facial challenges do not "address[] the application of the statute to a

23   particular set of plaintiffs," but do address "the constitutionality of the statute[]." *Washington v.*

---

[24] *See also Beamon*, 125 F.3d at 973-74 (conceding "district court jurisdiction over facial challenges to acts of Congress survived the statutory revisions that established the CVA"); *Zuspann v. Brown*, 60 F.3d 1156, 1158 (5th Cir. 1995) ("If [plaintiff] makes a facial challenge to a statute, then the district court has jurisdiction to hear his case."); *Murrhee v. Principi*, 364 F. Supp. 2d 782, 787 (C.D. Ill. 2005) ("Even after Congress passed the VJRA in 1988, federal courts have continued to follow *Johnson* [*v. Robison*], holding that Section 511(a) does not preclude federal district court jurisdiction to consider facial constitutional challenges. . . . Thus, this Court continues to have jurisdiction to hear facial constitutional challenges.") (internal citations omitted).

24
25
26
27
28

1    *Glucksberg*, 521 U.S. 702, 740 (1997) (Stevens, J., concurring) (questioning the viability of the facial

2    challenges standard set forth in *United States v. Salerno*, 481 U.S. 739 (1987)).[25]  Because Plaintiffs'

3    allegations directly confront the constitutionality of the VJRA, as opposed to a particular benefits

4    determination, this Court has subject-matter jurisdiction.

5                **e.    Even If Plaintiffs' Claims Could Be Construed as As-Applied Challenges, the Class Would Be Without Any Remedy, Raising Irreconcilable Constitutional Problems.**

6    

7                **(i)    VA Concedes that Plaintiffs Make Facial Claims.**

8          VA concedes that some of Plaintiffs' claims are facial by positing that "the bulk" of Plaintiffs'

9    claims are as applied.  MTD at 17:5.  The implicit concession that the Complaint alleges *any* facial

10   claims is fatal to VA's motion to dismiss for lack of jurisdiction.  Assuming that further analysis is

11   required, though it is not, VA's opposition to the purported as-applied challenges relies on two

12   fundamental misconceptions: (1) that Plaintiffs challenge the constitutionality of VA regulations; and

13   (2) that Plaintiffs challenge decisions by the Secretary.  First, as set forth in Section IV.C.2, *infra*,

14   Plaintiffs' Complaint does not purport to bring a constitutional challenge to VA regulations, but rather to

15   the VJRA itself.  Second, VA attempts to recharacterize selected allegations in Plaintiffs' Complaint into

16   as-applied challenges to decisions of the Secretary.  MTD at 12:3-13:18.  Plaintiffs' claims do not

17   involve individual benefits determinations and do not seek review of any "decision [by the Secretary]

18   relating to benefits sought by any veteran or any Class Member."  Compl. ¶ 39.  VA cannot change the

19   _____

20   [25] VA cites *Salerno* to argue that a facial challenge requires proof that "no set of circumstances [exists] under which the Act would be valid."  MTD at 15:12-13.  VA fails to note that the *Salerno* standard has been repeatedly questioned in the Supreme Court and this Circuit.  *See Janklow v. Planned Parenthood,*

21   *Sioux Falls Clinic*, 517 U.S. 1174 (1996) ("While a facial challenge may be more difficult to mount than an as-applied challenge, the dicta in *Salerno* 'does not accurately characterize the standard for deciding facial challenges,' and 'neither accurately reflects the Court's practice with respect to facial challenges,

22   nor is it consistent with a wide array of legal principles.' . . . *Salerno*'s rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context.") (citation omitted); *Engine*

23   *Mfrs. Ass'n v. S. Coast Air Quality Mgmt Dist.*, 498 F.3d 1031, 1048, (9th Cir. 2007) (criticizing *Salerno* and noting *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971-72 (9th Cir. 2003),

24   followed *Salerno* but noted that a plurality of the Supreme Court deemed its facial challenges standard to be *dictum* and questioned its viability in *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999));

25   *Hotel & Motel Ass'n*, 344 F.3d at 971 ("We recognize that, despite the Supreme Court's directive in *Hoffman Estates* and *Salerno*, the Court's most recent discussion of facial vagueness challenges has cast

26   some doubt on the 'no set of circumstances' requirement.").  Moreover, the Ninth Circuit has limited *Salerno*'s application to vagueness challenges.  *See id.* at 972.  The Federal Circuit has criticized the

27   government for relying on *Salerno* without recognizing that it has been criticized by a plurality in *Morales*.  *See Berkley v. United States*, 287 F.3d 1076, 1090 (Fed. Cir. 2002).

28

1    substance of Plaintiffs' claims by applying its own label.  In fact, the distinction between facial and as-

2    applied challenges is one of the murkiest in modern jurisprudence.[26]  Plaintiffs do not assert that any

3    particular veteran is entitled to benefits or medical care; the Complaint seeks to ensure fair procedures

4    mandated by our Constitution.  Due process does not entitle veterans to actually receive benefits or

5    medical care; it merely ensures that veterans are afforded fair procedures.  *Czerkies*, 73 F.3d at 1442.

6    Analysis of existing procedures does not require evidence concerning specific determinations by VA.

7    On the contrary, Plaintiffs seek declaratory and injunctive relief with respect to VA's systemic failures.

8    These systemic claims do not involve the application of facts to an individual claim and fall on the facial

9    end of the constitutional spectrum.  *See Canatella v. Stovitz*, 365 F. Supp. 2d 1064, 1080 (N.D. Cal.

10   2005) ("In an as-applied challenge, there is a narrow focus on the particular plaintiff's behavior and

11   whether the statute is constitutional as applied to him.").

12                        **(ii)**      **As-Applied Challenges Are Not Necessarily Precluded.**

13           Even assuming *arguendo* that Plaintiffs raise some as-applied challenges, those challenges are

14   not necessarily precluded under Section 511.    Apart from individual challenges to benefits

15   determinations that raise constitutional issues to be decided by the Secretary, a well-established line of

16   cases supports greater access to district courts in the face of door-closing statutes.  The construction of

17   statutes must be informed by a presumption "against slamming the courthouse door in the face of

18   holders of constitutional claims."  *Czerkies*, 73 F.3d at 1441; *Marozsan v. United States*, 852 F.2d 1469,

19   1478-79 (7th Cir. 1988); *see also Gete*, 121 F.3d at 1292 (citing *Marozsan* in support of district court

20

---

21   [26] Constitutional law scholars agree that there is no distinct category of facial as opposed to as-applied
     challenges and that all cases are in a sense a hybrid of the two theories.  *See, e.g.,* Matthew D. Adler,

22   *Rights Against Rules:  The Moral Structure of American Constitutional Law*, 97 MICH. L. REV. 1, 125-
     32, 157 (1998) (suggesting all constitutional challenges are facial, and "there is no such thing as a true

23   as-applied constitutional challenge"); Gillian E. Metzger, *Facial Challenges and Federalism*, 105
     COLUM. L. REV. 873, 877 (2005) ("'[F]acial' and 'as-applied' are best understood as encompassing a

24   range of possible challenges rather than as mutually exclusive terms."); Richard H. Fallon, Jr., *As
     Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1324 (2000)

25   ("[T]here is no distinctive category of facial, as opposed to as-applied, litigation… it is more misleading
     than informative to suggest that 'facial challenges' constitute a distinct category of constitutional

26   litigation);  David M. Driesen, *Standing for Nothing:  The Paradox of Demanding Concrete Context for
     Formalist Adjudication*, 89 CORNELL L. REV. 808, 884-86 (2004) (discussing "continuum [that] exists

27   between pure as-applied challenges and facial challenges that ask a court to strike down rules in their
     entirety"); Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 STAN. L. REV. 235, 294

28   (1994) ("In some sense, any constitutional challenge to a statute is both as-applied and facial.").

jurisdiction over constitutional challenges to agency action after the passage of the VJRA). Thus, district court review is required where, as here, dismissal would close the door entirely on valid systemic constitutional challenges, even if the pleading raises what might be characterized as as-applied challenges.[27]

### 2. Section 502 Is Inapplicable Because Plaintiffs Do Not Challenge the Constitutionality of VA Regulations.

VA tellingly spends only nine lines of its MTD framing its erroneous argument that Plaintiffs challenge VA regulations, which must be adjudicated by the Federal Circuit. MTD at 14:12-20. Plaintiffs do not attack the constitutionality of any VA regulation, just the VJRA itself. Compl. ¶¶ 259-60. Plaintiffs' Complaint includes references to various VA regulations only because the due process balancing test requires a consideration of the actual procedures and the comparative interests of both sides. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Thus, the cited VA regulations provide context for the assessment of the constitutionality of VA procedures.

### 3. Plaintiffs' Claimed Right to Medical Care Is Justiciable.

VA reiterates the same misguided argument that Plaintiffs challenge the constitutionality of VA regulations in arguing that the Court lacks jurisdiction over Plaintiffs' medical care claims. MTD at 23:14-20. As explained above, Plaintiffs do not; therefore, the only authority cited by VA is easily distinguished. *See E. Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affairs*, 257 F.3d 1352, 1354 (Fed. Cir. 2001) ("A veterans association and individual veterans challenge *regulations* of the Department of Veterans Affairs . . . .") (emphasis added). Furthermore, citing *Beamon*, VA argues that claims of unreasonable delay must be brought in the "exclusive remedial scheme crafted by Congress." MTD at 23:19-20. Citation to *Beamon* is misleading, because it conflates delays in the SCDDC adjudication system with delays in the health care system where the veteran lacks any recourse. At issue

---

[27] VA asserts that "Section 511 (a) has divested district courts of jurisdiction to decide questions of law or fact necessary to decisions by the VA regarding veterans benefits claims, [and, therefore,] it has effectively barred those courts form adjudicating claims alleging a 'denial of access' claim." MTD at 22:9-28. Because the Court has jurisdiction to hear Plaintiffs' challenge to the VJRA under Section 511 for the reasons stated above, jurisdiction is similarly proper over their right to access claim. *See, e.g., Vietnam Veterans of Am., Inc. v. McNamara*, No. 02-2123 (RMC), 2003 WL 24063631, at **4-6 (D.D.C. Sept. 30, 2003) (upholding jurisdiction where plaintiffs brought constitutional right to access claim).

1  in *Beamon* was the former; the latter is governed by a wholly separate entity within the VA not within

2  the purview of the VJRA or the Article I courts.  Veterans denied or delayed health care have no

3  recourse through the adjudication system, which is yet another reason why Article I courts provide an

4  inadequate forum for Plaintiffs' medical care claims.  Finally, Plaintiffs have alleged that VA violated a

5  clear statutory mandate under 38 U.S.C. § 1710 to provide two years of medical care to returning

6  veterans.  Compl. ¶¶ 84-93.[28]  Violation of a statutory mandate is an independent basis for jurisdiction.

7  *See Staacke v. United States Sec'y of Labor*, 841 F.2d 278, 281 (9th Cir. 1998) ("Even where the

8  statutory provision absolutely bars judicial review, . . . jurisdiction exists where defendant is charged

9  with violating a clear statutory mandate or prohibition.").

### 4.     This Court Has Clear Jurisdiction over Plaintiffs' Rehabilitation Act Claim.

12      VA's jurisdictional argument regarding the Rehabilitation Act is based on a complete

     mischaracterization of the nature of Plaintiffs' claim.  Section 504 of the Rehabilitation Act of 1973,

13   29 U.S.C. § 794, provides:

> [N]o otherwise qualified person with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

17   29 U.S.C. § 794(a).  VA is discriminating against veterans with PTSD by failing to provide reasonable

18   accommodations to assist people with PTSD with the benefits application and appeals processes, which

19   are particularly burdensome for them based on the nature of their disability.  Compl. ¶¶ 203, 272.  Two

20   hallmark symptoms of PTSD are "efforts to avoid thoughts, feelings, or conversations associated with

21   the trauma" and an "inability to recall an important aspect of the trauma."  American Psychiatric Ass'n,

22   *Diagnostic & Statistical Manual of Mental Disorders*, at 468 (4th ed. 2000).  As a result of these and

---

[28] VA argues that "Plaintiffs may not directly state a claim under § 1710 because it provides no 'private right of action.'"  MTD at 23 n.17.  A private right of action is not a prerequisite to a suit challenging agency action under the APA.  *See San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1095-96 (9th Cir. 2005) ("[F]ederal action is nearly always reviewable for conformity with statutory obligations without any such 'private right of action.'"); *Glacier Park Found. v. Watt*, 663 F.2d 882, 885 (9th Cir. 1981) ("Regardless [of] whether a statute implies a private right of action, administrative actions thereunder may be challenged under the APA unless they fall within the limited exceptions of that Act.").  Plaintiffs' Complaint invokes Section 702 of the APA.  Compl. ¶ 33, as amended in errata dated October 16, 2007.

1    other serious deficits caused by PTSD, veterans with PTSD are often unable to provide sufficient detail

2    about their combat experiences, thereby compromising their ability to prove service connection.  In

3    addition, veterans with PTSD often experience a "sense of foreshortened future," *id.*, which, combined

4    with difficulties concentrating, make it nearly impossible for veterans to comply with the strict timelines

5    and extensive procedural requirements at both the regional office level (especially given their inability to

6    retain counsel) and on appeal.  Compl. ¶¶ 114, 117.

7          VA is obligated to reasonably modify its policies, procedures, and practices to accommodate

8    veterans with PTSD who are unable to comply with the agency's arbitrary and complex administrative

9    hurdles, barriers that deny them meaningful access to VA's health care and benefits programs; VA's

10   systemic failure to do so violates its obligations under the Rehabilitation Act.  Because VA's failure to

11   accommodate veterans with PTSD does not depend on any individual veteran's claims, it is not barred

12   by Section 511, regardless of the disposition of other claims for relief.

13         VA obfuscates the holding of the leading precedent on judicial review of veterans' Rehabilitation

14   Act claims, obliquely suggesting with little support that the Supreme Court decision has somehow been

15   superseded by the VJRA.   MTD at 24:23-25:11.   The Supreme Court has squarely held that

16   Section 211(a), the predecessor to Section 511, does not foreclose review of whether a VA regulation

17   violates the Rehabilitation Act:

18            Permitting these cases to go forward will not undermine the purposes of § 211(a) . . . It
              cannot be assumed that the availability of the federal courts to decide whether there is
19            some fundamental inconsistency between the Veterans' Administration's construction
              of veterans' benefits statutes . . . and the admonitions of the Rehabilitation Act will
20            enmesh the courts in the technical and complex determinations and applications of
              Veterans' Administration policy connected with veterans' benefits decisions or burden
21            the courts and the Veterans' Administration with expensive and time-consuming
              litigation.
22

23   *Traynor v. Turnage*, 485 U.S. 535, 544 (1988) (internal quotation marks and citation omitted).  Neither

24   the text of the VJRA nor its legislative history evinces any intent by Congress to overrule *Traynor*.  At

25   most, the legislative history merely cautions against certain applications of *Traynor*, such as reading it to

26   permit judicial review of *individual* benefits decisions, which Congress believed would "inevitably lead

27   to increased involvement of the judiciary in technical VA decision-making."  H.R. Rep. No. 963 at *22

28   (noting that *Traynor* and its companion cases involved "an individual's application for benefits, and the

Administrator's refusal to grant such benefits under laws providing benefits to veterans"). Where, as here, there is no risk that a decision by a federal district court will "take[] the courts further into individual decision-making than Congress heretofore intended," *id.*, there is no reason to limit a district court's consideration of a federal civil rights statute that applies to all federal agencies and is completely independent of the complex statutory and regulatory scheme for adjudicating veterans' benefits claims.[29] In other words, permitting Plaintiffs' Rehabilitation Act claim to go forward will in no way undermine the purposes of the VJRA, but will in fact further these purposes.

### D. Plaintiffs' Complaint Far Surpasses the Minimal Pleadings Threshold Required to Survive a Motion to Dismiss for Failure to State a Claim.

VA's argument that Plaintiffs fail to state a claim is primarily a rehash of its jurisdictional arguments. MTD at 14, 15, 17. To the limited extent that VA challenges Plaintiffs' substantive allegations, it ignores the fact that, "at the pleading stage, the plaintiff 'need only show that the facts alleged, if proved, would confer standing.'" *Chavez v. Blue Sky Natural Beverage Co.*, No. C 06-6609-SC, 2007 WL 1691249, *2 (N.D. Cal. June 11, 2007) (citations omitted).[30] VA argues that some of Plaintiffs' claims relating to the VA benefits system and Plaintiffs' challenge to the attorneys' fees statute fail as a matter of law. VA's argument disregards the fact that a due process balancing inquiry is inherently fact-intensive, and therefore intrinsically inappropriate for resolution on a motion to dismiss.

---

[29] Not surprisingly, the only post-VJRA Rehabilitation Act case cited by the VA, MTD at 25:1-5, is a district court case involving an individual claim for benefits. *See Brown*, 451 F. Supp. 2d at 278 ("[T]o the extent the challenge is connected to a specific benefits claim, the claimant must proceed through the appeals process created by the [VJRA] . . . .").

[30] VA spends substantial energy addressing issues that are wholly irrelevant under the 12(b)(6) standard. First, VA argues that "plaintiffs face a high burden" in making a facial constitutional challenge. MTD at 15:9. That burden is irrelevant to the motion to dismiss analysis in which the inquiry is focused on the sufficiency of the allegations in the pleadings and not the eventual burden of proof before the Court. *See Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). Second, citing the federal government's war powers, VA chronicles the deference owed Congress when it legislates under its war powers, which stem from an Article I provision permitting Congress to "raise and support armies." *Rostker v. Goldberg*, 453 U.S. 57, 65 (1981). In a strained attempt to apply Congress's war powers to civilians, VA argues that "safeguarding veterans who have completed their service is essential to ensuring a steady supply of volunteers." MTD at 16:11-14. By that stretch of logic, congressional war powers would extend to all laws affecting civilians as potential volunteers for future military service. That is a far cry from the text of the Constitution. Even if war powers were applicable, "deference does not mean abdication." *Rostker*, 453 U.S. at 70. Congressional war power "is subject to applicable constitutional limitations," including the Due Process Clause. *Hamilton v. Ky Distilleries & Warehouse Co.*, 251 U.S. 146, 156 (1919); *Rostker*, 453 U.S. at 67. Finally, the level of judicial deference to congressional enactments is wholly irrelevant to the proper scope of analysis on a motion to dismiss.

In any case, Plaintiffs' Complaint contains sufficient allegations to properly challenge the statutes at issue.

### 1. The Veterans' Benefits System Is Subject to the Minimum Requirements of Procedural Due Process.

#### a. VA's Benefits System Is Adversarial.

VA argues that its adjudication system is not adversarial, thereby defeating any need for additional process as a matter of law. MTD at 18:12-19:8. Not only does VA's characterization contradict the Complaint, but the Federal Circuit has recognized that the VJRA's appellate procedures— many of which Plaintiffs claim violate due process—are adversarial. *See Forshey v. Principi*, 284 F.3d 1335, 1355 (Fed. Cir. 2002) (en banc) ("[T]he Court of Appeals for Veterans Claims' proceedings are *not* non-adversarial.") (emphasis added). Similarly, the notion that initial benefits determinations at the regional office level are non-adversarial is a fiction. VA tellingly fails to note that the Federal Circuit has found that, although the veterans' benefits system is "'supposed to be nonadversarial,' . . . . the salutary system has changed since the [VJRA] to the opposite of what Congress intended." *Id.* at 1360 [citations omitted]; *see also Bailey v. West*, 160 F.3d 1360, 1365 (Fed. Cir. 1998) (en banc) (labeling government the veteran's "adversary" and noting that "[s]ince the [VJRA], it appears the system has changed from 'a nonadversarial, ex parte, paternalistic system,' . . . to one in which veterans . . . must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review"). VA regulations require VA employees "to assist a claimant" but also require them to "protect[] the interests of the Government," 38 C.F.R. § 3.103(a), thereby creating a natural adversarial relationship where the veteran's interests diverge from those of VA. *See, e.g., Collaro v. West*, 136 F.3d 1304, 1309-10 (Fed. Cir. 1998); *Bailey*, 160 F.3d at 1365. Finally, VA contends that Plaintiffs' claims "fail as a matter of law" because the VJRA "served only to expand veterans' procedural rights." MTD at 16:20-22. That contention contradicts VA's jurisdictional argument, which presumes that the pre-existing Article III review of constitutional issues did not survive

1    the enactment of the VJRA.  If VA is correct in its jurisdictional analysis, veterans' procedural rights

2    were *constricted* by the VJRA, not expanded, due to the loss of Article III review.[31]

3                        **b.      The Due Process Analysis Is a Fact-Intensive Inquiry
                                   Inappropriate for Dismissal on the Pleadings.**

4
5           Procedural due process mandates that a person may not be deprived of a property interest by the

6    federal government "without due process of law." U.S. Const. Amend. V.[32]   The fundamental

7    requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful

8    manner." *Mathews*, 424 U.S. at 333.  However, due process is "a flexible concept." *NARS*, 473 U.S. at

9    320.  "[T]he process required by [the Due Process Clause] with respect to the termination of a protected

10   interest will vary depending upon the importance attached to the interest and the particular circumstance

11   under which the deprivation may occur." *Id.*  To decide whether those minimal protections are present,

12   procedural due process analysis for veterans' benefits requires the balancing of three factors. *Mathews*,

13   424 U.S. at 335; *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970).  Due process is assessed "case-by-case

14   based on the total circumstances." *State of Cal. ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 711 (9th Cir.

15   2003).  As a result, due process is an intensive factual inquiry that is inappropriate to decide on a motion

16   to dismiss.  *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 548 (1985).

17          VA acknowledges that Plaintiffs allege a series of systemic procedural inadequacies, including

18   the lack of "neutral judges, trial procedures, discovery, claimants' ability to subpoena witnesses,

19   procedures for expedited relief [to counter systemic delays], and class-action procedures."  MTD at

20   18:11-12. Instead of considering these procedural deficiencies in combination, VA selectively addresses

21   _____

22   [31] VA's bias argument also ignores the motion to dismiss standard and focuses on the irrelevant burden
     on the merits.  MTD at 19:13.  Plaintiffs sufficiently allege bias of VA decision-makers in the incentive
     compensation system, which encourages decision-makers to deny benefits claims for monetary gain.

23   Compl. ¶¶ 31c, 227-34.  It is undisputedly a due process violation to subject veterans to the judgment of
     VA employees with "a direct, personal, substantial pecuniary interest in reaching a conclusion against"

24   them regarding their benefits claims. *Tumey v. State of Ohio*, 273 U.S. 510, 522 (1927).  The bias cases
     cited by VA do not address that bias allegation.

25   [32] The putative class includes "applicants for and recipients" of service-connected disability benefits
     from the VA.  Compl. ¶ 29.  The Supreme Court has held that recipients of benefits have a cognizable

26   property interest protected by the Due Process Clause, *see Walters v. Nat'l Ass'n of Radiation Survivors*
     ("*NARS*"), 473 U.S. 305, 320 n.8 (1985), that benefits applicants in other contexts possess a cognizable

27   property interest, *see Goldberg*, 397 U.S. at 263-71. *See also Devine v. Cleland*, 616 F.2d 1080 (9th Cir.
     1980) (veterans' property interest in educational benefits).

28

two procedures: (1) class actions;[33] and (2) expedited relief. MTD at 19:21-21:3. This approach misconceives the holistic nature of due process analysis. This Court must consider *all* of the procedures afforded veterans in the benefits process, including the Statutory Defects, and whether those procedures pass constitutional muster as a whole. Such an inquiry is factual, not legal.

The Complaint makes it clear that the VA system as a whole does not sufficiently protect veterans from arbitrary deprivation of benefits. First, the Complaint alleges that constitutionally inadequate procedures—the enumerated Statutory Defects—create an unreasonable risk of deprivation of rights. Compl. ¶¶ 30, 133, 138-144, 202. As just one example, a claimant with a VA medical diagnosis of PTSD cannot call that doctor to testify at the hearing in support of his or her PTSD claim. Next, these procedures enable harmful internal VA practices—the Challenged Practices—which equally undermine veterans' rights to receive SCDDC and health care. Compl. ¶ 31. Finally, veterans face the looming specter of insurmountable delay. Compl. ¶¶ 145-68.[34] None of the few writs issued to veterans since the enactment of the VJRA addressed, let alone remedied, system delays. Nor have any expedition orders pursuant to 38 U.S.C. section 7261 remedied system delay.[35] Even Congress itself has expressed

---

[33] VA relies upon *Beamon* to argue that veterans are not entitled to a class action as a matter of due process. MTD at 20:13. Yet, *Beamon*'s facts are a far cry from the facts here. In *Beamon*, plaintiffs were simply three veterans awaiting determinations from the Cleveland Regional Office. RJN, Ex. A. The *Beamon* court could reasonably have assumed that the small number of plaintiffs could settle their delay issues through the VA's individual claims procedures. In contrast here, the class action device is necessary to vindicate the constitutional rights of thousands of putative class members. *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) (The "proper role of (b)(2) class actions i[s] remedying systemic violations of basic rights of large and often amorphous classes.").

[34] VA waves away the delay argument as one that can be remedied with a writ of mandamus or an order expediting relief pursuant to 38 U.S.C. section 7261. MTD at 19:21-20:5. But "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 402 (1976). As discussed in Section IV.B, *supra*, a writ is only a theoretical remedy for delay. VA also suggests that the statutes permitting docket advancement remedy delay. MTD at 19:28-20:2. This also is a cure in theory and not in practice. *See, e.g., Ramsey v. Nicholson*, 20 Vet. App. 16 (2006). The only published case advancing a case on the docket was based on old age, not delay. *See, e.g., Daye v. Nicholson*, 20 Vet. App. 512 (2006).

[35] The cases cited by VA do not grant relief based on delay in the system but tend towards the "unlawfully withheld" language in Section 7261. *See Friscia v. Brown*, 7 Vet. App. 294, 297-98 (1994) (ordering compliance with second remand order within ten days due to VA non-compliance after first remand); *Koulizos v. Derwinski*, 2 Vet. App. 350 (1992) (ordering production of documents withheld over VA objection court lacked the power to order production); *but see ZN v. Brown*, 6 Vet. App. 183, 196 (1994) (expediting appeal for veteran dying of AIDS). Even though available in theory, extraordinary relief for delay is never granted in practice. *See, e.g., Lane v. West*, 11 Vet. App. 506, 508 (1998), *denying writ in later proceeding at* 12 Vet. App. 220 (1999) (denying writ even though veteran "victim of fourteen years of neglect"); *Erspamer*, 1 Vet. App. at 11 (denying writ despite admitted over ten-year delay); *Steffens v. Brown*, 8 Vet. App. 142, 144 (1995).

1   concern with delay and whether the VA benefits system violates procedural due process. *See*

2   Comptroller General, *VA Claims Adjudication Process*, 1989 WL 240227, at **5-6 (1989).

3       **2.     Plaintiffs' Challenge to the Attorneys' Fee Prohibition Is Expressly
             Allowed Under Supreme Court and Ninth Circuit Precedent.**

4       VA mischaracterizes Plaintiffs' challenge to the attorneys' fee prohibition, contained in

5   38 U.S.C. § 5904(c)(1), and related criminal penalties, 38 U.S.C. § 5905 (hereinafter collectively "the

6   Fee Prohibition"), as a purely facial challenge. Based on this inaccurate characterization, VA argues that

7   the claim is barred by *Walters v. Nat'l Ass'n of Radiation Survivors* ("*NARS*"), 473 U.S. 305 (1985),[36]

8   which addressed a different statutory scheme that existed prior to the passage of the VJRA. Here, unlike

9   in any prior case, Plaintiffs do not mount a facial attack to the Fee Prohibition in isolation, but rather in

10  conjunction with various other Statutory Defects of the VJRA.

11      The Complaint also attacks the Fee Prohibition as applied to PTSD claims. *NARS* clearly did not

12  determine the merits of Plaintiffs' "as applied" claims and "the claims of any individuals or identifiable

13  groups . . . remain open." 473 U.S. at 336 (O'Connor, J., concurring); *see also id.* at 338 (noting that the

14  denial of attorney representation is not "'per se unconstitutional'" (citations omitted) and that district

15  courts are free to consider whether the procedures available to a particular group of veterans meet due

16  process standards); *id.* at 337 (suggesting plaintiffs representing a class of veterans with "complex

17  claims that by their nature require expert assistance" could prevail). The Ninth Circuit has not evaluated

18  the current Fee Prohibition either as it applies to veterans with PTSD or under the new scheme in the

19  VJRA.[37] Therefore, Plaintiffs' challenge to the Fee Prohibition is not barred as a matter of law. Rather,

20  the Complaint requires the type of fact-intensive inquiry that is unsuited for resolution on a motion to

21

---

22  [36] Significantly, VA opposed Plaintiffs' motion to relate this case to the *NARS* case, which was
    originally decided in this Court, arguing that "the VJRA itself made significant changes to the
23  procedural rights afforded veterans" claimants and "[t]he judge who presides over this case will not
    make rulings on evidence or questions of law that conflict with the eventual results of *NARS*."
24  Opposition to Administrative Motion to Relate Cases, at 3:19-23. Yet VA now seeks to rely on *NARS*,
    MTD at 16, 18, 21, 22, 23, asserting in an abrupt volte-face of rhetorical convenience that "[n]othing has
25  happened since the *NARS* case to draw their holdings into question." MTD at 21:15. *NARS* cannot be
    irrelevant for purposes of relating the cases while also dispositive of issues on a motion to dismiss.

26  [37] The Ninth Circuit has looked at whether a former version of the prohibition violated the due process
    rights of veterans exposed to ionizing radiation, which involved a fact-intensive analysis of the
27  regulations for ionizing radiation claims and the complexity of the medical and scientific issues present
    in such claims. *See Nat'l Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583 (9th Cir. 1992).

28

1  dismiss.[38] *See, e.g., Desert Outdoor Adver. v. City of Oakland*, C 03-1078 MJJ, 2003 WL 23925000, at
2  *4 (N.D. Cal. June 16, 2003).

3  **3.    Plaintiffs Sufficiently Pled VA's Failure to Provide Health Care.**

4  VA premises its argument with respect to dismissal of Plaintiffs' medical care claim on statutory
5  language obligating it to provide medical care "to the extent and in the amount provided in advance in
6  appropriations Acts for such purposes." MTD at 23:24-25. As a threshold matter, VA acknowledges
7  that the statute requires, at a minimum, two years of medical care to veterans to the extent that funding
8  exists. Nothing in the legislative history suggests that Congress intended the appropriations limitation to
9  apply to two years of medical care, but the Court need not reach that issue, because the question of
10 whether funding exists is a factual inquiry. Plaintiffs clearly allege that "the VA did not spend $100
11 million that had been allocated for PTSD [care] in fiscal years 2005 and 2006," relying on official GAO
12 reports  Compl. ¶ 206.  Therefore, VA's cited case is inapplicable because it addressed the claim that VA
13 must continue to fund health care even when it lacks appropriations. *See E. Paralyzed Veterans*,
14 257 F.3d at 1362.

15 **V.    CONCLUSION**

16 For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order
17 denying the motion to dismiss, or, in the alternative, grant Plaintiffs leave to amend the Complaint.

18 Dated: November 9, 2007          GORDON P. ERSPAMER
19                                  ARTURO J. GONZALEZ
                                    HEATHER A. MOSER
20                                  BILL D. JANICKI
                                    STACEY M. SPRENKEL
21                                  PAUL J. TAIRA
                                    MORRISON & FOERSTER LLP
22

23                                  By:____/s/ Gordon P. Erspamer_____
                                           Gordon P. Erspamer
24                                        Attorneys for Plaintiffs

[38] VA argues that Plaintiffs' right to access claim fails in part due to the failure of their due process argument. MTD at 23:1-5. Because, for the reasons stated above, Plaintiffs sufficiently allege a due process violation, the right to access claim similarly survives dismissal.