

**U.S. Department of Justice**

Civil Division, Federal Programs Branch

| Via First Class Mail: | Via Overnight Delivery: |
|---|---|
| P.O. Box 883 | 20 Massachusetts Ave., NW |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

October 11, 2007

BY EMAIL AND FIRST-CLASS POSTAL MAIL

Gordon Erspamer
Morrison & Foerster
101 Ygnacio Valley Rd., Suite 450
Walnut Creek, CA 94596-4094
Email: Gerspamer@mofo.com

Re:   Veterans for Common Sense, et al. v. Nicholson, et al., No. C 07-3758-SC

Dear Mr. Erspamer:

    We write to suggest areas for an agreed protective order with respect to the preservation of evidence. Nothing in this letter is intended to be, nor should be construed as, an admission that any information or source thereof is relevant or discoverable or a waiver of any privilege. We reserve the right to raise all appropriate objections. Because we believe that many of the measures proposed in this letter exceed the VA's preservation obligations, we also reserve the right to petition the court for approval of a narrower scope of preservation, should a mutually agreeable arrangement not be reached.

    With over 245,000 employees, 1,078 points of healthcare, and 57 regional offices, the Department of Veterans Affairs (VA) generates an enormous amount of information every day. Plaintiffs have pled numerous broad claims, and without some indication of the kinds of information that plaintiffs may seek to discover, it is difficult to know what information the VA has an obligation to preserve. Although we have repeatedly asked you to provide a written description of the information you believe is relevant, you have refused to do so.

    In an abundance of caution, the VA implemented a comprehensive litigation hold in connection with this litigation. We enclose a copy of the memorandum describing the information intended to be preserved under this directive. This extraordinary retention of information is estimated to be costing the agency approximately $2 million dollars per month to maintain— a cost that is borne out of the same budget that plaintiffs allege is experiencing "huge deficits." The amount of information currently being retained likely far exceeds the amount of information that plaintiffs could review. To end this waste of resources and narrow the scope of preservation to those data with more than a speculative possibility of relevance, we propose the following reasonable steps, which are also reflected in the enclosed proposed stipulated

preservation order.

Email

Employee emails reside on a number of different servers across the country, depending on office and geographical region. From plaintiffs' complaint, it appears that they are interested in three categories of emails: (1) emails from Veterans Benefit Administration (VBA) leadership that might be construed as exerting pressure on adjudication staff to increase production or deny claims, (2) emails relating to the alleged improper destruction or alteration of claims records or evidence, and (3) emails relating to the development and application of official VA policies on the provision of mental health services to veterans returning from Operations Enduring Freedom (OEF) and Iraqi Freedom (OIF). The VA will direct all relevant employees to preserve emails falling within these three categories. We note, however, that any challenge to VA regulations, policies and/or procedures would be based on review of a certified administrative record produced by the agency and not subject to discovery in district court.

Because the above three issues either originate or are dealt with at the leadership level, we propose as an additional measure that the VA will maintain one complete set of backup tapes every month for the VA Central Office email server. The VBA central office is supported by a separate server that was not originally configured to allow retention of backup tapes, but the VA has taken special measures to ensure that backup tapes for VBA central office email can now be retained. The VA will preserve these backup tapes on a monthly basis to the extent reasonably possible given the system's original limitations. For all other email servers, the VA will retain one complete set of backup tapes for each email server not identified above, made at or around the time this litigation was filed. If no such set of tapes is available for a given email server, the VA will retain the oldest set of complete backup tapes that it can reasonably identify. All other backup tapes of the email servers will be overwritten according to the schedules in place prior to the filing of this litigation.

File servers

Employees' working documents are maintained on one of hundreds of different local file servers around the country. Employees have been instructed not to delete files or information relevant to this litigation. Backup tapes of the file servers are generally made on a daily basis and used in the event of a disaster such as a complete server crash. Prior to the filing of this litigation, these backup tapes were recycled on a regular basis. Preservation of all backed up data from all file servers, as called for under the current litigation hold, is conservatively estimated to cost the VA at least $8 million per year. We believe that this cost is grossly out of proportion to the likelihood of finding relevant information not available elsewhere, particularly in light of the instructions given to all employees not to delete relevant documents and the absence of an indication from plaintiffs about what relevant information they might seek from the file servers. As an example, file servers located at Veterans Health Administration (VHA) facilities are unlikely to contain information related to high level policy decisions on the provision of health

care to veterans; any such decisions would be expected to be made at the central office level.

We therefore propose that the VA will retain backup tapes of the servers for the VHA and VBA central offices on a monthly basis. The VA will also retain monthly backup tapes from four regional offices: the Oakland office referenced in the complaint, one additional office chosen by plaintiffs, and two offices chosen by the VA. For all other file servers, the VA will resume routine recycling of backup tapes. The VA will remind relevant employees to preserve information on the file servers that may be construed as encouragement or direction to increase production or deny claims, information relating to the alleged improper destruction of evidence or documents, and any policy documents dealing with the delivery of mental health services to OEF/OIF veterans.

Veterans Health Administration Systems

The VHA maintains a host of applications and databases (hereinafter "systems") which contain patient medical information, information on scheduling and appointments, etc. Many VHA systems are dynamic, meaning that they are constantly being updated or changed in order to reflect new information about veterans and their use of VHA services. Updates must be permitted to continue lest the work of the VHA be brought to a standstill. The VA will take reasonable steps to ensure that information contained in active databases is not overwritten or deleted except as performed in the ordinary course of business (such as updating a patient's address). This alone should go a long way in ensuring that relevant information remains available on the active system, thereby avoiding the need to rely on inaccessible backup tapes.

Under the present litigation hold, VA employees have been instructed to preserve all backup tapes made of the Veterans Health Information Systems and Technology Architecture (VistA), its primary patient medical information system, at an estimated cost of nearly $430,000 per month. This high cost is attributable in large part to the magnitude of the data (records on tens of thousands of veterans at hundreds of medical centers and clinics) and the number of costly magnetic tapes required to store the data. The burden is exacerbated by the fact that the system contains confidential patient information, necessitating encryption of the data and the use of a special service to transport backup tapes securely to off-site storage (which itself must be rented to accommodate the number of additional tapes). All of this comes at the expense of service to veterans. In addition, prolonged retention of patient medical information on magnetic tape threatens to compromise patient confidentiality.

The VHA does not delete patient medical information contained in the active VistA system except in the case of business necessity, and any medical records used in adjudicating a veteran's disability claim will also be retained in the veteran's paper claims file. Therefore, the backup tapes of VistA may reasonably be considered to be redundant. As such, we believe that preservation of these tapes, which are used solely for disaster recovery, exceeds our preservation obligations. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Moreover, the relevance of this individual patient medical information is tenuous at best, since

plaintiffs' complaint does not challenge the outcome in any individual case, and much of the information is likely undiscoverable due to its privileged nature. VistA backup tapes will be overwritten or destroyed according to the recycling schedules that predate this litigation.

We proposes that the VA will instead retain one complete set of backup tapes every month for the following VHA systems, which contain the kind of aggregate patient information that may permit analysis of trends in health care services:

- Patient Appointment Information Transmission (PAIT): This system tracks veterans' wait times for health care appointments, including the requested and actual appointment dates and the clinic.
- Patient Treatment File (PTF): This system draws data from VistA about veterans' inpatient treatment episodes, including demographic information about the patient, date of service, diagnosis, and procedures performed. It is a management tool for viewing aggregate data about patient treatment and can be searched, inter alia, for inpatient treatment related to PTSD. Changes to patient information are loaded on a weekly basis. Once a month the VA will make and retain a copy of the master file before changes are loaded.
- National Patient Care Database (NPCD): Like PTF, this system is also populated by VistA but contains outpatient rather than inpatient encounters. Once a month the VA will make and retain a copy of the master file before changes are loaded.

Veterans Benefits Administration Systems

The VBA also uses a number of dynamic systems to assist in the development and award of claims for benefits and to analyze information gathered in the process. Updates and changes to the data in these active systems will continue to the extent that they are part of the ordinary course of business (such as updating a claimant's address or the outcome of an adjudication). Although data may be updated or moved around among these various systems, the VBA informs us that it nevertheless retains the information somewhere within its systems of record. It is therefore expected that relevant information will be available without needing to resort to backup tapes.

We nevertheless propose that the VA preserve one complete set of backup tapes per month for the Benefits and Delivery Network (BDN) Compensation & Pension (C&P) applications, which are used in the adjudication of individual C&P claims. These are the Pending Issue File (PIF); the Beneficiary Identification and Records Locator System (BIRLS); the C&P Master Record; and the Veteran Information Tracker and Adjudication Log (VITAL), which has replaced the obsolete SIRS database and which aggregates disability rating information for special issues including PTSD. Because the BDN applications are in the process of being replaced with newer systems, the VA will also preserve complete monthly backup tapes of the corporate Unix server where these newer analogous systems reside. The vast majority of new compensation claims are processed under the new corporate systems.

Board of Veterans' Appeals (BVA) Systems

We offer that the VA will continue to retain at least one complete set of backup tapes per month for the Veterans Appeals Control and Locator System (VACOLS), which can be used to analyze BVA dispositions and to track veterans' appeals and the BVA's workload. The BVA informs us that the active VACOLS database is not subject to routine or automatic deletion.

Other Systems

All other systems, databases, servers, and networks not specifically mentioned herein will remain in use and information may be deleted or updated where such activities are part of normal business use. Unless otherwise specified in this letter, the VA will not retain backup tapes except as provided by the retention and recycling policies in place prior to the filing of this litigation. Paper records will be retained in accordance with the Federal Records Act and associated recordkeeping requirements.

We trust that you understand the importance of arriving at a reasonable preservation arrangement to ensure that the VA is able meet the demands of this litigation while continuing to preserve the resources necessary to serve veterans and their families. If we cannot agree on a reasonable scope of preservation, however, we will have to consider other steps to prevent the unreasonable expense associated with the present litigation hold. Please respond by October 31 so that a consensual resolution can be achieved.

Sincerely,

Steven Y. Bressler
Trial Attorney
(202) 514-4781

Kyle Freeny
Trial Attorney
(202) 514-5108