1   JEFFREY S. BUCHOLTZ
    Acting Assistant Attorney General
2   SCOTT N. SCHOOLS
    Interim United States Attorney
3   RICHARD LEPLEY
    Assistant Branch Director
4   DANIEL BENSING D.C. Bar No. 334268
    STEVEN Y. BRESSLER D.C. Bar No. 482492
5   KYLE R. FREENY California Bar No. 247857
    Attorneys
6   United States Department of Justice
    Civil Division, Federal Programs Branch
7
    P.O. Box 883
8   Washington, D.C.  20044
    Telephone:  (202) 305-0693
9   Facsimile:  (202) 616-8460
    Email: Daniel.Bensing@USDOJ.gov
10
    Attorneys for Defendants Hon. Gordon Mansfield, the U.S. Department of Veterans Affairs,
11  Hon. James P. Terry, Hon. Daniel L. Cooper, Hon. Bradley G. Mayes, Hon. Michael J. Kussman,
    Ulrike Willimon, the United States of America, Hon. Michael B. Mukasey, and Hon. William P.
12  Greene, Jr.

13                          UNITED STATES DISTRICT COURT

14                        NORTHERN DISTRICT OF CALIFORNIA

15                                  SAN FRANCISCO

16

17  VETERANS FOR COMMON SENSE and        )
    VETERANS UNITED FOR TRUTH,           )   No. C 07-3758-SC
18                                       )
            Plaintiffs,                  )
19                                       )
        v.                               )   **REPLY MEMORANDUM IN SUPPORT**
20                                       )   **OF DEFENDANTS' MOTION TO**
    Hon. GORDON H. MANSFIELD, Secretary  )   **DISMISS**
21  of Veterans Affairs, *et al.*,       )
                                         )   Date: December 14, 2007
22          Defendants.                  )   Time: 10:00 a.m.
                                         )   Courtroom: 1
23  _____ )

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Plaintiffs Lack Standing to Pursue Their Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   The VJRA Bars this Court From Considering Plaintiffs' Challenges
      to VA "Policies Practices and Procedures". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      a.    "veterans' total inability to call VA witnesses" at the Regional
            Office level. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      b.    "the absence of any neutral decision-maker at the regional
            office stage". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      c.    The alleged "lack of authority" by the CAVC to "enforce its
            own decisions," grant "injunctive or declaratory relief, or grant
            "expedited relief." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      d.    The absence of any procedures to obtain any relief extending
            beyond that applying to a single claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      e.    The limited availability of discovery at the Regional Office level . . . . . . . . . . . . 5

      f.    The "prohibition on the veteran's ability to . . . pay a lawyer at the
            . . . regional office stage". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  The "Policies Procedures and Practices" Adopted by VA to Administer
      its Claims Adjudication System Are Not Final Agency Action Reviewable
      Under the APA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   Plaintiffs Cannot Avoid Section 511 By Challenging VA's Decisions
      Under the Rehabilitation Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    The Court Lacks Jurisdiction to Consider Plaintiffs' Medical Care Claim . . . . . . . . . . . 13

VI.   The Claims Adjudication Process Created by the VJRA is Constitutional. . . . . . . . . . . . 16

      a.    The Standard for Review of a Facial Challenge to the
            Constitutionality of an Act of Congress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      b.    The VA Claims Adjudication Process is Constitutional. . . . . . . . . . . . . . . . . . . 17

VII.  This Court Lacks Jurisdiction Over the U.S. Court of Appeals for
      Veterans Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1

**TABLE OF AUTHORITIES**

2

PAGE(S)

3  Abbs v. Principi, 237 F.3d 1342 (Fed. Cir 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4  Associated Gen. Contractors v. Coalition for Econ. Equity,
        950 F.2d 1401 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

6  Bano v. Union Carbide Corp., 361 F.3d 696 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7  Bates v. Nicholson, 398 F.3d 1355 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8  Bd. of Regents v. Roth, 408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9  Beamon v. Brown, 125 F.3d 965 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 12

10 Broudy v. Mather, 460 F.3d 106 (D.C. Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

11 Brown v. Dep't of Veterans Affairs, 451 F. Supp. 2d 273 (D. Mass. 2006). . . . . . . . . . . . . . 12

12 Califano v. Sanders, 430 U.S. 99 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

13 Carpenter v. Dep't of Transp., 31 F.3d 313 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 12

14 Chinnock v. Turnage, 995 F.2d 889 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . 17

16 Community Action of Laramie Co., Inc. v. Bowen, 866 F.2d 347
        (10th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17 Cleland v. Devine, 616 F.2d 1080 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 E. Paralyzed Veterans Ass'n v. Sec'y of Veterans Affairs,
        257 F.3d 1352 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

19

20 Earth Island Inst. v. Ruthenbeck, 490 F.3d 687 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . 9

21 Ecology Ctr., Inc. v. U.S. Forest Service, 192 F.3d 922 (9th Cir. 1999). . . . . . . . . . . . . . . 9, 11

22 Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.,
        498 F.3d 1031 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

23 Forshey v. Principi, 284 F.3d 1335 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

24 Gete v. INS, 121 F.3d 1285 (9th Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25 Gilligan v. Morgan, 413 U.S. 1 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26 Gonzales v. Carhart, 127 S.Ct. 1610 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

27 Hall v. U.S. Dept. of Veterans' Affairs, 85 F.3d 532 (11th Cir. 1996). . . . . . . . . . . . . . . . . . 17

28

1   Heckler v. Chaney, 470 U.S. 821 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

2   High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630 (9th Cir. 2004). . . . . . . . . . . . . . . . . . .   11

3   Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959 (9th Cir. 2003). . . . . . . . .   16

4   ITT Corp. v. Local 134, 419 U.S. 428 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

5   J.L. v. Social Sec. Admin., 971 F.2d 260 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . .   13

6   Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

7   Kirk v. INS, 927 F.2d 1106 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

8   Laird v. Tatum, 408 U.S. 1 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

9   Lane v. Pena, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

10  Larrabee v. Derwinski, 968 F.2d 1497 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . .   3, 12, 13

11  Lincoln v. Vigil, 508 U.S. 182 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

12  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990). . . . . . . . . . . . . . . . . . . . . . . . . .   9, 11, 14

13  Mathews v. Eldridge, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 18

14  Molski v. Mandarin Touch Rest., 359 F. Supp. 2d 924 (C.D. Cal. 2005). . . . . . . . . . . . . . . .   2

15  Moore v. Johnson, 582 F.2d 1228 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

16  Nat. Ass'n Radiation Survivors v. Derwinski, 994 F.2d 583 (9th Cir. 1993). . . . . . . . . . . . . .   17

17  Northcoast Env'l Ctr. v. Glickman, 136 F.3d 660 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . .   11

18  Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004). . . . . . . . . . . . . . . . . . .   9, 10

19  Peck v. Bessing, No. C 05-0960-SC, 2006 WL 213736
20      (N.D. Cal. January 27, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 11

21  Redwood Christian Schools v. County of Alameda, No. C-01-4282-SC,
        2007 WL 214317 (N.D. Cal. January 26, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

22  Rizzo v. Goode, 423 U.S. 362 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

23  Rosen v. Walters, 719 F.2d 1422 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

24  Rust v. Sullivan, 500 U.S. 173 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

25  S.D. Myers, Inc. v. City and County of San Francisco,
26      253 F.3d 461 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

27  Sprint Telephony PCS, L.P. v. County of San Diego,
        490 F.3d 700 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

28  Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

1   Traynor v. Turnage, 485 U.S. 535 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 12

2   U.S. v. Bynum, 327 F.3d 986 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16, 17, 18

3   U.S. v. Salerno, 481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16, 17, 18

4   United States v. Phelps, 955 F.2d 1258 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . .   17

5   Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305 (1985). . . . . . . . . . . . . .   18, 19

6   Western Watersheds Project v. Matejko, 468 F.3d 1099 (9th Cir. 2006). . . . . . . . . . . . . . .   8

7   Zuspann v. Brown, 60 F.3d 1156 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

8   Zuspann v. Brown, 864 F. Supp. 17 (W.D. Tex. 1994), aff'd, 60 F.3d 1156.. . . . . . . . . . . . . . .   14

9

10   **STATUTES**

11   5 U.S.C. § 551(13). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 9, 20

12   5 U.S.C. § 701(a)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

13   5 U.S.C. § 706(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

14   28 U.S.C. § 1651(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

15   29 U.S.C. § 794. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

16   38 U.S.C. § 211. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

17   38 U.S.C. § 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 5, 13

18   38 U.S.C. § 511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

19   38 U.S.C. § 1705(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

20   38 U.S.C. § 1710(a)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

21   38 U.S.C. § 1710(e)(1)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

22   38  U.S.C. § 5101-5109A.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 6

23   38 U.S.C. § 5103A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

24   38 U.S.C. § 5702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

25   38 U.S.C. § 5711. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

26   38 U.S.C. § 5904(c)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

27   38 U.S.C. § 7107(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

28   38 U.S.C. § 7251. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

1   38 U.S.C. § 7252(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

2   38 U.S.C. § 7264(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

3   38 U.S.C. § 7265. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

4   Veterans' Health Care Eligibility Reform Act of 1996,
        Pub. L. No. 104-262. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5
6   Veterans' Judicial Review Act ("VJRA"), Pub. L. No. 100-687,
        102 Stat. 4105 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   Joshua Omvig Veterans Suicide Prevention Act,
        Pub. L. No. 110-110,121 Stat. 1031 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
8

9   **RULES AND REGULATIONS**

10   38 C.F.R. § 3.100. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

11   38 C.F.R. § 3.103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5, 17

12   38 C.F.R. §3.159. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

13   38 C.F.R. § 3.304(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

14   38 C.F.R.§ 17.36(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

15   38 C.F.R. § 20.101(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

16   38 C.F.R. 20.201, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

17   38 C.F.R. § 20.711. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

18   38 C.F.R. § 20.1304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

19
20   **LEGISLATIVE MATERIAL**
21
     H.R. Rep. No. 100-963 at 21 (1988), reprinted in U.S.C.C.A.N. 5782. . . . . . . . . . . . . . . . . . . . . 3
22
23

24

25

26

27

28

1

**Introduction**

2       The scope of medical services and benefits provided to this nation's veterans is now

3   being vigorously debated by the Political Branches of the Federal Government.  Just six weeks

4   ago, the President proposed expansion of various veterans programs and targeted increases in

5   funding to address the needs of veterans of both recent and older conflicts.  See 43 Weekly

6   Comp. Pres. Doc. 1347-49 (October 16, 2007).  Congress recently addressed plaintiffs' concerns

7   about suicide rates among veterans with post traumatic stress disorder (PTSD) on November 5,

8   2007, when it enacted the Joshua Omvig Veterans Suicide Prevention Act, Pub. L. No. 110-

9   110,121 Stat. 1031 (2007), which establishes several new program to address this problem.

10  While plaintiff organizations doubtless sincerely believe that they know best how to craft and

11  administer veterans programs, their advocacy should be directed to the political sphere, rather

12  than trying to accomplish their goals by trying to use the Due Process Clause as an all-purpose

13  tool to direct Federal Government policy through the adjudicatory power of the Judicial Branch.

14      In their Opposition to Defendants' Motion to Dismiss (Opp.), plaintiffs start with

15  specious logic in asserting that because defendant identified several limits on the subject matter

16  jurisdiction of federal district courts, which when considered together show that this Court

17  should not entertain the claims in the complaint, the mere quantity of these restrictions make

18  each suspect.  Opp. at 1.  But just as stakes in a picket fence each cover only a limited area but

19  together form an impenetrable barrier, the various limits on jurisdiction imposed by Congress

20  and explained by the Supreme Court prevent plaintiffs' complaint from being viable.

21      Although defendant explained each of these jurisdictional limits in its memorandum in

22  support of the motion to dismiss, plaintiffs never come to grips with the joint and interactive

23  effect of these three separate limitations on this Court's subject matter jurisdiction.  Instead, they

24  recast their claims, sometimes inconsistently, to try to avoid each in turn.  Hemmed in on one

25  side by 38 U.S.C. § 502, which vests exclusive jurisdiction for challenges to Department of

26  Veterans Affairs (VA) regulations in the Federal Circuit, and on the other by the Administrative

27  Procedure Act (APA), which waives sovereign immunity only for final agency action that when

28  applied causes deleterious effects, plaintiffs cannot circumvent the express Congressional

1    direction that challenges to decisions by the Secretary of VA that affect the benefits of veterans

2    are exclusively the province of a specially-created, Article I court, with appeal available to the

3    Federal Circuit. For this reason, and because plaintiffs' other statutory-based theories are equally

4    untenable, none of their claims can survive and the motion to dismiss should be granted.

5    **I.    Plaintiffs Lack Standing to Pursue Their Claims**

6            To establish representational standing, plaintiffs must show that "neither the <u>claim</u>

7    <u>asserted nor the relief requested</u> requires the participation of individual members in the lawsuit."

8    <u>Associated Gen. Contractors v. Coalition for Econ. Equity</u>, 950 F.2d 1401, 1406 (9th Cir. 1991)

9    (emphasis added). To make that showing concerning the <u>claims asserted</u> on behalf of

10    individuals, the plaintiff organizations must point to actual individuals suffering a cognizable

11    injury.[1] Memorandum in Support of Defendants' Motion to Dismiss (Def. Mem.) at 4-5. The

12    fact that plaintiffs seek only injunctive relief does not relieve them of this burden. <u>See</u> <u>Bano v.</u>

13    <u>Union Carbide Corp.</u>, 361 F.3d 696, 714 (2d Cir. 2004) (request for injunctive relief does not

14    automatically confer representational standing). The participation of individual members would

15    be necessary for the Court to determine whether they have standing in their own right – whether

16    any of defendants' alleged actions actually caused individual veterans cognizable and redressable

17    harm, whether they have exhausted administrative remedies, and whether the relief the

18    organizations request would redress such harm. <u>See</u>, <u>e.g.</u>, <u>Molski v. Mandarin Touch Rest.</u>, 359

19    F. Supp. 2d 924, 935 (C.D. Cal. 2005) (denying representational standing because individual

20    plaintiff's participation required to establish his own standing). Indeed, plaintiffs do not even

21    allege facts that would provide standing for their members. Complaint (Compl.) ¶¶ 35-6 (only

22    alleging that organizations' members have PTSD, have or may have claims pending before the

23    Department of Veterans Affairs (VA), and/or have had claims denied by VA).[2]

24    _____

25            [1]Notwithstanding statements in their Opposition, plaintiffs "bring this action as
26    representatives of their members and/or constituencies" Compl. ¶ 38, and do not allege injury to
      their own organizational interests only.

27            [2]Plaintiffs also lack standing because this court is without the power to grant much of the
28    relief that plaintiffs seek. In particular, the Court cannot order Congress to appropriate additional
      funds to improve and expedite the VA's claims adjudication process, relief that is essential to all

1

## II.    The VJRA Bars this Court From Considering Plaintiffs' Challenges to VA "Policies Practices and Procedures"

2

3    Central to reaching a proper interpretation of the preclusion of review provisions of the

4    Veterans' Judicial Review Act ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105 (1988), 38 U.S.C.

5    §§ 502 and 511, is the recognition that it was the product of Congressional dissatisfaction with

6    judicial decisions, culminating in <u>Traynor v. Turnage</u>, 485 U.S. 535 (1988), that found ways to

7    avoid the preclusion of judicial review contained in the predecessor statute, 38 U.S.C. § 211.  In

8    the House report accompanying the VJRA, Congress explicitly noted that "the Court's opinion in

9    *Traynor* would inevitably lead to increased involvement of the judiciary in technical VA

10    decision-making," H.R. Rep. No. 100-963, at 21 (1988), <u>reprinted in</u> 1988 U.S.C.C.A.N. 5782,

11    5803 which Congress strongly opposed.  Consequently, Congress tightened section 211's

12    preclusion of review language, noting that "[t]he effect of this change is to broaden the scope of

13    section 211," <u>id</u>. at 27, to prevent federal courts (other than the Court of Appeals for Veterans

14    Claims (CAVC) and the Federal Circuit), from entertaining precisely the sort of challenge that

15    plaintiffs bring in this action.[3]  <u>See also</u> <u>Larrabee v. Derwinski</u>, 968 F.2d 1497, 1501 (2d Cir.

     1992).

16    A precise identification of the statutory provisions or agency actions challenged by

17    plaintiffs is essential to a correct determination of the Court's jurisdiction over plaintiffs' claims.

18    Yet plaintiffs are evasive in specifying the precise nature of their claims, asserting vaguely that

19    "they are challenging a series of VA's policies, procedures and practices," Opp. at 8, all of which

20    in some way allegedly harm veterans with PTSD.  However, a careful parsing of precise statutory

21    provisions and regulations that plaintiffs challenge, <u>see</u> Opp. at 2-3, Compl. ¶ 30a-30i, indicates

22    that they challenge the following aspects of the VA claims adjudication process:

23            a.  "<u>veterans' total inability to call VA witnesses</u>" at the Regional Office level.

24

25    of plaintiffs claims.  <u>See</u> Compl. ¶ 26; 184; 204-15.

26    [3]"The committee believes that it is strongly desirable to avoid the possible disruption of

27    VA benefit administration which could arise from conflicting opinions on the same subject due
     to the availability of review in the 12 Federal Circuits and the 94 Federal Districts.  The

28    committee also believes that the subject of veterans benefits rules and policies is one that is well
     suited to a court which has been vested with other types of specialized jurisdiction."  <u>Id</u>. at 28.

1    (Opp. at 2:23-25; Compl. ¶¶ 30d; 104; 202d) The statute establishing VA claims procedures, 38

2    U.S.C. § 5101-5109A, requires the VA to "make reasonable efforts to assist a claimant in

3    obtaining evidence necessary to substantiate" a claim, 38 U.S.C. § 5103A, see also 38 C.F.R. §

4    3.159, but does not grant claimants subpoena power to compel testimony.  Additionally, the

5    statute authorizing the VA to issue subpoenas, 38 U.S.C. § 5711, does not authorize claimants to

6    issue subpoenas in support of claims at the Regional Office level.  Claimants do, however, have

7    the right to request that a subpoena be issued by the Board of Veterans Appeals (BVA), but they

8    may not subpoena VA adjudicatory personnel, see 38 C.F.R. § 20.711.[4]

9              b.   "the absence of any neutral decision-maker at the regional office stage" (Opp.

10   at 2:25; Compl ¶ 30b; 103; 202a) The VA claims procedure statute provides that the initial

11   decisions on claims shall be made by the "Secretary" (or his designee), 38 U.S.C. §§ 511; 5104,

12   without any restriction on the status of the official who may take that action.  See also 38 C.F.R.

13   § 3.103 (procedural rights of claimants).

14             c.   The alleged "lack of authority" by the CAVC to "enforce its own decisions,"

15   grant "injunctive or declaratory relief, or grant "expedited relief."  (Opp. at 2:25-28; 9-10;

16   Compl. ¶ 30g; 30h; 133-44; 202e; 202f; 202i).   Under the VJRA, the Court of Appeals for

17   Veterans Claims (CAVC) has the authority to "affirm, modify or reverse" a decision of the BVA

18   as well as to order a remand, 38 U.S.C. § 7252(a), and under the All Writs Act, it may issue

19   extraordinary writs in aid of its jurisdiction, 28 U.S.C. § 1651(a).  And, as with any court, the

20   CAVC can control its docket to expedite appeals where appropriate.  See 38 U.S.C. § 7264(a);

21   CAVC Rule 47, ("Expedited Proceedings").  See also 38 U.S.C. § 7265 (contempt authority).

22             d.   The absence of any procedures to obtain any relief extending beyond that

23   applying to a single claim (Opp. at 2:28-3:1; Compl. ¶ 30f; 202g) In the VJRA and predecessor

24   statutes, Congress has elected to provide for an informal procedure to adjudicate individual

25   claims for benefits, without providing alternate remedies, such as a class action procedure.

26

27             _____

28         [4]A claimant can submit new evidence to the BVA, 38 C.F.R. § 20.1304, and the BVA can
      consider new evidence under certain circumstances, or remand the claim to the VA for it to
      consider the new evidence, 38 C.F.R. § 20.1304(c).

1    However, the BVA may elect to advance an appeal on its docket "if the case involves

2    interpretation of law or general application affecting other claims." 38 U.S.C. § 7107(a)(2)(A).

3                 e.  The limited availability of discovery at the Regional Office level (Opp. at 3:1-

4    2; Compl. ¶ 30c; 104; 202c; 202d)  The VA is required by statute to "make reasonable efforts to

5    assist a claimant in obtaining evidence necessary to substantiate the . . . claim," 38 U.S.C. §

6    5103A(a)(1), and to make reasonable efforts to "obtain relevant records . . . that the claimant

7    adequately identifies," id. § 5103A(b)(1); see also 38 C.F.R. § 3.159 (implementing regulation);

8    38 U.S.C. § 5702 (right to obtain VA records).

9                 f.  The "prohibition on the veteran's ability to . . . pay a lawyer at the . . . regional

10    office stage" (Opp. at 3:2-3; Compl. ¶ 97; 30i; 202j).   In creating a non-adversarial claims

11    procedure, Congress placed limits on fees that may be charged to claimants by attorneys and the

12    stages in the process where attorneys can charge a fee for representation.  Recently Congress

13    narrowed those restrictions and authorized a claimant to pay an attorney to represent them after

14    the claimant files a notice of disagreement with the initial determination of the Regional Office,

15    38 U.S.C. § 5904(c)(1).

16         Thus, plaintiffs' constitutional challenges to the operation of the VA claims system

17    implicates three distinct categories of governmental action. First, plaintiffs' claims include facial

18    challenges to the VJRA and other statutes that established the VA's informal claims adjudication

19    process.[5]  Here, plaintiffs bear the heavy burden of demonstrating that no set of circumstances

20    exists under which this legislation would be Constitutional.  See Argument VI, infra.  The second

21    category are challenges to VA rules that allegedly do not provide sufficient procedural rights for

22    claimants.[6]  However, these claims cannot be entertained by this Court, since judicial review of

23    VA rules "may be sought only in the United States Court of Appeals for Federal Claims."  38

24    U.S.C. § 502; see Chinnock v. Turnage, 995 F.2d 889 (9th Cir. 1993) (regulations establishing

25

26        [5]A challenge to the constitutionality of the statute as applied to a particular claim would

27    undeniably have to be presented to the VA for decision in the context of an individual claim and
hence be insulated from review in this Court by section 511.

28        [6]See 38 C.F.R. 20.711 (limited subpoena authority); 38 C.F.R. 3.103 (claims procedures);
38 C.F.R. 3.159 (limitations on discovery).

1   procedure for review of radiation claims may only be challenged before Federal Circuit).

2           Finally, some of plaintiffs' claims might be construed to challenge agency action by the

3   VA other than rules, for example, the decision to assign regional office claims examiners rather

4   than Administrative Law Judges to adjudicate claims at the initial level.   But such broad policy

5   choices by the VA are made unreviewable in this Court by 38 U.S.C. § 511.[7]   Plaintiffs

6   repeatedly insist that section 511 does not bar their claims because it only applies to individual

7   benefit denials, which they insist they are not challenging.  Opp. at 11.  However, plaintiffs'

8   argument is premised on an overly-narrow interpretation of section 511(a)'s preclusion of review

9   language, which not only bars district courts from entertaining challenges to individual benefit

10  determinations, but also to any "decision by the Secretary <u>under a law that affects the provision</u>

11  <u>of benefits</u> by the Secretary to veterans . . ."  <u>Id</u>. (emphasis added).  So, for example, decisions by

12  the Secretary on how to implement the VA claims administration statutes, 38 U.S.C. §§ 5101-

13  5109A, a law which undeniably "affects the provision of benefits to veterans," are squarely

14  within section 511's preclusion of review.

15          The only court that has considered claims such as those at issue here, <u>i.e.</u> broad,

16  programmatic challenges to the process by which the VA adjudicates claims, found them to be

17  barred by section 511.  <u>Beamon v. Brown</u>, 125 F.3d 965 (6th Cir. 1997).  The <u>Beamon</u> Court

18  noted that to decide the broad challenge to the VA's claims procedures, "the District Court would

19  need to review individual claims for veterans benefits, the manner in which they were processed,

20  and the decisions rendered by the regional office of the VA and the BVA," <u>id</u>. at 970-971, and

21  these determinations, the Court held, were within the exclusive jurisdiction of the CAVC, <u>id</u>. at

22  971.  Plaintiffs fail to offer any legitimate basis for distinguishing <u>Beamon</u>, a case on all fours

23  with this action.  Opp. at 17-18.[8]

24  _____

25          [7]Plaintiffs try to characterize their claims as not challenging decisions made by the

26  Secretary to avoid the preclusive effect of § 511.  As shown in the next section, this questionable
    characterization provides plaintiffs no help as, to the extent it is true, their claims would not be

27  actionable under the limited sovereign immunity afforded by the APA.

28          [8]First, <u>Beamon</u> was a putative class action with its class action status unresolved, exactly
    like this case in its current posture.  Opp. at 17:18-18:11.  But in any event, that aspect of the

1    Plaintiffs attempt to rely on a few cases that have found exceptions to section 511's

2    jurisdictional bar in narrow and unusual circumstances, such as where courts have found that

3    there has been no decision by the VA on the precise question presented to the court by the

4    plaintiffs' claim.  See Opp. at 12, citing e.g. Broudy v. Mather, 460 F.3d 106 (D.C. Cir. 2006).

5    Broudy was an action brought by veterans exposed to radiation who alleged that a cover-up of

6    the extent of their exposure by the government denied them access to the courts.  The Court held

7    that section 511 did not apply because it was undisputed that the only two decisions potentially at

8    issue – whether the information withheld impaired the consideration of veterans' claims and

9    whether the VA failed to consider relevant information – had never been decided by the VA.  Id.

10    at 114.  The merits of VA decisions and policies was not at issue.

11    Broudy's rationale is inapplicable here because the plaintiffs challenge a plethora of both

12    informal policies and formal rules the VA has considered and adopted.  For example, whether the

13    VA should provide for full discovery rights at the Regional Office stage of a claim was decided

14    by the Secretary when the VA adopted its regulations establishing the process by which claims

15    will be adjudicated at the Regional office, 38 C.F.R. § 3.100; 3.102-04; 3.150-52; 3.159; 3.200-

16    17.  To find the Secretary's decisions improvident would require the Court to assess the relative

17    accuracy of literally thousands of benefits decisions involving "questions of law and fact . . . that

18    affect the provision of benefits" in direct contravention of the explicit terms as well as the

19    underlying intent of section 511.  There is no ground to support the position that even the Broudy

20    Court would countenance such an evisceration of section 511.[9]  Moreover, Broudy is a decision

21

22    claim, as well as the scope of relief requested, is irrelevant to jurisdiction.  Second, it is irrelevant
     that the plaintiff organization in this case cannot "access the VA claims system at all," Opp. at
23    18:11-12, since the members of the plaintiff organizations can submit claims, as could the
     Beamon plaintiffs.  Finally, in both this case and Beamon, the plaintiffs are attempting to
24    challenge decisions of the Secretary – not as to individual benefits, but as to how he elects to
25    administer laws that affect the payment of benefits.  Opp. at 18:16-22.

26

27    [9]In light of the unusual statutory history of section 511 and its predecessor, and the
     express Congressional intent to preclude judicial review in one court in favor of exclusive review
     in another court, cases construing other statutes containing prohibitions on judicial review, e.g.
28    Gete v. INS, 121 F.3d 1285 (9th Cir. 1997), cited by plaintiffs, Opp. at 14, are of little relevance.
     That case is particularly inapposite as the statute in question did not allow for any judicial review

1    of another circuit that conflicts with the Ninth Circuit's decision in <u>Rosen v. Walters</u>, 719 F.2d

2    1422 (9th Cir. 1983). On similar facts (a claimant's allegation that he was denied benefits

3    because documents pertaining to his illness were destroyed by the government), this Circuit

4    found that it lacked subject matter jurisdiction under section 211. <u>Id</u>. at 1423. Consequently,

5    since any challenge to actions by the VA in structuring the claims adjudication process

6    undeniably "affect the provision of benefits," section 511 deprives this Court of jurisdiction to

7    consider them.

8    **III.    The "Policies Procedures and Practices" Adopted by VA to Administer its Claims
              Adjudication System Are Not Final Agency Action Reviewable Under the APA**

9    
10          If section 511 were not applicable because plaintiffs' claims are not challenges to specific

11   policies or decisions of the Secretary affecting benefits, there would still be no subject matter

12   jurisdiction over these non-rulemaking actions of the VA that plaintiffs challenge because, by

13   definition, they would not be final agency action for APA purposes. The plaintiff advocacy

14   organizations seek no less than wholesale court supervision and reordering of vast programs

15   within VA, including its large health care and financial benefits programs. But "[t]he federal

16   courts . . . were not established to operate the administrative agencies of government," <u>Cmty.</u>

17   <u>Action of Laramie Co., Inc. v. Bowen</u>, 866 F.2d 347, 354 (10th Cir. 1989) (citation omitted), and

18   plaintiffs' broad, "'programmatic challenge' to agency policy is improper." <u>See</u> <u>W. Watersheds</u>

19   <u>Project v. Matejko</u>, 468 F.3d 1099, 1110 (9th Cir. 2006).

20          Plaintiffs concede, as they must, that their claim is constrained by the limits on the APA's

21   waiver of sovereign immunity. But, plaintiffs argue (in a conclusory fashion) that they "are

22   challenging a series of VA's policies, procedures, and practices," all of which qualify as "agency

23   rules" or some unspecified other type of "agency action" under 5 U.S.C. § 551(13). Opp. at 8.

24          Under the APA, the plaintiff organizations' broad-based attack on "practices, policies or

25   procedures" of the VA fails because plaintiffs "cannot seek *wholesale* improvement of this

26   program by court decree, rather than in the offices of the Department or the halls of Congress,

27   where programmatic improvements are normally made. Under the terms of the APA, [plaintiff]

28   

of the INS determination to forfeit a vehicle. 121 F.3d at 1291.

1  must direct its attack against some particular 'agency action' that causes it harm." <u>Norton v. S.</u>

2  <u>Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004) ("<u>SUWA</u>"), <u>quoting</u> <u>Lujan v. Nat'l Wildlife</u>

3  <u>Fed'n</u>, 497 U.S. 871, 891 (1990) ("<u>NWF</u>").  The APA defines "agency action" to include "the

4  whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial

5  thereof, or failure to act."  5 U.S.C. § 551(13).  While plaintiffs state that they do not challenge

6  "any VA regulation," Opp. at 22, their position that they challenge "agency rules" dooms their

7  claims since "rules" are obviously decisions of some sort by the Secretary affecting benefits

8  covered by section 511.   To the extent plaintiffs seek to challenge VA "policies, procedures, and

9  practices" that are not embodied in agency regulations, they must at least show that the policy,

10  procedure or practice in question has manifested itself as a concrete and final agency action, one

11  that consummates the agency's decisionmaking process and determines legal consequences.

12  <u>E.g.</u>, <u>Ecology Ctr., Inc. v. U.S. Forest Serv.</u>, 192 F.3d 922, 925-926 (9th Cir. 1999).

13       An abstract alleged "practice" or manifestation of "policy," does not qualify as

14  reviewable, final agency action.  <u>Cf.</u> <u>ITT Corp. v. Local 134</u>, 419 U.S. 428, 442-48 (1975)

15  (agency process without binding effect, even if it leads to significant "practical consequences,"

16  not reviewable under 5 U.S.C. § 551).  Rather, the only *final agency action* possibly subject to

17  review would be the concrete *application* of the alleged practice.  Put another way, plaintiffs'

18  challenge to an abstract agency policy or practice that is not concrete agency action is not ripe

19  absent an application that causes a plaintiff harm.  <u>See</u> <u>Earth Island Inst. v. Ruthenbeck</u>, 490 F.3d

20  687, 695 (9th Cir. 2007) ("a regulation is ordinarily not ripe for review 'until the scope of the

21  controversy has been reduced to more manageable proportions, *and its factual components*

22  *fleshed out, by some concrete action applying the regulation* to the claimant's situation in a

23  fashion that harms or threatens to harm him.'" (quoting <u>NWF</u>, 497 U.S. at 891; emphasis as in

24  <u>Ruthenbeck</u>).  Of course, the practical application of VA policies are the results in individual

25  benefits determinations for which review is available only in the CAVC.

26       The examples of allegedly final agency action cited by plaintiffs in their opposition only

27  underscore why there is no waiver of sovereign immunity.  <u>See</u> Opp. at 8, <u>citing</u> Compl.

28  Plaintiffs point to ¶ 31a of the Complaint, which challenges delays in adjudication of veterans'

1   claims.  Such a challenge must be brought to the agency action or inaction in question; plaintiffs

2   identify no agency rule that requires or causes delay.  See also Beamon v. Brown, supra.

3   Plaintiffs point to ¶ 31b of the Complaint, which they describe as "challenging rules encouraging

4   tampering with records in veterans' claim files," Opp. at 8, but the paragraph in question (and

5   Complaint in sum) points to no such rules; rather, it generally alleges that such tampering occurs.

6   This claim is not reviewable under the APA absent any factual context or any plaintiff who

7   alleges he is harmed by file-tampering.  Similarly, plaintiffs point to an alleged "improper

8   compensation program" that they claim encourages VA employees to destroy claim files; they do

9   not point to any actual agency rule or concrete action, however.  Compl. ¶¶ 227-34 (cited in Opp.

10  at 8).  Plaintiffs claim to challenge "VA's reliance upon improper 'personality disorder'

11  discharges," Pl. Mem. 8 (citing Compl. ¶¶ 216-21), but the cited portions of the Complaint

12  criticize not any action by the VA but, rather, alleged actions by the military.

13         For similar reasons, plaintiffs are also mistaken in arguing that their "claims regarding

14  VA's failure to make timely decisions" are "ripe for judicial review" under the APA, 5 U.S.C.

15  § 706(1),[10] which permits courts to "compel agency action unlawfully withheld or unreasonably

16  delayed."  See Opp. at 8.  That is because "a claim under § 706(1) can proceed only where a

17  plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take."

18  SUWA, 542 U.S. at 64 (emphasis in original); Peck v. Bessing, No. C 05-0960-SC, 2006 WL

19  213736, at * 2-3 (N.D. Cal. January 27, 2006) (same).  As defendants have explained and

20  plaintiffs' explanation of their claims show, however, the plaintiff organizations do not challenge

21  any *discrete*, *identifiable* action, inaction or event.  Their challenges are programmatic and, thus,

22  impermissible.

23         In NWF., the Court found that "the 'land withdrawal review program'" plaintiffs had

24  challenged in that case "is not an identifiable action or event. . . . [Plaintiffs] cannot demand a

25  general judicial review of the [agency's] day-to-day operations."  497 U.S. at 899.  Like the

26  "Challenged VA Practices" at issue here, see Compl. ¶ 31, the "land withdrawal review program"

27

28         [10]The plaintiff organizations refer to "Section 706(a)," which does not exist in Title 5 of
    the U.S. Code.  Defendants assume plaintiffs meant to cite § 706(1).

1 was "simply [a] name" for "the continuing (and thus constantly changing) operations of the

2 [agency] in reviewing" applications and carrying out other administrative responsibilities.

3 <u>NWF.</u>, 497 U.S. at 890.  The Court held that the "program" was not an identifiable agency

4 action, much less final agency action, for purposes of review under the APA.  <u>Id.</u> at 899.

5 Consequently, "the flaws in the entire 'program' – consisting principally of many individual

6 actions referenced in the complaint" could not be "laid before the courts for wholesale correction

7 under the APA." <u>Id.</u> at 893.  The Ninth Circuit has likewise ruled that <u>NWF</u> bars programmatic

8 challenges.  <u>See</u> <u>Ecology Ctr.</u>, 192 F.3d at 925-26 (no jurisdiction "[b]ecause [plaintiff] fails to

9 identify any 'concrete action . . . that harms or threatens to harm' it"); <u>Northcoast Env'l Ctr. v.</u>

10 <u>Glickman</u>, 136 F.3d 660, 669-670 (9th Cir. 1998); <u>cf.</u> <u>High Sierra Hikers Ass'n v. Blackwell</u>, 390

11 F.3d 630, 639 (9th Cir. 2004) (finding jurisdiction under <u>NWF</u> where plaintiff "alleged specific

12 discrete agency actions taken by the Forest Service that have caused harm" and "challenged

13 certain agency actions[,]" not "the entirety of the wilderness plan").

14   Plaintiffs' Complaint boldly requests that this Court to decree a "comprehensive

15 program" governing the manner by which defendants adjudicate veterans' claims and provide

16 health care.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 365 (1976).  First, plaintiffs intend to conduct a

17 "broad-scale investigation . . . armed with the subpoena power" of this Court, "to probe into"

18 defendants' activities.  <u>Laird v. Tatum</u>, 408 U.S. 1, 14 (1972).  Thereafter, a "judicial evaluation"

19 of defendants' practices will presumably take place, <u>Gilligan v. Morgan</u>, 413 U.S. 1, 5 (1973),

20 and culminate in a determination by this Court of the extent to which defendants' activities are

21 "appropriate to [their] mission," or should be supplanted by judicially-crafted rules and

22 regulations.  <u>Laird</u>, 408 U.S. at 14. None of this is proper. <u>NWF.</u>, 497 U.S. at 899.[11]

23 **IV.** **Plaintiffs Cannot Avoid Section 511 By Challenging VA's Decisions Under the Rehabilitation Act**

24

25   Next, plaintiffs attempt to style their grievances as a claim under Section 504 of the

26

27   [11]As defendants noted in their opening memorandum, plaintiffs also cannot proceed under

28 the APA because the plaintiff organizations' members have an adequate remedy in a court.  <u>See</u> Def. Mem. 8; <u>Beamon</u>, 125 F.3d at 967-970 (holding the CAVC provides an adequate remedy to challenge VA rules and procedures).

1   Rehabilitation Act. Because Congress enacted § 511 to prevent precisely this kind of indirect

2   judicial inquiry into VA decision-making, this claim is likewise "plainly outside the jurisdiction

3   of this Court." Brown v. Dep't of Veterans Affairs, 451 F. Supp. 2d 273, 278 (D. Mass. 2006);

4   see also H. Rep. 100-963, at 21 (rejecting suggestion that review may be had by alleging

5   violation of statute not codified in Title 38); cf. Carpenter v. Dep't of Transp., 13 F.3d 313, 316

6   (9th Cir. 1994) (specific jurisdictional limitations in Hobbs Act trump district court's general

7   authority to entertain Rehabilitation Act claims).

8         Plaintiffs fail to cite a single case construing § 511(a) to permit district courts to exercise

9   jurisdiction over a challenge to VA benefits policies and procedures simply because the

10  Rehabilitation Act is invoked. Plaintiffs stake their entire argument on Traynor v. Turnage, 485

11  U.S. 535, the very case that animated Congress's enactment of § 511(a). See H. Rep. 100-693, at

12  21 (describing the "eroding effect that decisions such Traynor [had] on the independence of the

13  executive branch"); see also Larrabee, 968 F.2d at 1500-01 (construing § 511 to supercede

14  Traynor). Plaintiffs concede, as they must, that Congress passed § 511 in large part because "the

15  Court's opinion in Traynor [if left undisturbed] would inevitably lead to increased involvement of

16  the judiciary in technical VA decision-making." See Opp. at 24; H. Rep. 100-963, at 21. Yet

17  they fail entirely to explain why their own Rehabilitation Act claim would not lead to the very

18  same impermissible result. In order to determine whether VA adjudication procedures

19  discriminate against veterans solely on the basis of PTSD, 29 U.S.C. § 794, this Court would

20  necessarily have to engage in the kind of technical inquiry into the facts and outcomes of

21  individual benefits determinations that Congress has foreclosed.[12]

22        Believing that the VA was in the "best position" to review its rules and procedures for

23  consistency with its other statutory obligations and to implement any requisite changes, see H.

24

25        [12]As noted, plaintiffs also obscure the extent to which they challenge agency regulations
26  themselves. For example, plaintiffs' challenge to the allegedly "cumbersome multi-step appeals
    process," Compl. ¶ 114, is nothing more than a challenge to the extensive regulations governing
27  the BVA. See 38 C.F.R. 20.201 et seq. Their suggestion that sufferers of PTSD should not be
    required to identify the stressor giving rise to their disease in order to establish service
28  connection, Opp. at 24, is a challenge to 38 C.F.R. 3.304(f) (requiring establishment of stressor).
    These challenges must be brought in the Federal Circuit. See 38 U.S.C. § 502.

1   Rep. 100-963, at 27, Congress required such claims to be brought first before the agency and

2   thereafter appealed through the exclusive mechanisms established by the VJRA. Even absent §

3   511, plaintiffs' claim would fail because they have not exhausted their administrative remedies

4   required for all VA claimants. Plaintiffs' claim is "exactly the kind of complaint that would best

5   lend itself to a solution developed by the agency rather than imposed upon it by the court." See

6   J.L. v. Social Sec. Admin., 971 F.2d 260, 270-71 (9th Cir. 1992) (holding similar challenge to

7   procedures for adjudicating social security insurance claims must first be brought before agency

8   under APA), overruled in part on other grounds, Lane v. Pena, 518 U.S. 187 (1996).

9   **V.      The Court Lacks Jurisdiction to Consider Plaintiffs' Medical Care Claim**

10          This Court likewise lacks jurisdiction to entertain plaintiffs' "medical care claim," which

11  is no less a challenge to decisions of the Secretary "under a law that affects the provision of

12  benefits . . . to veterans," 38 U.S.C. § 511(a) than is their challenge to the claims adjudication

13  procedures. See Larrabee, supra (challenge to adequacy of medical care barred by 511(a) even if

14  cloaked as due process claim); Zuspann v. Brown, 60 F.3d 1156, 1158-59 (5th Cir. 1995) (same).

15  Plaintiffs seek exactly what § 511(a) forbids – review by this Court of the Secretary's

16  determinations that directly affect veterans' eligibility for medical benefits. The crux of plaintiffs'

17  medical care claim appears to be that the VA has not satisfied its alleged obligations under 38

18  U.S.C. § 1710(e)(1)(D) to provide two years of medical care to returning veterans for illnesses

19  that might have arisen during their combat service. Since VA regulations specifically provide

20  that veterans returning from combat are eligible for free medical care pursuant to §1710(e),[13]

21  plaintiffs must be challenging the Secretary's decisions about *individual* eligibility for or

22  entitlement to care. Yet claims involving such fact-specific determinations are "the very type of

23  case[s] that would enmesh the courts in expensive, time-consuming litigation (involving a battle

24  of experts) that § 511's judicial bar was constructed to avoid." Zuspann v. Brown, 864 F. Supp.

25  17, 22 (W.D. Tex. 1994), aff'd, 60 F.3d 1156.

26  ─────────────

27          [13]Under the statute, eligible veterans are enrolled in VA's health care system priority
    category (6) and thereby are eligible for any needed medical care with no copayment
28  requirements for treatment of any condition possibly related to their combat service. See 38
    C.F.R.§§ 17.36(b)(6); 17.108(e)(2); 17.110(c)(4); 17.111(f)(5).

1    Plaintiffs' sole argument against the preclusive effect of § 511(a) is their bare assertion

2    that veterans "have no recourse" to challenge the Secretary's medical eligibility determinations.

3    Opp. at 23.  As an initial matter, this assertion is irrelevant to the existence of jurisdiction, as §

4    511(a) on its face makes decisions of the Secretary "final and conclusive" unless some other

5    avenue for review is expressly provided.  Plaintiffs' contention is also plainly false, since the

6    jurisdiction of the Board of Veterans Appeals "extends to questions of eligibility for

7    hospitalization, outpatient treatment, and . . . other benefits administered by the Veterans Health

8    Administration."  38 C.F.R. § 20.101(b); see also E. Paralyzed Veterans Ass'n v. Sec'y of

9    Veterans Affairs, 257 F.3d 1352, 1358 (Fed. Cir. 2001) (noting right of appeal).

10    Unable to mount a plausible argument that their claims do not fall within the ambit of  §

11    511, plaintiffs appear to suggest that the APA somehow provides an independent basis for

12    jurisdiction.  Opp. at 23 & n. 28.  This argument is just wrong.  See Califano v. Sanders, 430

13    U.S. 99 (1977) (APA does not provide independent jurisdictional basis).

14    Second, even without § 511's jurisdictional bar, as explained in Argument III, supra,

15    review would not be available under the APA for the kind of wholesale challenge to the

16    adequacy and timeliness of medical care that plaintiffs seek to mount.  See, e.g., Compl. ¶ 3

17    (complaining of failure to "provide appropriate health care")(emphasis added); ¶ 10

18    ("insufficient and overworked staff"); ¶ 27 ("failure to promptly and properly treat [veterans]").

19    See NWF, 497 U.S. at 899.  Third, review may not be had where agency actions are "committed

20    to agency discretion by law."  5 U.S.C. § 701(a)(2).  This limitation on review extends

21    particularly to situations where, as here, there are "no meaningful standard against which to judge

22    the agency's exercise of discretion."  Heckler v. Chaney, 470 U.S. 821, 830 (1985).  There can be

23    no doubt that Congress has committed to the Secretary's discretion decisions surrounding the

24    type and appropriateness of medical care, having directed the agency to provide only those

25    medical services "which the Secretary determines to be needed."  38 U.S.C. § 1710(a)(1).

26    Plaintiffs point to no meaningful standards against which this Court could measure the

27

28

1    Secretary's exercise of discretion in this regard.[14]

2        Section 1710(a) provides for veteran *eligibility* for medical care, but it does not create an

3    entitlement to any particular medical service.  See E. Paralyzed Veterans, 257 F.3d at 1362.  The

4    Secretary is vested with wide discretion to determine when care is necessary, see 38 U.S.C. §

5    1710(a), and how best to allocate funds in service of the agency's statutory mandates, see id. §

6    1710(a)(4); Lincoln, 508 U.S. at 192 ("[T]he very point of a lump-sum appropriation is to give an

7    agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in

8    what it sees as the most effective or desirable way.").[15]  Accordingly, § 1710 creates no property

9    interest protected by the Due Process Clause.  See Town of Castle Rock v. Gonzales, 545 U.S.

10   748, 756 (2005) ("[A] a benefit is not a protected entitlement if government officials may grant

11   or deny it in their discretion."); Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (no property

12   interest without "legitimate claim of entitlement").  To the extent that plaintiffs' contend that two

13   years is simply not enough time for returning veterans to obtain the diagnoses and treatment they

14   need, see Compl. ¶ 92, their quarrel is not with the VA but with Congress.[16]

15

16       [14]Indeed, Congress crafted § 1710 to ensure that "medical judgment rather than legal

17   criteria will determine when care will be provided and the level at which care will be furnished."
     H. Rep. No. 104-690, at 4 (1996) (reporting on Veterans' Health Care Eligibility Reform Act of

18   1996, Pub. L. No. 104-262).  Plaintiffs would have this Court fashion "drastic measures" to
     overhaul the entire VA health care system, see Compl. ¶ 1, guided only by the directive that care

19   be "timely and acceptable in quality."  See 38 U.S.C. § 1705(b)(1); Compl. ¶ 87.  Because
     inquiry into the timeliness and quality of care would require a "complicated balancing of a

20   number of factors which are peculiarly within [the agency's] expertise," this inquiry is foreclosed

21   by 5 U.S.C. § 701(a)(2).  See Lincoln v. Vigil, 508 U.S. 182, 193 (1993), quoting Heckler, 470
     U.S. at 831.

22

23       [15]Whether Congress has earmarked funds for particular medical services or particular
     groups of veterans is a question of law, not of fact, as plaintiffs suggest.  See Opp. at 30.

24   Plaintiffs have pointed to no appropriations bill mandating spending on returning combat
     veterans.  Indeed, plaintiffs themselves suggest that "[w]ithout dramatic budget increases

25   extending over the next decade or longer, [the VA] cannot fulfill its statutory responsibilities to
     provide" medical services, Compl. ¶ 204, effectively conceding that the VA cannot provide all

26   medical services that might be desirable but must instead prioritize medical needs as best it can.

27

28       [16]This political question is currently being debated, as legislation is currently pending to
     extend from two to five years the period for which combat veterans are eligible for medical care,
     see S. 383, 110th Cong. (2007), a measure which the VA is on the record supporting.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VI.    The Claims Adjudication Process Created by the VJRA is Constitutional**

> **a.    The Standard for Review of a Facial Challenge to the Constitutionality of an Act of Congress.**

As this Court noted earlier this year, "[i]n the Ninth Circuit, 'a facial challenge to the constitutionality of a statute is a question of law.'"  Redwood Christian Sch. v. County of Alameda, No. C-01-4282-SC, 2007 WL 214317 (N.D. Cal. January 26, 2007) (Conti, J.) (quoting U.S. v. Bynum, 327 F.3d 986, 990 (9th Cir. 2003)).  That is because "'[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.'"  Bynum, 327 F.3d at 990 (quoting U.S. v. Salerno, 481 U.S. 739, 745 (1987)); see also Gonzales v. Carhart, 127 S.Ct. 1610, 1639 (2007) ("Broad challenges of this type impose 'a heavy burden' upon the parties maintaining the suit.") (quoting Rust v. Sullivan, 500 U.S. 173, 183 (1991))).  Plaintiffs criticize the Salerno standard, find "murkiness" in the distinction between facial and as applied challenges, and argue that their claims concerning the VJRA "fall on the facial end of the constitutional spectrum" because they are "systemic."  Opp. at 20-21.  Whatever murkiness plaintiffs and the law professors whom they cite may discern, however, the Salerno standard remains controlling in this Circuit.  See Sprint Telephony PCS, L.P. v. County of San Diego, 490 F.3d 700, 708 (9th Cir. 2007) (relying on Bynum and Salerno).[17]

Plaintiffs ignore controlling authority when they erroneously suggest that the due process inquiry is "inherently fact-intensive," which cannot be decided on a motion to dismiss.  See Opp. at 25.  The "heavy burden" imposed on a party brining a facial challenge to a statute represents

---

[17]Indeed, in Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971-72 (9th Cir. 2003) – a case relied upon by plaintiffs, Opp. at 20 n.25 – the Court of Appeals "rejected the argument that Salerno had been undermined," as plaintiffs argue, and held it would "'not reject Salerno'" outside the context of challenges to abortion statutes "'until a majority of the Supreme Court clearly directs us to do so.'"  Hotel & Motel Ass'n, 344 F.3d at 972 (quoting S.D. Myers, Inc. v. City and County of San Francisco, 253 F.3d 461 (9th Cir. 2001)).  Unsurprisingly, another case relied upon by plaintiffs for the false proposition that Salerno has been undermined in this Circuit says no such thing.  In Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist., 498 F.3d 1031 (9th Cir. 2007) (cited in Opp. at 20 n.25 as "criticizing Salerno"), the Court of Appeals *followed* Salerno, holding that where a plaintiff brings a facial challenge to an enactment, "Salerno requires the plaintiff to show that there can be no valid application of a particular challenged provision."  498 F.3d at 1049.

1    the high *legal* threshold for stating a claim of facial unconstitutionality, see Bynum, 327 F.3d at

2    990, not as plaintiffs seem to suggest, a factual burden of proof.  See Opp. at 25 n.30.  Assuming

3    that this Court has jurisdiction,[18] plaintiffs' due process claim can and should be dismissed on the

4    pleadings because the facts which they allege, even if true, fail to establish a due process

5    violation as a matter of law.  In United States v. Phelps, 955 F.2d 1258, 1266 (9th Cir. 1992) this

6    Circuit held that Mathews v. Eldridge balancing test is "legal in nature and does not require

7    factual determinations." Cf. Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.

8    1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual

9    allegations if those conclusions cannot reasonably be drawn from the facts alleged.").  See also

10   Nat. Ass'n Radiation Survivors v. Derwinski, 994 F.2d 583, 587 (9th Cir. 1993) (reviewing

11   district court conclusions regarding due process de novo).

12       **b.       The VA Claims Adjudication Process is Constitutional**

13          In their Opposition, Plaintiffs never attempt to apply the Mathews v. Eldridge balancing

14   test to the VA claims adjudication process as a whole to show that it does not provide adequate

15   process.  Instead,  plaintiffs first engage in semantics regarding the alleged  "adversarial" nature

16   of the VA claims adjudication process, Opp. at 26, but plaintiffs cannot seriously dispute that the

17   initial, regional office step of the claims process is not, in any sense, adversarial.  There is no on-

18   the-record hearing or any other trappings of a trial procedure, but instead a simple in person

19   interview process with a VA employee, who is required to "assist [the] claimant" as part of his

20   official duties, 38 C.F.R. § 3.103(a).  No court has ever suggested that this informal claims

21   adjudication procedure does not satisfy the requirements of the Due Process Clause, while

22   several courts have affirmed various aspects of the process against due process challenges.  See

23   e.g. Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305 (1985) (NARS);  Cleland v.

24

25

26          [18]At least one Court has suggested that section 511 divests district courts of jurisdiction to
27   entertain even facial challenges to the constitutionality of statutes affecting veterans benefits
     since under the VJRA such claims can be asserted in an individual benefit application and
28   decided, ultimately, by a court.  Hall v. U.S. Dept. of Veterans' Affairs, 85 F.3d 532 (11th Cir.
     1996).

1   <u>Devine</u>, 616 F.2d 1080 (9th Cir. 1980); <u>Moore v. Johnson</u>, 582 F.2d 1228 (9th Cir. 1978).[19]

2   Generally, "[p]rocedural due process requires adequate notice and an opportunity to be heard,"

3   <u>Kirk v. INS</u>, 927 F.2d 1106, 1107 (9th Cir. 1991), which undeniably provided at the VA's

4   administrative level.

5        In applying the <u>Matthews</u> balancing test, courts have consistently recognized the value to

6   claimants of the informal VA claims adjudication system. "All would get less if invariably the

7   complaints of the many required elaborate hearings with all the trappings that only lawyers and

8   judges can fully appreciate." <u>Moore</u>, 582 F.2d at 1234. This conclusion is not affected by

9   whether the particular procedures that plaintiff argues must be provided for veterans are

10  considered individually or in the "holistic" manner plaintiffs propose. Opp. at 27-28. Other than

11  arguing about the prospect of delay in certain cases and identifying one case where a claimant

12  was unable to call a doctor as a witness to support his claim, <u>id</u>. at 28:6-12, plaintiff make no

13  attempt to articulate why "no set of circumstances exists under which the Act would be valid."

14  <u>Bynum</u>, 327 F.3d at 990.

15       In addition to this initial non-adversarial opportunity to be heard, the claimant has, since

16  the enactment of the VJRA, the additional right of judicial review by the CAVC and ultimately

17  the Federal Circuit. Unlike the administrative level, this appellate forum is "adversarial" in the

18  sense that claimants have the right to be represented by counsel and benefit from the traditional

19  procedures of an appellate tribunal. The decision in <u>Forshey v. Principi</u>, 284 F.3d 1335 (Fed.

20  Cir. 2002), cited by plaintiffs, recognizes exactly this distinction, noting that "[t]he veterans'

21  benefits system remains a non-adversarial system when cases are pending before the Veterans

22  Administration. However, the Court of Appeals for Veterans Claims' proceedings are not non-

23

24

25 _____

26       [19]Plaintiffs seek to dismiss all pre-VJRA precedent as irrelevant due to the changes
enacted by Congress in the VJRA. However, as noted, changes resulting in the new section 511
27  were intended to broaden that provision's limitation on judicial review and hence cases rejecting
claims under the pre-VJRA statute are fully consistent with the new law and hence relevant
28  precedents. And decisions such as <u>NARS</u> , <u>Devine</u> and <u>Moore</u>, to the extent that they were
decided on the Due Process clause, are entirely unaffected by the VJRA.

1  adversarial." Id. at 1355.[20]  Thus, with the enactment of the VJRA in 1988, the procedural

2  protections available to claimants have been substantially expanded, as the administrative system

3  has been complemented with the right to seek judicial review in the CAVC and the Federal

4  Circuit.[21]  If the prior administrative process met the requirements of the Due Process Clause, the

5  same system with the addition of a right to judicial review at the later stages is even more clearly

6  constitutional.

7      Plaintiffs offer no coherent argument for why their challenge to the limited restrictions on

8  the right to counsel contained in the current statute are not foreclosed by NARS, supra, and

9  numerous other decisions.  It is not sufficient to assert, as plaintiffs do, that those decisions did

10 not consider the limitation on counsel in the context of a broader program, Opp. at 29, since even

11 a cursory review of NARS demonstrates that the Court carefully reviewed the entire process in

12 reaching the conclusion that the restriction was constitutional.  See 473 U.S. at 309-12; see also

13 Brief of Appellee at 17-18, 25-26, NARS, 473 U.S. 305 (No. 84-571), 1985 WL 670000 (arguing

14 that entire context of adjudication-- including statute governing BVA and adequacy of discovery

15 tools--contributed to due process violation).  In fact, in NARS, the Supreme Court explicitly

16 considered the lack of formal trial procedures about which plaintiffs' complain, as a factor

17 militating against due process concerns. 473 U.S. at 333.

18      Finally, much of plaintiffs' argument about the alleged inadequacy of claimants' rights at

19 various stages of the process is simply wrong as a review of the relevant statutes and regulations

20 demonstrates.  So, for example, plaintiffs assertions about the powers of the CAVC are simply

21 wrong; the CAVC does have power to enforce its own decisions, both through the routine power

22

23

24     [20]Applicants for benefits have fewer due process rights than beneficiaries, but the VA
   system provides adequate process for both classes.

25     [21]Plaintiffs profess confusion about whether defendants assert that the VJRA expanded or
26 restricted veterans' procedural protections.  Opp. at 26-27.  There is no ground for confusion.
   The VJRA, for the first time, provided a judicial forum for claimants to challenge the VA's
27 denial of a claim – a substantial increase in the rights of veterans.  Simultaneously, however,
   Congress sought to foreclose cases such as this – an end run around the elaborate claims
28 adjudication process through district court challenges to actions by the VA that in any way
   "affect[] the provision of benefits."

1    to reverse and remand to the VA as well as through the more extraordinary remedies, such as

2    mandamus and contempt.  See pp. 4-5, supra.  Nor is it accurate to assert that there is a "total

3    absence of any discovery procedures" at the regional office level, since claimants do have a right

4    to obtain all documents relevant to their claim that are in the custody of the VA, and the VA will

5    attempt to obtain additional documents relevant to their claim.  Id. at 4.

6    **VII.    This Court Lacks Jurisdiction Over the U.S. Court of Appeals for Veterans Claims**

7             Finally, plaintiffs' claims against the U.S. Court of Appeals for Veterans' Claims

8    ("CAVC") fail for an independent, but threshold reason: the only waiver of sovereign immunity

9    available is the APA, but the APA, by definition, excludes "the courts of the United States."  See

10   5 U.S.C. § 551(1)(B).  Cf. Abbs v. Principi, 237 F.3d 1342, 1347-49 (Fed. Cir 2001) ("Congress

11   viewed the Veterans Court – and courts generally – as separate and distinct from the 'United

12   States' or its agencies"); Harpole v. U.S., No. A00-176CV, 2000 U.S. Dist. LEXIS 17697, at

13   *7-*9 (D. Alaska Nov. 2, 2000).  Indeed, upon its creation, Congress established the CAVC

14   (formerly the Court of Veterans Appeals) to be an "independent judicial review of the Board's

15   final decisions."  Bates v. Nicholson, 398 F.3d 1355, 1364 (Fed. Cir. 2005).  Thus, CAVC is "a

16   judicial body independent of the Secretary" as distinct from the BVA, which is "an agent of the

17   Secretary."  Jackson v. Principi, 265 F.3d 1366, 1370 (Fed. Cir. 2001).  See also 38 U.S.C. §

18   7251. Therefore, plaintiffs have not stated a cognizable claim against the CAVC.[22]

19

20

21

22
_____

23        [22]Aside from this Court's lack of jurisdiction over CAVC, plaintiffs grossly misstate the
     expediency with which the CAVC resolves its cases.  In their Opposition (at n. 23) plaintiffs state
24   that it takes 1286 days to decide an appeal.  The reality, however,  is quite different.  The median
     time for CAVC to resolve each case in 2006 was 11.5 months.
25   (http://www.vetapp.gov/annual_report/).  In comparison, the median time for case disposition for
     all Article III U.S. courts of appeals in 2006 was 12.2 months. 
26   ttp://www.uscourts.gov/cgi-bin/cmsa2006.pl, (click on 'National Totals,' p. 2.).  Plaintiffs also
     grossly misstate the number of cases at the CAVC that are in a "backlog."  It is undisputed that
27   only approximately 1000 of the approximately 6000 cases on the Court's docket are fully briefed
     and awaiting decision.  See testimony of CAVC Chief Judge at November 7, 2007 hearing before
28   the U.S. Senate Committee on Veterans Affairs.  See http://veterans.senate.gov.

1

2

3                                        **CONCLUSION**

4          Wherefore, for the reasons set forth herein as well as in defendants' Motion to Dismiss,

5  plaintiffs' Complaint should be dismissed with prejudice.

6

7

8  Dated November 30, 2007                     Respectfully Submitted,

9                                              JEFFREY S. BUCHOLTZ
                                               Acting Assistant Attorney General
10                                             SCOTT N. SCHOOLS
                                               Interim United States Attorney
11                                             RICHARD LEPLEY
                                               Assistant Branch Director
12
                                               _____**/s/ Daniel Bensing**_____
13                                             DANIEL BENSING D.C. Bar # 334268
                                               STEVEN Y. BRESSLER D.C. Bar #482492
14                                             KYLE R. FREENY California Bar #247857
                                               Attorneys, U.S. Department of Justice
15                                             P.O. Box 883
                                               Washington, D.C. 20044
16
                                               Counsel for Defendants
17

18

19

20

21

22

23

24

25

26

27

28