1  GORDON P. ERSPAMER (CA SBN 83364)
   GErspamer@mofo.com
2  MORRISON & FOERSTER LLP
   101 Ygnacio Valley Road, Suite 450
3  P.O. Box 8130
   Walnut Creek, California 94596-8130
4  Telephone: 925.295.3300
   Facsimile: 925.946.9912
5
   SIDNEY M. WOLINSKY (CA SBN 33716)
6  SWolinsky@dralegal.org
   MELISSA W. KASNITZ (CA SBN 162679)
7  MKasnitz@dralegal.org
   JENNIFER WEISER BEZOZA (CA SBN 247548)
8  JBezoza@dralegal.org
   KATRINA KASEY CORBIT (CA SBN 237931)
9  KCorbit@dralegal.org
   DISABILITY RIGHTS ADVOCATES
10 2001 Center Street, Third Floor
   Berkeley, California 94704-1204
11 Telephone: 510.665.8644
   Facsimile: 510.665.8511
12
   **[see next page for additional counsel for Plaintiffs]**
13
   Attorneys for Plaintiff(s)
14 VETERANS FOR COMMON SENSE and
   VETERANS UNITED FOR TRUTH, INC.
15
                  UNITED STATES DISTRICT COURT
16
                NORTHERN DISTRICT OF CALIFORNIA
17
                    SAN FRANCISCO DIVISION
18

| | |
|---|---|
| 19  VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC., | Case No.    C-07-3758-SC |
| 20                    Plaintiffs, | **CLASS ACTION** |
| 21       v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER RESTRICTING DISCLOSURE OF CONFIDENTIAL AND PRIVATE INFORMATION AND PROHIBITING RETALIATION** |
| 22  GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs, *et al.*, | |
| 23 | |
| 24                    Defendants. | Date:    January 4, 2008 |
| 25 | Time:    10:00 a.m.<br>Place:    Courtroom 1, 17th Floor |
| 26 | Judge:    Hon. Samuel Conti |
| 27 | Complaint Filed:  July 23, 2007 |

28

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order
sf-2427016

1 | **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2 | ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
3 | HEATHER A. MOSER (CA SBN 212686)
HMoser@mofo.com
4 | STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
5 | PAUL J. TAIRA (CA SBN 244427)
PTaira@mofo.com
6 | MORRISON & FOERSTER LLP
425 Market Street
7 | San Francisco, California 94105-2482
Telephone: 415.268.7000
8 | Facsimile: 415.268.7522

9 | BILL D. JANICKI (CA SBN 215960)
WJanicki@mofo.com
10 | MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600
11 | Sacramento, California 95814
Telephone: 916.448.3200
12 | Facsimile: 916.448.3222

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order
sf-2427016

1

2

**TABLE OF CONTENTS**

3  TABLE OF AUTHORITIES .............................................................................................................ii

4  NOTICE OF MOTION AND MOTION...........................................................................................1

5  CERTIFICATION OF GOOD FAITH ATTEMPT TO MEET AND CONFER ...........................2

6  MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE
         ORDER .................................................................................................................................3

7

8  I.       INTRODUCTION .................................................................................................................3

   II.      RELEVANT BACKGROUND..............................................................................................4

9

10  III.     LEGAL STANDARD .............................................................................................................6

11  IV.      ARGUMENT .........................................................................................................................7

12           A.       The Proposed Provisions Governing Retaliation Are Factually and
                       Legally Appropriate. .................................................................................................7

13                    1.       This Case Presents a Unique Risk of Retaliation Against
                               Veterans, Their Family Members, Other Federal Employees,
14                             and Third Party Witnesses.............................................................................7

15                    2.       Federal Courts, Including the Ninth Circuit, Have Entered
                               Witness-Anonymity Protective Orders to Prevent Retaliation...................10

16           B.       Restricting Limited Categories of Information to Outside Counsel is
17                    Common Practice for Sensitive Information and Furthers the Goal of
                       Preventing Retaliation. ............................................................................................11

18           C.       The Documents and Information That Should Be Restricted Are
19                    Properly Protected by Privacy Concerns. ................................................................11

20  V.       CONCLUSION ....................................................................................................................12

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

**CASES**

4   *Charles O. Bradley Trust v. Zenith Capital LLC*,
        No. C-04-2239 JSW(EMC), 2005 WL 1030218 (N.D. Cal. May 3, 2005) .............................11

5   *Doe v. Madison Sch. Dist. No. 321*,
        147 F.3d 832 (9th Cir. 1998) .....................................................................................................10
6

7   *Does I thru XXIII v. Advanced Textile Corp.*,
        214 F.3d 1058 (9th Cir. 2000) ...................................................................................................10

8   *Fed. Open Mkt. Comm. v. Merrill*,
        443 U.S. 340 (1979) ...................................................................................................................11
9

10  *Foltz v. State Farm Mut. Auto. Ins. Co.*,
        331 F.3d 1122 (9th Cir. 2003) .....................................................................................................7

11  *Humbolt Baykeeper v. Union Pac. R.R. Co.*,
        244 F.R.D. 560 (N.D. Cal. 2007) ................................................................................................7
12

13  *Nursing Home Pension Fund v. Oracle Corp., C 01-00988 MJJ*,
        2007 WL 3232267 (N.D. Cal. Nov. 1, 2007)..........................................................................7, 11

14  *Phillips v. Gen. Motors Corp.*,
        307 F.3d 1206 (9th Cir. 2002) .....................................................................................................7
15

16  *Planned Parenthood Fed'n of Am., Inc. v. Ashcroft*,
        No. C03-4872 PJH, 2004 WL 432222 (N.D. Cal. Mar. 5, 2004)................................................7

17  *Roe v. Sherry*,
        91 F.3d 1270 (9th Cir. 1996)........................................................................................................7
18

19  *Samuels v. Cal. Dep't of Corrections & Rehab.*,
        No. CIV S-05-2337 GEB JFM P,
20      2007 WL 1345701 (E.D. Cal. May 8, 2007) ...............................................................................7

21  *Seattle Times Co. v. Rhinehart*,
        467 U.S. 20 (1984) .......................................................................................................................6

22  *St. Michael's Convalescent Hosp. v. Cal.*,
        643 F.2d 1369 (9th Cir. 1981)....................................................................................................12
23

24  *United States v. Comprehensive Drug Testing, Inc.*,
        473 F.3d 915 (9th Cir. 2006)......................................................................................................12

25  *United States v. Doe*,
        655 F.2d 920 (9th Cir. 1980) .....................................................................................................10
26

27  *Webb v. Smart Document Solutions, LLC*,
        499 F.3d 1078 (9th Cir. 2007).....................................................................................................12

28

1

**STATUTES & RULES**

2

5 U.S.C. § 552 a ............................................................................................................... 12

3

Fed. R. Civ. Proc. 26(c) ..................................................................................................... 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2 TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on January 4, 2008, at 10:00 a.m., or as soon thereafter as the

4 matter may be heard, in the Courtroom of the Honorable Samuel Conti, United States District Court,

5 Northern District of California, San Francisco Division, Courtroom 1, 17th Floor, 450 Golden Gate

6 Ave., San Francisco, California 94102,  Plaintiffs VETERANS FOR COMMON SENSE and

7 VETERANS UNITED FOR TRUTH, INC. will, and hereby do, move the Court for a protective

8 order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure restricting the disclosure of

9 confidential and private information and prohibiting retaliation.

10      This Motion is based on this Notice of Motion, the Memorandum in support hereof, the

11 Declarations of Gordon P. Erspamer, Heather A. Moser, Paul Taira, and Philip E. Cushman, the

12 pleadings and other files herein, and such other written and oral argument as may be presented to the

13 Court.  A proposed protected order has been submitted to the Court.

14 Dated: November 30, 2007                  GORDON P. ERSPAMER
                                           ARTURO J. GONZALEZ
15                                         HEATHER A. MOSER
                                           BILL D. JANICKI
16                                         STACEY M. SPRENKEL
                                           PAUL J. TAIRA
17                                         MORRISON & FOERSTER LLP

18

19                                         By:    /s/ Heather A. Moser
                                                   Heather A. Moser
20
                                                 Attorneys for Plaintiffs
21

22

23

24

25

26

27

28

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order                                              1
sf-2427016

**CERTIFICATION OF GOOD FAITH ATTEMPT TO MEET AND CONFER**

The parties began their discussion regarding the appropriate scope of a protective order to protect confidential private information and to protect parties and witnesses from retaliation almost immediately after the Complaint was filed in this case, on August 1, 2007. Declaration of Gordon P. Erspamer in Support of Plaintiffs' Motion for Protective Order ("Erspamer Decl."), ¶ 2. However, Defendants have now brought these discussions to a grinding halt. *See* Erspamer Decl., ¶¶ 2-4, 8. On November 13, 2007, the parties discussed the specific proposed terms for the draft protective order. Declaration of Heather A. Moser in Support of Plaintiffs' Motion for Protective Order ("Moser Decl."), ¶ 2. On November 21, 2007, Plaintiffs electronically sent defense counsel a written draft of the proposed protective order, which was modeled in large part on the model Stipulated Protective Order for the Northern District of California. Moser Decl., ¶ 3, Ex. A. During a pre-scheduled follow-up telephonic meet and confer to discuss the written provisions of the draft protective order, however, the three defense attorneys on the call advised Plaintiffs' counsel that they do not think it is "appropriate" to discuss the terms of a protective order before their Motion to Dismiss ("MTD") is decided and, in any event, cannot possibly conduct an "exhaustive" meet and confer regarding the proposed provisions prior to January 2008. Moser Decl., ¶ 4. In a letter dated November 28, 2007, defense counsel confirmed that they would be unable to "complete" any meet and confer on the protective order prior to December 28, 2007, and instead suggested that the protective order be resolved by the Court at the Case Management Conference on January 25, 2008. Moser Decl., ¶ 4, Ex. B. The following day, Plaintiffs' counsel informed defense counsel of their intention to move the Court for a protective order in light of defense counsel's refusal to "complete" the meet and confer process, but allowed Defendants on last chance to change their minds. Moser Decl. ¶ 4, Ex. C. The next day, Defendants confirmed that they are "not willing to change [their] position" with respect to the meet and confer. Moser Decl., ¶ 5, Ex. D.[1]

---

[1] This Court may consider an appropriate sanction against Defendants for refusing or failing to meet and confer to resolve this dispute pursuant to Civil Local Rule 37-1(a).

1      Already, over five *weeks* have elapsed since the written draft was sent to the VA and four

2    *months* have passed since Plaintiffs' counsel's initial request that the parties attempt to work together

3    to negotiate a suitable protective order.  Moser Decl., ¶ 3, Ex. A; Erspamer Decl. ¶ 3.  In sum,

4    Plaintiffs have refused to meet and confer since August under the auspices of awaiting their deadline

5    for a responsive pleading and then the hearing on that responsive pleading.  Plaintiffs' counsel

6    believes that they have made every good faith attempt to meet and confer possible under the

7    circumstances and regretfully inform the Court that agreement was not possible.

8    **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

9    **I.  INTRODUCTION**

10     Plaintiffs have proposed a protective order based on the model Stipulated Protective Order for

11   the Northern District of California restricting the disclosure and use of confidential private

12   information and prohibiting retaliation for participation in this lawsuit.  Plaintiffs seek protections

13   beyond those in the model order for circumstances in part unique to this case.  First, because the case

14   involves the medical treatment and medical records of veterans with post-traumatic stress disorder

15   ("PTSD"), protections are necessary for the fundamental privacy rights of veterans in their medical

16   records, particularly as they relate to psychiatric conditions and treatment.  Those records are

17   protected by statutory and constitutional rights to privacy and should be subject to limited disclosure.

18   Moreover, Plaintiffs seek to protect veterans, their family members, any claimant on behalf of a

19   veteran, third-party witnesses, and Defendants' employees from retaliation of any sort for

20   participation in this lawsuit by limiting access to certain identifying information to outside counsel

21   and experts.  As detailed in the Declarations of Gordon P. Erspamer, Paul Taira, and Philip E.

22   Cushman, the threat of retaliation and resulting fear of reprisal is serious and real.

23     Despite the fact that Plaintiffs have been raising this issue for four months, Defendants have

24   refused to address the provisions of this Order or engage in any meaningful meet and confer process

25   to resolve the parties' potential disagreements.  For these reasons and those set forth below, Plaintiffs

26   therefore request this Court enter the Proposed Protective Order restricting the disclosure and use of

27   confidential private information and prohibiting retaliation against any person because of their

28   participation in this lawsuit.

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order
sf-2427016

## II.    RELEVANT BACKGROUND

Plaintiffs filed a class action suit against the Department of Veteran Affairs ("VA") on behalf of veterans suffering from post-traumatic stress disorder.  One week after filing their Complaint, Plaintiffs initiated negotiations with Defendants for a protective order to protect confidential private information, including medical records, and to protect parties and witnesses from retaliation or other adverse actions by any party.  As a threshold matter, a protective order is necessary in this case to protect confidential private information.  Specifically, medical information covered by the HIPAA or other private medical information requires a protective order to protect such personal and private information from public disclosure.  Moreover, under the Privacy Act, the federal government is bound to protect such information from public disclosure before producing individual veterans' records during discovery.  To address those concerns, Plaintiffs propose the following provision:

> 2.4    Confidential – Subject to Protective Order" Information or Items:
> all information or items that qualify as (1) agency "records" as defined in
> 5 U.S.C. § 552a(a)(4); (2) individual veterans' medical history or medical
> records or any other information protected by constitutional or statutory
> rights to privacy, including but not limited to information protected from
> disclosure under the Health Insurance Portability and Accountability Act
> (HIPAA), 42 U.S.C. § 201; or (3) information (regardless of how
> generated, stored or maintained) or tangible things that qualify for
> protection under standards developed under Federal Rule of Civil
> Procedure 26(c).

In addition to general protections for private medical information, the proposed order includes a special provision prevent retaliation against veterans, VA employees, or others with a fear of retaliation who participate in favor of Plaintiffs.  Those witnesses have a very real fear of retaliation, as set forth in detail below, and the proposed protections would foster the goal of bringing forth the most evidence possible before the Court, to which the witnesses, without these protections, might be too afraid to testify.  Plaintiffs propose the following specific provisions to prevent such retaliation:

> 12.1    No Retaliation.  No Party shall take any retaliatory action against
> any veteran, potential class member, third-party witness, or employee of a
> Party based on that individual's inclusion or participation in this lawsuit.
> Retaliation shall include but is not limited to the following actions: (1)
> pulling an individual veteran's original claim file for use in the litigation,
> which indefinitely delays any action in his or her benefits claim
> proceeding or appeal; (2) the denial of benefits to individual veterans
> based in whole or in part on his or her inclusion or participation in this

1

2

3

action; and (3) demotion, termination, or other retaliatory actions against Department of Veterans Affairs employees or other federal government employees based on whole or in part on that employee's inclusion or participation in this action.

4

5

6

7

8

9

10

11

12

12.2    Veteran Records.  The Department of Justice shall develop a procedure for obtaining access to veteran records from the VA such as claim files and medical records that, to the maximum extent possible, protects the identity of the veteran or claimant and does not indicate the specific purpose for the request.  Should the VA or Department of Justice determine that any veteran record such as claim files or medical records is required for review, consultation, or evaluation for purpose of this lawsuit, the VA or Department of Justice shall promptly make an electronic or hard copy of the veteran's records and immediately return the records to their appropriate location within the VA.  No veteran record shall be removed from the normal VA adjudication cycle appropriate to that record.  This provision applies equally any veteran made known to the VA in Disclosure or Discovery Material, potential class members, claimants for service-connected death or disability compensation as defined in the complaint, declarants, witnesses, or veterans or claimants who participate in any way in this lawsuit.

13

14

15

16

17

Despite a general refusal to address the proposed text of specific provisions, Defendants have indicated that they are amenable to copying claim files necessary to the litigation to avoid taking them out of circulation in the VA, but do not consent to inclusion of such a provision the protective order itself.  Moser Decl., ¶ 4.

18

19

20

21

Second, further to the goal of preventing retaliation against Plaintiffs' witnesses, Plaintiffs propose to limit disclosure of testimony regarding the identities and any personal identifying information of those with a fear of retaliation to outside counsel or experts.  Plaintiffs propose the following provisions in this regard:

22

23

24

25

26

27

28

2.3    Personal Identifying Information:  (a) Testimony in any form that contains information: (i) protected by the Privacy Act or the right of privacy; (ii) relating to medical condition or treatment; and/or (b) testimony submitted by a veteran or claimant or family members, or any VA employee or consultant, containing identifying information where that individual subjectively expresses a belief that he or she might be subject to retaliation by Defendants.  Identifying information would include names, names of family members or relatives, addresses, phone numbers, email addresses, Social Security numbers, current employment information or employment history, details of military service or service-connected injuries, or any other personal information that would in any way reveal or provide evidence related to the individual's identity.  Personal Identifying

1
2
3

        Information applies equally to veterans, claimants for service-connected death or disability compensation as defined in the complaint, declarants, witnesses, Defendants' employees, or veterans or claimants who participate in any way in this lawsuit.

4
5
6

        2.5    "Personal Identifying Information – Attorneys' Eyes Only" Information or Items:  information or items that qualify as Personal Identifying Information and are submitted in support of a witness's participation in favor of Plaintiffs.  A witness may be a veteran, one of Defendants' employees, or any other relevant non-party.

7
8

A protective order is needed immediately to permit discovery and any appropriate protections for

information filed with the Court.

9

## III.    LEGAL STANDARD

10
11
12
13
14

        Upon motion by a party and for good cause shown, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. Proc. 26(c).  Trial courts have broad discretion in determining what constitutes good cause, whether good cause exists, and, if it does exist, what protection is appropriate when considering a protective order.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984);

15
16

*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) ("[t]he law [sic] gives district courts broad latitude to grant protective orders to prevent disclosure of materials").

17
18
19
20
21
22
23
24
25
26
27

        The application of Rule 26(c) is sweeping as "courts have consistently granted protective orders that prevent disclosure of many types of information."  *Id.* at 1212.  Medical and psychiatric records are routinely acknowledged as proper information for protective orders limiting disclosure and use in litigation.  *Id*. citing *Pearson v. Miller*, 211 F.3d 57, 62-64 (3rd Cir. 2000).  The Ninth Circuit specifically recognizes the privacy protection afforded to personal medical information. *Roe v. Sherry*, 91 F.3d 1270, 1274 (9th Cir. 1996) (recognizing an individual's "strong interest in protecting the confidentiality of [one's medical] status.");  *Planned Parenthood Fed'n of Am., Inc. v. Ashcroft*, No. C03-4872 PJH, 2004 WL 432222 at *2 (N.D. Cal. Mar. 5, 2004) (granting request to seal medical record);  *Samuels v. Cal. Dep't of Corrections & Rehab.*, No. CIV S-05-2337 GEB JFM P, 2007 WL 1345701 (E.D. Cal. May 8, 2007) (documents containing mental health records ordered filed under seal).

28

1    In addition, when "specific harm or prejudice will result if no protective order is granted"

2    there is good cause to limit disclosure and use of that information. *Phillips*, 307 F.3d at 1210-11.

3    This Court has found not only good cause, but "that compelling reasons exist to keep personal

4    information confidential to protect an individual's privacy interest and to prevent exposure to harm."

5    *Nursing Home Pension Fund v. Oracle Corp*., C 01-00988 MJJ, 2007 WL 3232267 at *2 (N.D. Cal.

6    Nov. 1, 2007); *see also Foltz v. State Farm Mut. Auto. Ins.* Co., 331 F.3d 1122, 1134-37 (9th Cir.

7    2003). The protection of confidential private information "is of particular importance" when

8    "witnesses can be susceptible to retaliation and harassment." *Nursing Home Pension Fund* at *2.  A

9    protective order is warranted in such cases "to reduce fears about litigation (expense, invasions of

10    privacy, burdensome distractions, etc) that can dissuade parties whose rights have been violated from

11    even trying to use the courts to seek redress." *Humbolt Baykeeper v. Union Pac. R.R. Co.,* 244

12    F.R.D. 560, 563 (N.D. Cal. 2007).

13    **IV.    ARGUMENT**

14    An order protecting private confidential information is without question required for this case.

15    Plaintiffs have proposed two provisions that go beyond those of the Northern District's model order

16    (1) provisions governing retaliation, and (2) provisions restricting limited categories of information to

17    outside counsel.  This case presents a unique risk of retaliation, as detailed below, requiring the

18    requested protection in Plaintiffs' proposed order.  Further, restricting limited categories of

19    information to outside is a common practice, and the specific information is properly protected by

20    privacy concerns.

21    **A.    The Proposed Provisions Governing Retaliation Are Factually and Legally
          Appropriate.**

22

23    **1.    This Case Presents a Unique Risk of Retaliation Against Veterans, Their
               Family Members, Other Federal Employees, and Third Party Witnesses.**

24    This is a class action lawsuit on behalf of veterans suffering from posttraumatic stress

25    disorder ("PTSD").  As such, counsel for Plaintiffs have been in contact with numerous veterans and

26    their family members regarding potential inclusion as class members.  Declaration of Paul Taira in

27    Support of Plaintiffs' Motion for Protective Order ("Taira Decl."), ¶ 2.  Literally hundreds of veterans

28    and family members have been interviewed regarding their military history and experiences with the

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order                                                     7
sf-2427016

1   VA. *Id.* Many of those interviewed expressed concerns about retaliation from the VA if they were to

2   publicly testify about problems that they encountered in obtaining medical care or in the adjudication

3   of their disability claims. *Id.* There are several factors that give veterans concerns. *Id.* at ¶ 3. First,

4   veterans suffering from PTSD in conjunction with physical injuries are often unable to maintain

5   employment. *Id.* They are totally dependant on the VA for medical care and their disability benefits

6   may constitute their sole source of income. *Id.* Second, the VA has retaliated against veterans who

7   have spoken up about their poor care or delays in disability benefit adjudication. *Id.* In these

8   circumstances, many veterans have expressed serious concerns that they may be harassed or that they

9   may have increased difficulty obtaining medical care or that their disability claims may be delayed,

10  denied, or their benefits terminated. *Id.*; Erspamer Decl. ¶¶ 3, 5-7.

11          Specific examples of retaliation by the VA against a veteran are described in the Declaration

12  of Phillip E. Cushman in Support of Plaintiffs' Motion for Protective Order ("Cushman Decl."). Mr.

13  Cushman is a veteran of the United States Marine Corps who served in Vietnam and currently

14  receives service-connected disability from the VA. Cushman Decl., ¶ 2. Mr. Cushman has been a

15  highly visible public advocate for veterans' rights, particularly regarding medical care and disability

16  benefits. *Id.* After appearing on a television broadcast in 1981 featuring VA officials, Mr. Cushman

17  had his first experience with VA retaliation. *Id.* at ¶ 4. At the time, Mr. Cushman was receiving

18  service-connected disability benefit payments based on a claim for 1974 with the VA. *Id.* at ¶ 3.

19  Two weeks after the broadcast, where he vigorously criticized the VA's treatment of veterans, the

20  VA notified him to appear for an examination in Portland to re-evaluate his disability status. *Id.* Mr.

21  Cushman later learned that this re-examination was ordered from Washington, D.C. *Id.* In 1982, Mr.

22  Cushman created Veterans for Due Process, Inc., a non-profit veterans' advocacy group. *Id.* He later

23  appeared in a televised debate with a VA General Counsel. *Id.* In March 1983, after receiving VA

24  benefits for nine consecutive years, he was again notified by the VA rating board to appear for an

25  examination to determine eligibility for benefits. *Id.* As a result of this examination, Mr. Cushman's

26  VA benefits were abruptly terminated. *Id.* After fighting this termination for four years with the

27  assistance of Senator Gary Hart and Senator Wyden, his VA benefits were finally restored in 1987.

28  *Id.* at ¶ 6. The Director of the VA Compensation and Pension Service had determined the actions

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order
sf-2427016

8

1    terminating the payments were improper.  *Id.*  Mr. Cushman later discovered a VA employee had

2    fraudulently altered his VA records which resulted in a denial of Social Security benefits for over

3    thirty years.  *Id.* at ¶ 7, Ex. A.

4          In addition to the very real fears expressed by veterans and their family members described

5    above and the example of Mr. Cushman, the VA has a history of retaliatory practices in the course of

6    litigation.  These practices were witnessed in a case heard before this Court, *National Association of*

7    *Radiation Survivors v. Turnage*, No. C 83-1861 (MHP) ("*NARS v. Turnage*"), which lasted for over a

8    decade and involved a large volume of discovery against the Veterans Administration (now the

9    Department of Veterans Affairs).  Erspamer Decl., ¶ 1.  Examples of retaliation by the VA in the

10   *NARS v. Turnage* case include the carving of a swastika inside the Star of David on Ronald Abrams'

11   desk at work (Mr. Abrams worked in the VA's Central Office in Washington, D.C. and had just

12   testified at a hearing respecting VA destruction of documents sought in discovery).  *Id.* at ¶ 3.

13   Several other incidents occurred involving veterans, VA claimants and VA employees.  *Id*. at ¶ 5.

14   One incident involved an elderly widow, Jackie Maxwell, whose husband Albert had died before

15   trial, whose bank account was seized by the VA a matter of weeks before her trial testimony based on

16   alleged overpayment of disability compensation the month her husband died.  *Id.*  Another incident

17   involved Barry Boskovich, another VA employee who had testified at his deposition about the VA's

18   destruction of evidence that was responsive to an outstanding document request, and whose

19   supervisor had warned him the day before he left to testify at an evidentiary hearing that he ought to

20   give thought to how his testimony might affect his job and his family.  *Id.*

21         Another problem repeatedly faced in the *NARS v. Turnage* case was that the VA pulled the

22   original claim files of veterans or family members who were class representatives, those who

23   submitted declarations or testimony, or others who were identified in interrogatory answers or other

24   means of discovery.  *Id.* at ¶ 6.  The original claim files were sent to VA attorneys for extended

25   periods of time, which had the effect of suspending action on that veteran's or family member's

26   claim.  *Id.*  Many veterans will not come forward or will hesitate to come forward without assurances

27   their claim files will not be pulled and adjudication suspended.  *Id.*

28

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order                                                      9
sf-2427016

1    Veteran and family members as well as VA employees have a reasonable fear of reprisal

2    should they offer testimony in this case. *Id.* at ¶ 7. Retaliation can take several forms, including

3    adverse action on a claim or appeal, the severance of service-connected death and disability

4    compensation, the suspension of action on a pending claim or appeal, the sudden inability to schedule

5    medical appoints, or a variety of other forms. *Id.*

6                    **2.        Federal Courts, Including the Ninth Circuit, Have Entered Witness-
                                 Anonymity Protective Orders to Prevent Retaliation.**

7

8    The Ninth Circuit has upheld anonymity provisions much more restrictive than those

9    Plaintiffs propose here. In general, the Ninth Circuit will permit a party to proceed anonymously

10   when nondisclosure of a party's identity is "necessary…to protect a person from harassment, injury,

11   ridicule or personal embarrassment." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980)

12   (using pseudonyms for prison inmate who "faced a risk of serious bodily harm" if his role as a

13   government witness were disclosed); *Doe v. Madison Sch. Dist. No. 321*, 147 F.3d 832, 834 n.1 (9th

14   Cir. 1998), *vacated on other grounds*, 177 F.3d 789 (9th Cir. 1999) (en banc) (plaintiff filed case as

15   "Jane Doe" because she feared retaliation by the community). In *Does I thru XXIII v. Advanced

16   Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000), the Ninth Circuit permitted plaintiff garment

17   workers who sued their employers under the Fair Labor Standards Act to proceed anonymously,

18   holding "a party may preserve his or her anonymity in judicial proceedings in special circumstances

19   when the party's need for anonymity outweighs prejudice to the opposing party and the public's

20   interest in knowing the party's identity." Where "pseudonyms are used to shield the anonymous

21   party from retaliation," the court employs considerations such as the severity of the threatened harm,

22   the reasonableness of the anonymous party's fears, and the anonymous party's vulnerability to

23   retaliation. *Id.* (internal citations omitted).

24   The protective order sought by Plaintiffs is much less restrictive than a party proceeding

25   anonymously. Plaintiffs propose that the Court restrict the disclosure and use of personal information

26   that would reveal the identities of veterans, claimants for service-connected death and disability

27   benefits, family members, third-party witnesses, or Defendants' employees who present information

28   in support of Plaintiffs' case who fear retaliation. Actual or threatened retaliation is not required for a

Case No. C-07-3758-SC
Plaintiffs' Motion for Protective Order                                                          10
sf-2427016

1    court to issue a protective order to prevent retaliation. All that is required is that the "witnesses can

2    be *susceptible* to retaliation and harassment." *Nursing Home Pension Fund*, 2007 WL 3232267 at *2

3    (emphasis added). The threatened harm is real and there would be no prejudice to Defendants by

4    these restrictions. Plaintiffs have not only demonstrated that veterans, their family members, and

5    third party witnesses can be susceptible to retaliation, but have detailed specific examples of likely

6    retaliatory activities and past retaliatory actions by this Defendant.

7            **B.**       **Restricting Limited Categories of Information to Outside Counsel is Common**
                          **Practice for Sensitive Information and Furthers the Goal of Preventing**

8                              **Retaliation.**

9            One of the proposed provisions would restrict access to testimony submitted in favor of

10   plaintiffs that contains personal identifying information for a witness with a fear of retaliation to

11   outside counsel and experts. Courts routinely restrict certain confidential information to disclosure

12   only to outside counsel. *Charles O. Bradley Trust v. Zenith Capital LLC,* No. C-04-2239

13   JSW(EMC), 2005 WL 1030218, at *2 (N.D. Cal. May 3, 2005). This Court in *Charles O. Bradley*

14   *Trust* ordered "the production of [sic] documents under a strict protective order, *e.g.*, limiting

15   disclosure to counsel only (*i.e.*, no dissemination to Plaintiffs-clients, let alone the public…)" *Id.*

16   This practice is also recognized by the Supreme Court. *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S.

17   340, 363 n.24 (1979) ("[m]ore commonly, the trial court will enter a protective order restricting

18   disclosure to counsel"). The Northern District's model Stipulated Protective Order specifically

19   contains provisions for certain information to be disclosed to attorneys only. Restricting the

20   disclosure and use of certain personal identifying information only to outside counsel will limit the

21   susceptibility of veterans, family members, third-party witnesses, and employees of Defendants to

22   retaliation.

23           **C.**       **The Documents and Information That Should Be Restricted Are Properly**
                          **Protected by Privacy Concerns.**

24

25           Much of the information regarding veterans that may be used in this lawsuit concerns veterans

26   who suffer from PTSD, which is a severe mental condition. The veteran information may contain

27   detailed diagnoses and treatment for PTSD, as well as information relating to benefit claims for

28   PTSD with the VA. As the Ninth Circuit acknowledges, "Congress has recognized the importance of

1   privacy in medical records in a variety of contexts, most prominently in the Health Insurance

2   Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936 (1996)."

3   *United States v. Comprehensive Drug Testing, Inc.,* 473 F.3d 915, 970 (9th Cir. 2006); *see also*

4   *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1084 (9th Cir. 2007) ("Congress intended

5   through this legislation to 'recogniz[e] the importance of protecting the privacy of health

6   information'").

7          The information is further protected from public disclosure by the Privacy Act, 5 U.S.C. §§

8   552a, *et seq*.  The Privacy Act generally prohibits a "federal agency's disclosure of information

9   pertaining to an individual" unless the individual has given consent or as authorized pursuant to a

10  court order.  *St. Michael's Convalescent Hospital v. California*, 643 F.2d 1369, 1372-73 (9th Cir.

11  1981).  Defendants are bound by the provisions of the Privacy Act, and Plaintiffs sought to

12  accommodate their concern by defining "confidential information" to include "all information or

13  items that qualify as (1) agency "records" as defined in 5 U.S.C. § 552a(a)(4)."  The information

14  sought to be protected here constitutes personal medical information subject to privacy protections

15  that cannot be publicly available and should be subject to a confidential designation and filing under

16  seal.

17  **V.    CONCLUSION**

18         For the foregoing reasons, Plaintiffs request that the Court enter the Proposed Protective

19  Order filed herewith for the protection of confidential private information and prohibiting retaliation.

20

21  Dated: November 30, 2007              GORDON P. ERSPAMER
                                          ARTURO J. GONZALEZ
                                          HEATHER A. MOSER
22                                        BILL D. JANICKI
                                          STACEY M. SPRENKEL
23                                        PAUL J. TAIRA
                                          MORRISON & FOERSTER LLP
24

25

26                                        By:   /s/ Heather A. Moser
                                                   Heather A. Moser
27
                                                Attorneys for Plaintiffs
28