GORDON P. ERSPAMER (CA SBN 83364)
GErspamer@mofo.com
MORRISON & FOERSTER LLP
101 Ygnacio Valley Road, Suite 450
P.O. Box 8130
Walnut Creek, California 94596-8130
Telephone: 925.295.3300
Facsimile: 925.946.9912

SIDNEY M. WOLINSKY (CA SBN 33716)
SWolinsky@dralegal.org
MELISSA W. KASNITZ (CA SBN 162679)
MKasnitz@dralegal.org
JENNIFER WEISER BEZOZA (CA SBN 247548)
JBezoza@dralegal.org
KATRINA KASEY CORBIT (CA SBN 237931)
KCorbit@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Telephone: 510.665.8644
Facsimile: 510.665.8511

**[see next page for additional counsel for Plaintiffs]**

Attorneys for Plaintiff(s)
VETERANS FOR COMMON SENSE, and
VETERANS UNITED FOR TRUTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs, *et al.*, <br><br> Defendants. | Case No.  C-07-3758-SC <br><br> **CLASS ACTION** <br><br> **DECLARATION OF GORDON P. ERSPAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** <br><br> Date:    January 4, 2008 <br> Time:   10:00 a.m. <br> Place:   Courtroom 1, 17th Floor <br> Judge:  Hon. Samuel Conti <br><br> Complaint Filed: July 23, 2007 |

1 **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2 ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
3 HEATHER A. MOSER (CA SBN 212686)
HMoser@mofo.com
4 STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
5 PAUL J. TAIRA (CA SBN 244427)
PTaira@mofo.com
6 MORRISON & FOERSTER LLP
425 Market Street
7 San Francisco, California 94105-2482
Telephone: 415.268.7000
8 Facsimile: 415.268.7522

9 BILL D. JANICKI (CA SBN 215960)
WJanicki@mofo.com
10 MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600
11 Sacramento, California 95814
Telephone: 916.448.3200
12 Facsimile: 916.448.3222

CASE NO. C-07-3758-SC
ERSPAMER DECL. IN SUPP. OF PLS.' MOTION FOR PROTECTIVE ORDER
wc-134834

1  I, Gordon P. Erspamer, declare:

2  1.  I am a partner at Morrison & Foerster LLP, counsel of record for Plaintiffs in this action. I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the facts below. I was the lead attorney in the Northern District case of *National Association of Radiation Survivors vs. Turnage*, No. C83-1861 (MHP), which lasted for over a decade and involved a large volume of discovery against the Veterans Administration (now the Department of Veterans Affairs).

2.  On August 1, 2007, I sent a letter to Steven Bressler, counsel for Defendants, raising the issues of the need for a Privacy Act protective order, document preservation, and our desire to begin the meet and confer process as soon as possible. I specifically raised the issue of a protective order that would protect parties and witnesses from retaliation or other adverse actions by any party. A true and correct copy of my letter to Steven Y. Bressler, dated August 1, 2007, is attached hereto as Exhibit A. Defendants' pattern of stalling began almost immediately. On August 31, 2007, I received the following e-mail from Mr. Bressler:

> "As I said on your voicemail earlier today, we hope to have a draft preservation order to share with you the week of 9/17. I do not expect that it will be practicable for us to begin meeting and conferring with you pursuant to FRCP 16 and 26 until after our deadline to file a responsive pleading. Have a good Labor Day."

My reply to Mr. Bressler's e-mail, also sent on August 31, stated as follows:

> "Defendants have had the complaint for five weeks, and a considerable period of time has elapsed since you received my letter addressing the preservation order and Rule 26 conference. I am disappointed that you believe it will take an additional 2-3 weeks to draft a preservation order, particularly since we have received information regarding your internal instructions to preserve evidence, which, contrary to scope of the complaint and my remarks to you during our telephone conference, reportedly are restricted to documents relating to the Iraq and Afghanistan wars. Therefore, in an attempt to get the ball rolling, I will draft a preservation order over the weekend and get it to you Tuesday. I am also disappointed that you have not given me a date to resume our discussion of the outstanding issues, as you had promised. And I need you to give me a date certain for the Rule 26 conference rather than just a vague reference to some date after you file a responsive pleading. " **In short, this appears to me to be a "big stall" rather than an attempt to meet and confer in good faith as required by the Rules of Civil Procedure and the local rules**. ' (emphasis added).

3.  On August 23, Sid Wolinsky and I had a telephone conference with Steven Bressler and Richard Letley, who participated on behalf of Defendants. During this first conference, I advised Mr. Bressler that, although we were still working on it, Plaintiffs were planning to file a Motion for a

1  Preliminary Injunction, part of which might necessitate expedited discovery.  At that time, I also
2  explained the general sensitivity surrounding the public disclosure of private medical information
3  contained in veterans' claim files or other medical records, and veterans' legitimate fears of retaliation
4  by the VA, summarizing some of the examples of retaliation in the *NARS v. Turnage* case, including the
5  carving of a swastika inside the Star of David on Ronald Abrams' desk at work (Mr. Abrams worked in
6  the VA's Central Office in Washington, D.C. and had just testified at a hearing respecting document
7  destruction).  However, no agreement was reached at that time regarding the terms of a potential
8  protective order.  Defendants' document preservation obligations were also discussed during this
9  telephone conference.

10  4.  On August 28, 2007, I received a letter from Steven Bressler stating the VA's refusal to
11  agree to a protective order preventing VA access to declarations containing confidential information and
12  addressing a Privacy Act Protective Order respecting the VA's production of claim files.  A true and
13  correct copy of Mr. Bressler's letter to me, dated August 28, 2007, is attached hereto as Exhibit B.

14  5.  In addition to the Abrams incident, several other similar incidents stick out in my mind
15  regarding the *NARS* litigation, some of which involved veterans or VA claimants and some of which
16  involved VA employees like Mr. Abrams.  One incident involved an elderly widow, Jackie Maxwell,
17  whose husband Albert had died before the trial.  Her bank account was seized by the VA a matter of
18  weeks before her trial testimony based upon an alleged overpayment of disability compensation the
19  month her husband died.  The VA apparently used the first day of the month Mr. Maxwell died as the
20  severance date for disability compensation.  Another incident involved Barry Boskovich, another VA
21  employee who had testified at his deposition about the VA's destruction of evidence that was responsive
22  to an outstanding document request, and whose Supervisor had warned him the day before he left to
23  testify at an evidentiary hearing that he ought to give thought to how his testimony might affect his job
24  and his family.

25  6.  Another problem we repeatedly faced in the *NARS case* was that the VA would pull the
26  original claim files of veterans or family members who were class representatives, those who submitted
27  declarations or testimony, or others who were identified in interrogatory answers or other means of
28  discovery.  The original claim files were sent to VA attorneys for extended periods of time, which had

1  the effect of suspending action on that veteran's or other family member's claim. While VA counsel in this matter has tentatively agreed to arrange for photocopies of any needed claim files, without assurance in the form of a court order, I believe that many veterans will not come forward or will hesitate to come forward.

7. Based upon these and other incidents that have occurred to clients or members of veterans organizations I have represented, as well as incidents reported to me by others during my twenty-five years of *pro bono* service to veterans, I believe that veterans and family members have a reasonable fear of reprisal should they offer testimony in this case. This retaliation can take several forms, including adverse action on a claim or appeal, the severance of service-connected death and disability compensation, the suspension of action on a pending claim or appeal, the sudden inability to schedule medical appointments, or a variety of other forms.

8. On October 4, 2007, the parties held their initial Federal Rule of Civil Procedure 26(f) conference. At that time, and in later sessions, we revisited the issue of a protective order that would protect the privacy rights of veterans regarding documents reflecting medical conditions or treatment. Despite these efforts, no agreement on the form of an order has been reached, as Defendants have taken the position that no discovery should take place in this action until after their Motion to Dismiss was resolved.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 30th day of November, 2007, at Walnut Creek, California.

                                                  /s/ Gordon P. Erspamer
                                                  Gordon P. Erspamer

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.