**MORRISON | FOERSTER**

PLEASE RESPOND TO:
P.O. BOX 8130
WALNUT CREEK
CALIFORNIA 94596-8130

101 YGNACIO VALLEY ROAD
SUITE 450
WALNUT CREEK
CALIFORNIA 94596-4094

TELEPHONE: 925.295.3300
FACSIMILE: 925.946.9912

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

October 17, 2007

Writer's Direct Contact
925.295.3341
GErspamer@mofo.com

Via E-Mail and U.S. Mail

Steven Y. Bressler, Esq.
Trial Attorney, Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883
Washington, DC 20044

Re:   *Veterans for Common Sense, et al. v. Nicholson, et al.*, United States District Court, Northern District of California, Case No. 07-3758-SC

Dear Mr. Bressler:

This will respond to your letter dated October 11, 2007, which follows our telephone conversation of August 23, 2007, regarding document preservation. Preliminarily, I would like to schedule a call with you later this week or early next week to discuss some of our concerns, and to try to better understand your proposal.

First, before addressing the substance of your letter, let me address the claim in the second paragraph that Plaintiffs have "refused to" provide a "written description of the information you believe is relevant," which dates back to our original conversation on August 23. At that time, I advised you that the Complaint contains an unusual level of detail in explaining our claims, and that the boundaries of relevance are framed by the allegations in the Complaint. Moreover, I also stated that Plaintiffs do not maintain the files and documents held by the VA and do not have access to the personnel necessary to explain them, making Defendants' counsel the only counsel in the case with access to the necessary information. I have noted other examples of this in your prior correspondence, such as your attempt to make something out of Mr. Wolinsky's joke that "we are not interested in that much candor," in reference to describing the details of our litigation strategy. In the future, we would prefer if your letters would try to stick to the facts rather than include characterizations of this type, which are obvious attempts to color the record.

wc-134023

MORRISON | FOERSTER

Steven Y. Bressler, Esq.
October 17, 2007
Page Two

Second, as the remainder of your letter, I have organized the paragraphs that follow to address the substantive topics of your letter, some of which are covered in more than one place in your letter.

### Hold Letter

Thanks for sending the VA's "hold" memorandum dated August 21, 2007, which we note is dated over a month after the complaint was filed and served. At this time, I have a couple of preliminary comments. First, as I previously noted when you described the hold memorandum during our Rule 26 Conference, it appears that Defendants have limited their preservation measures to the VA itself, and have not included the Court of Appeals for Veterans Claims. At that time I gave you some examples of the type of information that should be preserved by the CAVC. Have you followed up on that by taking action to advise the CAVC of its document preservation responsibilities?

In addition, I note that the hold letter includes broader categories and details in several respects than does your preservation proposal, which alone points to several shortcomings in the latter. We understand that at roughly the same period of time as the hold memorandum, the VA also distributed a memorandum to VA employees warning them not to talk to the Plaintiffs and that doing so would be grounds for termination or discipline. We would appreciate it if you could send along a copy of this second memorandum as well.

Finally, the service of Plaintiffs First Request for Production of Documents should help Defendants flesh out at least what Plaintiffs believe to be some of the relevant documents for purposes of discovery, and assist us in framing further discussions regarding the hold memorandum.

### Cost/Burden Claims

As I have stated previously, Plaintiffs have no interest in imposing costs on Defendants that extend beyond the reasonable scope of legitimate discovery. However, our ability to reach agreement based upon this is complicated by several factors, including our lack of understanding of many of the files and computer records maintained by the VA (which is related to your openness in discussing them), the early stage of the litigation, and the degree of confidence we have in the information you receive from your clients and impart to us. As to the latter, and as explained below, we have several concerns about specific proposals included in your letter, which we address elsewhere in this letter. I hope that you agree that our mutual goal should be to ensure that all relevant evidence is produced to determine the merits of the veterans' claims and rights.

As a starting point, we need better to understand the basis for your cost estimates, and issues relating to what categories of documents are routinely saved (*e.g.*, as part of the VA's Master

wc-134023

MORRISON | FOERSTER

Steven Y. Bressler, Esq.
October 17, 2007
Page Three

Record") regardless of whether litigation is pending, what information might be lost, and whether there are reports, summations, compilations or other documents which would summarize the missing (or deleted) information. So let's put this on the agenda for our call.

Second, although we need to allow for reliability testing, our initial preference in discovery is to concentrate discovery on reports, surveys, summaries, tabulations, compilations, abstracts or other similar documents (hereafter "Summaries") rather than raw data. There may be exceptions to this preference in some cases, such as the VA's misreporting of medical appointment data (as found by the GAO), and this does not mean that that raw data becomes irrelevant or unnecessary, such as instances in which Summaries are not available or prove to be unreliable.

Third, even where we have to resort to raw data, our general preference would initially be to try to conduct random samples rather than exhaustively mining each data element. This is reflected in my suggestion to you that both sides try to agree on a random sampling technique which would govern the production of PTSD claims files.

### E-Mails

On page 2 of your letter you address the topic of e-mails, as to which we have several comments. First, your e-mail proposal uses a number of ambiguous terms which make it difficult to assess, including VBA "leadership" and "relevant" employees. Does leadership include at least the following:

(i)     The Office of Field Operations, the Under Secretary, Deputy Under Secretaries, Assistant Deputy Under Secretaries for Benefits, executive assistants for each such as management analysts and lead management analysts?

(ii)    The Compensation & Pension Service Director, Assistant Directors, Deputy Directors, and executive assistants for each?

(iii)   (iii) Similar positions in The Office of Performance Analysis and Integrity, as they prepare documents such as monthly performance reviews and other projections?

(iv)    Similar positions in the Budget Office, as well as contractors such as Price Waterhouse Coopers that perform much of the work on key budget reports?

(v)     Similar positions respecting the employee benefits or relations functions, especially as regards performance reviews and incentive compensation?

wc-134023

MORRISON | FOERSTER

Steven Y. Bressler, Esq.
October 17, 2007
Page Four

In addition, we would also need to include in core group of key employees at the Veterans Health Administration, starting with the Under Secretary for Health, his Deputy, VISN directors, budgeting staff, and each medical center director. As just one example, one problem of which we have been made aware is that many of the VA's Medical Center directors either do not spend funds allocated by Congress for mental health care or reallocate the funds to other purposes. We are also concerned about VA Central Office (CO) staff, such as the offices of Policy, Planning, and Preparedness, Public Affairs, Legislative Affairs, White House Liaison, Budgeting, and Management.

Second, we strongly disagree with your statement that Plaintiffs appear to be interested in only three categories of e-mails, and with your assumption that "all three levels either originate or are dealt with at the leadership level ." The first point is made by comparing the categories in your hold memorandum to those in your letter. As to the second point, obvious examples of other levels of discussion exist regarding budget documents, and incentive compensation.

Our preference regarding e-mails would be to try to agree upon a list of search names and search terms for purposes of conducting a comprehensive and later periodic searches. For purposes of getting this discussion started, we have attached a list of proposed search terms for discussion purposes, which is likely not comprehensive enough. The witness list needs to be expanded to include the persons currently holding the positions in the VA "leadership" group, above, however we define it, and the VHA and regional offices.

Third, your letter refers to "system limitations" with respect to the Central Office server, but you do not explain them. Please try to explain them in layman's terms, if possible. And we would also need to understand what you mean by the overwriting "according to the schedules in place prior to the filing of this litigation."

**File Servers**

You raise a series of issues regarding local file servers. We need to understand much more about these systems and whether they are truly redundant. But as a preliminary matter, we strongly disagree with several of your statements. You state that file servers located at VHA facilities "are unlikely to contain information related to high level policy decisions on the provision of health care to veterans," which you suggest "would be expected to be made at the central office level." We understand that the VISNs (Veterans Integrated Service Networks), and the Medical Directors possess a great deal of autonomy, and that many key decisions are decentralized. But even if this were not the case, whether the VHA facilities are implementing or disregarding the policies of the Central Office would remain as an important issue. And, as noted above, we believe that serious issues exist on the budgeting level regarding the expenditure of funds that Congress has earmarked for mental health care, but which in fact is being spent for other purposes.

wc-134023

**MORRISON | FOERSTER**

Steven Y. Bressler, Esq.
October 17, 2007
Page Five

You propose that the VA be permitted to retain backup tapes of the servers for the VA and VBA Central Offices on a monthly basis, which raises one of our concerns about candor. Our understanding is that the VA routinely retains backup tapes on a monthly level so that your proposal would involve no change over the status quo.

With respect to your regional offices, you propose that the VA save backup tapes of servers for the Oakland VARO and one additional regional office designated by the Plaintiffs (of the 57), and two offices selected by Defendants. We are concerned that too much evidence would be lost by your proposal. We also lack the ability to differentiate amongst the regional offices. However, we are open to further discussion on this, including some sort of limitation on the scope of regional office discovery, as long as we have assurance that we will not be blind-sided by the VA's reliance on documents that it does not produce. Subject to agreement on the latter points we suggest that a 15%-20% sample would be more reasonable, and our contribution would be that the VA save backup tapes of servers from the following regional offices: St. Petersburg; Chicago; Houston; Washington (DC); Seattle; and Montgomery, in addition to the Oakland VARO; and that the VA select up to five additional offices to be designated.

**Veterans Health Administration Documents**

VA medical scheduling issues are obviously a prime issue in this case, including denial of care and delays in providing care. The GAO's recent findings that the VA misrepresents its timeliness record have increased concerns about these issues. Given the high Congressional and public focus on these issues, we are greatly concerned about both the loss of raw data and changes to databases. You state that the VistA records are "redundant," but do not supply sufficient information for us to verify whether this is actually the case or is just a byproduct of your perhaps overly narrow arguments about the scope of discovery. Your claim appears to rest on the proposition that medical records in a veteran's claim file are universally retained, which conflicts with the allegations of the complaint that medical and other records in veterans' claim files are frequently destroyed by adjudicators seeking to enhance their bonuses. We know that this concern is not idle, as demonstrated by the criminal convictions of two BVA attorneys for destroying records in thousands of veterans' claim files. And you also appear to concede that medical information in active VistA system can be destroyed in cases of "business necessity," which you do not explain.

Your assertion that patient records are undiscoverable is in our view erroneous, as protective orders are typically fashioned to protect rights of privacy. And while the Complaint focuses on declaratory and injunctive relief concerning the VA's practices and procedures, and does not seek to disturb the outcome of individual claim decisions, that does not make discovery of VA actions undiscoverable, as you assume. Documents pertaining to all or a random sample of facts documented in veterans' files may be used to prove the existence of systemic, illegal practices and procedures.

wc-134023

**MORRISON | FOERSTER**

Steven Y. Bressler, Esq.
October 17, 2007
Page Six

In your discussion of databases, you suggest backups on a monthly basis, which we understand is already the normal practice. You also suggest that the SIRS database is "obsolete," and that it has been replaced by the VITAL database, another area which has caused concern. Our understanding is that while VITAL was designed and intended to replace SIRS, it often is not used because of perceived shortcomings, and that SIRS is still in active and ongoing use. Please verify whether or not our understanding is correct. Even if it is correct that the "vast majority" of new BDN applications are migrating to what you call new corporate systems (presumably you are referring to VetsNet), that does not make the historical data irrelevant.

### BVA Systems

You offer to retain one set of backup tapes for the Veterans Appeals Control and Locator System (VACOLS), stating that the active VACOLS database is not subject to "routine or automatic deletion," which implies that it is subject to operator controlled deletions. We need to understand more about this system, and other computer systems and databases that may be of use at the BVA, including e-mail.

### Other Systems

Near the close of your letter, you mention a catch-all category of unidentified "systems, databases, servers, and networks" remaining in use, as to which you propose that the VA not maintain any backup tapes except as required by unidentified procedures in place prior to the filing of the Complaint. It should come as no surprise to you that we cannot stipulate to destruction of evidence that we know nothing about. If anything, the default should be retention, not destruction. If you are willing to furnish specifics, this item is open to further discussion.

### Other Document Categories

You letter focuses primarily on electronically stored information in e-mail systems and database. However, there are several document categories or types that are not addressed in your letter or, in many cases, the hold memorandum. For example, telephone records of calls involving the Office of Field Operations and VA executive conferences are extremely important, as are videotapes.

This demonstrates the dangers, at least for Plaintiffs of defining obligations by means of what is to be saved as opposed to what can be discarded or rewritten. The latter would be a better approach because it would enable us to understand what may be lost.

wc-134023

**MORRISON | FOERSTER**

Steven Y. Bressler, Esq.
October 17, 2007
Page Seven

Please give me several dates when you might be available for a conference call and advise me whether you believe that it would be helpful to have a VA client representative on the line.

Very truly yours,

*[signature]*

Gordon P. Erspamer

cc:   Sidney M. Wolinsky

wc-134023

**MORRISON | FOERSTER**

Steven Y. Bressler, Esq.
October 17, 2007
Page Eight

## LIST OF E-MAIL SEARCH TERMS, PHRASES AND NAMES

### NAMES

1. Aument, Ronald
2. Baker, Gary
3. Bates, Al
4. Bilmes, Linda
5. Bowman, Thomas G.
6. Brakefield-Johnson, Geraldine
7. Brown, John
8. Cho, Dr. John
9. Chu, David
10. Cooper, Daniel
11. Cross, Dr. Gerald
12. Duffy, Dennis
13. Dunne, Patrick
14. Ekstrand, Laurie E.
15. Erspamer, Gordon
16. Feeley, William F.
17. Friedman, Mathew J.
18. Gottfried, Lawrence
19. Gunner, Kent
20. Hogensen, Scott
21. Hutter, Paul J.
22. Katz, Dr. Ira
23. Kilpatrick, Dr. Michael
24. Knorr, Dr. Steven
25. Kussman, Dr. Michael
26. Lucey, Jeffrey
27. Mansfield, Gordon H.
28. Mayes, Bradley
29. McCoy, Jack
30. McLemore, William
31. McLendon, Mike
32. Meskin, Stephen
33. Mittlestaedt, Lois
34. Mixon, Major General Robert
35. Mondello, Lisette
36. Navara, Pritz
37. Nebeker, Frank Q.

wc-134023

**MORRISON | FOERSTER**

Steven Y. Bressler, Esq.
October 17, 2007
Page Nine

38. Opfer, George J.
39. Pantaleo, Dr. Michael
40. Pamperin, Tom
41. Perez, Susan
42. Ritchie, Lt. Col. Elspeth
43. Robinson, Steve
44. Russell, Mark
45. Rygwalski, Jill
46. Schulze, Jonathan
47. Secor, Kevin
48. Terry, James P.
49. Tuerk, William F.
50. Van Dieppen, Louise
51. Walcoff, Kimberly
52. Walcoff, Michael
53. Whichard, Ruth
54. Winkenwerder, William
55. Xenakis, Dr. Stephen
56. Zeiss, Antonia

## KEY WORDS AND/OR PHRASES

1. Post-Traumatic Stress Disorder and PTSD
2. Total Disability Based Upon Unemployability and TDIU
3. Veterans for Common Sense and VCS
4. Diagnostic and Statistical Manual of Mental Disorders and DSM
5. The Veterans Judicial Review Act and VJRA
6. Personality Disorder Discharge
7. Remand
8. Delay
9. Stressor
10. Willful Misconduct
11. Waiver
12. U.S. General Accounting Office and U.S. Government Accountability Office and GAO
13. VA Office of Inspector General Report and VAOIG Report
14. Clinician's Guide
15. Clinician's Administered PTSD Scale and CAPS
16. House Committee on Veterans Affairs
17. Senate Committee on Veterans Affairs
18. American Psychological Association

wc-134023

MORRISON | FOERSTER

Steven Y. Bressler, Esq.
October 17, 2007
Page Ten

19. American Psychiatric Association
20. Suicide; Attempted Suicide
21. Workload
22. Productivity; Production; Quota
23. Incentive Compensation; Bonus Incentive
24. Document Destruction
25. 38 U.S.C. § 1710
26. Budget Shortfall; Budget Deficit
27. Dole/Shalala Report
28. Regulation 635-200
29. Chapter 5-13
30. Premature Denial
31. Service Officer
32. Disability Benefits
33. Denial Rates
34. Success Rates
35. Rating Schedule
36. Traumatic Brain Injury and TBI
37. Mental Health Care Budget
38. Claim Quota or Claims Quota
39. Veterans for America
40. Veterans United for Truth
41. Iraq and Afghanistan Veterans of America
42. Department of Defense Mental Health Task Force
43. Seamless Transition; Seamless Transition Task Force; Task Force for Seamless Transition
44. Walter Reed; Walter Reed Army Medical Center
45. Bethesda; Bethesda National Naval Medical Center
46. Patient Tracking; Casualty Tracking; Claims Tracking; Healthcare Tracking; Contingency Tracking System; M2VA
47. Anxiety
48. Depression
49. Freedom of Information Action; FOIA; FOI