1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| VETERANS FOR COMMON SENSE, a District of Columbia Nonprofit Organization; and VETERANS UNITED FOR TRUTH, INC., a California Nonprofit Organization, representing their members and a class of all veterans similarly situated, | No. C-07-3758 SC |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE VETERAN AND FAMILY MEMBER PERSONAL IDENTIFYING INFORMATION UNDER <u>SEAL</u> |
| v. | |
| R. JAMES NICHOLSON, Secretary of Department of Veterans Affairs; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; JAMES P. TERRY, Chairman, Board of Veterans Appeals; DANIEL L. COOPER, Under Secretary, Veterans Benefits Administration; BRADLEY G. MAYES, Director, Compensation and Pension Service; DR. MICHAEL J. KUSSMAN, Under Secretary, Veterans Health Administration; PRITZ K. NAVARA, Veterans Service Center Manager, Oakland Regional Office, Department of Veterans Affairs; UNITED STATES OF AMERICA; ALBERTO GONZALES, Attorney General of the United States; and WILLIAM P GREENE, JR., Chief Judge of the United States Court of Appeals for Veterans Claims, | |
| Defendants. | |

26   **I.    <u>INTRODUCTION</u>**

27        This matter comes before the Court on the Motion to Dismiss

28   filed by the defendants James Nicholson <u>et al.</u> ("Defendants").

**United States District Court**
For the Northern District of California

<u>See</u> Docket No. 19.  The plaintiffs Veterans for Common Sense and Veterans United for Truth, Inc. ("Plaintiffs"), filed an Opposition and Defendants submitted a Reply.[1]  <u>See</u> Docket Nos. 36, 55.  Also before the Court is Defendants' Motion for Protective Order to Stay Discovery ("Motion for Protective Order").  <u>See</u> Docket No. 39.  Plaintiffs submitted an Opposition and Defendants filed a Reply.  <u>See</u> Docket Nos. 46, 62.  The Court held a hearing on the above motions on December 14, 2007.  Finally, Plaintiffs have filed an Administrative Motion to File Veteran and Family Member Personal Identifying Information Under Seal ("Motion to File Under Seal").  <u>See</u> Docket No. 68.

After considering the parties' papers and oral arguments, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.  Defendants' Motion For Protective Order to Stay Discovery, which was granted during the December 14 hearing, is now moot, as Defendants only sought to stay discovery pending this Court's decision on Defendants' Motion to Dismiss.  Finally, Plaintiffs' Motion to File Under Seal is GRANTED.

**II.  <u>BACKGROUND</u>**

Plaintiffs are non-profit organizations that represent the interests of veterans of the Iraq, Afghanistan and earlier

---

[1]   The Court reminds both parties that the Civil Local Rules are not optional.  In particular, the Court directs both parties to familiarize themselves with Rule 7-4(b).  Plaintiffs have filed an Opposition in violation of this Rule.  Defendants, not to be outdone, have filed a Reply that is also in violation of this Rule. If this pattern continues the Court will strike all material exceeding the page limits set out in Rule 7-4(b).

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  conflicts who have sought medical treatment or filed disability

2  claims based on Post-Traumatic Stress Disorder ("PTSD").

3  Plaintiffs filed a Complaint for injunctive and declaratory relief

4  that broadly challenges the benefits adjudications programs of the

5  United States Department of Veterans Affairs ("VA").

6      Veterans seeking benefits for service-connected disability or

7  death must file a claim in one of 58 regional VA offices.  The

8  proceedings at the regional offices are ostensibly designed to be

9  non-adversarial.  For example, veterans are prohibited from paying

10  an attorney for assistance at this initial stage, see 38 U.S.C. §

11  5904(c)(1); discovery tools are limited or nonexistent, see id. §

12  5103A; and veterans are generally prevented from compelling the

13  attendance of witnesses to support their claims, see id. § 5711.

14      A veteran who disagrees with the regional office decision can

15  file an appeal with the Board of Veterans Appeals ("BVA"), which

16  decides an appeal only after the claimant has been given an

17  opportunity for a hearing.  See id. § 7105(a).  An adverse

18  decision by the BVA may then be appealed to the United States

19  Court of Appeals for Veteran Claims ("CAVC"), an Article I court

20  established by Congress with the passage of the Veterans' Judicial

21  Review Act ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105 (1988).

22  The CAVC has exclusive jurisdiction to review decisions of the

23  BVA.  See 38 U.S.C. § 7252(a).  Adverse decisions from the CAVC

24  may then be appealed to the United States Court of Appeals for the

25  Federal Circuit, see id. § 7292(a), and then to the Supreme Court.

26  Id. § 7292(c).

27      Plaintiffs have filed four causes of action seeking

28                          -3-

declaratory and injunctive relief challenging the
constitutionality of various provisions of the VJRA as well as
seeking enforcement of several preexisting statutes.
Specifically, Plaintiffs seek declaratory relief for: (1) denial
of due process in violation of the Fifth Amendment of the United
States Constitution; (2) denial of access to the courts in
violation of the First and Fifth Amendments; (3) violation of 38
U.S.C. § 1710(e)(1)(D) pertaining to medical care for returning
veterans; and (4) violation of Section 504 of the Rehabilitation
Act.  Plaintiffs also seek injunctive relief.  Defendants, in
seeking dismissal of Plaintiffs' Complaint, raise numerous issues.
The Court addresses each in turn.

**III.  <u>STANDING</u>**

        Defendants argue that Plaintiffs lack standing because they
have failed to identify individual members of Plaintiffs'
organizations who have suffered an alleged injury, and, even if
such members had been identified, their participation in the
action would be required.

> An association has standing to bring suit
> on behalf of its members when its members
> would otherwise have standing to sue in
> their own right, the interests at stake
> are germane to the organization's
> purpose, and neither the claim asserted
> nor the relief requested requires the
> participation of individual members in
> the lawsuit.

<u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528
U.S. 167, 181 (2000).

        Plaintiffs have alleged that their organizations are

-4-

**United States District Court**
For the Northern District of California

comprised of veterans, including many who have claims pending
before the VA or the BVA, who receive VA benefits that have been
threatened with reduction by the VA, or who suffer from PTSD.
Compl. ¶¶ 35-38.  Such allegations are sufficient, at this stage,
to satisfy the Court that Plaintiffs' members would "otherwise
have standing to sue in their own right." Friends of the Earth,
528 U.S. at 181.  In addition, Plaintiffs argue that they
themselves are harmed by Defendants' alleged violations because
Plaintiffs are forced to spend their resources in attempting to
secure benefits for their members. See Havens Realty Corp. v.
Coleman, 455 U.S. 363, 379 (1982) (stating that an allegation of a
"consequent drain on the organization's resources" is sufficient
to satisfy the standing requirement of a "concrete and
demonstrable injury . . ."); see also Warth v. Seldin, 422 U.S.
490, 515 (1975) (holding that "[t]here is no question that an
association may have standing in its own right to seek judicial
relief from injury to itself and to vindicate whatever rights and
immunities the association itself may enjoy").

Defendants also argue that resolution of the present action
requires the participation of Plaintiffs' members, thereby
depriving Plaintiffs of organizational standing.  In particular,
Defendants assert that individual participation of Plaintiffs'
members would be necessary to determine whether any of the alleged
violations caused actual harm and whether the relief sought would
redress this harm.

To satisfy this standing requirement, the following is
required:

-5-

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

> The association must allege that its
> members, or any one of them, are
> suffering immediate or threatened injury
> as a result of the challenged action of
> the sort that would make out a
> justiciable case had the members
> themselves brought suit. So long as this
> can be established, and so long as the
> nature of the claim and of the relief
> sought does not make the individual
> participation of each injured party
> indispensable to proper resolution of the
> cause, the association may be an
> appropriate representative of its
> members, entitled to invoke the court's
> jurisdiction.

10   <u>Warth</u>, 422 U.S. at 511.   Given the nature of Plaintiffs' claims,

11   especially in regard to the allegations of systemic legal

12   violations, the Court, at this stage, is not convinced that the

13   individual participation of each injured party will be

14   indispensable to the present action.   Plaintiffs' due process

15   claim will depend largely on the claims adjudication procedures

16   enacted under the VJRA, and not necessarily on individual

17   veteran's claims.   The same is true regarding Plaintiffs' access

18   to the courts claim.   Plaintiffs' claim for denial of statutorily-

19   mandated health care can satisfy this standing requirement if, for

20   example, Plaintiffs demonstrate that the current system under the

21   VJRA leads to system-wide denials of this health care or if the VA

22   fails to recognize and treat PTSD within this two-year period.

23   Nonetheless, it is worth emphasizing that should Plaintiffs'

24   claims eventually require the participation of individual members,

25

26

27

28                                      -6-

1    such claims will be barred for lack of standing.[2]

2         Finally, Defendants argue that Plaintiffs have failed to meet

3    the requirements for prudential standing and should instead seek

4    redress in the representative branches of government.  "In

5    addition to the immutable requirements of Article III [standing],

6    the federal judiciary has also adhered to a set of prudential

7    principles that bear on the question of standing."  Bennet v.

8    Spear, 520 U.S. 154, 162 (1997) (internal quotation marks

9    omitted).  Defendants essentially assert that because Plaintiffs

10   direct their claims against the VA, Plaintiffs impermissibly seek

11   to compel this Court to usurp the role of the political branches

12   and "shape the institutions of government in such fashion as to

13   comply with the law and constitution."  Lewis v. Casey, 518 U.S.

14   343, 349 (1996).  In support of this, Defendants argue that

15   "absent from the complaint is a claim of injury to any individual

16   from these challenged matters."  Mot. to Dismiss at 5.  As noted

17   above, however, the Court disagrees with this characterization of

18   Plaintiffs' claims.  To the contrary, the Complaint alleges that

19   thousands of veterans, if not more, are suffering grievous

20   injuries as the result of their inability to procure desperately-

21   needed and obviously-deserved health care.  The issue, as detailed

22   below, is whether it is within this Court's power to remedy the

23   current situation.  For the reasons stated above, the Court finds

24   that Plaintiffs have satisfied the requirements for standing.

25

26        [2]  As discussed below, such claims would also be precluded by
     38 U.S.C. § 511(a), which bars judicial review in district courts
27   of the VA Secretary's decisions on individual benefits claims.

28                                  -7-

**United States District Court**
For the Northern District of California

## IV.  **SOVEREIGN IMMUNITY**

Defendants assert that Plaintiffs' claims are barred by sovereign immunity.  Both parties agree that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, is the relevant statute for determining whether a valid waiver of sovereign immunity exists.  Section 702 of the APA states, in part:

> An action in a court of the United States seeking relief other than monetary damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

5 U.S.C. § 702.  See also Gallo Cattle Co. v. Dep't of Agric., 159 F.3d 1194, (9th Cir. 1998) (stating that the APA "does provide a waiver of sovereign immunity in suits seeking judicial review of a federal agency action under [28 U.S.C.] § 1331").

Although the APA provides a valid waiver, there is conflicting Ninth Circuit authority for whether this waiver is limited by Section 704.  Section 704 states, in part, that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court, are subject to judicial review."[3]  5 U.S.C. § 704.

In The Presbyterian Church v. United States, 870 F.2d 518 (9th Cir. 1989), the court stated that section 702 of the APA "waives sovereign immunity in all actions seeking relief from

---

[3]  Neither party argues that the agency action in question is made reviewable by any statute.

-8-

United States District Court
For the Northern District of California

official misconduct except for money damages." <u>Id.</u> at 525.  The

court further stated:  "Nothing in the language of the [1976]

amendment [to § 702] suggests that the waiver of sovereign

immunity is limited to claims challenging conduct falling in the

narrow definition of 'agency action.'"[4]  <u>Id.</u>

In <u>Gallo Cattle</u>, however, the court held that section 704

does in fact restrict the APA's waiver of sovereign immunity.  The

court stated:

> [T]he APA's waiver of sovereign immunity
> contains several limitations.        Of
> relevance here is § 704, which provides
> that    only    "[a]agency    action    made
> reviewable by statute and final agency
> action   for   which   there   is   no   other
> adequate remedy in a court, are subject
> to judicial review." . . . .  [Thus, the
> agency action here] is only reviewable if
> it constitutes "final agency action" for
> which   there   is   no   other   remedy   in   a
> court.

159 F.3d at 1198.

The Ninth Circuit recently recognized this internal division,

stating, "[w]e see no way to distinguish <u>The Presbyterian Church</u>

from <u>Gallo Cattle</u>."  <u>Gros Ventre Tribe v. United States</u>, 469 F.3d

801, 809 (9th Cir. 2006).  The court explained:

> Under <u>The Presbyterian Church</u>, § 702's
> waiver is not conditioned on the APA's
> "agency action" requirement.  Therefore,
> it follows that § 702's waiver cannot
> then be conditioned on the APA's "final
> agency action" requirement. . . .  But
> that is directly contrary to the holding
> in <u>Gallo Cattle</u> where we stated that "the

---

[4]  Agency action is defined as "the whole or a part of an
agency rule, order, license, sanction, relief, or the equivalent or
denial thereof, or failure to act . . . ."  5 U.S.C. § 551(13).

1
2

> APA's waiver of sovereign immunity
> contains several limitations," including
> § 704's final agency action requirement.

3   Id. (citing Gallo Cattle, 159 F.3d at 1198).  The court in Gros

4   Ventre Tribe nonetheless left the intra-circuit conflict

5   unresolved, stating that because of the circumstances of the case,

6   "we need not make a sua sponte en banc call to resolve this

7   conflict . . . ."  Id. at 809.

8        Since The Presbyterian Church was decided, the Supreme Court

9   has weighed in on the question of whether sovereign immunity is

10  limited by § 704.  In Lujan v. National Wildlife Federation, 497

11  U.S. 871 (1990), the Court made clear that the waiver of sovereign

12  immunity under § 702 is in fact constrained by the provisions

13  contained in § 704.  The Court stated:

14
15
16
17
18

> [T]he person claiming a right to sue
> [under § 702] must identify some "agency
> action" that affects him in the specified
> fashion . . . .  When . . . review is
> sought not pursuant to specific
> authorization in the substantive statute,
> but only under the general provisions of
> the APA, the "agency action" in question
> must be "final agency action."

19  Id. at 882.  Accordingly, waiver of sovereign immunity under § 702

20  of the APA is limited by § 704.

21       Defendants assert that Plaintiffs have failed to challenge a

22  final agency action and that, even if Plaintiffs were able to

23  identify some final agency action, waiver of sovereign immunity is

24  nonetheless precluded because Plaintiffs cannot demonstrate, as

25  they must, that "there is no other adequate remedy in a court . .

26  . ."  5 U.S.C. § 704.  The Court addresses each argument in turn.

27       As a preliminary matter, "[t]he burden is on the party

28                               -10-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    seeking review under § 702 to set forth specific facts (even

2    though they may be controverted by the Government) showing that he

3    has satisfied its terms." Lujan, 497 U.S. at 884.  The Court is

4    mindful that Lujan was decided at the summary judgment stage.  See

5    id.   Before this Court is Defendants' Rule 12(b)(6) motion to

6    dismiss; as such, Plaintiffs' burden is less than that faced by

7    the plaintiffs in Lujan and the Court "presumes that [Plaintiffs']

8    general allegations embrace those specific facts that are

9    necessary to support the claim." Id. at 889.

10        **A.    Final Agency Action**

11        Defendants, in arguing that Plaintiffs fail to challenge any

12   final agency actions, state: "Rather than challenging any

13   particular agency action, plaintiffs seek an extraordinarily broad

14   injunction from this Court that plaintiffs claim would deal with

15   alleged shortfalls" and deficiencies in the VA health care system.

16   Mot. at 7.  In Lujan, the Supreme Court stated:

17            [R]espondent cannot seek wholesale
              improvement of this program by court
18            decree, rather than in the offices of the
              Department or the halls of Congress,
19            where programmatic improvements are
              normally made.  Under the terms of the
20            APA, respondent must direct its attack
              against some particular "agency action"
21            that causes it harm.

22   Lujan, 497 U.S. at 891.

23        Although the Court rejected the notion that the request for a

24   broad injunction, in and of itself, is an indication of an absence

25   of final agency action, the Court also expressed its disapproval

26   of court-initiated systemic change:

27            Except where Congress explicitly provides

28                            -11-

1
        for our correction of the administrative
        process at a higher level of generality,
2
        we intervene in the administration of
        laws only when, and to the extent that, a
3
        specific "final agency action" has an
        actual or immediately threatened effect.
4
        .  .  .  Such an intervention may
        ultimately have the effect of requiring a
5
        regulation, a series of regulations, or
        even a whole program to be revised by the
6
        agency in order to avoid the unlawful
        result that the court discerns.  But it
7
        is assuredly not as swift or as
        immediately far-reaching a corrective
8
        process as those interested in systemic
        improvement would desire.  Until confided
9
        to us, however, more sweeping actions are
        for the other branches.

10

11   _Id._ (internal quotation marks omitted).

12      In the present case, Plaintiffs have sufficiently articulated

13 various actions and delays by Defendants that qualify as "final

14 agency actions."  "Agency action" is defined as "the whole or a

15 part of an agency rule, order, license, sanction, relief, or the

16 equivalent or denial thereof, or failure to act . . . ."  5 U.S.C.

17 § 551(13).  The APA defines "agency rule" as "the whole or a part

18 of an agency statement of general or particular applicability and

19 future effect designed to implement, interpret, or prescribe law

20 or policy . . . ."  5 U.S.C. § 551(4).  An agency action is

21 "final" under the APA where two conditions are met: (1) the action

22 "mark[s] the consummation of the agency's decisionmaking process .

23 . .--it must not be of a merely tentative or interlocutory

24 nature," _Bennet v. Spear_, 520 U.S. 154, 178 (1997) (internal

25 citations and quotation marks omitted); and (2) the action is one

26 "by which rights or obligations have been determined, or from

27 which legal consequences will flow."  _Id._ (internal citations and

28

quotation marks omitted).

Contrary to Defendants' assertion, the fact that Plaintiffs do not challenge any agency action with respect to individual benefits claims does not, in and of itself, necessarily indicate that Plaintiffs have failed to challenge any final agency decision.  Plaintiffs' Complaint challenges various aspects of the VJRA.  Many of these aspects are rightfully considered final agency action as they constitute the VA's denial of relief of health care and benefits.  For example, Plaintiffs challenge certain restrictions placed by the VJRA on veteran's procedural rights in securing benefits and the summary and allegedly premature denial of PTSD claims, both of which result in allegedly unlawful denial of benefits.  See Compl. ¶¶ 30, 31.  These policies and procedures fall within the broad statutory definition of "final agency action."

Plaintiffs also challenge the failure by the VA to make timely decisions on benefits claims and provide timely medical care to veterans returning from war.  See Compl. ¶¶ 31a, 145-68, 184-200.  This challenge also falls within the definition of "final agency action."  As the APA states, a court reviewing claims against an agency "shall compel agency action unlawfully withheld or unreasonably delayed . . . ."  5 U.S.C. § 706(1).  See also Ecology Ctr., Inc. v. U.S. Forest Serv., 192 F.3d 922, 926 (9th Cir. 1999) (stating that courts "have permitted jurisdiction under the limited exception to the finality doctrine [of § 706(1)] only when there has been a genuine failure to act").  Unlike the plaintiff in Ecology Center, the Plaintiffs in the present case

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

have in fact "pleaded a genuine § 706(1) claim." <u>Id.</u>  Plaintiffs
have alleged that the VA is failing to provide health care to
veterans returning from Iraq and Afghanistan for a statutorily-
mandated term of two years.  <u>See</u> Compl. §§ 91-92, 265-66.  This
failure to act is a properly pleaded § 706(1) claim.  Plaintiffs
have also alleged systemic, unreasonable delays by the VA in
providing health care.  These allegations of unreasonable delay
also bring Plaintiffs' claims within the exception provided for in
§ 706(1).  For these reasons, the Court finds that Plaintiffs have
sufficiently alleged various challenges to "final agency actions."

        The Court notes, however, that Plaintiffs are forced to tread
a fine line.  Although Plaintiffs must challenge some "agency
action" for a valid waiver of sovereign immunity under the APA,
Plaintiffs are nonetheless precluded from challenging any
regulations promulgated by the Secretary of the VA.  <u>See</u> 38 U.S.C.
§ 502 (stating that judicial review of VA regulations "may be
sought only in the United States Court of Appeals for the Federal
Circuit").[5]  At this stage Defendants have not established that
the combination of this APA requirement with the preclusive effect
of § 502 bars this Court from hearing Plaintiffs' claims.
Plaintiffs must nonetheless be mindful of this legal Scylla and
Charybdis that Congress has seen fit to impose.

        **B.   <u>Alternate Adequate Remedy</u>**

        In addition to final agency action, § 704 also requires that
"there is no other adequate remedy in a court" for there to be a

---

        [5]  The Court addresses § 502's preclusive effect on judicial
review in further detail below.

-14-

**United States District Court**
For the Northern District of California

valid waiver of sovereign immunity under the APA.   5 U.S.C. § 704.
Defendants assert that the system for adjudicating veterans'
claims, as established by the VJRA, provides the opportunity for
an alternate adequate remedy.

    The system established by Congress for adjudicating veterans'
individual benefit claims does not provide an adequate alternative
remedy for Plaintiffs' claims for several reasons.  The CAVC, an
Article I appellate court, only has jurisdiction to affirm,
reverse, or remand decisions of the BVA on individual claims for
benefits.  See 38 U.S.C. § 7252(a).  The CAVC's jurisdiction is
therefore limited to the issues raised by each veteran based on
the facts in his or her claim file from his or her particular
case.  See, e.g., Clearly v. Brown, 8 Vet. App. 305, 307 (1995)
(stating "[i]n order to obtain review by the Court of Veterans
Appeals of a final decision of the Board of Veterans' Appeals, a
person adversely affected by that action must file a notice of
appeal with the Court") (emphasis added).  Accordingly, the CAVC
would not have jurisdiction over or the power to provide a remedy
for the systemic, constitutional challenges to the VA health
system such as those currently alleged by Plaintiffs.

    The CAVC itself has recognized its limited remedial power,
stating:  "[I]t must be borne in mind that the jurisdiction of
this Court is over final decisions of the BVA. . . .  Nowhere has
Congress given this Court either the authority or the
responsibility to supervise or oversee the ongoing adjudication
process which results in a BVA decision."  Clearly, 8 Vet. App. at
308.  Although the facts in Clearly are clearly distinguishable

-15-

United States District Court

For the Northern District of California

1    from those currently before this Court, many of Plaintiffs'

2    challenges are aimed directly at the processes that the regional

3    offices and the BVA use to reach decisions of individual claims.

4    See, e.g., Compl. ¶¶ 30, 31, 227-34.  These processes, as conceded

5    by the CAVC itself, are outside the purview of its jurisdiction.

6    It is thus impossible for this Court to understand how the VA

7    system can be considered an adequate alternate forum when that

8    forum cannot entertain the type of claims raised by Plaintiffs in

9    the present action.

10        Finally, Plaintiffs, as organizations seeking to protect the

11   interests of a broad class of veterans, would be unable to bring

12   suit in the VA system.  Organizations do not and cannot submit

13   individual claims for benefits to the regional offices and,

14   therefore, are precluded from ever presenting claims on appeal to

15   the BVA, the CAVC, or the Federal Circuit.  Under the position

16   advocated by Defendants, Plaintiffs would be barred from raising

17   these particular claims in any forum.  Plaintiffs' members would

18   be left to litigate their own individual claims while also

19   attempting to shoehorn into their claims the challenges now

20   asserted by Plaintiffs.  The statutory framework of the VA

21   benefits system does not provide for this and, as such, the VA

22   benefits system is not an adequate alternate forum.

23        Defendants cite to a Sixth Circuit case in support of their

24   argument in favor of sovereign immunity.  In Beamon v. Brown, 125

25   F.3d 965, 970 (6th Cir. 1997), the court upheld a district court's

26   finding that the system of judicial review established by the VJRA

27   for the adjudication of claims regarding veterans benefits

28                                -16-

1    provided the plaintiffs with an alternate adequate remedy.

2    Accordingly, there was no valid waiver of sovereign immunity under

3    the APA.  Id.

4         The three plaintiffs in Beamon were veterans who had applied

5    for benefits from the VA and had experienced delays in receiving

6    final decisions.  Id. at 966.  The plaintiffs, who sought to

7    represent a class of similarly situated veterans, challenged the

8    manner in which the VA processed claims for veterans benefits.

9    Id.  Specifically, the plaintiffs alleged, inter alia, that "the

10   VA's procedures for processing claims cause[d] unreasonable

11   delays, thereby violating their rights under the Administrative

12   Procedure Act . . . and under the Due Process Clause of the Fifth

13   Amendment . . . ."  Id.  Much like Plaintiffs in the present case,

14   the plaintiffs in Beamon sought the following relief:

15              [A] declaratory judgment finding the VA
                to be in violation of the law; injunctive
16              relief compelling the VA to develop and
                implement standards and procedures for
17              the timely handling of claims filed with
                the Cleveland Regional Office of the VA
18              or with the Board of Veterans' Appeals
                ("BVA"); and injunctive relief ordering
19              the VA to develop and implement standards
                and procedures for the timely handling of
20              claims remanded from the BVA to the
                Cleveland Regional Office.

21

22   Id.  In addition, the Beamon plaintiffs claimed that "their action

23   in the District Court challenged only the procedures that the VA

24   employs, not any of its substantive decisions."  Id.

25        Underpinning the court's decision in Beamon was the

26   conclusion that the system established by the VJRA contained "two

27   sources of power with which it can remedy claims of unreasonable

28                                 -17-

administrative delay or inaction."   Id.   The first source is the

All Writs Act, which empowers "[t]he Supreme Court and all other

courts established by Act of Congress to issue all writs necessary

or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law."  28 U.S.C. § 1651.

The second source is 38 U.S.C. § 7261(a)(2), which provides that

"the Court of Appeals for Veterans Claims, to the extent necessary

to its decision and when presented, shall . . . compel action of

the Secretary unlawfully withheld or unreasonably delayed."

     Although the plaintiffs in Beamon acknowledged that these two

sources of power do provide "adequate remedies for individuals

claiming VA inaction or unreasonably delayed benefits decisions,"

Beamon, 125 F.3d at 968, they argued that the Court of Veterans

Appeals ("CVA"),[6] did "not have the power to conduct discovery,

issue declaratory judgments, certify class actions, or issue

injunctive relief that would address constitutional deficiencies

in the VA's procedures."   Id.   Relying on the All Writs Act and §

7621(a)(2), the Sixth Circuit disagreed with the plaintiffs'

contentions and stated:  "[T]here is no reason to believe that

[the VJRA] system cannot provide for the adequate adjudication of

[the plaintiffs'] challenges to the process by which the VA

decides its benefits decisions."   Id.

     With all due respect to the Sixth Circuit, this Court is

convinced that the VJRA system is not an adequate alternative.

_____

     [6]  The CVA was the predecessor to the CAVC.  See 38 U.S.C. §
7261(a)(2), 1998 Amendment, substituting "Court of Appeals for
Veterans Claims" for "Court of Veterans Appeals."  The statutory
language of § 7252 was not altered.

-18-

**United States District Court**
For the Northern District of California

First, as noted above, Plaintiffs in the present case have no way of even entering the adjudication system established by the VJRA; Plaintiffs are organizations, not individual veterans seeking individual benefits.

Second, the jurisdiction of the CAVC is statutorily limited to the "power to affirm, modify, or reverse a decision of the Board [of Appeals] or to remand the matter, as appropriate." 38 U.S.C. § 7252(a). Thus, the CAVC is limited in its jurisdiction to reviewing decisions on individual claims. The CAVC may not review broad challenges to the statutory framework unless such a challenge is grounded in the claim of a veteran seeking his or her individual benefits. Such is not the case here.

Finally, as noted above, the CAVC itself has recognized the limitations of its power to review the processes used by the BVA to reach decisions on individual claims. In Dacoran v. Brown, 4 Vet. App. 115 (1993), for example, the CVA denied a widow's petition for a writ of mandamus with respect to her constitutional challenges to the 1945 Recruitment Act. The court noted that constitutional challenges will be "presented to this Court only in the context of a proper and timely appeal taken from such decision made by the VA Secretary through the BVA." Id. at 119. As noted above, Plaintiffs in the present case would be unable to bring a claim before a VA regional office, much less appeal such a claim to the BVA or CAVC. Regarding its ability to address constitutional issues through the All Writs Act, the court stated:

> Although this Court also has authority to reach constitutional issues in considering petitions for extraordinary

-19-

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

> writs under 28 U.S.C. § 1651(a), the
> Court may, as noted above, exercise such
> authority only when a claimant has
> demonstrated that he or she has no
> adequate alternative means of obtaining
> the relief sought and is clearly and
> indisputably entitled to such relief.
> See Erspamer [v. Derwinski, 1 Vet. App.
> 3, 7 (1990)]. Where, as here, a claimant
> remains free to challenge the
> constitutionality of a statute in the
> U.S. district court, she has not
> demonstrated that she lacks adequate
> alternative means of obtaining the relief
> sought.

9   Id. Thus, the very courts that were established by the VJRA

10  recognize not only the jurisdiction of district courts for

11  constitutional claims but, more importantly for this issue,

12  recognize the limited jurisdiction that they themselves possess.

13  Accordingly, the Court finds that the VA claims adjudication

14  system is not an adequate alternative forum for Plaintiffs'

15  claims.  The Court therefore finds, at this stage of the

16  proceedings, that Plaintiffs have satisfied the requirements for a

17  valid waiver of sovereign immunity under the APA.

18

19  **V.    SUBJECT MATTER JURISDICTION**

20      Defendants argue that even if Plaintiffs have satisfied the

21  requirements for standing and waiver of sovereign immunity, 38

22  U.S.C. § 511 nonetheless strips this Court of any jurisdiction to

23  hear Plaintiffs' claims.  Section 511 states, in part:

24

25

26

27

> The Secretary [of Veterans Affairs] shall
> decide all questions of law and fact
> necessary to a decision by the Secretary
> under a law that affects the provision of
> benefits by the Secretary to veterans or
> the dependents or survivors of veterans.
> Subject to subsection (b), the decision

28

-20-

United States District Court

For the Northern District of California

1  
2  
3  

> of the Secretary as to any such question
> shall be final and conclusive and may not
> be reviewed by any other official or by
> any court, whether by an action in the
> nature of mandamus or otherwise.

4  38 U.S.C. § 511(a).  Defendants read the statute broadly and argue

5  that it precludes this Court from hearing any type of case

6  involving any aspect of veterans benefits except, arguably, facial

7  constitutional challenges to veterans benefits legislation.

8  Plaintiffs read § 511 narrowly and argue that it only precludes

9  district courts from reviewing the Secretary's determinations on

10  individual benefits determinations, and not from considering broad

11  constitutional challenges to the VA system.

12      As a threshold matter it is clear that § 511 does not strip

13  this Court of the ability to hear facial constitutional challenges

14  to the VA benefits system.  See, e.g., Larabee v. Derwinski, 968

15  F.2d 1497, 1501 (2nd Cir. 1992) (stating "district courts continue

16  to have jurisdiction to hear facial challenges of legislation

17  affecting veterans' benefits") (internal quotation marks and

18  emphasis omitted); Broudy v. Mather, 460 F.3d 106, 114 (D.C. Cir.

19  2006) (stating "district courts have jurisdiction to consider

20  questions arising under laws that affect the provision of benefits

21  as long as the Secretary has not actually decided them in the

22  course of a benefits proceeding").  Even the Sixth Circuit, while

23  articulating a broad preclusive effect on judicial review of

24  veterans benefits claims, nonetheless acknowledged that facial

25  challenges are permitted in district courts.  See Beamon, 125 F.3d

26  at 972-73 (stating "district court jurisdiction over facial

27  challenges to acts of Congress survived the statutory revisions

28  

-21-

United States District Court
For the Northern District of California

1  that established the CVA").  To this Court's knowledge, only one

2  court has suggested that § 511 precludes district courts from

3  reviewing even facial challenges.  See Hall v. U.S. Dept. of

4  Veterans Affairs, 85 F.3d 532 (11th Cir. 1996).  Given that Hall

5  involved a constitutional challenge to a VA regulation, rather

6  than an Act of Congress, any suggestion that facial attacks

7  against statutes are precluded is dicta.  More importantly, the

8  reasoning behind this suggestion is not convincing.  Thus, the

9  Court is persuaded that facial constitutional attacks are

10  permitted.  Defendants themselves concede as much, stating:  "The

11  only category of cases that has arguably been excepted from the

12  preclusive effect of the current section 511 is facial

13  constitutional challenges to veterans' benefits."  Mot. to Dismiss

14  at 13.  (Defendants also concede that at least some of Plaintiffs'

15  claims may be so characterized: "plaintiffs' claims include facial

16  challenges to the VJRA and other statutes that established the

17  VA's informal claims adjudication process."  Reply at 5.)[7]

18       Although the Ninth Circuit has not squarely addressed the

19  scope of § 511's preclusive effect on judicial review, other

20  Circuits have.  In support of their argument that § 511 strips

21  district courts of jurisdiction over all other challenges to the

22  VA health benefits system, Defendants rely heavily on the Sixth

23  Circuit's decision in Beamon, 125 F.3d at 965.  In Beamon, the

24  plaintiffs challenged the manner in which the VA processed claims

25  for veterans benefits.  Id.  Specifically, Plaintiffs alleged,

26  _____

27       [7]  Whether Plaintiffs have in fact stated a claim for a facial
constitutional challenge is discussed below.

28                              -22-

United States District Court
For the Northern District of California

1    inter alia, that "the VA's procedures for processing claims

2    cause[d] unreasonable delays, thereby violating their rights under

3    the Administrative Procedure Act . . . and under the Due Process

4    Clause of the Fifth Amendment . . . ."  Id.

5         In addition to finding no waiver of sovereign immunity, the

6    Sixth Circuit also held that the "VJRA explicitly granted

7    comprehensive and exclusive jurisdiction to the CVA and the

8    Federal Circuit over claims seeking review of VA decisions that

9    relate to benefits decisions under § 511(a)."  Id. at 971

10   (emphasis added).  Thus, according to the court, district courts

11   could not hear "constitutional issues and allegations that a VA

12   decision has been unreasonably delayed."  Id.

13        The court in Beamon was particularly wary of permitting

14   judicial review in a district court over claims that necessitated

15   review of VA decisions on individual benefits claims.  The court

16   stated:

17             Plaintiffs in this case allege that VA
               procedures cause unreasonable delays in
18             benefits decisions.  To adjudicate this
               claim, the District Court would need to
19             review individual claims for veterans
               benefits, the manner in which they were
20             processed, and the decisions rendered by
               the regional office of the VA and the
21             BVA.  This type of review falls within
               the exclusive jurisdiction of the CVA as
22             defined by [38 U.S.C.] § 7261(a).

23   Id. at 970-71.

24        Defendants in the present action argue that Plaintiffs'

25   claims would require the same manner of review of individual

26   claims that was required in Beamon and that such review is clearly

27   prohibited by § 511.  A close reading of Beamon, however,

28                                  -23-

1    indicates that the court's concern sprang primarily from the lack

2    of specificity of the plaintiffs' claims.  The court stated:

3           [P]laintiffs here point to no specific
            procedures  that  violate  their
4           constitutional rights.  Plaintiffs' bare
            allegations  that  VA  procedures  allow
5           unreasonable  delays  appear  closer  to
            challenges  to  individual  benefit
6           decisions than a constitutional challenge
            to specific procedures.

7

8    Id. at 973 n. 5.

9         In contrast, Plaintiffs in the present action enumerate

10   specific procedures that allegedly violate the constitutional

11   rights of veterans.  For example, Plaintiffs challenge certain

12   restrictions placed by the VA on the procedural rights of veterans

13   in securing benefits, including the absence of trial-like

14   procedures at the regional office stage and the absence of a class

15   action procedure; they challenge the summary and allegedly

16   premature denial of PTSD claims; and they challenge the VA's

17   incentive compensation program.  See Compl. ¶¶ 30, 31, 227-34.

18   Whether these allegations actually state a claim for a

19   constitutional violation is discussed more fully below.  In

20   considering the preclusive effect on jurisdiction of § 511 and in

21   distinguishing Beamon, however, this difference is worth noting.

22   Unlike the situation in Beamon, this Court will not be forced to

23   comb through the adjudication process of individual claims in

24   search of some constitutional violation that causes delays.  To

25   the contrary, Plaintiffs have attacked specific procedures as

26   violating the rights of veterans.  At this stage of the

27   proceedings, the Court cannot conclude that it will necessarily be

28                              -24-

forced to examine individual claims in order to entertain all of Plaintiffs' challenges.

The court in <u>Beamon</u> also relied on the history of veterans' benefits legislation in reaching its "conclusion that Congress intended to vest the CVA with exclusive jurisdiction over constitutional challenges to VA decisions." <u>Id.</u> at 971. Defendants and Plaintiffs contest this history and thus a brief examination is in order. Until 1973, 38 U.S.C. § 211, which is now § 511, barred judicial review of any decision of the Secretary of the VA "on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans . . . ." Recognizing the constitutional danger of precluding all judicial review of constitutional claims, the Supreme Court, in <u>Johnson v. Robison</u>, 415 U.S. 361 (1974), held that § 211(a) precluded review of decisions made by the VA Administrator but did not preclude district court jurisdiction over constitutional challenges to acts of Congress relating to veterans benefits. In 1988, the Supreme Court further limited the preclusive effect of § 211 by permitting district court review of whether a VA regulation violated a statute, the Rehabilitation Act, that did not directly relate to veterans benefits. <u>See</u> <u>Traynor v. Turnage</u>, 485 U.S. 535 (1988).

Soon after <u>Traynor</u> was decided, Congress passed the VJRA. Under the VJRA the CVA was established, thereby providing veterans with an avenue for review that was previously unavailable. The VJRA also provided that appeals could be taken from the CVA to the Federal Circuit and, from there, to the Supreme Court. The actual

-25-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   language of § 211 changed only slightly.  Compare 38 U.S.C. §

2   211(a) (1979) with 38 U.S.C. § 211(a) (1988).[8]  The parties'

3   dispute regarding the significance of the VJRA thus hinges on its

4   legislative history and the subsequent interpretation of § 511 by

5   other courts.

6       Defendants, citing various records from Congress, argue that

7   the legislative history of the VJRA clearly evinces Congressional

8   intent to preclude judicial review in district court of all

9   challenges to the VA system.  See Mot. to Dismiss at 10-11.

10  Plaintiffs counter with their own citations to the legislative

11  history that demonstrate Congressional intent to preserve judicial

12  review in district courts of constitutional challenges to the VA

13  that do not involve review of VA decisions of individual benefits.

14  See Opp'n at 13-14.  Suffice to say that the Congressional record

15  provides less than a clear indication of Congress's intent with

16  regards to the VJRA's effect on judicial review.  Far more helpful

17  are the decisions by other courts that have addressed this issue.

18      In Beamon, 125 F.3d at 970, the court read the preclusive

19  effect of § 511 broadly.  Although the court stated that facial

20  constitutional challenges were still permitted in district courts,

21  it held that where plaintiffs challenge the constitutionality of

22  the procedures used by the VA to adjudicate benefits claims, § 511

23  precludes review in district court.

24      Conversely, in Broudy, 460 F.3d at 114, the D.C. Circuit

25  interpreted the preclusive effect of § 511 more narrowly.  The

26  _____

27      [8]  Section 211(a) was renumbered as section 511(a) in 1991.
    See Bates v. Nicholson, 398 F.3d 1355, 1364 n.7 (Fed. Cir. 2005).

28                                  -26-

court stated:

> In the defendants' view, § 511(a)
> prevents a district court from exercising
> jurisdiction over any case that would
> require it to decide a question of law or
> fact that arises under a law that affects
> the provision of benefits. . . .  This
> argument misreads the statute.  Section
> 511(a) does not give the VA <u>exclusive</u>
> jurisdiction to construe laws affecting
> the provision of veterans benefits or to
> consider all issues that might somehow
> touch upon whether someone receives
> veterans benefits.  Rather, it simply
> gives the VA authority to consider such
> questions when making a decision about
> benefits . . . and, more importantly for
> the question of our jurisdiction,
> prevents district courts from reviewing
> the Secretary's decision once made . . .
> .

<u>Id.</u> at 112 (internal quotation marks and citations omitted,

emphasis in original).

Although this interpretation of § 511 is clearly more broad

than that of the Sixth Circuit in <u>Beamon</u>, <u>Broudy</u> does not provide

Plaintiffs in the present case with the full support they claim.

Specifically, the court in <u>Broudy</u> was careful to note that

"district courts have jurisdiction to consider questions arising

under laws that affect the provision of benefits as long as the

Secretary has not actually decided them in the course of a

benefits proceeding."  <u>Id.</u> at 114.

Defendants argue that the targets of the plaintiffs'

challenges in <u>Broudy</u> involved issues that had never been decided

by the VA, while the Plaintiffs in the present case attack various

policies and procedures that have been specifically decided and

adopted by the VA.  Thus, according to Defendants, <u>Broudy</u> is

-27-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

inapplicable.  This argument, however, ignores the above cited language "in the course of a benefits proceeding."  Id.  Many of Plaintiffs' challenges attack the structure of the VJRA, including VA decisions that were not made in the course of a benefits proceeding, but instead were made at a broad, system-wide level. Thus, where Plaintiffs challenge VA decisions that were made outside the course of a benefits proceeding, such claims survive the preclusive effect of § 511.

Defendants' argument that § 511(a) precludes all challenges to the VA has also been rejected by the Federal Circuit.  In Bates v. Nicholson, 398 F.3d 1355, 1365 (Fed. Cir. 2005), the court stated: "Section 511(a) does not apply to every challenge to an action by the VA.  As we have held, it only applies where there has been a 'decision' by the Secretary."

Both the existing case-law and the language of § 511 are clear that facial constitutional challenges may be brought in district courts.  Plaintiffs' facial challenges are thus properly before this Court.[9]  Plaintiffs also argue that as-applied challenges are not necessarily precluded.  The Court disagrees. By its language, § 511 precludes review in a district court of any decision by the Secretary involving individual benefits.  An as-applied challenge would require this Court to review a decision by the Secretary involving an individual claim.  See, e.g., Roulette v. City of Seattle, 97 F.3d 300, 312 (9th Cir. 1996) (stating "[i]n an as-applied challenge, there is a narrow focus on the

---

[9]  The Court examines Plaintiffs' claims below to determine which may be classified as a facial challenge.

-28-

United States District Court
For the Northern District of California

1    particular plaintiff's behavior and whether the statute is

2    constitutional as applied to her").

3        Finally, it is important to recognize the CAVC's

4    understanding of the scope of § 511.  This is especially true in

5    light of Defendants' argument that the CAVC and the other forums

6    for adjudicating veterans claims, as established under the VJRA,

7    have exclusive jurisdiction over Plaintiffs' claims.  In <u>Dacoran</u>,

8    4 Vet. App. at 118, the CVA held that federal district courts

9    provided an alternative forum to the VA system to litigate

10   constitutional challenges.  The court stated:

11             A claim which alleges only the
              unconstitutionality of a statute is not a
12             claim "under a law that affects the
              provision of benefits by the Secretary"
13             under § 511(a), but rather is a claim
              under the Constitution of the United
14             States.  As such, it is beyond the
              purview of section 511(a).  Nothing in
15             title 38 prohibits a constitutional
              challenge to any of the provisions of
16             that title from being litigated in U.S.
              district court.

17

18   <u>Id.</u> at 118-19.  This language, in conjunction with the reasons

19   stated above, makes clear that § 511 does not preclude review of

20   all of Plaintiffs' claims in this Court.

21        Defendants also argue that 38 U.S.C. § 502 bars district

22   court review of Plaintiffs' claims challenging VA regulations.

23   <u>See</u> <u>Chinnock v. Turnage</u>, 995 F.2d 889, 893 (9th Cir. 1993)

24   (stating "[u]nder 38 U.S.C. § 502, VA rulemaking is subject to

25   judicial review only in the Federal Circuit").  Plaintiffs,

26   however, explicitly state in their Complaint that they are not

27   attacking the constitutionality of any VA regulation but instead

28                           -29-

**United States District Court**
For the Northern District of California

1   are attacking various aspects of the VJRA, which is an act of

2   Congress.  <u>See</u> <u>Disabled Am. Veterans v. Dept. of Veterans Affairs</u>,

3   962 F.2d 136, 140 (2nd Cir. 1992) (stating "it is well established

4   . . . that the Article III district courts have power to rule on

5   the constitutionality of acts of Congress").  So long as

6   Plaintiffs limit their challenges to Acts of Congress and certain

7   actions and failures to act by the VA, as discussed in section IV.

8   A, <u>supra</u>, and refrain from challenging any VA regulations, § 502

9   will not preclude judicial review in this Court.

10

11  **VI.   <u>CONSTITUTIONAL CLAIMS</u>**

12       Defendants argue that even if the Court has jurisdiction to

13  hear Plaintiffs' constitutional claims, these claims nonetheless

14  fail to state a claim as facial constitutional challenges.  A

15  Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests

16  the sufficiency of the complaint.  Dismissal pursuant to Rule

17  12(b)(6) is appropriate only where it "appears beyond doubt that

18  the plaintiff can prove no set of facts in support of his claim

19  which would entitle him to relief." <u>Levine v. Diamanthuset, Inc.</u>,

20  950 F.2d 1478, 1482 (9th Cir. 1991) (citing <u>Conley v. Gibson</u>, 355

21  U.S. 41, 45-46 (1957)).  In reviewing the motion, a court must

22  assume all factual allegations made by the nonmoving party to be

23  true and construe them in the light most favorable to the

24  nonmoving party.  <u>North Star Int'l v. Ariz. Corp. Comm'n</u>, 720 F.2d

25  578, 590 (9th Cir. 1993).

26       Contrary to any suggestions by Plaintiffs, facial challenges

27  are still governed by the standard articulated in <u>United States v.</u>

28                                  -30-

1   <u>Salerno</u>, 481 U.S. 739 (1987).  In <u>Salerno</u>, the Court stated that

2   "[a] facial challenge to a legislative Act is, of course, the most

3   difficult challenge to mount successfully, since the challenger

4   must establish that no set of circumstances exists under which the

5   Act would be valid."  <u>Id.</u> at 745.  The Ninth Circuit has recently

6   affirmed <u>Salerno</u> as the controlling standard.  <u>See Engine Mfrs.</u>

7   <u>Ass'n v. S. Coast Air Quality Mgmt. Dist.</u>, 498 F.3d 1031, 1049

8   (9th Cir. 2007).

9       Plaintiffs assert two constitutional claims:  the first is

10  that the claims adjudication process, as established by the VJRA,

11  is unconstitutional because it denies due process to veterans

12  seeking health benefits.  The second is that the VJRA denies

13  veterans access to the courts.  The Court addresses each in turn.

14      **A.   Due Process**

15      Defendants assert that Plaintiffs' due process claim should

16  be dismissed because Plaintiffs have failed to allege a due

17  process violation and because the VA claims adjudication process

18  is, in fact, constitutional.  In particular, Defendants assert

19  that the non-adversarial adjudication system at the regional

20  office level satisfies the due process requirements of notice and

21  the opportunity to be heard.

22      The Supreme Court has provided the following guidelines for

23  due process analysis:

24                  [T]he identification of the specific
                    dictates of due process generally
25                  requires consideration of three distinct
                    factors:  First, the private interest
26                  that will be affected by the official
                    action; second, the risk of an erroneous
27                  deprivation of such interest through the

28                              -31-

United States District Court

For the Northern District of California

procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "Procedural due process requires adequate notice and an opportunity to be heard." Kirk v. U.S. I.N.S., 927 F.2d 1106, 1107 (9th Cir. 1991)

If the VA claims adjudication system were truly non-adversarial, then Plaintiffs' due process claim would be on shaky ground. And although the system was clearly intended to be non-adversarial, Plaintiffs have alleged that this is no longer the case. The Federal Circuit, which has exclusive appellate jurisdiction under the VJRA, has recognized this de-facto shift towards an adversarial system. See, e.g., Bailey v. West, 160 F.3d 1360, 1365 (Fed. Cir. 1998) (en banc) (stating "[s]ince the Veterans' Judicial Review Act . . ., it appears the system has changed from a nonadversarial, ex parte, paternalistic system for adjudicating veterans' claims, to one in which veterans . . . must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review") (internal citations and quotation marks omitted).

Although it is clearly not in this Court's power to rewrite a statute that provides for a non-adversarial adjudication process at the regional office level, it is within the Court's power to insist that veterans be granted a level of due process that is

-32-

commensurate with the adjudication procedures with which they are confronted.  See Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 320 (1985) (stating "'due process' is a flexible concept--that the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur"). Defendants' insistence that "plaintiffs cannot seriously dispute that the initial, regional office step of the claims process is not, in any sense, adversarial," is undermined by the Federal Circuit's contrary conclusion cited above.  At this stage of the proceedings, and without further factual development, the Court cannot conclude that Plaintiffs have not stated a valid claim for due process violations.  In addition, Defendants' blanket assertion that the VA system provides adequate due process is premature and insufficient to support a motion to dismiss.

Finally, it is worth emphasizing that to state a valid facial constitutional challenge, a plaintiff need not establish that the entire statute is unconstitutional.  See Engine Mfrs. Ass'n, 498 F.3d at 1049 (9th Cir. 2007) (stating "Salerno does not require a plaintiff to show that every provision within a particular multifaceted enactment is invalid").  The Court is satisfied that Plaintiffs' have, at this stage, sufficiently alleged due process violations within the VJRA.  For example, Plaintiffs' claim that veterans are systematically denied statutorily mandated health care within two years after returning from wars and lack any recourse for obtaining this entitlement states a valid due process

-33-

1  violation.  The Court notes that Plaintiffs do not assert that any

2  particular veteran is entitled to benefits or medical care;

3  rather, Plaintiffs seek to ensure that veterans are afforded fair

4  procedures for obtaining this care.

5      Finally, Defendants' argument that any examination of

6  Plaintiffs' due process claims will involve a review of individual

7  benefits decisions, and therefore be precluded by § 511, is

8  unpersuasive.  The Supreme Court has made clear that due process

9  analysis does not depend on individual cases.  The Court has

10  stated:

11              In applying this [the Matthews, 424 U.S.
            at 335] test we must keep in mind . . .
12          the fact that the very nature of the due
            process inquiry indicates that the
13          fundamental fairness of a particular
            procedure does not turn on the result
14          obtained in any individual case; rather,
            "procedural due process rules are shaped
15          by the risk of error inherent in the
            truth-finding process as applied to the
16          generality of cases . . . ."

17  Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 321

18  (1985) (citing Matthews, 424 U.S. at 344).

19      For the reasons stated above, Defendants' Motion to Dismiss

20  Plaintiffs' First Claim for Relief is DENIED.

21      **B.   Right of Access**

22      Plaintiffs allege that the VJRA deprives veterans of

23  meaningful access to the courts in violation of the First and

24  Fifth Amendments to the United States Constitution.  "'Two

25  categories' of 'denial of access' cases emerge from the case law

26  of the Supreme Court and the Courts of Appeals."  Broudy, 460 F.3d

27  at 117 (citing Christopher v. Harbury, 536 U.S. 403, 413 (2002)).

28

United States District Court
For the Northern District of California

One is "forward-looking claims," <u>Harbury</u>, 536 U.S. at 414 n.11, and the other is "backward-looking claims." <u>Id.</u> at 414.  Although neither party addresses which type of claim Plaintiffs assert, it appears that Plaintiffs bring a forward-looking claim.  To present such a claim, a plaintiff must allege an "arguable underlying claim and present foreclosure of a meaningful opportunity to pursue that claim." <u>Broudy</u>, 460 F.3d at 121 (relying on <u>Lewis v. Casey</u>, 518 U.S. 343, 353 (1996), and <u>Harbury</u>, 536 U.S. at 415)).

Defendants' primary argument in favor of dismissal is that the claim is derivative of Plaintiffs' due process claim and, because the due process claim should be dismissed, so too should Plaintiffs' right of access claim.  As noted above, the Court not only has jurisdiction over Plaintiffs' due process claim but Plaintiffs have stated a valid cause of action for due process violations.  Thus, Plaintiffs have alleged an "arguable underlying claim," <u>Broudy</u>, 460 F.3d at 121, and therefore have stated a valid claim for a violation of the right to access courts.

Defendants also argue that the Supreme Court's ruling in <u>Walters</u> forecloses Plaintiffs' right of access claim.  Such a question, however, goes to the merits of Plaintiffs' claim and need not be decided at this stage.  Defendants' Motion to Dismiss Plaintiffs' Second Claim for Relief is therefore DENIED.

**VII.  <u>STATUTORY CLAIMS</u>**

    **A.  <u>Medical Care Under 38 U.S.C. § 1710(e)(1)(D)</u>**

Plaintiffs' third cause of action seeks declaratory relief for violations of 38 U.S.C. § 1710(e)(1)(D).  Plaintiffs allege

-35-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  that the VA "violated a clear statutory mandate under 38 U.S.C. §

2  1710 to provide two years of medical care to returning veterans."

3  Opp'n at 23.

4       Section 1710 states, in relevant part:

5           [A] veteran who served on active duty in
            a theater of combat operations . . .
6           after November 11, 1998, is eligible for
            hospital care, medical services and
7           nursing home care . . . notwithstanding
            that there is insufficient medical
8           evidence to conclude that such condition
            is attributable to such service.

9

10  38 U.S.C. § 1710(e)(1)(D) (emphasis added).  Section 1710(e)(3)(C)

11  provides the two-year period for medical care, "beginning on the

12  date of the veteran's discharge or release from active military,

13  naval, or air service . . . ."  Id. § 1710(e)(3)(C).

14       Defendants argue that the entitlement to medical care is

15  tempered by another subsection of § 1710, which states that the

16  VA's obligation to provide care "shall be effective in any fiscal

17  year only to the extent and in the amount provided in advance in

18  appropriations Acts for such purposes."  Id. § 1710(a)(4).  There

19  is no indication, however, that subsection (a)(4) is intended to

20  apply to subsection (e)(1)(D).  Subsection (a)(4)states, in its

21  entirety:

22           The requirement in paragraphs (1) and (2)
            [of section (a)] that the Secretary
23           furnish hospital care and medical
            services, the requirement in section
24           1710A(a) of this title that the Secretary
            provide nursing home care, the
25           requirement in section 1710B of this
            title that the Secretary provide a
26           program of extended care services, and
            the requirement in section 1745 of this
27           title to provide nursing home care and

28                              -36-

**United States District Court**
For the Northern District of California

1

2

3
prescription medicines to veterans with service-connected disabilities in State homes shall be effective in any fiscal year only to the extent and in the amount provided in advance in appropriations Acts for such purposes.

4

5  Id. § 1710(a)(4).  Nothing in this language indicates that the

6  mandatory entitlement to health care for two years, as provided in

7  § 1710(e)(1)(D), is limited by this subsection.  This reading is

8  reinforced by the fact that those sections that were intended to

9  be limited by § 1710(a)(4) were specifically listed.  The Court is

10  therefore convinced that § 1710(e)(1)(D) provides a mandatory

11  entitlement to health care for veterans for two years upon leaving

12  the service.  Contrary to Defendants' assertion, § 1710(a)(4) does

13  in fact create a property interest protected by the Due Process

14  Clause.

15      Defendants also argue that this Court is prohibited from

16  reviewing this claim because it requires the examination of

17  individual benefits decisions to determine whether there has been

18  improper delay or denial.  Such an argument would be correct if

19  Plaintiffs were individual veterans challenging a decision made by

20  the Secretary that affected their benefits.  See 38 U.S.C. § 511.

21  That is not the case, however.  First, Plaintiffs have alleged

22  that some veterans are being totally denied this statutory

23  entitlement.  At the very least, this states a claim for denial of

24  due process.  Cf. Devine v. Cleland, 616 F.2d 1080, 1086 (9th Cir.

25  1980) (stating that where a veteran "has a statutory entitlement

26  to receipt of an educational assistance allowance," "[s]uch a

27  statutory entitlement does constitute a 'property right' protected

28

-37-

by the Due Process Clause").

Second, Plaintiffs' claim that veterans are being denied this medical care does not necessarily implicate "decisions" by the VA Secretary.  Such denials may instead merely demonstrate the abdication of the VA to provide services that it must.  As the D.C. Circuit has stated, "§ 511(a) prevents district courts from hearing a particular question only when the Secretary has actually decided the question. . . .  Where there has been no such decision, § 511(a) is no bar."  <u>Broudy</u>, 460 F.3d at 114 (internal quotation marks, citations and alterations omitted).

For these reasons, Defendants' Motion to Dismiss Plaintiffs' Third Claim for Relief is DENIED.

## B.    Rehabilitation Act

Plaintiffs' fourth cause of action seeks relief from violations of section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794(a).  Section 504 states, in part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794.

In <u>Traynor</u>, 485 U.S. at 544, the Supreme Court stated that "the question whether a Veterans' Administration regulation violates the Rehabilitation Act is not foreclosed from judicial review by § 211(a)."  Soon after <u>Traynor</u> was decided, Congress overhauled section 211 in the VJRA, and, for the first time,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

provided for judicial review of veterans' benefits determinations in the Federal Circuit.  The parties dispute whether the VJRA effectively overruled Traynor.

The few courts that have been faced with this question have concluded that Traynor was in fact overruled by the VJRA.  In Larabee, the Second Circuit stated:

> By providing judicial review in the Federal Circuit, Congress intended to obviate the Supreme Court's reluctance to construe the statute [§ 211] as barring judicial review of substantial statutory and constitutional claims, see Traynor . . ., while maintaining uniformity by establishing an exclusive mechanism for appellate review of decisions of the Secretary.

968 F.2d at 1501 (internal citations omitted).  The Sixth Circuit in Beamon, 125 F.3d at 972, reached the same conclusion.

Plaintiffs, citing no conflicting authority, instead argue that the VJRA merely narrowed the scope of the Traynor holding and precluded judicial review of individual benefits decisions.  As such, Plaintiffs urge that the VJRA did not affect a district court's ability to apply a civil rights statute, such as the Rehabilitation Act, to the VA.  Plaintiffs argue that the concern driving the Traynor decision is actually of no concern here.  The Court in Traynor stated:

> It cannot be assumed that the availability of the federal courts to decide whether there is some fundamental inconsistency between the Veterans' Administration's construction of veterans' benefits statutes and the admonitions of the Rehabilitation Act will enmesh the courts in the technical and complex determinations and

-39-

**United States District Court**
For the Northern District of California

1          applications of Veterans' Administration
           policy connected with veterans' benefits
2          decisions . . . .

3    485 U.S. at 1379-80.

4        Plaintiffs' argument, however, is undercut by several

5    factors.  First, as the other courts to consider this issue have

6    held, Congress, in passing the VJRA, explicitly provided the

7    availability of federal court review by creating review of

8    veterans' benefits decisions in the Federal Circuit.  The VJRA,

9    therefore, was a response to the Supreme Court's rejection of a

10   system with no federal court review.

11       Second, Plaintiffs' Rehabilitation Act claim is, ultimately,

12   a request for this Court to rewrite VA "policies, procedures, and

13   practices [in order] to accommodate veterans with PTSD who are

14   unable to comply with the agency's arbitrary and complex

15   administrative hurdles . . . ."  Opp'n at 24.  This requires

16   precisely the type of "technical and complex determinations and

17   applications of Veterans' Administration policy" that the Traynor

18   Court warned against.  Traynor, 485 U.S. at 1379-80.  Contrary to

19   Plaintiffs' assertions, this Court cannot possibly assess whether

20   the current system employed by the VA discriminates against

21   veterans with PTSD without delving into a review of VA regulations

22   and individual benefit decisions of veterans with PTSD.  Such a

23   review is clearly foreclosed by both Traynor and by § 511.

24       Finally, Plaintiffs' Rehabilitation Act claim challenges

25   numerous VA regulations.  As already discussed, challenges to such

26   regulations, as mandated by Congress, are reviewable only in the

27   Federal Circuit.  See 38 U.S.C. § 502 (stating that an action by

28                               -40-

**United States District Court**
For the Northern District of California

1  the VA Secretary "may be sought only in the United States Court of

2  Appeals for the Federal Circuit").

3      For the reasons stated above, Defendants' Motion to Dismiss

4  Plaintiffs' Fourth Claim for Relief is GRANTED.

5

6  **VIII.** **JURISDICTION OVER U.S. COURT OF APPEALS FOR VETERANS CLAIMS**

7      Defendants in their Reply brief raise, for the first time,

8  the issue of whether this Court has jurisdiction over the CAVC.

9  Specifically, Defendants argue that the APA does not provide a

10  waiver of sovereign immunity for suits against the courts of the

11  United States.  See 5 U.S.C. § 551(1)(B).  Defendants claim that

12  even though the CAVC is an Article I court, it is nevertheless

13  independent from the VA, and is therefore insulated from any

14  waiver of sovereign immunity under the APA.  As this issue was

15  raised for the first time in Defendants' Reply, and as Plaintiffs

16  have not had the opportunity to respond, the Court declines to

17  address it at this time.  Instead, Defendants may file a motion to

18  dismiss the CAVC.

19

20  **IX.** **CONCLUSION**

21      For the reasons stated above, Defendants' Motion to Dismiss

22  is DENIED with respect to Plaintiffs' First, Second and Third

23  Claims and GRANTED with respect to Plaintiffs' Fourth Claim.  At

24  oral argument on December 14, the Court granted Defendants' Motion

25  for Protective Order to Stay Discovery pending the Court's ruling

26  on Defendants' Motion to Dismiss.  The Protective Order is now

27  moot and Plaintiffs may proceed with discovery.  Plaintiffs'

28                                    -41-

1  Administrative Motion to File Veteran and Family Member Personal

2  Identifying Information Under Seal is hearby GRANTED.

3       Plaintiffs' Motion for Preliminary Injunction, Docket No. 88,

4  filed on December 12, 2007, was also stayed pending the issuance

5  of this Order.  Defendants have not yet filed an Opposition and

6  the Court therefore sets the following briefing schedule:

7  Defendants' Opposition shall be electronically filed no later than

8  12:00 p.m. on Wednesday, January 30.  Plaintiffs' Reply shall be

9  filed by 12:00 p.m. on Wednesday, February 6, and the hearing for

10  the Preliminary Injunction is scheduled for Friday, February 22,

11  at 10:00 a.m. in Courtroom # 1 on the 17th Floor.

12

13

14       IT IS SO ORDERED.

15

16       Dated: January 10, 2008

17  _____
                                            UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28
                                    -42-