PETER D. KEISLER
Assistant Attorney General
SCOTT N. SCHOOLS
Interim United States Attorney
RICHARD LEPLEY
Assistant Branch Director
DANIEL BENSING D.C. Bar No. 334268
STEVEN Y. BRESSLER D.C. Bar No. 482492
KYLE R. FREENY California Bar No. 247857
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-5108
Facsimile: (202) 616-8460
Email: Kyle.Freeny@USDOJ.gov

Attorneys for Defendants Hon. James B. Peake, the U.S. Department of Veterans Affairs, Hon. James P. Terry, Hon. Daniel L. Cooper, Hon. Bradley G. Mayes, Hon. Michael J. Kussman, Ulrike Willimon, the United States of America, Hon. Peter D. Keisler, and Hon. William P. Greene, Jr.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH,<br><br>Plaintiffs,<br><br>v.<br><br>Hon. JAMES B. PEAKE, Secretary of Veterans Affairs, *et al.*,<br><br>Defendants. | No. C 07-3758-SC<br><br>**DECLARATION OF ANTONETTE ZEISS, Ph.D, IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**<br><br>Date: February 22, 2008<br>Time: 10:00 a.m.<br>Courtroom: 1 |

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

1

I, Antonette Zeiss, Ph.D., hereby declare the following:

1) I am employed as the Deputy Chief Consultant in the Office of Mental Health Services, Patient Care Services, in the Central Office of the Department for Veterans Affairs (VA). The information contained in this declaration is based on my personal knowledge and on information made available to me in the course of my official duties as Deputy Chief Consultant in the Office of Mental Health Services.

2) I began working for VA in 1982 at VA Palo Alto. I was appointed to my current position in the Office of Mental Health Services (OMHS) in 2005. This office is responsible for oversight of and consultation to mental health programs and services in VA medical facilities and community based outpatient clinics. The OMHS also works collaboratively with the Readjustment Counseling Services programs, the programs of which are often referred to as Vet Centers. One of my major responsibilities is to ensure effective implementation of the VA Comprehensive Mental Health Strategic Plan. I also am the first line supervisor for staff who lead the substantive areas of mental health services covered by the Office Of Mental Health Services in Patient Care Services. Currently, this amounts to eight staff members, each of whom has multiple staff reporting to them as well. Before my appointment to this position, I worked as the Director of Training and Assistant Chief of Psychology Service at the VA Palo Alto Health Care System. Prior to my employment with VA, I was an Assistant Professor of Psychology at Arizona State University and then Stanford University.

3) I received a Ph.D, from the University of Oregon in 1977. I am a Fellow of the American Psychological Association Division 12 (Clinical Psychology), Division 18 (Psychologists in Public Service) and Division 20 (Adult Development and Aging). I am a Charter Member and Fellow of the American Psychological Society. I am a former President of Section II (Clinical Geropsychology), APA Division 12; a former member and Chair of the APA Committee on Aging; former President of the Association for Advancement of Behavior Therapy; and former President of the Society for a Science of Clinical Psychology. I have published extensively, particularly on Mental Health policy and training, on Interdisciplinary teams and health care

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

2

service delivery, and on depression treatment and risk factors. I have served on the Editorial Board of 9 professional journals. I have received numerous awards, including ones for Interdisciplinary Creativity in Practice and Education from the National Academies of Practice; one as Clinical Geropsychology Distinguished Clinical Mentor from the American Psychological Association Division on Clinical Geropsychology, and one for the Advancement of Psychology and Aging from the Committee on Aging of the American Psychological Association. Most recently, I received an American Psychological Association Presidential Citation, for contributions to psychology and mental health.

4) I am aware of this litigation and of plaintiffs' motion for a preliminary injunction set for hearing before the Court of February 22, 2008.

5) VA is committed to expanding its mental health services and to eliminating barriers separating mental health from the rest of health care. In 2004, the Veterans Health Administration (VHA) developed its Comprehensive Mental Health Strategic Plan in an effort to realize these goals. As part of that plan, money was specifically allocated by VA through the Mental Health Initiative to be spent on improving the quality of mental health services and on expanding the capacity of VA to treat mental health problems in a variety of clinical settings. The Comprehensive Mental Health Strategic Plan recognizes that the ongoing war efforts necessitate special attention to the needs of veterans who served in Operation Enduring Freedom or Operation Iraqi Freedom (OEF/OIF).

6) VHA is committed to providing quality care, including mental health care, to returning OEF/OIF veterans. Throughout VHA, there is a sense of urgency about reaching out to OEF/OIF veterans, engaging them in care, screening them for mental health conditions, and making diagnoses when appropriate. As of the end of Fiscal Year (FY) 2007, almost 800,000 service men and women who served in OEF/OIF have separated from the armed forces. Of these, almost 300,000 have sought care in the VA system, with about 120,000 receiving at least a provisional mental health diagnosis. Post traumatic stress disorder (PTSD) is the most common provisional diagnosis, although other mental health problems are also prevalent.

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

3

7) VA provides mental health services in all 153 of its medical centers across the country, which may include inpatient and outpatient care, as well as substance abuse care. Each medical center's Emergency Department is directed to have mental health staff available on a 24/7 basis to provide urgent, after-hours care. In addition, VA is expanding and integrating mental health care in the primary care setting - the most common setting in which mental health care is currently provided in the United States. VA also has inpatient and residential rehabilitation programs across the country. VA aims to provide integrated treatment for the veteran as a whole patient - treating a patient's physical illnesses as well as any mental disorders he or she may be facing.

8) VA employs full and part time psychiatrists and psychologists who work in collaboration with VA social workers, mental health nurses, counselors, rehabilitation specialists, and other clinicians to provide a full continuum of mental health services to veterans. Between FY 2001 and FY 2004, VA did see a decline in the size of its mental health staff. More recently, VA has hired 3,784 new mental health professional in the last two and a half years, bringing the total number of mental health professionals within VA to just under 17,000 -- well above the staffing level in FY 2000. VA was able to undertake this massive hiring effort with funds internally allocated by VA to carry out the Comprehensive Mental Health Strategic Plan. Although there still may be delays in hiring qualified professionals for particular positions in some areas, the upward hiring trend will continue over the coming year.

9) Each VA medical center is staffed with at least one specialist in PTSD. In addition, veterans are screened for PTSD on a routine basis at primary care clinics, which can then either provide care in the primary care setting through a co-located mental health staff person, or refer veterans to a specialty mental health care setting. VA has increased its efforts to train providers in the delivery of the types of PTSD treatment shown to be effective.

10) VA has also expanded mental health services in its community based outpatient clinics, including placing more mental health professionals there. It would not be feasible to staff full-time mental health professionals at every clinic, however, since the demand for services is

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

4

sometimes too low to warrant a full-time position. Even in these cases, VA ensures that all veterans have access to needed mental health care, for example, by providing "circuit rider" mental health professionals who travel among different clinics to provide care. In addition, VA has been expanding its use of telemental health. Through the use of streaming video, specialized mental health providers can offer services - from diagnosis to therapy - to veterans in remote locations. Telemental health provides a special benefit to veterans in rural areas by reducing the amount of time they would have to travel to receive services.

11) **In an effort to ensure that veterans with urgent mental** health needs receive timely care, VHA undertook a new policy initiative; instruction regarding that initiative was sent to the field in June 2007, with a deadline for implementation of August 1, 2007. A true and correct copy of the memo setting forth that policy is attached to this declaration as Exhibit A. When a veteran requests or is referred for mental health services at a medical center or community cased outpatient clinic, it is VA's policy to provide a mental health triage evaluation within 24 hours. The primary goal of this initial evaluation is to determine whether there is an urgent need for care. If an urgent need is identified, such as a risk for suicide, the veteran is to be treated immediately. Even if no urgent need is identified, a veteran should be given a follow-up appointment within a maximum of 14 days to allow for a full diagnostic and treatment-planning evaluation, as well as for initiation of treatment, if appropriate. Where there are barriers to the immediate hiring of additional mental health providers necessary to carry out this new initiative, facilities are authorized to contract for the care with non-VA providers in order to ensure that veterans receive timely care as required by this initiative. It is expected that the use of fee-basis or contract care will in most sites be a temporary measure until all new hiring is completed, but fee basis and contract care to community providers will always remain an option in special cases, for example, in rural areas.

12) Even before VA implemented its new policy to provide mental health appointments within fourteen days, the number of veterans waiting for appointments was on the decline. While this has been true across all categories of new appointments, the decline in mental health has

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

5

been proportionally greater than in other medical specialty areas. The number of veterans who are not able to be scheduled for an outpatient mental health appointment within 30 days has steadily declined over the last year, and is now less than 5% among OEF/OIF veterans seeking treatment at VA. The percentage of veterans who are not offered any mental health appointment within 30 days is actually lower, since in many instances, a veteran may be offered an earlier available appointment but elect to wait for a subsequent appointment due to his or her own schedule.

13) **Staff have been instructed to follow up with all patients who do not appear for scheduled mental health appointments.** At least three attempts must be made to contact such patients and ensure that there is no mental health emergency resulting in the failure to appear for an appointment. Where a patient is known to be at-risk, for example because of a prior suicide attempt, and misses an appointment, local law enforcement may be contacted if the patient cannot be reached or located.

14) **VHA sometimes gets complaints from veterans who feel that they are not getting the mental health treatment that they want.** For many of these, the type of diagnosis or treatment that a veteran wants does not coincide with the appropriate medical diagnosis or level of care. For example, a veteran may be unhappy that he is given outpatient rather than inpatient treatment for PTSD, believing that inpatient treatment is a more aggressive form of treatment and therefore more likely to be effective, when in fact most PTSD is more effectively treated on an outpatient basis. Requiring VA clinicians to provide the types of care demanded by veterans would be clinically inappropriate and potentially dangerous to the veterans themselves. If a veteran showed up at a medical center demanding to have his gall bladder removed, it would be malpractice to remove it unless the surgery was independently found to be medically appropriate. The same holds true in the field of mental health.

15) One of the biggest obstacles to providing appropriate mental health treatment for returning combat veterans is the stigma associated with mental illness. In my experience, veterans often do not communicate the urgency of their need for care because it is difficult to

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order                                                                 6

honestly communicate about mental health problems. VA's ability to treat veterans' mental health problems is limited by veterans' willingness to come forward with their problems. The stigma associated with mental illness is not a uniquely VA problem; it is a society-wide problem.

16) **VA has undertaken a number of efforts to help reduce the stigma associated with mental illness** among the veteran population and to reach out to veterans - especially returning combat veterans - to make them aware of the VA mental health services available to them. The Secretary of Veterans Affairs sends a letter to every new veteran about VA care, which is accompanied by a brochure that points to the availability of readjustment counseling, along with an array of other information. In addition, the Office of Mental Health Services makes available a variety of outreach information for veterans and their families on the website of the National Center for PTSD.

17) **Vet Centers, which provide readjustment counseling to combat veterans, serve as another important way that VA helps to overcome the stigma of mental health problems** and reach veterans who might otherwise suffer in silence. Vet Centers provide a more informal way to access mental health services for those veterans who may be reluctant to seek care in a medical center or other more traditional setting. Veterans may be willing to seek readjustment counseling even if they fear the stigma associated with seeking treatment for mental illness. At Vet Centers, the focus is on assisting veterans with the readjustment to civilian life, using a mix of direct counseling and supportive, community-based social services. Vet Centers also provide assessment for PTSD and military-related sexual trauma. Veterans who present at a Vet Center with serious mental health problems will be referred to the appropriate medical facility for further treatment.

18) **All combat veterans are eligible to receive care at a Vet Center.** There were 209 Vet Centers nationwide in FY 2007, with the number slated to go up to 232 in FY 2008. Vet Centers have extensive community outreach activities, including sending staff members to military demobilizations and National Guard and Reserve sites. An additional 100 OEF/OIF veterans were recently hired to provide outreach to their own fellow veterans. Vet Centers may serve as a

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

7

veteran's initial access to the larger VA system: they assist veterans in getting enrolled in the VA health care system or in beginning the process of applying for disability benefits.

19) Suicide prevention is a major priority for VHA. The population of veterans who receive care from VA have more risk factors for suicide than the general population. A veteran who comes to a medical center and appears suicidal is to be treated immediately.

20) Every medical center is staffed with a Suicide Prevention Coordinator who is tasked with raising awareness of the risk of suicide and with coordinating the medical center's response to this risk. The Suicide Prevention Coordinator is responsible for training staff at the facility - from doctors to clerks to management - to ensure that everyone who interacts with veterans is sensitive to the issue of suicide and knows how and when to react to an urgent situation. VA has also developed a Suicide Risk Assessment Pocket Card, a compact tool for assessing suicide risk, which is distributed widely to medical professionals throughout VA, including primary care providers. VA held its first annual Suicide Prevention Day in 2007 to emphasize that the risk of suicide among the veterans VA serves is a concern for everyone at VA, not just mental health professionals.

21) In July 2007, VA initiated a Suicide Hotline to provide emergency assistance to veterans urgently in need of mental health intervention, as well as their families. The hotline is staffed by VA mental health professionals trained in responding to crisis situations. In the six months since the hotline went active, VA has successfully intervened in a number of crisis situations, sometimes by talking a veteran into coming into a medical center, where they would be met by the Suicide Prevention Coordinator, and other times by alerting emergency personnel to respond to the veteran's location and prevent imminent harm to the veteran. Since July, there have been more than 8,000 calls to the Suicide Hotline from veterans or family members, more than 1,500 referrals to Suicide Prevention Coordinators, and more than 380 rescues.

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

8

1   I declare under penalty of perjury that the foregoing is true and correct. Executed on
2   January 29, 2008.

_____
ANTONETTE ZEISS

Case No. C 07-3758-SC
Declaration of Antonette Zeiss, Ph.D., in Support of Defendants' Opposition to Plaintiffs' Motion for Protective Order

9

Exhibit A to the Declaration of Antonette Zeiss, Ph.D.

**Department of
Veterans Affairs**                    **Memorandum**

Date: JUN 0 1 2007

From: Deputy Under Secretary for Health for Operations and Management (10N)

Subj: Mental Health Initiatives

To: Network Director ( 10N1-23)

1. The purpose of this memo is to communicate some recent Mental Health initiatives which will enhance the capacity of mental health services, and facilitate access to high quality services. These initiatives serve to reinforce the priorities established by the VHA Comprehensive Mental Health Strategic Plan. Recently, these priorities were re-emphasized by Secretary Nicholson in a 12 Point Plan.

2. The Secretary's 12-point plan contains initiatives that pertain to VBA, Readjustment Counseling Centers and VHA. Attached are the initiatives that pertain to VHA. Please note that it is expected that you comply with this new guidance by the deliverable dates included in the attachment.

3. To assist facilities in implementing these requirements within the designated time frames, a series of phone calls is being scheduled. Staff of the Office of Mental Health Services will be available to provide information, discuss local challenges, and provide specific consultation. The initial calls are scheduled for June 8, 3pm; June 18, 3pm; and June 19, 2pm (all EDT) on the VANTS line at 1-800-767-1750, code #21675. Additional calls will be scheduled as needed.

4. Should you require further information, please contact Odette Levesque at Odette.levesque@va.gov or Dr. Ira Katz at ira.katz@va.gov.

*William F. Feeley*

William F. Feeley, MSW, F A C H E

Attachment:

## Mental Health Initiatives

1. To accomplish these initiatives, VHA will implement the following:

    a. Veterans requesting or referred for mental health and/or substance abuse treatment will receive an initial evaluation within 24 hours.

    Goals of the initial evaluation:
    1) Determine the urgency of need for care.
    2) Identify the appropriate setting for subsequent evaluations and treatment.
    3) Arrange for treatment, as appropriate.
    4) Provide veterans with the name and contact information for a mental health professional that they can contact, even before they begin treatment if they have questions or concerns, as well as instructions about accessing emergency services, as needed.
    5) Respond to the patient's questions or concerns and facilitate engagement in care.

    Process:
    1) This requirement will apply to Community Based Outpatient Clinics as well as to Medical Centers.
    2) This evaluation will be conducted by a mental health professional or, when appropriate, a primary care provider.
    3) The evaluation should be conducted on a face-to-face basis, by telemental health, or by telephone.
    4) Follow-up will occur within a <u>maximum</u> of 14 days to allow a full diagnostic and treatment-planning evaluation, and the initiation of appropriate care.
    5) When necessary, VISNs, medical centers, and clinics may utilize fee-basis or contracting to implement this requirement.
    6) Implementation of this requirement should be conducted in such a manner that it does not compromise the continuity of care for established patients.

    Timeframe:
    a. These procedures must be implemented by August 1, 2007.

    b. If patient's presentation when requesting or being referred for mental health treatment indicates the possibility of an emergent mental health problem, an assessment of emergent needs should be conducted immediately and appropriate intervention initiated.

    c. Follow-up must be completed on all patients in mental health and substance abuse treatment who miss appointments, including newly-presenting patients.

Goals of this follow-up are to:
1) Conduct evaluations to identify veterans whose mental health condition presents a danger to themselves or others.
2) Address problems or dissatisfactions in the care provided with VA.
3) Answer questions or concerns about the veteran's mental health condition or the treatment provided and reinforce the importance of continued care and the effectiveness of treatment.

Process
1) Patients who miss scheduled mental health or substance abuse appointments will be contacted in most cases by any staff member. However, if the patient has a CPRS alert, as identified in (2) below, a qualified mental health provider will make the contact.
2) VHA will establish CPRS alerts to identify patients who should be considered at risk (e.g., those at risk for suicide or violence) if they miss scheduled mental health appointments.
3) Follow-up is not necessary when veterans cancel appointments for specific causes.
4) Follow-up will be by telephone in most cases. At least three attempts should be made to reach the patient and documented in the patient's medical record. If contact is unsuccessful with patients with a CPRS alert, local law enforcement should be contacted.

Timeframe:
1) These procedures should be implemented by August 1, 2007.

**d. On a temporary basis, VISNs, medical centers, and clinics may utilize Mental Health Initiative funding to support fee-basis of necessary mental health services that they are unable to provide.**

Goals:
1) Fee-basis for mental health care should be considered an interim measure to address barriers that may exist to timely hiring of mental health professionals.
2) It is anticipated that when recruitment and hiring for authorized staff is completed, the need for fee-basis care will be eliminated or substantially reduced.

Timeframe:
1) This authorization is effective immediately.

**e. Medical Centers will enhance access and capacity for mental health services by operating clinics beyond normal business hours.**

Goals:
1) To increase access and capacity for mental health appointments.

Process:
1) Initial health/substance abuse clinics will operate at least one evening per week. Extended hours should be considered on other days as well, including weekends. Hours made available should be planned based on the needs of veterans and their families.
2) Staffing during extended hours will include both professional and clerical or support staff.

Timeframe:
1) This requirement will be implemented by August 1, 2007, consistent with applicable Human Resources requirements.

f. **Emergency Departments must have mental health coverage on a 24/7 basis. Urgent care centers must have mental health coverage during their hours of operation.**

Goals:
1) Ensure mental health coverage in emergency department and urgent care settings.

Process:
1) Medical centers with a complexity level of 1A must provide on-site coverage during the hours from 7 AM to 11 PM, at a minimum.
2) All other complexity levels, and complexity level 1A medical centers during the hours of 11PM to 7AM, may provide coverage on site or on call.
3) Facilities that use on-call coverage must establish and enforce a standard for the time allowed for staff to arrive at the facility to conduct on-site evaluations and treatment, when needed.
4) Facilities may consider telemental health arrangements for coverage.

Timeframe:
1) These procedures should be implemented by August 1, 2007.