1    GORDON P. ERSPAMER (CA SBN 83364)
     GErspamer@mofo.com
2    MORRISON & FOERSTER LLP
     101 Ygnacio Valley Road, Suite 450
3    P.O. Box 8130
     Walnut Creek, California 94596-8130
4    Telephone:  925.295.3300
     Facsimile:  925.946.9912
5
     SIDNEY M. WOLINSKY (CA SBN 33716)
6    SWolinsky@dralegal.org
     JENNIFER WEISER BEZOZA (CA SBN 247548)
7    JBezoza@dralegal.org
     KATRINA KASEY CORBIT (CA SBN 237931)
8    KCorbit@dralegal.org
     DISABILITY RIGHTS ADVOCATES
9    2001 Center Street, Third Floor
     Berkeley, California 94704-1204
10   Telephone:  510.665.8644
     Facsimile:  510.665.8511
11
     [see next page for additional counsel for Plaintiffs]
12
     Attorneys for Plaintiffs
13   VETERANS FOR COMMON SENSE and
     VETERANS UNITED FOR TRUTH, INC.
14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

19   VETERANS FOR COMMON SENSE and          Case No.      C-07-3758-SC
     VETERANS UNITED FOR TRUTH, INC.,
20                                           **CLASS ACTION**
                      Plaintiffs,
21                                           **PLAINTIFFS' REPLY IN SUPPORT
            v.                               OF MOTION FOR PROTECTIVE
22                                           ORDER RESTRICTING
     JAMES B. PEAKE, M.D., Secretary of Veterans   DISCLOSURE OF CONFIDENTIAL
23   Affairs, _et al._,                      AND PRIVATE INFORMATION
                                             AND PROHIBITING RETALIATION**
24                    Defendants.
                                             Date:    March 7, 2008
25                                           Time:    10:00 a.m.
                                             Place:   Courtroom 1, 17th Floor
26                                           Judge:   Hon. Samuel Conti

27                                           Complaint Filed:  July 23, 2007

28

1    **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2    ARTURO J. GONZALEZ (CA SBN 121490)
     AGonzalez@mofo.com
3    HEATHER A. MOSER (CA SBN 212686)
     HMoser@mofo.com
4    STACEY M. SPRENKEL (CA SBN 241689)
     SSprenkel@mofo.com
5    PAUL J. TAIRA (CA SBN 244427)
     PTaira@mofo.com
6    MORRISON & FOERSTER LLP
     425 Market Street
7    San Francisco, California 94105-2482
     Telephone:  415.268.7000
8    Facsimile:  415.268.7522

9    BILL D. JANICKI (CA SBN 215960)
     WJanicki@mofo.com
10   MORRISON & FOERSTER LLP
     400 Capitol Mall, Suite 2600
11   Sacramento, California 95814
     Telephone:  916.448.3200
12   Facsimile:  916.448.3222

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................. 1

II.     MEET AND CONFER EFFORTS HAVE DRASTICALLY NARROWED THE
        DISPUTED ISSUES ........................................................................................ 2

III.    AN ORDER PROTECTING WITNESSES' CONFIDENTIAL MEDICAL
        INFORMATION IS AN APPROPRIATE EXERCISE OF THIS COURT'S
        BROAD DISCRETION IN FASHIONING PROTECTIVE ORDERS ............................ 3

        A.      The Court Has the Discretion to Enter the Requested Provision ............................. 3

        B.      Defendants' Proposed Alternative, A One-Sided Privacy Act Order, is
                Entirely Inadequate And Provides No Protection For Plaintiffs' Material. ............ 5

IV.     RESTRICTING WITNESS IDENTITIES TO OUTSIDE COUNSEL IS
        APPROPRIATE UNDER THE FACTS OF THIS CASE AND THE LAW OF
        THE NINTH CIRCUIT TO AVOID RETALIATION ........................................................ 6

        A.      The Risk of Retaliation Requires This Protective Order .......................................... 7

        B.      Defendants' Opposition Relies on Cases that Do Not Apply ................................. 9

        C.      There Is No Prejudice to Defendants During This Early Pre-class
                Certification Phase of the Litigation, and the Public Interest Is Furthered,
                by Anonymity ........................................................................................................ 10

        D.      Defendants Are Not Entitled to a Presumption that the VA Acts Properly
                According to the Law ............................................................................................. 11

V.      DELAY IN ENTRY OF A PROTECTIVE ORDER WILL FURTHER DELAY
        DISCOVERY ..................................................................................................... 11

VI.     CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

**Page**

*Beckman Indus. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ................................................................................................ 4

*Doe v. Texaco*,
No. C06-02820 WHA, 2006 WL 2850035 (N.D. Cal. Oct. 5, 2006) .................................... 7, 9

*Doe v. Von Eschenbach*,
No. 06-2131 (RMC), 2007 WL 1848013 (D.D.C. June 27, 2007) ......................................... 11

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) .................................................................................... 6, 7, 10, 11

*Fischer v. City of Portland*,
No. CV 02-1728, 2003 WL 23537981 (D. Or. Aug. 22, 2003) ................................................. 4

*L.H. v. Schwarzenegger*,
No. S-06-2042 LKK/GGH, 2007 WL 662463 (E.D. Cal. Feb. 28, 2007) ....................... 6, 7, 11

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
115 F.R.D. 543 (N.D. Cal. 1987) ....................................................................................... 7, 11

*Pearson v. Miller*,
211 F.3d 57 (3d Cir. 2000) ....................................................................................................... 4

*Quair v. Bega*,
232 F.R.D. 638 (E.D. Cal. 2005) .............................................................................................. 9

*Qualls v. Rumsfeld*,
228 F.R.D. 8 (D.D.C. 2005) ............................................................................................... 8, 11

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) .................................................................................................................... 4

*United States v. Leavy*,
422 F.2d 1155 (9th Cir. 1970) ................................................................................................ 11

1

**STATUTES**

2    42 U.S.C. § 201 ........................................................................................................... 3

3    Federal Rule of Civil Procedure 26(c)....................................................................... 3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

2          Only two substantive issues remain in dispute on this motion:  (1) the proposed provision

3   to protect confidential witness information based on privacy concerns for personal and medical

4   history (Paragraph 2.4); and (2) the proposed outside-attorneys-eyes-only provisions to prevent

5   retaliation by VA personnel (Paragraphs 2.3, 2.5, 7.3, 12.1, 12.2).  The Court has broad discretion

6   to fashion protective orders to protect privacy interests.  Veterans' private medical information,

7   whether submitted to the other side in discovery or submitted to the Court as testimony, is entitled

8   to, at a minimum, protection from public disclosure.  That is particularly true in this case, which

9   focuses on highly personal issues: mental illness and the resulting harms to veterans, including

10  unemployment, divorce, homelessness, and suicide.  Defendants' proposed Privacy Act order is

11  completely one-sided and would not protect information produced by Plaintiffs, only government

12  records.  The Court should exercise its wide discretion in fashioning a protective order

13  appropriate to protect such sensitive and personal information from public disclosure.

14         Another issue still in dispute on this motion is the provisions that relate to potential

15  retaliation by the VA against veterans who participate in the lawsuit in favor of Plaintiffs.

16  Defendants cry foul and state that they are entitled to a presumption that they will obey the law

17  and not retaliate.  While this might be proper in some circumstances, in cases like this, where a

18  documented history of retaliation exists, a presumption is improper.  Based on veterans' recent

19  fears regarding potential retaliation as well as the VA's litigation history of retaliation in veteran

20  suits such as the present suit, Plaintiffs' proposed provisions are appropriate under Ninth Circuit

21  anonymity standards.  Such provisions are not intended to, as Defendants suggest, impugn the

22  integrity of counsel or the VA.  The intended purpose of the provisions is to provide veterans and

23  their family members with the protections that they feel they need in order to come forward with

24  difficult personal stories of mental illness and suicide that comprise critical evidence in the

25  litigation.  The very nature of a mental illness disability makes these witnesses hesitant to come

26  forward and extremely vulnerable.  Without these protections, veterans and their family members

27  could be subject to potential harm from an agency that exerts significant control over desperately

28  needed medical care and benefits.  Many veterans and their family members simply will not

1   participate in this lawsuit without assurances that their information will be sufficiently protected

2   and the threat of retaliation will be minimized, and without the knowledge that there will be

3   consequences if the rules are broken.  Absent these protections, there will be a chilling effect on

4   the vital evidence to be submitted to the Court.

5   **II.    MEET AND CONFER EFFORTS HAVE DRASTICALLY NARROWED THE DISPUTED ISSUES**

6

7          The long-overdue meet and confer process was successful in narrowing the disputes for

8   the Court's determination to the following two issues:  (1) the preservation of privacy and

9   anonymity for third-party witnesses; and (2) potential retaliation against adverse witnesses.[1]  With

10  respect to the two disputed issues, Defendants have generally opposed Plaintiffs' efforts to

11  provide protections to veterans and their family members through a stipulated protective order

12  since August 2007.  Defendants finally responded to Plaintiffs' specific proposals four weeks

13  after receipt of Plaintiffs' proposed order, in a letter dated December 21, 2007.  Declaration of

14  William Janicki in Support of Plaintiffs' Reply to Motion for Protective Order Restricting

15  Disclosure of Confidential and Private Information and Prohibiting Retaliation ("Janicki Decl.")

16  ¶ 7, Ex. 6.[2]  Plaintiffs agreed to most of Defendants' suggested edits and incorporated them into a

---

17        [1]  Defendants claim they have been participating in the meet and confer process since
    August.  Some clarification is necessary.  Plaintiffs first proposed the protective order provisions
18  in August.  Defendants continuously stonewalled any substantive discussion of these two issues
    for the past six months, providing no substantive feedback but only knee-jerk reactions to the
19  proposals which made no accommodations for Plaintiffs' concerns.  With respect to shielding
    private information from public disclosure, Defendants' only response for months on end was to
20  propose a one-sided Privacy Act order.  Declaration of Steven Y. Bressler in Support of
    Defendants' Opposition to Plaintiffs' Motion for Protective Order ("Bressler Decl.") ¶¶ 45, 11-
21  12.  Plaintiffs willingly considered the terms of the written Privacy Act order sent by Defendants
    but were required to reject it as one-sided without any protections for Plaintiffs' witness
22  information.  Bressler Decl. ¶ 6.  Regarding the retaliation issues, Defendants refused to consider
    any order affording retaliation protections, but instead proposed to prevent retaliation by requiring
23  Plaintiffs' counsel to inform them of the names of the individual veterans fearing/experiencing
    retaliation so they could feed those names directly to the VA to "investigate their allegations."
24  Bressler Decl. ¶¶ 3-4.  In an effort to move things along and try to obtain more substantive or
    productive comments, Plaintiffs drafted their own order, based on the model order in this District,
25  and attempted to afford protections for the Privacy Act concerns of Defendants as well as the
    privacy and retaliation concerns of Plaintiffs.
26

27        [2]  Before Plaintiffs filed this motion, Defendants stated they would not respond to
    Plaintiffs' proposed order until December 28, 2007.  That date is five weeks after Plaintiffs
28  submitted the final version of the proposed protective order to Defendants, hence Plaintiffs'
                                                                        (Footnote continues on next page.)

1   revised order.  Attached hereto as Exhibit A is a version of the revised proposed order with the

2   seven paragraphs Plaintiffs understand to still be in dispute, the seven disputed paragraphs shaded

3   for the Court's convenience.[3]  Plaintiffs' arguments set forth in detail below concern only the

4   remaining disputed paragraphs.

5   **III.    AN ORDER PROTECTING WITNESSES' CONFIDENTIAL MEDICAL
         INFORMATION IS AN APPROPRIATE EXERCISE OF THIS COURT'S
6        BROAD DISCRETION IN FASHIONING PROTECTIVE ORDERS**

7        **A.    The Court Has the Discretion to Enter the Requested Provision**

8        The first subject of dispute is Paragraph 2.4, which would permit Plaintiffs to designate as

9   "confidential" *inter alia* "individual veterans' medical history or medical records or any other

10  information protected by constitutional or statutory rights to privacy, including but not limited to

11  information protected from disclosure under the Health Insurance Portability and Accountability

12  Act (HIPAA), 42 U.S.C. § 201."  The fact that this case involves a putative class of veterans with

13  PTSD and the injunction currently pending specifically deals with untreated PTSD resulting in

14  veteran suicides, the information Plaintiffs must put before the Court will invariably delve into

15  the personal physical and mental health records of veterans.  Such information cannot be left

16  exposed to the public domain and is properly the subject of a protective order under Federal Rule

17  of Civil Procedure 26(c).

18       Defendants object to that common-sense provision on the ground that it would result in a

19  "blanket protective order," which would fail to meet the requirements of the Rule.  However,

20

21  (Footnote continued from previous page.)

22  reference to five weeks in their motion.  Declaration of Heather Moser in Support of Motion for
    Protective Order, ¶ 4, Ex. B.  Defendants ultimately provided their comments on the draft order
23  four weeks after it was submitted to them for review, one week earlier than promised in advance
    of the filing of the present motion.  Plaintiffs believe that petty ad hominem attacks describing the
24  time estimates submitted to the Court as "patently false" are not a worthwhile use of the Court's
    time or the parties' energies and only serve to distract from the real issues to be decided.

25       [3]  Defendants' Opposition to Plaintiffs' Motion for Protective Order ("Opposition")
    wastes an entire section discussing the burden of persuasion, but in a footnote, admit that issue
26  was eliminated from the list of disputed issues by agreement of the parties.  Opposition at 12:13
    & n.13.  The relevant changes are reflected in Paragraphs 6.3 and 6.4 of the revised order attached
27  as Exhibit A.

28

3

1    Plaintiffs' proposed protective order is not a "blanket protective order" under which all materials

2    exchanged are considered confidential.  Instead, Plaintiffs' proposed order is crafted to allow for

3    designation of only those informational categories (e.g., private medical information) for which

4    "good cause" can be articulated for the importance of their confidentiality in conformity with

5    Ninth Circuit law.  *See Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475 n.4 (9th Cir. 1992)

6    ("For 'good cause shown,' the court may make any order which justice requires to protect a party

7    or person from annoyance, embarrassment, oppression, or undue burden or expense.") (citing

8    Fed. R. Civ. P. 26(c)).  The Supreme Court has recognized that district courts have "broad

9    latitude" to decide "when a protective order is appropriate and what degree of protection is

10    required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  As a result of this broad

11    latitude, federal district courts may in their discretion enter umbrella orders to protect class of

12    documents after a threshold showing.  *See Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000);

13    *Fischer v. City of Portland*, No. CV 02-1728, 2003 WL 23537981, at *2 (D. Or. Aug. 22, 2003)

14    ("[T]he court may issue umbrella protective orders that protect classes of documents if a

15    threshold showing is made in appropriate circumstances.").

16         There is also a built-in mechanism for challenging any perceived overdesignation of

17    material in the discovery process.  Exhibit A, ¶ 6.  With respect to confidential material filed with

18    the Court, as the Local Rules make clear, any confidential material that would be potentially

19    subject to a sealing order would require an administrative motion to assess the propriety of the

20    sealing request, such as Plaintiffs' recently granted administrative motion in conjunction with

21    their preliminary injunction.  Information designated only as "confidential" pursuant to

22    Paragraph 2.4 would not be restricted to outside-attorneys'-eyes only.  Exhibit A, ¶ 7.2(a)

23    (including House Counsel); Opposition at 3.  It is merely intended to permit Plaintiffs to

24    designate and shield private medical information and personal details of family tragedies from

25    public view, which meets the threshold showing required for such an order.  *See Pearson*,

26    211 F.3d at 72-73 ("Legitimate interests in privacy are among the proper subjects of this

27    provision's protection. . . .  The injury shown, however, need be no more than

28    'embarrassment'.").

**B.    Defendants' Proposed Alternative, a One-Sided Privacy Act Order, Is Entirely Inadequate and Provides No Protection for Plaintiffs' Material**

Defendants' opposition attempts to argue that the proposed Privacy Act protective order offered by Defendants would be suitable for this case and that multiple protective orders should be used to govern various aspects of the case. Opposition 2:15-22. That argument fails for several reasons. First, Defendants' Privacy Act protective order is far too narrow. It applies only to material specifically covered by the Privacy Act and excludes all else. Bressler Decl. Ex. B, ¶ 1 (defining covered "records" as 5 U.S.C. §552a(a)(4)); ¶ 11 ("This Order does not apply to any information or documents other than information or documents that are subject to the Privacy Act."); 5 U.S.C. § 552a(a)(4) (the term "'record' means any item, collection, or grouping of information about an individual that is *maintained by an agency*") (emphasis added). What that means in practical terms is that, because the Privacy Act covers only private information held by the government, the order does not extend to any unique material produced in discovery or submitted to the Court on behalf of veteran witnesses. Appropriate protections must also be afforded to documents and testimony not covered by the Privacy Act, such as witness statements and deposition testimony regarding the most sensitive matters imaginable, mental illness and family suicide.

Second, Defendants insisted on the purportedly "standard" provision that Plaintiffs hold them harmless should any Privacy Act information revealed in this litigation be used inappropriately:

> Neither the United States of America, United States Department of Justice, the Department of Veterans Affairs, the U.S. Court of Appeals for Veterans Claims, nor any of their officers, employees, or attorneys, shall bear any responsibility or liability for any unauthorized disclosure of any documents obtained by Plaintiffs' counsel under this Order, or of any information contained in such documents.

Bressler Decl., Ex. B, ¶ 9. Such a provision is inappropriately self-indulgent, because standard protections for disclosure and use of protected information are sufficient. Even assuming such "unauthorized disclosure" were to occur, Defendants would not be without a remedy. Paragraph 9 sets forth a procedure for unauthorized disclosure, which includes the risk of sanctions for

1   disclosure for an improper purpose.  Information properly marked as "confidential" covered by

2   that Paragraph includes "agency 'records' as defined in 5 U.S.C. § 552a(a)(4)" in Paragraph 2.4.

3   Defendants' proposed absolution provision does not provide a remedy, but instead takes an

4   incredible step beyond what is necessary.  The government's liability for unauthorized disclosure

5   of information is to the veterans whose private information is disclosed.  The VA is asking the

6   Court to preemptively waive any potential liability with respect to those veterans, without regard

7   to the circumstances of the disclosure.  This provision is far overreaching and is not necessary

8   given Paragraph 9's procedure for unauthorized or inadvertent disclosure of confidential

9   information.

10        Finally, this case should have a single protective order that governs all private and

11  confidential information rather than multiple orders as proposed by Defendants.  A multiplicity of

12  orders would only serve to inject confusion into an already complex case.

13  **IV.   RESTRICTING WITNESS IDENTITIES TO OUTSIDE COUNSEL IS**
        **APPROPRIATE UNDER THE FACTS OF THIS CASE AND THE LAW OF**
14      **THE NINTH CIRCUIT TO AVOID RETALIATION**

15        The second major category of disputed proposed provisions all provide protections for

16  veteran witnesses' fear of retaliation by the VA for their participation in the suit on behalf of

17  Plaintiffs.  Exhibit A, Paragraphs 2.3, 2.5, 2.13, 7.3, 12.1, and 12.2.  The Ninth Circuit's holding

18  in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), sets forth the

19  controlling legal standards governing a district court's discretionary decision to permit a *party* to

20  proceed anonymously.[4]  *Advanced Textile,* 214 F.3d at 1068; *see also L.H. v. Schwarzenegger*,

21  No. S-06-2042 LKK/GGH, 2007 WL 662463, at *15 (E.D. Cal. Feb. 28, 2007).  *Advanced Textile*

22  recognizes that many federal courts, including the Ninth Circuit, have permitted parties to

23  proceed anonymously when special circumstances exist.  *Advanced Textile,* 214 F.3d at 1067.

24  Courts allow a party to use pseudonyms in three situations:  (1) when there is a risk of retaliation;

25  (2) to preserve privacy in a matter of sensitive and highly personal nature; or (3) when there is a

26  risk of criminal prosecution.  *Id*. at 1067-1068.

27        [4]  The facts of this case involve third party witnesses rather than the named parties.

28

1    In the case at hand, *Advanced Textile* provides an addition two independent reasons to

2    proceed anonymously.  Without these protections, veterans and their family members could be

3    subject to potential harm from an agency that exerts significant control over desperately needed

4    medical care and benefits.

5        A.        **The Risk of Retaliation Requires This Protective Order**

6    *Advanced Textile* further held that where pseudonyms are used to protect a party from

7    retaliation, the court evaluates three factors:  (1) the severity of the threatened harm; (2) the

8    reasonableness of the party's fears; and (3) the party's vulnerability to such retaliation.  *Advanced*

9    *Textile,* 214 F.3d at 1068.  As noted in *Schwarzenegger*, "[a] severe harm falls somewhere

10   between, social stigma and the job loss, deportation, and reprisals against family members."

11   2007 WL 662463, at *15 (internal citations omitted).  Here, veterans and their family members

12   face not social stigma or embarrassment, but risk the revelation of a loved one's mental illness or

13   suicide, or the delay or denial of benefits and health care.  Plaintiffs' moving papers detailed the

14   harms that could befall veteran and family member witnesses who participate in this litigation.

15   The reasonableness of a party's fears is determined by the unique set of circumstances for

16   a particular case.  The very nature of the disability at issue here, PTSD, makes veterans hesitant to

17   come forward and fear retaliation.  PTSD is a severe mental illness and certainly provides a

18   reasonable basis for veterans' fears.  In addition, courts may "consider evidence of a history of

19   retaliatory practices" in determining the reasonableness of the party's fears.  *Id.* at *16.  The VA

20   is not often in Court defending against systemic litigation regarding veterans' rights, but when it

21   has been so involved, there has been evidence of retaliation against adverse witnesses.  One such

22   case was before this Court, *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N.D.

23   Cal. 1987).  Opening Brief at 9-10; Erspamer Decl.   By contrast, none of the cases cited by

24   Defendants regarding reasonableness have the serious retaliatory history documented in this

25   action.  *Doe v. Texaco*, No. C06-02820 WHA, 2006 WL 2850035, at *5 (N.D. Cal. Oct. 5, 2006)

26   (specifically noting the lack of history of retaliation against individuals in prior, related

27

28

1   litigation); *Qualls v. Rumsfeld*, 228 F.R.D. 8 (D.D.C. 2005) (addressing protective orders, but

2   silent regarding any historical record of retaliation).[5]

3          With so much at stake, it is entirely reasonable that veterans may be cowed into silence.

4   Should veterans or claimants proceed without anonymity, their medical care may suffer, claims

5   may be denied or delayed, and benefits may be terminated.  More importantly, the fear of

6   retaliation expressed by many veterans has a chilling effect on the legal process.  Without the

7   protections offered by Plaintiffs, veterans will be too afraid to testify or participate in any way in

8   this lawsuit.  Indeed, Plaintiffs are in contact with several veterans who will not authorize the use

9   of their declarations in court proceedings precisely because of this fear of retaliation from the VA.

10  Janicki Decl., ¶ 15.  The consequences of retaliation would chill participation in this very

11  important lawsuit.  Defendants' opposition fails to refute the reasonable fears of retaliation by

12  veterans who suffer from PTSD.

13         Finally, the court considers the vulnerability to such retaliation.  Veterans and their family

14  members are under the control and power of the VA for needed medical care and disability or

15  death compensation, making them particularly vulnerable to VA retaliation.  Veterans who suffer

16  from posttraumatic stress disorder are often totally dependent on the VA for medical care and

17  disability benefits.  Defendants' opposition omits any discussion of the vulnerability of veterans

18  and their family members to the VA and cannot refute the *reasonableness* of particularly

19  vulnerable veterans and family members who fear retaliation from the VA.

20

21  _____

22         [5] Furthermore, the cases cited by the VA regarding remoteness of time and isolated
    incidents are completely inapposite to the case at bar, which involves a documented pattern of
    historical retaliation when the VA has been involved in this type of litigation.  *Coleman v. Exxon*
23  *Chem. Corp.*, 162 F. Supp. 2d 593, 625 (S.D. Tex. 2001) (finding remoteness in an employment
    discrimination case involving four statements made twenty years prior to the litigation); *San*
24  *Francisco Police Comm'n v. Police Comm'n*, No. C95-4459, 1996 U.S. Dist. LEXIS 6837, at *9
    n.5 (N.D. Cal. May 8, 1996) (holding that a single incident four years prior could not establish
25  department policy); *United States v. James*, 139 F.3d 709, 713 (9th Cir. 1998) (ruling, in a
    criminal case, that a single incident of racial prejudice was not probative evidence 12 years later);
26  *Johnson v. Alameda-Contra Costa Transit Dist.*, No. C-04-4879 MMC, 2006 U.S. Dist. LEXIS
    67888, at *15 (N.D. Cal. Sept 8, 2006)(holding that discriminatory remarks were not probative
27  when described in conclusory fashion ten years after their occurrence).

28

    PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER                                   8
    MASTER FILE NO. C-07-3758-SC
    sf-2462509

1

**B.    Defendants' Opposition Relies on Cases that Do Not Apply**

2      Defendants' opposition also mistakenly relies upon *Quair v. Bega*, 232 F.R.D. 638

3  (E.D. Cal. 2005).  The holding in *Quair* simply does not apply to the pre-class certification stage

4  of this litigation and the facts of this case.  *Quair*'s concern about concealing critical trial witness

5  does not apply at this stage of the proceedings.  *Id.* at 641.  Third-party veteran and family

6  member witnesses in this case may never be required to testify at trial at all.  Indeed, Plaintiffs'

7  Proposed Protective Order specifically excludes trial proceedings.  Exhibit A; Proposed

8  Protective Order, ¶ 2.2 ("This Order specifically excludes any material or testimony to be

9  produced or used during trial.").  In *Quair,* the court determined that the fear of retaliation was

10  not reasonable because the threat was not capable of being carried out.  *Id.* At 641.  The threat of

11  retaliation from the VA is real and is capable of being carried out.[6]  The VA certainly has the

12  power and ability to carry out retaliation, unlike the single individual identified by the witnesses

13  in *Quair*.  *Id.*  *Quair* does not inform the Court's analysis in this case because Plaintiffs do not

14  seek to conceal trial witnesses, the reasonableness of veterans and family members who fear

15  retaliation is without question, and the threatened retaliation is real and capable of being carried

16  out.

17      Defendants' opposition also mistakenly relies upon *Doe v. Texaco*, No. C06-02820 WHA,

18  2006 WL 2850035 (N.D. Cal. Oct. 5, 2006).  The plaintiffs in *Texaco* were not vulnerable to

19  retaliation because they were not subject to the control of the third parties from whom they feared

20  retaliation and there was no evidence of retaliation in a similar lawsuit.  *Id.* at *4, 5.  In contrast,

21  this lawsuit involves veterans and surviving family members with a reasonable fear of retaliation

22  who have listed specific acts of retaliation to which they are particularly vulnerable from the VA.

23  The VA is not a third party without any control over those who fear such retaliation as was the

24  case in *Texaco*.  Moreover, in analogous litigation, the VA has carried out such retaliation in the

25  past.  All of Defendants' authorities are distinguishable on their facts; denials of motions to

26      _____

[6]  Family members may be under the control and power of the VA because, as survivors,
27  they may have a claim for death benefits on behalf of a deceased veteran or a claim for disability
benefits on behalf of a disabled family member veteran.

28

1    proceed anonymously were based on a factual determination regarding the fear of retaliation.

2    Those holdings are simply inapposite to veterans and family members who reasonably fear

3    retaliation by the VA.

4           **C.    There Is No Prejudice to Defendants During This Early Pre-class
                    Certification Phase of the Litigation, and the Public Interest Is Furthered, by**
5           **Anonymity**

6           In determining whether a party may proceed anonymously, the Court must also consider

7    the precise prejudice to Defendants at each stage of the proceedings and decide whether the

8    public interest would be best served by the parties revealing their identities.  *Advanced Textile,*

9    214 F.3d at 1068.  The Court's determination "may change as the litigation progresses" and the

10   facts and circumstances of the case evolve.  *Id*. at 1069.  This class action lawsuit is in the very

11   early stage of pre-trial proceedings, and class certification has yet to be determined.  At this stage

12   there is absolutely no prejudice to Defendants for certain witnesses to be restricted to "outside

13   attorneys' eyes only."  There is no need for the adjudication of any individual veteran or family

14   member claim at this stage, and the proposed order does not have the effect of concealing any

15   trial witness from Defendants.

16          Defendants fail to explain how they would be prejudiced at this stage of the proceedings

17   where individual veteran medical care and benefits adjudication is not required.  Defendants

18   make conclusory allegations that Defendants' anonymity at this stage of the proceedings would

19   "interfere with Defendants' basic right to mount a defense to the allegations against them."

20   Opposition at 6:27–7:1.  The proposed order does not prevent a meaningful investigation into

21   witness claims.  The order provides that Defendants' outside counsel "shall develop a procedure

22   for obtaining access to veteran records from the VA such as claim files and medical records that,

23   to the maximum extent possible, protects the identity of the veteran or claimant and does not

24   indicate the specific purpose for the request."  Ex A, Proposed Protective Order, ¶ 12.2.

25   Defendants' outside attorneys can develop any number of procedures to comply with this

26   provision, such as obtaining the documents themselves, employing an outside vendor to perform

27   this task for them, or making some other proposal for Plaintiffs to consider.  This provision is

28

1  flexible enough to provide access to the required information by Defendants' outside counsel

2  while protecting veterans and claimants from retaliation and preserving their privacy interests.

3       The public interest also favors concealing veteran and family member identities.  The

4  public has an interest in seeing this case decided on its merits.  Veterans' suits that protect

5  statutory rights benefit the public.  As here, when a party's willingness to participate in litigation

6  is chilled by fear of retaliatory action, public interest in seeing the suit move forward on its merits

7  outweighs the public interest in the witnesses' identities.  *Advanced Textile,* 214 F.3d at 1073;

8  *Schwarzenegger*, 2007 WL 662463, at *18.  Without these protections, veterans and family

9  members will not come forward and participate in this suit.

10      **D.    Defendants Are Not Entitled to a Presumption that the VA Acts Properly**
            **According to the Law**

11

12      Defendants' opposition attempts to rely on a presumption that the VA, as a government

13  agency, "act[s] properly and according[sic] to the law" in arguing against witness anonymity.

14  Opposition at 11:15.  However, as noted in Defendants' opposition, this presumption is only

15  available "from a barren record."  *United States v. Leavy*, 422 F.2d 1155, 1157 (9th Cir. 1970).

16  The record is far from barren in this case.  As set forth above, multiple declarations detail specific

17  examples of retaliation by the VA, and many such practices were witnessed in a case heard before

18  this Court, *National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543.  Erspamer

19  Decl.; Cushman Decl.  The VA is entitled to no such presumption in this instance.  Moreover, the

20  fact that the VA is a government agency actually favors the use of witness pseudonyms.  *Qualls*,

21  228 F.R.D. at 11 ("[c]ourts may be more inclined to permit pseudonymous suits by plaintiffs

22  when the government is the defendant"); *Doe v. Von Eschenbach*, No. 06-2131 (RMC), 2007 WL

23  1848013, at *2 n.3 (D.D.C. June 27, 2007) ("[w]hen a plaintiff challenges the government or

24  government activity, courts are more likely to permit plaintiffs to proceed under a pseudonym

25  than if an individual has been accused publicly of wrongdoing").

26

27

28

1  **V.    DELAY IN ENTRY OF A PROTECTIVE ORDER WILL FURTHER DELAY DISCOVERY**

2

3          Defendants have refused to respond to any of Plaintiffs' document requests, even after

4  their motion to dismiss was denied, on the ground that there is no protective order in place.

5  Janicki Decl. ¶ 12.  Defendants' objection based on the Privacy Act comes at the very same time

6  Defendants oppose Plaintiffs' motion for protective order provision designed to cover Privacy

7  Act material.[7]  Exhibit A, ¶ 2.4.

8

9

10

11

12

13

14

15

16

17

18

---

19          [7] Plaintiffs served Defendants with their First Amended First Requests for Production of
Documents on October 19, 2007, and their Second Requests for Production of Documents on
20  November 16, 2007.  *Id.*, ¶¶ 2, 3, Exs. 1, 2.  Plaintiffs made it clear they expect document
production to begin immediately upon the Court's ruling on Defendants' Motion to Dismiss.  *Id.*,
21  ¶ 5, Ex. 4.  Plaintiffs even offered to provisionally treat all documents as confidential under
whatever form of the proposed protective order might ensue, but Defendants refused.  *Id.*, ¶ 10,
22  Ex. 9.  Defendants now refuse to provide any discovery based on alleged Privacy Act concerns,
even though Defendants' motion for protective order on November 9, 2007, has been lifted.  They
23  did not object to or even mention the discovery obligations contained in the Privacy Act.  *Id.*, ¶ 4,
Ex. 3.  By the time this Court granted Plaintiffs' sealing request and lifted the stay of discovery,
24  Plaintiffs' first and second requests for the production of documents were long overdue.  *Id.*, ¶¶ 2,
3, Exs. 1, 2.  Defendants still have not responded to this outstanding discovery, even as to
25  documents not subject to a protective order.  Instead, they have produced a small number of self-
serving public documents purportedly responsive to three requests of the 191 outstanding
26  requests.

27

28

1    **VI.    CONCLUSION**

2          For the foregoing reasons, Plaintiffs request that the Court enter the revised Proposed

3    Protective Order submitted herewith restricting the disclosure of confidential and private

4    information and prohibiting retaliation.

5

6    Dated: February 6, 2008                    GORDON P. ERSPAMER
                                                ARTURO J. GONZALEZ
7                                               HEATHER A. MOSER
                                                BILL D. JANICKI
8                                               STACEY M. SPRENKEL
                                                PAUL J. TAIRA
9                                               MORRISON & FOERSTER LLP

10

11                                        By   /s/ William D. Janicki
                                                William D. Janicki
12                                              wjanicki@mofo.com

13                                              Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28