# EXHIBIT
# 2

1   GORDON P. ERSPAMER (CA SBN 83364)
    GErspamer@mofo.com
2   MORRISON & FOERSTER LLP
    101 Ygnacio Valley Road, Suite 450
3   P.O. Box 8130
    Walnut Creek, California 94596-8130
4   Telephone: 925.295.3300
    Facsimile: 925.946.9912
5
    SIDNEY M. WOLINSKY (CA SBN 33716)
6   SWolinsky@dralegal.org
    MELISSA W. KASNITZ (CA SBN 162679)
7   MKasnitz@dralegal.org
    JENNIFER WEISER BEZOZA (CA SBN 247548)
8   JBezoza@dralegal.org
    KATRINA KASEY CORBIT (CA SBN 237931)
9   KCorbit@dralegal.org
    DISABILITY RIGHTS ADVOCATES
10  2001 Center Street, Third Floor
    Berkeley, California 94704-1204
11  Telephone: 510.665.8644
    Facsimile: 510.665.8511
12
    **[see next page for additional counsel for plaintiffs]**
13
    Attorneys for Plaintiff(s)
14  VETERANS FOR COMMON SENSE, and
    VETERANS UNITED FOR TRUTH, INC.
15
                    UNITED STATES DISTRICT COURT
16
                    NORTHERN DISTRICT OF CALIFORNIA
17
    VETERANS FOR COMMON SENSE, and              Case No.    C-07-3758-SC
18  VETERANS UNITED FOR TRUTH, INC.,
                                                **VETERANS FOR COMMON SENSE**
19                  Plaintiffs,                 **AND VETERANS UNITED FOR**
                                                **TRUTH, INC.'S SECOND SET OF**
20          v.                                  **REQUESTS FOR PRODUCTION OF**
                                                **DOCUMENTS TO ALL**
21  R. JAMES NICHOLSON, Secretary of Veterans   **DEFENDANTS**
    Affairs, *et al.*,
22                                              (Class Action)
                    Defendants.
23                                              Complaint Filed July 23, 2007

24

25

26

27

28

1    **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2    ARTURO J. GONZALEZ (CA SBN 121490)
     AGonzalez@mofo.com
3    HEATHER A. MOSER (CA SBN 212686)
     HMoser@mofo.com
4    STACEY M. SPRENKEL (CA SBN 241689)
     SSprenkel@mofo.com
5    PAUL J. TAIRA (CA SBN 244427)
     PTaira@mofo.com
6    MORRISON & FOERSTER LLP
     425 Market Street
7    San Francisco, California 94105-2482
     Telephone: 415.268.7000
8    Facsimile: 415.268.7522

9    BILL D. JANICKI (CA SBN 215960)
     WJanicki@mofo.com
10   MORRISON & FOERSTER LLP
     400 Capitol Mall, Suite 2600
11   Sacramento, California 95814
     Telephone: 916.448.3200
12   Facsimile: 916.448.3222

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOUNDING PARTY: VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC.**

**RESPONDING PARTIES: R. JAMES NICHOLSON,** *et al.*

**SET NUMBER:         TWO**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs VETERANS FOR COMMON SENSE ("VCS") and VETERANS UNITED FOR TRUTH, INC. ("VUFT") request that each of the named defendants (collectively "Defendants") separately produce for inspection and copying the documents and things set forth below that are in their possession, custody, or control, or in the possession, custody, or control of their attorneys and/or accountants, their investigators, and any persons acting on their behalf, at the offices of Morrison & Foerster, 101 Ygnacio Valley Road Suite 450, Walnut Creek, California, 94596 or another place as may be mutually agreed upon within thirty (30) days.

**DEFINITIONS**

Unless otherwise indicated, the following definitions shall apply.

1.    "COMMUNICATION" or "COMMUNICATIONS" means, unless otherwise specified, any of the following:  (a) any written letter, memorandum, DOCUMENT, or any other writing; (b) any telephone call between two or more PERSONS, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more PERSONS, whether or not such contact was by chance or prearranged, formal or informal, including, without limitation, conversations or meetings occurring via telephone, teleconference, video conference, electronic mail (e-mail), or instant electronic messenger.

2.    "CONCERNING" means constituting, summarizing, memorializing, referring to, and/or relating to.

3.    "DOCUMENT" or "DOCUMENTS" means any tangible thing upon which any expression, COMMUNICATION or representation has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, or mechanical or electronic recording and any non-identical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different

1   individuals than were the originals, or because of any other reason), including but not limited to

2   working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes,

3   records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports

4   of telephone or other oral conversations, desk calendars, appointment books, audio or video tape

5   recordings, e-mail or electronic mail, electronic folders, microfilm, microfiche, computer tape,

6   computer disk, computer printout, computer card, and all other writings and recordings of every kind

7   that are in your actual or constructive possession, custody or control.

8       4.   "IDENTIFY" or "IDENTITY" means:

9         a.   with respect to a PERSON, to state the PERSON's full name, current or last

10  known employer, that employer's address and telephone number, the PERSON's title and/or position

11  with that employer, and the PERSON's current or last known home address and telephone number;

12        b.   with respect to a DOCUMENT, to state the type of DOCUMENT (i.e., letter,

13  memorandum, telephone note, computer floppy or hard disk, magnetic tape, etc.), the title of the

14  DOCUMENT (if any), the date it was created, the author, all intended recipients including the

15  addressee and any and all copyees, a brief description of the subject matter of the DOCUMENT, the

16  present and/or last known location of the DOCUMENT, and to IDENTIFY all present or last known

17  person in possession, custody or control of the DOCUMENT;

18        c.   with respect to a COMMUNICATION to state the name and affiliation of all

19  PERSONS participating in, or present for, the COMMUNICATION, the date of the

20  COMMUNICATION, and whether it was conducted in person or by other means (such as telephone,

21  correspondence, e-mail), and whether it was recorded (e.g., stenographically or by audio or

22  videotape);

23        d.   with respect to a MEETING to state the names and affiliations of all

24  PERSONS participating in, or present for, the MEETING, the date of the meeting, and the location of

25  the meeting, and the purpose of the meeting.

26       5.   "MEETING" or "MEETINGS" means any coincidence of, or presence of, or telephone,

27  television, radio, or other electronic communication between or among persons, whether such was by

28  chance or prearranged, informal or formal.

Case No. C-07-3758-SC
VCS and VUFT's 2nd Set of Requests for Production of Documents
wc-134360                            2

6.   "PERSON" or "PERSONS" means, unless otherwise specified, any natural person, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of organization or arrangement, and government and government agency of every nature and type.

7.   "YOU" or "YOUR" means the Defendants in this action, and all of their predecessors, partners, limited partners, affiliates, parent corporations, directors, staff, employees, and agents. These terms also include any representatives or agents acting on YOUR behalf, including, without limitation, attorneys, investigators, or consultants.

## SPECIAL DEFINITIONS

8.   "ALTARUM INSTITUTE" means the Altarum Institute, headquartered in Ann Arbor, Michigan, and all (i) its present and former directors, officers, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary or affiliated entities that were in existence during the applicable period of time covered by these requests, including, without limitation; (ii) any other person or entity acting on its behalf or on whose behalf it acted; or (iii) any other person or entity otherwise subject to its control or which controls it, or with which they are under common control.

9.   "BVA" or "BOARD OF VETERANS APPEALS" means the Board of Veterans Appeals and all its offices, departments, organizations, administrations, sections, teams, management, members, and employees including, without limitation, all judges, Board members, attorneys, and staff attorneys.

10.  "CAVC" or "Court of Appeals for Veterans Claims" means the Court of Appeals for Veterans Claims and all its offices, departments, organizations, administrations, sections, teams, management, members, and employees including, without limitation, all judges, attorneys, and staff attorneys, including, the time period when this entity was named the Court of Veterans Appeals.

11.  "CLAIM" means an application filed by a PERSON seeking SCDDC, including the initial claim, each reopened claim and any appeals to the BVA, CAVC, Federal Circuit, or U.S. Supreme Court.

1    12.  "CLINICIAN'S GUIDE" means the publication entitled VA Clinician's Guide (Lewis

2  R. Coulso, ed., Matthew Bender & Co. Inc. 2006), and earlier or later versions of that edition of the

3  Clinician's Guide.

4    13.  "DEPARTMENT OF DEFENSE" or "DoD" means the United States Department of

5  Defense, and all its offices, departments, organizations, administrations, boards, commissions, task

6  forces, management, and past and present employees and service members.

7    14.  "DEPARTMENT OF JUSTICE" or "DoJ" means the United States Department of

8  Justice, and all its offices, departments, organizations, administrations, boards, commissions, task

9  forces, management, and past and present employees and service members.

10    15.  "DEPARTMENT OF THE AIR FORCE" means the United States Department of the

11  Air Force, and all its offices, departments, organizations, administrations, boards, commissions, task

12  forces, management, and past and present employees and service members.

13    16.  "DEPARTMENT OF THE ARMY" means the United States Department of the Army,

14  and all its offices, departments, organizations, administrations, boards, commissions, task forces,

15  management, and past and present employees and service members.

16    17.  "DEPARTMENT OF THE NAVY" means the United States Department of the Navy,

17  and all its offices, departments, organizations, administrations, boards, commissions, task forces,

18  management, and past and present employees and service members, including the United States

19  Marine Corps.

20    18.  "DOLE/SHALALA REPORT" means the Report of the President's Commission on

21  Care for America's Wounded Returning Warriors, published July 2007 by Co-Chairs Robert Dole

22  and Donna Shalala.

23    19.  "DSM" means any edition of the Diagnostic and Statistical Manual of Mental

24  Disorders, published by the American Psychiatric Association.

25    20.  "DVB" or "DEPARTMENT OF VETERANS BENEFITS" means the Department of

26  Veterans Benefits within the VA and all its offices, departments, organizations, administrations,

27  boards, commissions, task forces, management, and past and present employees.

28

21.  "GAO" means the United States Government Accountability Office and all its predecessors, offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

22.  "INSTITUTE OF MEDICINE" means the Institute of Medicine, National Academy of Sciences panel and all of its current and past employees and members.

23.  "OPERATION ENDURING FREEDOM" or "OEF" means Operation Enduring Freedom, the official name given to military operations in Afghanistan, and the nations and bodies of water around it.

24.  OPERATION IRAQI FREEDOM" or "OIF" means Operation Iraqi Freedom, the official name given to military operations in Iraq and in the nations and bodies of water near it, beginning in the year 2003.

25.  "PERSONALITY DISORDER DISCHARGE" or "PDD" means the separation from military service of a PERSON under Army Regulation 635-200, Chapter 5-13, Navy Military Personnel Manual 1910-122, Marine Corps Separation and Retirement Manual Chapter 6, Section 2, Subsection 6203, Air Force Regulation AFI 36-3208, or any similar DoD regulations, including DoD Directive 133.2.14 (December 21, 1993), and any actions by the VA based on a PDD or a personality disorder finding or diagnosis.

26.  "PTSD" means post-traumatic stress disorder, as described in the DSM and VA Regulations referencing the DSM.

27.  "SCDDC" means service-connected death or disability compensation, including dependency and indemnity compensation, as described in the Complaint.

28.  "TDIU" means a claim for and/or VA rating of total disability based on individual unemployability.

29.  "VA" or "DVA" means the United States Department of Veterans Affairs, and all its offices, departments, organizations, administrations, boards, consultants, commissions, task forces, management, and past and present employees.

30.  "VETERANS AFFAIRS COMMITTEES" means the members of the House or Senate Veterans Affairs Committees, their staff, and any persons acting on their behalf.

31.   "VETERANS BENEFITS ADMINISTRATION" or "VBA" means the Veterans Benefits Administration within the VA and all its offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

32.   "VETERANS HEALTH ADMINISTRATION" or "VHA" means the Veterans Health Administration within the VA and all its offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

33.   "VAIG" means the Inspector General of the Veterans Administration and all its offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

34.   "Committee on Care of Veterans With Serious Mental Illness (SMI) Committee" or "SMI Committee" means the committee, authorized under Title 38, Section 7321, of the United States Code, charged with the responsibility to conduct an ongoing assessment of the capability of the Veterans Health Administration to meet effectively the treatment and rehabilitation needs of mentally ill veterans whose mental illness is severe and chronic and who are eligible for health care furnished by the Department.

## CONSTRUCTION

The following rules of construction shall also apply.

1.   "All" or "each" shall be construed as "all and each."

2.   "Any" should be understood to include and encompass "all"; "all" should be understood to include and encompass "any."

3.   "And" or "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.   The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1.   In the event Defendants produce original documents for inspection and copying, such production shall be as the documents are kept in the usual course of business.

2.   In lieu of production for inspection and copying, Defendants may produce the requested documents by mail or delivery of true copies thereof to Morrison & Forester at the aforesaid address, and make the originals available for inspection at a mutually agreed-upon location, during normal business hours and upon reasonable notice.  The documents copied shall be copied as they are kept in the normal course of business, and any titles, labels, or other descriptions on any box, folder, binder, file cabinet, or other container shall be copied as well.

3.   Each document is to be produced, along with all non-identical copies, drafts, alterations, and translations thereof, in its entirety, without abbreviations or redactions.

4.   If any part of a document is responsive to any of the following requests, the entire document shall be produced.

5.   If Defendants withhold any of the requested documents from production under a claim of privilege or other protection, it must serve within thirty (30) days of the service of this request a list of such withheld documents ("privilege log") indicating, for each document withheld, the following information if known or available to Defendants:  (i) the date composed or date appearing on the document; (ii) the author; (iii) the number of pages; (iv) the number of copies made; (v) the identity of all persons or entities who saw the original document or saw or received a copy of such document, and the job titles of each such person; (vi) the subject matter; and (vii) the basis for claim of privilege or other immunity asserted.  The privilege log should be sufficiently detailed to permit Plaintiffs to determine whether to make a motion with respect thereto.

6.   If Defendants are aware of the existence of any requested items that they are unable to produce, specify in writing and serve upon the undersigned a list indicating the identity of such documents within thirty (30) days of the service of this request.  Such identification should, for each such document, set forth whether the document:  (i) has been destroyed; (ii) has been lost, misplaced, or stolen; or (iii) has never been, or is no longer, in the possession, custody, or control of the responding party, in which case the name and address of any person or entity known or believed by Defendants to have possession, custody or control of that document or category of documents should be identified.  In each such instance, each Defendant is to identify the document by author, addressee, date, subject matter, number of pages, attachments or appendices, all persons to whom it was

1   distributed, shown, or explained, date and manner of destruction or other disposition, the reason for

2   destruction or other disposition, and persons destroying or disposing of the document.

3       7.   If Defendants contend that any of the following requests is objectionable in whole or in

4   part, Defendants shall state with particularity each objection, the basis for it, and the categories of

5   information and documents to which the objection applies, and Defendants shall respond to the

6   request insofar as it is not deemed objectionable.

7       8.   If Defendants find the meaning of any term in these requests unclear, Defendants shall

8   assume a reasonable meaning, state what the assumed meaning is, and respond to the request

9   according to the assumed meaning.

10      9.   The following requests shall be deemed to be continuing.  In accordance with Federal

11  Rule of Civil Procedure 26(e), Plaintiffs request that if, after answering the requests, Defendants

12  acquire additional knowledge or information regarding documents or things responsive to the

13  requests, Defendants shall produce such documents or provide Plaintiffs with such additional

14  knowledge or information.

15      10.   Unless otherwise specified, each request calls for all documents created, received, or

16  dated between January 1, 2000 and the date of your response to the request.

17                          **REQUESTS FOR PRODUCTION**

18      **PREAMBLE TO ALL REQUESTS:**  All DOCUMENTS CONCERNING any one or more

19  of the following:

20  **REQUEST FOR PRODUCTION NO. 130:**

21      COMMUNICATIONS and MEETINGS CONCERNING the August 27, 2007 C&P Service

22  "Fast Letter" 07-19 regarding Procedures for Handling Extraordinary Awards.

23  **REQUEST FOR PRODUCTION NO. 131:**

24      Policies, definitions, procedures, applications, decisions, COMMUNICATIONS and/or

25  MEETINGS CONCERNING extraordinary claims reviews or processes.

26

27

28

**REQUEST FOR PRODUCTION NO. 132:**

The IDENTITY, number of patients and hours, percentage of patients, reason for, and types of veteran patients diverted by each and all VA Medical Centers between January 1, 2001, and the present, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 133:**

The diversion of patients by the James A. Haley VA Medical Center and Bay Pines VA Medical Center, as reported in the *Orlando Sentinel* on or about October 29, 2007.

**REQUEST FOR PRODUCTION NO. 134:**

The analysis or study of the timeliness of VA outpatient appointments as reported in the *Charlotte Observer* on or about October 21, 2007, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 135:**

DOCUMENTS otherwise responsive to these requests which YOU produced in response to FOIA requests to the VA or in response to Congressional inquiries or oversight between January 1, 2001, and the present.

**REQUEST FOR PRODUCTION NO. 136:**

SMI studies, reports, analyses, hearing transcripts, and MEETING minutes, including DOCUMENTS not officially published by the committee, and all COMMUNICATIONS and MEETINGS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 137:**

The consideration or issuance by the VA Central Office or Compensation and Pension Service of any guidance, rules, regulations (formal or otherwise), or instructions to regional offices CONCERNING a veteran's use or reliance upon buddy statements, affidavits or declarations to substantiate any aspect of a PTSD claim, including, without limitation, the occurrence of events relating to stressors and/or the combat status of a veteran, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

1  **REQUEST FOR PRODUCTION NO. 138:**

2      Any reports, analyses, COMMUNICATIONS, or DOCUMENTS CONCERNING the

3  average number of minutes veterans spend with a medical professional during each type of scheduled

4  visits to receive mental health care, and the patient time requirements, standards, performance goals

5  for each type of mental health professional.

6  **REQUEST FOR PRODUCTION NO. 139:**

7      The CAPRI Technical User Manual for VA computer patient medical records system, and

8  other DOCUMENTS containing information on how to access a shadow medical file system

9  maintained by the Compensation & Pension Service (hereafter collectively the "Shadow Medical File

10  System"), and all user instructions, methodology descriptions, fast letters, and all MEETINGS and

11  COMMUNICATIONS CONCERNING it, including, without limitation, its distribution, actual or

12  intended use, period or suspension of use, and compliance or non-compliance.

13  **REQUEST FOR PRODUCTION NO. 140:**

14      The actual use or potential use of the Shadow Medical File System to take adverse action

15  against any claimant, including, without limitation, blacklisting, severance of benefits, delays on

16  decision, denial or delays in rendering health care, or any other adverse action, and all MEETINGS

17  and COMMUNICATIONS CONCERNING the same.

18  **REQUEST FOR PRODUCTION NO. 141:**

19      The question of whether YOUR actual or intended use of the Shadow Medical File System

20  complies with HIPPA and/or the Privacy Act, and all MEETINGS and COMMUNICATIONS

21  CONCERNING the same.

22  **REQUEST FOR PRODUCTION NO. 142:**

23      All instances in which the Shadow Medical File System was or may have been used to alter

24  VA medical records or medical examination results after they had been signed off by the examiner or

25  other author, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

26

27

28

1    **REQUEST FOR PRODUCTION NO. 143:**

2        YOUR investigation of all claims by veterans alleging the alteration of VA medical records

3    by employees of the DVB, including, without limitation, using VistA, the Compensation and Pension

4    Record Interchange ("CAPRI"), or the Shadow Medical File System.

5    **REQUEST FOR PRODUCTION NO. 144:**

6        All VA "Fast Letters" distributed or issued between 2000 and present, and all MEETINGS

7    and COMMUNICATIONS CONCERNING the same.

8    **REQUEST FOR PRODUCTION NO. 145:**

9        The alteration of original entries in veterans' medical records by employees of the C&P

10   Service, including, without limitation, the procedures and technical ability to do so, the means, and

11   all instances of alterations.

12   **REQUEST FOR PRODUCTION NO. 146:**

13       The quality of medical care at the Veterans Affairs Medical Center in Marion, Illinois,

14   complaints received about medical care, and all MEETINGS and COMMUNICATIONS

15   CONCERNING the same.

16   **REQUEST FOR PRODUCTION NO. 147:**

17       Claims of inadequate medical care made by former and present employees of the Veterans

18   Affairs Medical Center in Marion, Ill, and all MEETINGS and COMMUNICATIONS

19   CONCERNING the same.

20   **REQUEST FOR PRODUCTION NO. 148:**

21       YOUR investigation and any Congressional investigation of claims of inadequate medical

22   care made by former and present employees of the Veterans Affairs Medical Center in Marion, Ill,

23   and/or acts of retaliation against such employees, and all MEETINGS and COMMUNICATIONS

24   CONCERNING the same.

25   **REQUEST FOR PRODUCTION NO. 149:**

26       Instances of or studies regarding police officer-assisted suicides amongst Iraq and

27   Afghanistan veterans and all MEETING and COMMUNICATIONS CONCERNING the same.

28

1  **REQUEST FOR PRODUCTION NO. 150:**

2      The Department of Veterans Affairs memorandum from Deputy Under Secretary for Health

3  for Operations and Management to Network Directors, "Status of VHA Enrollment and Associated

4  Issues," dated July 18, 2002, and all MEETINGS and COMMUNICATIONS CONCERNING the

5  same.

6  **REQUEST FOR PRODUCTION NO. 151:**

7      All DOCUMENTS regarding the priority levels for health care veterans, and all

8  DOCUMENTS regarding any decision not to enroll Priority 7 and/or Priority 8 veterans.

9  **REQUEST FOR PRODUCTION NO. 152:**

10      The Department of Veterans Affairs Report "Impact of Suspending Enrollment of Priority

11  Group 8 Veterans" published in 2003, and all MEETINGS CONCERNING the same.

12  **REQUEST FOR PRODUCTION NO. 153:**

13      All VA submissions to the Federal Register regarding which categories of veterans will have

14  priority for medical care in each upcoming fiscal year, and all MEETINGS and

15  COMMUNICATIONS CONCERNING the same.

16  **REQUEST FOR PRODUCTION NO. 154:**

17      MEETINGS and COMMUNICATIONS CONCERNING the United States House of

18  Representatives Committee on Government Reform - Minority Staff Special Investigation Division

19  reports on Waiting Time for Veteran Health Care, and all MEETINGS and COMMUNICATIONS

20  CONCERNING the same.

21  **REQUEST FOR PRODUCTION NO. 155:**

22      All United States House of Representatives Committee on Government Reform - Minority

23  Staff Special Investigation Division Reports CONCERNING the Impact of President Bush's Budget

24  on Veteran Health Care.

25  **REQUEST FOR PRODUCTION NO. 156:**

26      All United States House of Representatives Committee on Government Reform - Minority

27  Staff Special Investigation Division reports on Proposed Restrictions on Access to VA Health Care,

28  and all MEETINGS and COMMUNICATIONS CONERNING the same.

1    **REQUEST FOR PRODUCTION NO. 157:**

2    The November 14, 2007 JAMA study entitled "Longitudinal Assessment of Mental Health

3    Problems Among Active and Reserve Component Soldiers Returning From the Iraq War," by

4    Charles S. Milliken, MD, Jennifer L. Auchterlonie, MS, and Charles W. Hoge, MD, and all

5    COMMUNICATIONS CONCERNING the same.

6    **REQUEST FOR PRODUCTION NO. 158:**

7    The activities of the Mental Health Strategic Healthcare Group ("MHSHG") CONCERNING

8    PTSD, the treatment of veterans with PTSD or other mental health disorders, or the allocation of

9    YOUR mental health care resources, and all MEETINGS AND COMMUNICATIONS

10   CONCERNING the same.

11   **REQUEST FOR PRODUCTION NO. 159:**

12   The development, drafting, implementation, and content of Operation Order 7-55 (regarding

13   U.S. Army Plan for VA provision of medical transition services to OIF/OEF soldiers), including,

14   without limitation, all DOCUMENTS CONCERNING Fragmentation Orders and OPORDER 07-55,

15   and all MEETINGS and COMMUNICATIONS CONCERNING the same.

16   **REQUEST FOR PRODUCTION NO. 160:**

17   The basis for the projection in Paragraph 14 of the Declaration of Thomas G. Bowman

18   (hereafter "Bowman Declaration") dated November 9, 2007, filed in conjunction with Defendants'

19   Motion for Protective Order to Stay Discovery, that "disability claims in 2008 will increase to an

20   estimated 840,000, and the statement that VBA's inventory of pending claims now numbers "over

21   400,000."

22   **REQUEST FOR PRODUCTION NO. 161:**

23   The basis for the claim in Paragraph 11 of the Bowman Declaration that 751,273 OEF/OIF

24   veterans have separated through October 2007, and/or that 269,909 have obtained health care in a VA

25   facility since FY 2002.

26   **REQUEST FOR PRODUCTION NO. 162:**

27   The MEETING between DOJ and staff members on October 23, 2007, referred to in

28   Paragraph 6 of the Bowman Declaration, and all COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 163:**

The basis for each of the time and cost estimates or figures contained in the Bowman Declaration, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 164:**

Computer User Manuals and Technical Manuals for the VistA, Aims, the Compensation and Pension Record Interchange ("CAPRI") and all other computer systems that are used to maintain, manage, alter, use, view, print, or enter data for a patient's medical records, including, without limitation, e-mail and instant messaging systems used by Rating Officers and Medical Examiners.

**REQUEST FOR PRODUCTION NO. 165:**

"Screenshots" of every computer medical record page, "C&P Clinical Worksheet Page," or Clinical or Diagnostic Laboratory data page in the VA Computer system displaying the standard "Test Data" used by VA Database Operators to verify system function, such as Patient records for Social Security number 999-999-9999, or named "Test," including, without limitation, "hidden" files, or pages, known only to senior executives or IT system operators.

**REQUEST FOR PRODUCTION NO. 166:**

All Computer Reports, or other Statistical Analysis of Departmental Performance Measures down to the level of individual section, or clinical units at individual hospitals or C&P examination units, including, without limitation, clinical targets that may directly or indirectly document a veteran's medical response to medications used to treat PTSD, or other mental illness, or the side effect profiles of the same, including, without limitation, Blood Pressure, Cardiac Function, EKGs, Blood Glucose Levels, A1c Testing, as statistically described by their mean, median, and mode.

**REQUEST FOR PRODUCTION NO. 167:**

The number of Tricyclic anti-depressant Blood Level Tests performed or ordered by YOU, and the results of the same as statistically described by their mean, median, and mode.

**REQUEST FOR PRODUCTION NO. 168:**

VA Pharmacy Drug Formularies for mental health disorders, both current, and historical for the period 2001 to the present.

1  **REQUEST FOR PRODUCTION NO. 169:**

2  The month-by-month total number of prescriptions for each of the following drugs (rounded

3  to the nearest 1000), sorted by each VA pharmacy, each DoD pharmacy in the Continental U.S., and

4  each Tricare Pharmacy Benefit claim processed by "Express Scripts." In the case of data from VA

5  pharmacies, the data shall be provided for each VA Region. In the Case of DoD pharmacies, the data

6  shall be first divided for each branch of service, then subdivided by each of the Tricare Regions. In

7  the case of "Tricare Express Scripts Prescription Benefit Claims," they shall be generated by each

8  Tricare Region. The "Mail-Order-Pharmacies" for both the VA and Tricare shall be printed as a

9  separate report.

10  (i)  The SSRI's: citalopram, escitalopram oxalate, fluoxetine, fluvoxamine maleate,

11  paroxetine, sertraline, dapoxetine;

12  (ii)  The TriCylcics: Amitriptyline, amoxapine, cloipramine, desipramine, doxepin,

13  Imipramine, Maprotilline, Nortriptyline, Protriptyline, Trimipramine;

14  (iii)  The MAOIs: Isocarboxazid, Mociobenide, Pheneizine, Tranylcypromine, Selegiline,

15  Rasagilline, Nialamide, iproniazid, Iproclozide, Toloxatone;

16  (iv)  The Mood Stabilizers: Lithium and sodium valproate;

17  (v)  The Typical antipsychotics: Chlorpromazine, Fluphenazine, Perphenazine,

18  Prochlorperazine, Thioridazine, Trifluoperazine, Mesoridazine, Promazine, Triflupromazine,

19  Levomepromzaine, Chlorprothixene, Flupenthixol, Thiothixene, Zuclopenthixol, Haloperidol,

20  Droperidol, Pimozide, Melperone;

21  (vi)  The Atypical antipsychotics: Clozapine, Olanzapine, Risperidone, Quetiapine,

22  Ziprasidone, Amisulpride, Paliperidone;

23  (vii)  The Dopamine partial agonist: Ariplprazole;

24  (viii)  The Benzodiazepines: alprazolam, cholrdiazepoxide, clonzepam, diazepam,

25  lorazepam;

26  (ix)  The antiseizure drugs: Gabapentin, carbamzepine, clonzepam, divalprex sodium,

27  lamotrigine, phenytoin, oxcarbazepine, tiagabine, topiramate, valproic acid;

28  (x)  The non opiate pain relievers: Aspirin, Ibuprofen, Celecoxib; and

1    (xi)    The opiate pain relievers:  oxycodone, hydrocodone, damorphine, pethidine, tramadol,

2    buprenophine (hereafter the "Target Medications").

3    **REQUEST FOR PRODUCTION NO. 170:**

4    Any and all records, e-mails, discussions, proposals or medical directives recommending that

5    a veteran currently taking one of the above Target Medications be transferred to another such

6    medication or medications within the same class as the result of a formulary switch.

7    **REQUEST FOR PRODUCTION NO. 171:**

8    The DEA inventory control, audit, accountability, and irregularity reports of every controlled

9    substance maintained, supplied, or prescribed at a VA operated pharmacy and DoD operated

10    pharmacy. In the case of DoD pharmacies operating in the Continental United States (DoDConus).

11    **REQUEST FOR PRODUCTION NO. 172:**

12    The number of doctors, psychologists, nurse practitioners, or physician assistants,

13    pharmacists, social workers, or counselors, residents, interns, or student/residents, rating officers,

14    veteran's service officers, or benefit coordinators, either directly employed by the VA, or with whom

15    the VA contracts that are not current US Citizens or licensed to practice in the U.S., and the

16    qualifications of each.

17    **REQUEST FOR PRODUCTION NO. 173:**

18    Hiring criteria, minimum qualifications, or standards for mental health professionals

19    employed by or under contract to the VA.

20    **REQUEST FOR PRODUCTION NO. 174:**

21    The number and identity of YOUR Medical Professionals that hold either any degree

22    (undergraduate, graduate, doctoral) from St. Georges Medical University, in the Island Nation of

23    Grenada or one of its branch campuses, or completed a residency at St. Georges Medical University,

24    or any hospital in the nation of Grenada.

25    **REQUEST FOR PRODUCTION NO. 175:**

26    All details, (save for patient identifiers) CONCERNING VA attempts to assess the

27    Pharmaceutical clinical effectiveness in the treatment of PTSD or other mental disorders, including,

28

1   without limitation, all studies or other DOCUMENTS CONCERNING "Human Use" ethical review

2   boards.

3   **REQUEST FOR PRODUCTION NO. 176:**

4       Whether the informed consent was obtained from veterans with PTSD or other mental health

5   conditions who participated in clinical methods pharmaceutical effectiveness trials.

6   **REQUEST FOR PRODUCTION NO. 177:**

7       The complaints in each malpractice case against the VA filed by a veteran patient with PTSD

8   or other mental health disorders from 2001 to present.

9   **REQUEST FOR PRODUCTION NO. 178:**

10      The pre-publication report CONCERNING PTSD Compensation and Military Service

11   conducted by the National Academy of Sciences, and all MEETINGS and COMMUNICATIONS

12   CONCERNING the same.

13   **REQUEST FOR PRODUCTION NO. 179:**

14      VHA Directive 2005-010 dated March 7, 2005, and all MEETINGS and

15   COMMUNICATIONS CONCERNING the same.

16   **REQUEST FOR PRODUCTION NO. 180:**

17      Revisions made by C&P Service employees to Disability Examination Worksheets or

18   database entries regarding a patient's medical information (such as demographic, appointment, or

19   admission data) that were prepared by VHA employees.

20   **REQUEST FOR PRODUCTION NO. 181:**

21      YOUR investigation CONCERNING changes made by C&P Service employees to Disability

22   Examination Worksheets or patient medical database entries (such as demographic, appointment or

23   admission data) that were prepared by VHA employees, including, without limitation, changes in

24   PTSD evaluations, diagnoses, test results, and all MEETINGS and COMMUNICATIONS

25   CONCERNING the same.

26

27

28

**REQUEST FOR PRODUCTION NO. 182:**

The use, data definitions, and meaning of red and green flags CONCERNING C&P Examination requests maintained, recorded or distributed using the Shadow Medical File System (discussed on Page 73 of the CAPRI GUI User Manual V.2.7 (October 2005)).

**REQUEST FOR PRODUCTION NO. 183:**

The altering of medical examination reports, after the Medical Examiner had signed them, by someone other than the author examiner, including, without limitation, the Cleveland VA hospital or medical center.

**REQUEST FOR PRODUCTION NO. 184:**

Instances (and any summaries) in which a veteran was denied medical care or treatment by a VA medical center, outpatient clinic or hospital, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 185:**

Monthly and annual printouts and a computer disk from the Patient Appointment Information Transmission (PAIT) database of scheduling and patient wait times for health care appointments within the VHA, sorted by hospital, medical center, clinic or other location.

**REQUEST FOR PRODUCTION NO. 186:**

Inaccurate or substituted entries in the PAIT database that improve timeliness measures and YOUR investigation of such entries, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 187:**

Information, reports, printouts, and data contained in the Veterans Appeals Control and Locator System (VACOLS) CONCERNING workload, timeliness, appeals dispositions, and IDENTITY of the claimant's representative.

**REQUEST FOR PRODUCTION NO. 188:**

Docketing data, reports, and printouts for the CAVC maintained in Quilla, including without limitation, the IDENTITY of the claimant, and information regarding date of the Notice of Disagreement, Statement of the Case, Substantive Appeal, Docketing, and final disposition.

**REQUEST FOR PRODUCTION NO. 189:**

Studies and/or data CONCERNING delay or timeliness at each level of the SCDDC

processing system, starting with the regional offices.

**REQUEST FOR PRODUCTION NO. 190:**

DOCUMENTS otherwise responsive to any of Plaintiffs' DOCUMENT requests which can

be found on the workstations or personal computers or working files of each of the witnesses

identified on pages 2-5 of Defendants' Initial Disclosures dated October 18, 2007.

**REQUEST FOR PRODUCTION NO. 191:**

COMMUNICATIONS and MEETINGS between DVA management and its employees

CONCERNING this case and the subject of contacts with Plaintiffs or their counsel.


Dated: November 16, 2007                    GORDON P. ERSPAMER
                                            ARTURO J. GONZALEZ
                                            HEATHER A. MOSER
                                            BILL D. JANICKI
                                            STACEY M. SPRENKEL
                                            PAUL J. TAIRA
                                            MORRISON & FOERSTER LLP


                                            By: _____
                                                   Gordon P. Erspamer

                                            Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 101 Ygnacio Valley Road, Suite 450, California 94596. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on the date hereof, I served a copy of:

**VETERANS FOR COMMON SENSE AND VETERANS UNITED FOR TRUTH, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

☐ BY FACSIMILE [Code Civ. Proc sec. 1013(e)] by sending a true copy from Morrison & Foerster LLP's facsimile transmission telephone number (925) 946-9912 to the fax number(s) set forth below, or as stated on the attached service list. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile transmissions, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Morrison & Foerster LLP for transmission.

☒ BY U.S. MAIL [Code Civ. Proc sec. 1013(a)] by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 101 Ygnacio Valley Road, Walnut Creek, California 94596-8130 in accordance with Morrison & Foerster LLP's ordinary business practices. I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

☐ BY OVERNIGHT DELIVERY [Code Civ. Proc sec. 1013(d)] by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 101 Ygnacio Valley Road, Walnut Creek, California 94596-8130 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster l LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

☐ BY PERSONAL SERVICE [Code Civ. Proc sec. 1011] by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary

course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered to the document's addressee (or left with an employee or person in charge of the addressee's office) on the same date that it is placed at Morrison & Foerster LLP's mailroom.

Please note: If you check this box, you must follow up the next business day with an amended proof containing the name and signature of the person actually effecting service. This amended proof must be filed with the court.

☒  BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6] by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(s) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6.

**Steven Y. Bressler, Esq.**
**Trial Attorney, Civil Division, Federal Programs Branch**
**United States Department of Justice**
**P.O. Box 883**
**Washington, DC 20044**
**Steven.Bressler@usdoj.gov**

Executed at Walnut Creek, California, this 16th day of November, 2007.

_Kathy Beaudoin_
Kathy Beaudoin