# EXHIBIT 3

1  PETER D. KEISLER
   Assistant Attorney General
2  SCOTT N. SCHOOLS
   Interim United States Attorney
3  RICHARD LEPLEY
   Assistant Branch Director
4  DANIEL BENSING D.C. Bar No. 334268
   STEVEN Y. BRESSLER D.C. Bar No. 482492
5  KYLE R. FREENY California Bar No. 247857
   Attorneys
6  United States Department of Justice
   Civil Division, Federal Programs Branch
7
   P.O. Box 883
8  Washington, D.C.  20044
   Telephone:  (202) 305-0693
9  Facsimile:  (202) 616-8460
   Email: Daniel.Bensing@USDOJ.gov
10
   Attorneys for Defendants Hon. Gordon Mansfield, the U.S. Department of Veterans Affairs,
11 Hon. James P. Terry, Hon. Daniel L. Cooper, Hon. Bradley G. Mayes, Hon. Michael J. Kussman,
   Ulrike Willimon, the United States of America, Hon. Peter D. Keisler, and Hon. William P.
12 Greene, Jr.

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO

16

17 VETERANS FOR COMMON SENSE and      )
   VETERANS UNITED FOR TRUTH,         )   No. C 07-3758-SC
18                                    )
            Plaintiffs,               )
19                                    )
      v.                              )   **NOTICE OF MOTION AND MOTION**
20                                    )   **FOR PROTECTIVE ORDER TO STAY**
   Hon. GORDON H. MANSFIELD, Secretary )  **DISCOVERY**
   of Veterans Affairs, *et al.*,     )
21                                    )   Date: December 14, 2007
            Defendants.               )   Time: 10:00 a.m.
22                                    )   Courtroom: 1
                                      )
23 _____)

24         Pursuant to Rule 26(c), Fed. R. Civil P., defendants move for a protective order, staying

25 discovery for a short period of time until the Court rules on defendants' pending Motion to

26 Dismiss.   The basis for this motion is set forth in the attached Memorandum of Points and

27 Authorities and Attachments A, B and C thereto.  A Proposed Order is included.

28

Dated November 9, 2007    Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

SCOTT N. SCHOOLS
Interim United States Attorney

RICHARD LEPLEY
Assistant Branch Director

    **/s/ Daniel Bensing**
DANIEL BENSING D.C. Bar # 334268
STEVEN Y. BRESSLER D.C. Bar #482492
KYLE R. FREENY California Bar #247857
Attorneys
U.S. Department of Justice, Civil Division
P.O. Box 883
Washington, D.C. 20044
(202) 305-0693 (telephone)

Counsel for Defendants

Case No. C 07-3758-SC

Defendants' Motion for Protective Order to Stay Discovery

PETER D. KEISLER
Assistant Attorney General
SCOTT N. SCHOOLS
Interim United States Attorney
RICHARD LEPLEY
Assistant Branch Director
DANIEL BENSING D.C. Bar No. 334268
STEVEN Y. BRESSLER D.C. Bar No. 482492
KYLE R. FREENY California Bar No. 247857
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 305-0693
Facsimile:  (202) 616-8460
Email: Daniel.Bensing@USDOJ.gov

Attorneys for Defendants Hon. Gordon Mansfield, the U.S. Department of Veterans Affairs, Hon. James P. Terry, Hon. Daniel L. Cooper, Hon. Bradley G. Mayes, Hon. Michael J. Kussman, Ulrike Willimon, the United States of America, Hon. Peter D. Keisler, and Hon. William P. Greene, Jr.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, <br><br> Plaintiffs, <br><br> v. <br><br> Hon. GORDON H. MANSFIELD, Secretary of Veterans Affairs, *et al.*, <br><br> Defendants. | No. C 07-3758-SC <br><br> **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY** <br><br> Date: December 14, 2007 <br> Time: 10:00 a.m. <br> Courtroom: 1 |

## Introduction

Pursuant to Rule 26(c), Fed. R. Civil P., defendants move for a protective order, staying discovery for a short period of time until the Court rules on defendants' pending Motion to Dismiss.  On September 25, 2007, defendants moved to dismiss plaintiffs' complaint, asserting several arguments for why the court for lacks subject matter jurisdiction and why plaintiffs'

1   claims are legally insufficient.  That motion will be fully briefed shortly and is scheduled to be

2   argued on December 14, 2007.  Courts have broad discretion to stay discovery where a

3   dispositive motion may resolve some or all claims, thus promoting the interests of judicial

4   economy.  See Argument I, infra.

5          It is particularly appropriate for the Court to exercise its discretion to stay discovery in

6   this instance because plaintiffs' discovery requests are unreasonably overbroad and unjustified,

7   even to support the wide-ranging attack on the Department of Veterans Affairs (VA)  and its

8   programs plaintiffs wish to mount.  The VA has quickly reviewed the discovery requests in the

9   short time available and will demonstrate their overbroad nature, to which it would be

10  prohibitively expensive to respond, and which would cause grave disruption to VA's ability to

11  serve its constituent veterans.[1]

12                                    **Background**

13  1.     Plaintiffs' Claims

14         Plaintiffs, two advocacy organizations, have filed a complaint for injunctive and

15  declaratory relief that broadly challenges the benefits adjudication programs of the VA as they

16  relates to providing benefits to veterans with post traumatic stress syndrome (PTSD).  Plaintiffs

17  challenge the entire process by which VA provides medical services and benefits to veterans with

18  PTSD and their survivors, alleging violations of the Due Process Clause of the Fifth Amendment,

19  the Access to Courts Clause of the First Amendment, section 504 the Rehabilitation Act and 38

20  U.S.C. § 1710(e)(1)(D).

21  2.     Defendants' Motion to Dismiss

22         As noted, defendants moved to dismiss, identifying numerous jurisdiction and other legal

23  deficiencies with plaintiffs' claims.  First, the only possible waiver of sovereign immunity that

24  might apply is the Administrative Procedure Act, (APA) however, the APA is inapposite because

25  plaintiffs have failed to identify any "final agency action" that they challenge.  The Supreme

26

27          [1]Counsel for defendants have discussed this motion with counsel for plaintiffs who has

28  informed defendants' counsel that plaintiffs' will oppose this motion.

1    Court has held that the APA does not allow the type of wholesale, "programmatic" challenge

2    plaintiffs seek to bring in this Court. See Norton v. Southern Utah Wilderness Alliance, 542 U.S.

3    55, 64 (2004); cf. Allen v. Wright, 468 U.S. 737, 759-61 (1984) (a federal district court "is not

4    the proper forum" to seek "restructuring of the apparatus established by the Executive Branch to

5    fulfill its legal duties.").

6        Second, the only plaintiffs in this action are two advocacy organizations that have failed

7    to identify any individual veterans with standing to sue and whose direct participation is

8    unnecessary. For that reason, the plaintiff organizations lack Article III standing. See Smith v.

9    Pacific Properties and Dev. Corp., 358 F.3d 1097, 1101 (9th Cir. 2004).

10       Third, to the extent plaintiffs do allege harm from concrete agency actions, policies, or

11   procedures related to veterans benefits, Congress, in the Veterans' Judicial Review Act

12   ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105 (1988), has unambiguously barred district courts

13   from hearing such challenges and, instead, crafted an exclusive review process through the VA, a

14   specially created Article I court, and the Federal Circuit. See 38 U.S.C. §§ 502, 511(a). Plaintiffs

15   attempt to state a facial constitutional challenge to the VJRA itself, but that challenge fails to

16   state a claim upon which relief may be granted. See Defendants' Memorandum in Support of

17   Motion to Dismiss at 14-23. For example, plaintiffs' facial challenge to a statute that limits the

18   fees veterans may pay attorneys who represent them at the earliest stage of the VA adjudicatory

19   process is foreclosed by binding Supreme Court and Ninth Circuit precedents that upheld a more

20   restrictive fee limitation. See e.g. Walters v. National Ass'n of Radiation Survivors, 473 U.S.

21   305 (1985). Finally, plaintiffs also claim that the VA is failing to meet recently returning

22   veterans' statutory entitlement to free health care for two years, but this claim also fails as the

23   relevant statute makes it plain on its face that it creates no such entitlement.

24       In sum, defendants' motion to dismiss identifies numerous threshold jurisdictional and

25   other legal problems with plaintiffs' complaint, all of which can be resolved without fact-finding

26   or discovery. In effect, plaintiffs' lengthy Complaint reflects a variety of policy disagreements,

27   but it does not present any claim cognizable in this Court as opposed to the halls of Congress, or

28

the exclusive judicial and administrative review system that Congress has created.

3.   Plaintiffs' Discovery Requests

On October 19, 2007, plaintiffs served a First Amended First Set of Requests for Production of Documents on defendants (Attachment A, hereto) consisting of 129 separate requests, seeking an enormous range of material purportedly related (often very tangentially) to how the VA provides services to veterans with PTSD.  For example, plaintiffs seek complete claim files for several categories of veterans (Request numbers 31, 32 and 38) as well as all documents containing certain categories of information about all PTSD-related claims (Request numbers 4-17), that appears to require a review of all such claim files.   In essence, in their requests plaintiffs seek every document maintained by the VA (as well as some in the custody of other the Defense Department and the Court of Appeals for Veterans Claims) related in any way to claims for benefits or health care by veterans suffering from PTSD.  As explained in the Declaration of Thomas G. Bowman, the Chief of Staff of the Department of Veterans Affairs (Attachment B, hereto, "Bowman Decl."), VA staff have attempted to estimate the cost of searching for and producing all documents responsive to plaintiffs' requests and have concluded that these costs would be enormous –  searching and producing documents in response to twenty seven of the requests will cost more than $ 1 million each, and of those, responding to 21 will cost in excess of 2 $ million each.  Bowman Decl. ¶ 7.

On November 2, 2007, plaintiffs served a deposition notice seeking to depose forty-seven current and former employees of the VA and other government entities, beginning on January 8, 2008 and continuing into April of 2008.  (Attachment C, hereto).   Plaintiffs' proposed deponents include the Acting Secretary of Veterans Affairs, numerous other senior VA officials, (including the Deputy Secretary, the General Counsel and the Inspector General), the Attorney General of the United States Department of Justice, a senior official of the Government Accountability Office, and the current and former Chief Judges of the United States Court of Appeals for Veterans Claims.  Plaintiffs' deposition notice demands that all deponents produce any documents they have that are responsive to plaintiffs' document requests, including documents

found "in each deponent's working files, computer work stations, or other personal files," Attachment C at 1.  Moreover, all of these depositions are noticed for San Francisco, even though many of the deponents do not reside or work in the Northern District of California.

# ARGUMENT

## I.    The Court Has the Discretion to Defer the Initiation of Discovery Pending Resolution of a Motion to Dismiss Challenging the Court's Subject Matter Jurisdiction

It is of course well settled that district courts have sweeping discretion to control the nature and timing of discovery.  Herbert v. Lando, 441 U.S. 153, 177 (1979) ("[J]udges should not hesitate to exercise appropriate control over the discovery process.").  Under Rule 26(c) of the Federal Rules of Civil Procedure, courts have discretion to issue protective orders upon a showing of good cause.  Rule 26(c) provides, in pertinent part, that:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) that the disclosure or discovery not be had.

Fed. R. Civ. P. 26(c).  Courts have consistently exercised such discretion to order a stay of all discovery where it appears that the case can be resolved through a dispositive motion.  See e.g. Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir. 1987);  B.R.S. Land Investors v. United States, 596 F.2d 353, 356 (9th Cir. 1979); Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987) ("trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined"); Patterson v. United States, 901 F.2d 927, 929 (11th Cir. 1990); Hahn v. Star Bank, 190 F.3d 708, 719 (6th Cir. 1999).

A stay is particularly appropriate where the dispositive motion challenges the court's subject matter jurisdiction.  Thus, the Supreme Court has noted that "[i]t is a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters."  United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 79-80 (1988).  Where a motion to dismiss presents questions of law for which

factual discovery is neither necessary nor appropriate, as is typically the case where the defendant

challenges the court's subject matter jurisdiction, discovery should be stayed pending a

resolution of the motion.  See Wagh v. Metris Direct Inc., 363 F.3d 821, 829 (9th Cir. 2003)

(discovery at the pleading stage is only appropriate where factual issues are raised by a Rule

12(b) motion.); Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984); Rae v.

Union Bank, 725 F.2d 478, 481 (9th Cir. 1984).  See generally 6 Moore's Federal Practice §

26.105[3][c].  The obvious rationale for entering a protective order when disposition of a motion

may obviate the need for discovery is to conserve the parties' time and resources.  See Scroggins

v. Air Cargo, Inc., 534 F.2d 1124, 1133 (5th Cir. 1976).

## II.     The Court Should Grant a Protective Order Staying Plaintiffs' Discovery Requests Pending a Ruling on Defendants' Motion to Dismiss

Here, principles of sound case management counsel in favor of a short stay of discovery

to permit a ruling on defendants' Motion to Dismiss, which will avoid the waste of the Court's

and the parties' resources, with minimal prejudice to plaintiffs.  First, defendants' Motion to

Dismiss raises strong jurisdictional defenses to plaintiffs' claims.  Assuming jurisdiction in this

Court, plaintiffs' facial challenge to the constitutionality of the VJRA can be resolved without

the need for discovery.  See Rae v. Union Bank, supra 725 F.2d at 481.  Nor need the Court have

to conclude that defendants' motion will be successful in order to grant a stay.  When a court can

conclude that a defendants' motion to dismiss "does not appear to be without some degree of

foundation in law and there is a possibility that defendant may prevail," a stay of discovery is

appropriate.  Ameritel Inns v. Moffat Brothers, 2007 WL 1792323, *4  (D. Idaho 2007).  See also

Johnson v. New York Univ. School of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (stay of

discovery appropriate where dispositive motion has "substantial grounds"); GTE Wireless, Inc. v.

Qualcomm, Inc., 192 F.R.D. 284, 287 (S.D. Cal. 2000) (stay where defendants's motion has

around a "fifty percent chance of success").

Nor is this a case where the probable result of a favorable ruling on a defendants' motion

to dismiss will be an order granting plaintiffs leave to amend to address a pleading defect, thus

justifying the continuation of discovery in the interim.  See e.g.  In Re Valence Technology

Securities Litigation,1994 WL 758688 (N.D. Cal. 1994).  Plaintiffs' 278-paragraph complaint

includes numerous allegations invoking every relevant authority, hence, if defendants' motion to

dismiss is granted, it is doubtful plaintiffs will be able to cure any defects in their allegations.

Finally, a brief stay in discovery will not unduly prejudice plaintiffs since defendants' Motion to

dismiss will be argued on December 14, 2007 and discovery can be addressed shortly after a

ruling.

A stay is particularly appropriate here given the enormous burden that would be imposed

by plaintiffs' sweeping Requests for Production of Documents as well as their proposed

deposition schedule.  As another judge of this Court has recognized, "staying discovery may be

particularly appropriate . . . where discovery tends to be broad, time-consuming and expensive."

In Re NetFlix Antitrust Litigation, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007).  As with the

antitrust claim at issue in NetFlix, the discovery plaintiffs seek here also promises to be "a

sprawling, costly and hugely time-consuming undertaking."  NetFlix, supra 506 F.Supp 2d at

321, quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1967 n. 6 (2007).

As explained in the Bowman Declaration, employees of the VA have made preliminary

inquiries into the estimated cost, in time and funds, to search for and produce non-privileged

documents in response to plaintiffs' 129 Requests for Production.  Bowman Decl. ¶ 7.[2]  Mr.

Bowman briefly explains the burden that these requests impose on the VA, which maintains 57

Regional Offices, 209 Vets Centers, 153 hospitals, 135 nursing homes, 724 Community Based

Outpatient Clinics, and 46 Domiciliary Residential Rehabilitation Treatment Programs, all of

which are likely to have records relevant to the provision of services to veterans who suffer from

---

[2]Given the exceptionally broad scope of plaintiffs' requests and the limited time available
for VA staff to conduct these inquiries, the responses received are, admittedly, no more than
rough estimates of the cost in time and money to respond to the requests.  See Bowman Decl. ¶ 7.
In addition, VA staff attempted to calculate the cost of responding to each of plaintiffs' requests
as written, even though VA would assert overbreath and relevancy objections to many of these
requests.  Nevertheless, these calculations do provide an approximate estimate of the aggregate
cost of responding to the vast majority of plaintiffs' requests.  Id.

1  PTSD.  Bowman Decl. ¶ 8c; 10.  The VA provides numerous and significant services to veterans

2  with PTSD, and consequently the staff at its approximately 1300 care-providing facilities will be

3  required to search for documents responsive to PTSD issues, such as "diagnostic criteria for

4  PTSD applied by VA."  (Request number 33).  Id. ¶ 10.  As Mr. Bowman notes, responding to

5  these requests "would significantly burden the VA health system and distract employees,

6  particularly health care providers, from delivering health care services to veterans."  Id.  This

7  diversion from providing services to veterans is particularly serious given that disability claims

8  have increased 45% from 2000 to 2007.  Id. ¶ 14.

9       Additionally, all of plaintiffs' requests seek "documents," which plaintiffs define to

10  include any tangible thing on which a "communication" has been recorded, and typically make

11  no attempt to identify the personnel who may have authored such communications.  Bowman

12  Decl. ¶ 8a.  Consequently, each request will require a search of emails (communications, by

13  definition) , thus requiring a review of some or all of VA's 320,000 e-mail accounts.  Id.   This

14  will impose a significant burden, because "in order to conduct a search of the active e-mail

15  system for messages containing particular words or phrases, each mailbox would need to be

16  searched separately," and hence, searching email records will be inordinately time consuming.

17  Id.

18       At least eight of plaintiffs' requests (Request numbers 16, 17, 31, 32, 38, 103, 104 and

19  115) will undoubtedly require a search of individual claim files, which are maintained in VA's

20  57 Regional Offices as well as at its Records Management Center, and another nineteen (Request

21  numbers 1-15, 21, 96-98) may require such searches of individual files.  Bowman Decl. ¶ 8b.

22  Searches of such paper files would require VA to write and run a computer program to attempt to

23  locate the relevant claim files, physically retrieve the files and then assign staff to review them

24  for responsive documents.  Bowman Decl. ¶ 8c.  To take one example, VA estimates that the cost

25  of searching files for death certificates (Request number 115) will require over 73,000 staff-

26  hours, costing $ 2.5 million.  Bowman Decl. ¶ 8c.

27       Based on the numerous separate inquiries made by VA staff as to the burden in time and

28

expense to search various paper files and electronic data bases for plaintiffs' requests, it is estimated that twenty-seven of plaintiffs' 129 requests will each impose in excess of $ 1 million in costs on VA and in the case of twenty of those requests, the cost will exceed $ 2 million. Bowman Decl. ¶ 7.  As Mr. Bowman explains, this diversion of resources will directly and significantly impact the VA's mission of providing health care and benefits to the veterans it serves.  See Bowman Decl. ¶¶ 10-15.  For example, responding to the requests "would divert many of [VA's] regional office employees from their primary mission of delivering benefits to veterans and their survivors to searching records and reviewing files."  Id. at ¶ 15.  The burden of responding to plaintiffs' requests goes far beyond imposing administrative burdens and inconvenience on the VA; it will have an immediate adverse impact on veterans and their families.[3]

Finally, the requests also seek the production of medical treatment files relating to mental health services, which records are exceptionally sensitive and are subject to statutory confidentiality protections and potentially covered by the psychotherapist-patient privilege. Bowman Decl. ¶ 9.  Even if steps are taken to protect veteran confidentiality (steps which will further add to the time and expense of responding), there is always the possibility that veteran confidentiality will be compromised.  As Mr. Bowman notes, "Vet Center program administrators are concerned that such a disclosure would undermine the Vet Center Program's hard won trust with the combat veteran population and could cause serious barriers to care for new veterans needing readjustment counseling services."  Id.  Plaintiffs' excessively broad requests, which make no effort to balance the need for the materials sought against the damage that disclosure will cause, should not be permitted until threshold legal issues have been resolved.

---

[3]Defendants' objections to the extremely burdensome nature of plaintiffs' discovery requests are offered in support of their request for a stay of discovery pending a ruling on their motion to dismiss.  In the event that some or all of plaintiffs' claims survive the motion to dismiss, defendants reserve the right to reassert these and other objections to plaintiffs' document production requests and deposition notices.

Case No. C 07-3758-SC
Defendants' Motion for Protective Order to Stay Discovery

9

**CONCLUSION**

For all of the foregoing reasons, the Court should grant defendants' Motion for Protective Order and stay discovery until after a ruling on defendants' Motion to Dismiss.  A Proposed Order is attached.


Dated November 9, 2007                    Respectfully Submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General

                                          SCOTT N. SCHOOLS
                                          Interim United States Attorney

                                          RICHARD LEPLEY
                                          Assistant Branch Director

                                          _____*/s/ Daniel Bensing*_____
                                          DANIEL BENSING D.C. Bar # 334268
                                          STEVEN Y. BRESSLER D.C. Bar #482492
                                          KYLE R. FREENY California Bar #247857
                                          Attorneys
                                          U.S. Department of Justice, Civil Division
                                          P.O. Box 883
                                          Washington, D.C. 20044
                                          (202) 305-0693 (telephone)

                                          Counsel for Defendants

1  GORDON P. ERSPAMER (CA SBN 83364)
   GErspamer@mofo.com
2  STACEY M. SPRENKEL (CA SBN 241689)
   SSprenkel@mofo.com
3  MORRISON & FOERSTER LLP
   101 Ygnacio Valley Road, Suite 450
4  P.O. Box 8130
   Walnut Creek, California 94596-8130
5  Telephone: 925.295.3300
   Facsimile: 925.946.9912
6
   SIDNEY M. WOLINSKY (CA SBN 33716)
7  SWolinsky@dralegal.org
   MELISSA W. KASNITZ (CA SBN 162679)
8  MKasnitz@dralegal.org
   JENNIFER WEISER BEZOZA (CA SBN 247548)
9  JBezoza@dralegal.org
   KATRINA KASEY CORBIT (CA SBN 237931)
10 KCorbit@dralegal.org
   DISABILITY RIGHTS ADVOCATES
11 2001 Center Street, Third Floor
   Berkeley, California 94704-1204
12 Telephone: 510.665.8644
   Facsimile: 510.665.8511
13
   **[see next page for additional counsel for plaintiffs]**
14
   Attorneys for Plaintiff(s)
15 VETERANS FOR COMMON SENSE, and
   VETERANS UNITED FOR TRUTH, INC.
16
                 UNITED STATES DISTRICT COURT
17
                 NORTHERN DISTRICT OF CALIFORNIA
18
19 VETERANS FOR COMMON SENSE, and          Case No.     C-07-3758-SC
   VETERANS UNITED FOR TRUTH, INC.,
20                                          **VETERANS FOR COMMON SENSE
                 Plaintiffs,                AND VETERANS UNITED FOR
21                                          TRUTH, INC.'S FIRST AMENDED
        v.                                  FIRST SET OF REQUESTS FOR
22                                          PRODUCTION OF DOCUMENTS
   R. JAMES NICHOLSON, Secretary of Veterans   TO ALL DEFENDANTS**
   Affairs, et al.,
23
                 Defendants.                (Class Action)
24
                                            Complaint Filed July 23, 2007
25
26
27                                          
                                            DEFENDANT'S
                                            EXHIBIT
28                                          A

Case No. C-07-3758-SC
VCS and VUFT's First Set of Requests for Production of Documents
wc-134178

1   **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2   ARTURO J. GONZALEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   HEATHER A. MOSER (CA SBN 212686)
    HMoser@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   BILL D. JANICKI (CA SBN 215960)
    WJanicki@mofo.com
8   MORRISON & FOERSTER LLP
    400 Capitol Mall, Suite 2600
9   Sacramento, California 95814
    Telephone: 916.448.3200
10  Facsimile: 916.448.3222

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-07-3758-SC
VCS and VUFT's First Set of Requests for Production of Documents
wc-134178

**PROPOUNDING PARTY: VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC.**

**RESPONDING PARTIES: R. JAMES NICHOLSON, *et al.***

**SET NUMBER:**          **ONE**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs Veterans for Common Sense ("VCS") and Veterans United for Truth, Inc. ("VUFT") request that each of the named defendants (collectively "Defendants") separately produce for inspection and copying the documents and things set forth below that are in its possession, custody, or control, or in the possession, custody, or control of its attorneys and/or accountants, its investigators, and any persons acting on their behalf, at the offices of Morrison & Foerster, 101 Ygnacio Valley Road Suite 450, Walnut Creek, California, 94596 or another place as may be mutually agreed upon within thirty (30) days.

**DEFINITIONS**

Unless otherwise indicated, the following definitions shall apply.

1.    "COMMUNICATION" or "COMMUNICATIONS" means, unless otherwise specified, any of the following:  (a) any written letter, memorandum, DOCUMENT, or any other writing; (b) any telephone call between two or more PERSONS, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more PERSONS, whether or not such contact was by chance or prearranged, formal or informal, including, without limitation, conversations or meetings occurring via telephone, teleconference, video conference, electronic mail (e-mail), or instant electronic messenger.

2.    "CONCERNING" means constituting, summarizing, memorializing, referring to, and/or relating to.

3.    "DOCUMENT" or "DOCUMENTS" means any tangible thing upon which any expression, COMMUNICATION or representation has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, or mechanical or electronic recording and any non-identical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to

1    working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes,

2    records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports

3    of telephone or other oral conversations, desk calendars, appointment books, audio or video tape

4    recordings, e-mail or electronic mail, electronic folders, microfilm, microfiche, computer tape,

5    computer disk, computer printout, computer card, and all other writings and recordings of every kind

6    that are in your actual or constructive possession, custody or control.

7        4.   "IDENTIFY" or "IDENTITY" means:

8           a.    with respect to a PERSON, to state the PERSON's full name, current or last

9    known employer, that employer's address and telephone number, the PERSON's title and/or position

10    with that employer, and the PERSON's current or last known home address and telephone number;

11           b.   with respect to a DOCUMENT, to state the type of DOCUMENT (i.e., letter,

12    memorandum, telephone note, computer floppy or hard disk, magnetic tape, etc.), the title of the

13    DOCUMENT (if any), the date it was created, the author, all intended recipients including the

14    addressee and any and all copyees, a brief description of the subject matter of the DOCUMENT, the

15    present and/or last known location of the DOCUMENT, and to IDENTIFY all present or last known

16    person in possession, custody or control of the DOCUMENT;

17           c.    with respect to a COMMUNICATION to state the name and affiliation of all

18    PERSONS participating in, or present for, the COMMUNICATION, the date of the

19    COMMUNICATION, and whether it was conducted in person or by other means (such as telephone,

20    correspondence, e-mail), and whether it was recorded (e.g., stenographically or by audio or

21    videotape);

22           d.   with respect to a MEETING to state the names and affiliations of all

23    PERSONS participating in, or present for, the MEETING, the date of the meeting, and the location of

24    the meeting, and the purpose of the meeting.

25        5.   "MEETING" or "MEETINGS" means any coincidence of, or presence of, or telephone,

26    television, radio, or other electronic communication between or among persons, whether such was by

27    chance or prearranged, informal or formal.

28

6. "PERSON" or "PERSONS" means, unless otherwise specified, any natural person, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of organization or arrangement, and government and government agency of every nature and type.

7. "YOU" or "YOUR" means the Defendants in this action, and all of their predecessors, partners, limited partners, affiliates, parent corporations, directors, staff, employees, and agents. These terms also include any representatives or agents acting on YOUR behalf, including, without limitation, attorneys, investigators, or consultants.

## SPECIAL DEFINITIONS

8. "ALTARUM INSTITUTE" means the Altarum Institute, headquartered in Ann Arbor, Michigan, and all (i) its present and former directors, officers, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary or affiliated entities that were in existence during the applicable period of time covered by these requests, including, without limitation; (ii) any other person or entity acting on its behalf or on whose behalf it acted; or (iii) any other person or entity otherwise subject to its control or which controls it, or with which they are under common control.

9. "BVA" or "BOARD OF VETERANS APPEALS" means the Board of Veterans Appeals and all its offices, departments, organizations, administrations, sections, teams, management, members, and employees including, without limitation, all judges, Board members, attorneys, and staff attorneys.

10. "CAVC" or "Court of Appeals for Veterans Claims" means the Court of Appeals for Veterans Claims and all its offices, departments, organizations, administrations, sections, teams, management, members, and employees including, without limitation, all judges, attorneys, and staff attorneys, including, the time period when this entity was named the Court of Veterans Appeals.

11. "CLAIM" means an application filed by a PERSON seeking SCDDC, including the initial claim, each reopened claim and any appeals to the BVA, CAVC, Federal Circuit, or U.S. Supreme Court.

1        12.   "CLINICIAN'S GUIDE" means the publication entitled VA Clinician's Guide (Lewis

2   R. Coulso, ed., Matthew Bender & Co. Inc. 2006), and earlier or later versions of that edition of the

3   Clinician's Guide.

4        13.   "DEPARTMENT OF DEFENSE" or "DoD" means the United States Department of

5   Defense, and all its offices, departments, organizations, administrations, boards, commissions, task

6   forces, management, and past and present employees and service members.

7        14.   "DEPARTMENT OF THE AIR FORCE" means the United States Department of the

8   Air Force, and all its offices, departments, organizations, administrations, boards, commissions, task

9   forces, management, and past and present employees and service members.

10       15.   "DEPARTMENT OF THE ARMY" means the United States Department of the Army,

11  and all its offices, departments, organizations, administrations, boards, commissions, task forces,

12  management, and past and present employees and service members.

13       16.   "DEPARTMENT OF THE NAVY" means the United States Department of the Navy,

14  and all its offices, departments, organizations, administrations, boards, commissions, task forces,

15  management, and past and present employees and service members, including the United States

16  Marine Corps.

17       17.   "DOLE/SHALALA REPORT" means the Report of the President's Commission on

18  Care for America's Wounded Returning Warriors, published July 2007 by Co-Chairs Robert Dole

19  and Donna Shalala.

20       18.   "DSM" means any edition of the Diagnostic and Statistical Manual of Mental

21  Disorders, published by the American Psychiatric Association.

22       19.   "DVB" or "DEPARTMENT OF VETERANS BENEFITS" means the Department of

23  Veterans Benefits within the VA and all its offices, departments, organizations, administrations,

24  boards, commissions, task forces, management, and past and present employees.

25       20.   "GAO" means the United States Government Accountability Office and all its

26  predecessors, offices, departments, organizations, administrations, boards, commissions, task forces,

27  management, and past and present employees.

28

21. "INSTITUTE OF MEDICINE" means the Institute of Medicine, National Academy of Sciences panel and all of its current and past employees and members.

22. "OPERATION ENDURING FREEDOM" or "OEF" means Operation Enduring Freedom, the official name given to military operations in Afghanistan, and the nations and bodies of water around it.

23. OPERATION IRAQI FREEDOM" or "OIF" means Operation Iraqi Freedom, the official name given to military operations in Iraq and in the nations and bodies of water near it, beginning in the year 2003.

24. "PERSONALITY DISORDER DISCHARGE" or "PDD" means the separation from military service of a PERSON under Army Regulation 635-200, Chapter 5-13, Navy Military Personnel Manual 1910-122, Marine Corps Separation and Retirement Manual Chapter 6, Section 2, Subsection 6203, Air Force Regulation AFI 36-3208, or any similar DoD regulations, including DoD Directive 133.2.14 (December 21, 1993), and any actions by the VA based on a PDD or a personality disorder finding or diagnosis.

25. "PTSD" means post-traumatic stress disorder, as described in the DSM and VA Regulations referencing the DSM.

26. "SCDDC" means service-connected death or disability compensation, including dependency and indemnity compensation, as described in the Complaint.

27. "TDIU" means a claim for and/or VA rating of total disability based on individual unemployability.

28. "VA" or "DVA" means the United States Department of Veterans Affairs, and all its offices, departments, organizations, administrations, boards, consultants, commissions, task forces, management, and past and present employees.

29. "VETERANS AFFAIRS COMMITTEES" means the members of the House or Senate Veterans Affairs Committees, their staff, and any persons acting on their behalf.

30. "VETERANS BENEFITS ADMINISTRATION" or "VBA" means the Veterans Benefits Administration within the VA and all its offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

31. "VETERANS HEALTH ADMINISTRATION" or "VHA" means the Veterans Health Administration within the VA and all its offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

32. "VAIG" means the Inspector General of the Veterans Administration and all its offices, departments, organizations, administrations, boards, commissions, task forces, management, and past and present employees.

## CONSTRUCTION

The following rules of construction shall also apply.

1. "All" or "each" shall be construed as "all and each."

2. "Any" should be understood to include and encompass "all"; "all" should be understood to include and encompass "any."

3. "And" or "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1. In the event Defendants produce original documents for inspection and copying, such production shall be as the documents are kept in the usual course of business.

2. In lieu of production for inspection and copying, Defendants may produce the requested documents by mail or delivery of true copies thereof to Morrison & Forester at the aforesaid address, and make the originals available for inspection at a mutually agreed-upon location, during normal business hours and upon reasonable notice. The documents copied shall be copied as they are kept in the normal course of business, and any titles, labels, or other descriptions on any box, folder, binder, file cabinet, or other container shall be copied as well.

3. Each document is to be produced, along with all non-identical copies, drafts, alterations, and translations thereof, in its entirety, without abbreviations or redactions.

4. If any part of a document is responsive to any of the following requests, the entire document shall be produced.

5.    If Defendants withhold any of the requested documents from production under a claim of privilege or other protection, it must serve within thirty (30) days of the service of this request a list of such withheld documents ("privilege log") indicating, for each document withheld, the following information if known or available to Defendants:  (i) the date composed or date appearing on the document; (ii) the author; (iii) the number of pages; (iv) the number of copies made; (v) the identity of all persons or entities who saw the original document or saw or received a copy of such document, and the job titles of each such person; (vi) the subject matter; and (vii) the basis for claim of privilege or other immunity asserted.  The privilege log should be sufficiently detailed to permit Plaintiffs to determine whether to make a motion with respect thereto.

6.    If Defendants are aware of the existence of any requested items that they are unable to produce, specify in writing and serve upon the undersigned a list indicating the identity of such documents within thirty (30) days of the service of this request.  Such identification should, for each such document, set forth whether the document:  (i) has been destroyed; (ii) has been lost, misplaced, or stolen; or (iii) has never been, or is no longer, in the possession, custody, or control of the responding party, in which case the name and address of any person or entity known or believed by Defendants to have possession, custody or control of that document or category of documents should be identified.  In each such instance, each Defendant is to identify the document by author, addressee, date, subject matter, number of pages, attachments or appendices, all persons to whom it was distributed, shown, or explained, date and manner of destruction or other disposition, the reason for destruction or other disposition, and persons destroying or disposing of the document.

7.    If Defendants contend that any of the following requests is objectionable in whole or in part, Defendants shall state with particularity each objection, the basis for it, and the categories of information and documents to which the objection applies, and Defendants shall respond to the request insofar as it is not deemed objectionable.

8.    If Defendants find the meaning of any term in these requests unclear, Defendants shall assume a reasonable meaning, state what the assumed meaning is, and respond to the request according to the assumed meaning.

9.     The following requests shall be deemed to be continuing.  In accordance with Federal Rule of Civil Procedure 26(e), Plaintiffs request that if, after answering the requests, Defendants acquire additional knowledge or information regarding documents or things responsive to the requests, Defendants shall produce such documents or provide Plaintiffs with such additional knowledge or information.

10.     Unless otherwise specified, each request calls for all documents created, received, or dated between January 1, 2000 and the date of your response to the request.

## REQUESTS FOR PRODUCTION

**PREAMBLE TO ALL REQUESTS:**  All DOCUMENTS CONCERNING any one or more of the following:

**REQUEST FOR PRODUCTION NO. 1:**

Lists, databases, computer systems or printouts showing pending SCDDC claims based on PTSD or mental health disorders, including, without limitation, those containing information regarding the stage of proceeding (e.g., regional office, BVA, CAVC, etc.) and/or similar lists maintained, generated, dated, or printed between January 1, 2000 and the present.

**REQUEST FOR PRODUCTION NO. 2:**

Lists, databases or printouts of all resolved SCDDC claims based upon PTSD or mental health disorder sorted, including, without limitation, information CONCERNING the stage of proceeding (e.g., regional office, BVA, CAVC, etc.) at the time of resolution, and/or similar lists maintained, generated, dated, or printed between January 1, 2000 and the present.

**REQUEST FOR PRODUCTION NO. 3:**

Circulars, directives, letters, VA Fast letters, policy directives or other written COMMUNICATIONS concerning rules, procedures or practices for evaluating and/or adjudicating PTSD claims.

**REQUEST FOR PRODUCTION NO. 4:**

The number of PTSD claims currently pending at each regional office of the VA, and the number of days each claim has been pending starting from the original filing date.

Case No. C-07-3758-SC
VCS and VUFT's First Set of Requests for Production of Documents
wc-134178

8

**REQUEST FOR PRODUCTION NO. 5:**

The number of SCDDC claims pending at each regional office of the VA, and the number of days each claim has been pending starting from the original filing date.

**REQUEST FOR PRODUCTION NO. 6:**

Beginning with the filing of a Notice of Disagreement, the number of days each PTSD claim appeal has been pending starting from the original filing date.

**REQUEST FOR PRODUCTION NO. 7:**

Beginning with the filing of a Notice of Disagreement, the number of days each SCDDC claim has been pending at the BVA starting from the original filing date.

**REQUEST FOR PRODUCTION NO. 8:**

Beginning with the Notice of Appeal, the number of days each SCDDC appeal has been pending starting from the original filing date.

**REQUEST FOR PRODUCTION NO. 9:**

Beginning with the Notice of Appeal, the number of days each PTSD appeal has been pending starting from the original filing date.

**REQUEST FOR PRODUCTION NO. 10:**

The number of days required to adjudicate PTSD claims resolved at VA regional office and average time of each between 2000 and present, beginning on the date of receipt of the claim.

**REQUEST FOR PRODUCTION NO. 11:**

The number of days required to adjudicate SCDDC claims resolved at VA regional office and average time of each between 2000 and present, beginning on the date of receipt of the claim.

**REQUEST FOR PRODUCTION NO. 12:**

The number of days required to decide each resolved PTSD claim appeal, beginning on the date of the Notice of Disagreement, and average time, between 2000 and present.

**REQUEST FOR PRODUCTION NO. 13:**

The number of days required to decide each resolved SCDDC claim appeal, beginning on the date of the Notice of Disagreement, and average time, between 2000 and present.

**REQUEST FOR PRODUCTION NO. 14:**

The number of days required to resolve every PTSD claim appeal to the CAVC, beginning on the filing of the Notice of Appeal, and average time between 2000 and present.

**REQUEST FOR PRODUCTION NO. 15:**

The number of days required to resolve every SCDDC claim appeal to the CAVC, beginning on the filing of the Notice of Appeal, and average time between 2000 and present.

**REQUEST FOR PRODUCTION NO. 16:**

The average number of days for VA regional offices to complete action on remands of PTSD claims from the BVA, and from the CAVC between 2000 and present.

**REQUEST FOR PRODUCTION NO. 17:**

The average number of days for VA regional offices to complete action on remands of SCDDC claims from the BVA, and from the CAVC between 2000 and present.

**REQUEST FOR PRODUCTION NO. 18:**

Examples or incidents involving a failure or delay in providing medical diagnosis or treatment to a veteran claiming he or she has PTSD, and all MEETINGS and COMMUNICATIONS CONCERNING the same, including letters to and from elected officials, veterans service officers, and the press.

**REQUEST FOR PRODUCTION NO. 19:**

COMMUNICATIONS between DEFENDANTS and the executive branch, including the Office of the President of the United States, CONCERNING VA annual budgets and/or supplemental appropriations between 2002 and present.

**REQUEST FOR PRODUCTION NO. 20:**

Policies, practices or procedures CONCERNING implementation of or compliance or noncompliance with the two-year medical care statute identified in Paragraph 91 of the Complaint.

**REQUEST FOR PRODUCTION NO. 21:**

The grant rate for PTSD claims at the regional office level, BVA, CAVC, and/or Federal Circuit between 2000 and present, with the date sorted by combined degree of disability (CDD) in increments of 10 percent from 000 to 100.

Case No. C-07-3758-SC
VCS and VUFT's First Set of Requests for Production of Documents
wc-134178

10

**REQUEST FOR PRODUCTION NO. 22:**

Reports, papers, research and studies CONCERNING PTSD by the National Center for Post-Traumatic Stress Disorder.

**REQUEST FOR PRODUCTION NO. 23:**

The filing and/or allegations contained in the Complaint herein, and any amended complaints, if any.

**REQUEST FOR PRODUCTION NO. 24:**

The discharge of soldiers from the Iraq or Afghanistan theaters of combat based upon the alleged existence of a personality disorder, and policies and procedures related to personality disorder discharges ("PDDs"), and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 25:**

COMMUNICATIONS between Defendants and the Department of the Army or the Department of Defense CONCERNING the subject of personality disorder discharges.

**REQUEST FOR PRODUCTION NO. 26:**

The VA's acceptance or non-acceptance of Personality Disorder Discharges from the military branches for purposes of determining a veteran's or veterans' eligibility for medical care and/or SCDDC for PTSD.

**REQUEST FOR PRODUCTION NO. 27:**

The diagnosis, epidemiology, assessment, treatment, co-morbidities, treatment outcomes, and/or psychopharmacology of PTSD in general and/or as handled by the VA.

**REQUEST FOR PRODUCTION NO. 28:**

The two VA-10M contracts of PTSD.

**REQUEST FOR PRODUCTION NO. 29:**

Efforts or attempts by Defendants to have PTSD removed, changed, or reclassified as a disorder under any edition of the DSM and/or in any other context.

**REQUEST FOR PRODUCTION NO. 30:**

The interpretation or application of regulations pertaining to personality disorder discharges, including Army Regulation 635-200, Chapter 5-13 (Separation Because of Personality Disorder),

1    Navy Military Personnel Manual 1910-122, Marine Corps Separation and Retirement Manual

2    Chapter 6, Section 2, Subsection 6203, Air Force Regulation AFI 36-3208, or any similar DoD

3    regulations, including DoD Directive 133.2.14 (December 21, 1993).

4    **REQUEST FOR PRODUCTION NO. 31:**

5        The IDENTITY and claim files for all veterans with PTSD claims or symptoms who have

6    asserted that their consent to personality disorder discharges was not knowing or voluntary, and all

7    COMMUNICATIONS CONCERNING the same.

8    **REQUEST FOR PRODUCTION NO. 32:**

9        The complete claim files of the veterans listed on Attachment "A."

10   **REQUEST FOR PRODUCTION NO. 33:**

11       Diagnostic criteria for PTSD applied by the VA, and all changes since 2004.

12   **REQUEST FOR PRODUCTION NO. 34:**

13       Screening protocols or checklists for PTSD prepaid, received or used by the VA, and all

14   changes made since 2004.

15   **REQUEST FOR PRODUCTION NO. 35:**

16       Statistical data and reports concerning suicides or attempted suicides by veterans with PTSD

17   or other mental health disorders, the VA's policies or practices CONCERNING suicide or threatened

18   suicides, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

19   **REQUEST FOR PRODUCTION NO. 36:**

20       Survey or statistical data or reports concerning unreported or under-reported cases of PTSD or

21   mental health disorders amongst veterans and the reasons or explanations for the same.

22   **REQUEST FOR PRODUCTION NO. 37:**

23       Congressional testimony by YOU concerning PTSD and drafts, reports, correspondence,

24   summaries, and comments CONCERNING the same.

25   **REQUEST FOR PRODUCTION NO. 38:**

26       The claim files and death certificates of all veterans who have attempted suicide or committed

27   suicide since January 1, 2000.

28

**REQUEST FOR PRODUCTION NO. 39:**

The availability or lack of availability of medical care and treatment for veterans with symptoms of or a diagnosis of PTSD or other mental disorders at each VA outpatient clinic and hospital.

**REQUEST FOR PRODUCTION NO. 40:**

Protocols and procedures for the exchange of information between the VBA and the VHA CONCERNING veterans filing SCDDC claims based on PTSD, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 41:**

Assessments, audits, analyses, critiques or evaluations of the VHA's health care system for PTSD and other mental health disorders.

**REQUEST FOR PRODUCTION NO. 42:**

The incidence and manifestations of PTSD or mental health disorders amongst members of the Reserves called to active duty in Iraq or Afghanistan, including, without limitation, veterans' under VA or private care, and YOUR tracking of medical problems experienced by members of the Reserves who served in OEF/OIF.

**REQUEST FOR PRODUCTION NO. 43:**

The complete investigation and prosecution files regarding Lawrence Gottfried and Jill Rygalski, as identified in Paragraphs 231 and 232 of the Complaint, and any other persons known or suspected to have tampered with or destroyed any document or portion of a veteran's claim file.

**REQUEST FOR PRODUCTION NO. 44:**

The IDENTITY of all veterans whose claims were affected by the illegal actions of Lawrence Gottfried or Jill Rygalski, as described in the Complaint, and the claim files of each.

**REQUEST FOR PRODUCTION NO. 45:**

The complete investigation files of the Department of Justice and the VA relating to Jill Rygwalski and Lawrence Gottfried, and any similar investigations of other VA employees.

**REQUEST FOR PRODUCTION NO. 46:**

The complete investigation and prosecution files of all other VA employees known or suspected to have tampered with or destroyed documents in VA claim files.

**REQUEST FOR PRODUCTION NO. 47:**

Regarding bonuses to management level VA employees, the bonus amounts, names of recipients, dates of awards, supporting justifications of awards, and name of person who signed the approval of award between 2002 and present.

**REQUEST FOR PRODUCTION NO. 48:**

The criteria for the award of incentive bonuses to VA employees and productivity or performance goals, standards, data, and reports.

**REQUEST FOR PRODUCTION NO. 49:**

The minimum qualifications for each class or type of VA mental health specialist or professional.

**REQUEST FOR PRODUCTION NO. 50:**

Errors or erroneous practices regarding the tracking or recording of dates CONCERNING veteran health care appointments as shown in the Patient Appointment Information System, all corrections made thereto, and MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 51:**

All data fields, definitions, and operational manuals CONCERNING databases used by the VA relating to the adjudication of PTSD claims including, without limitation, any and all original claims, appeals at regional offices, appeals at the BVA, appeals to the CAVC, and the delivery of health care to veterans at VA hospitals or outpatient clinics.

**REQUEST FOR PRODUCTION NO. 52:**

All data fields, definitions, and operational manuals CONCERNING databases used by the VA regarding the timing and disposition of veteran appeals by the BVA, including, without limitation, the Veterans Appeals Control and Locator System.

1   **REQUEST FOR PRODUCTION NO. 53:**

2      Patterns or examples of abuse of the VA's record purpose disallowance procedure, and all

3   MEETINGS and COMMUNICATIONS CONCERNING the same.

4   **REQUEST FOR PRODUCTION NO. 54:**

5      Record purpose disallowances or any denial of a SCDDC claim based upon the claimant's

6   failure to provide information requested by the VA within a specified time period.

7   **REQUEST FOR PRODUCTION NO. 55:**

8      Studies, audits, or reports CONCERNING problems or issues associated with remands of

9   SCDDC claims by the BVA or CAVC, including, without limitation, delays or improper claim

10   development by VA regional offices, failing to address and correct continuing failures of the regional

11   offices to make the same or similar errors, and the issue of multiple remands respecting the same

12   claim or same veteran.

13   **REQUEST FOR PRODUCTION NO. 56:**

14      Allegations or evidence of retaliation against VA employees or witnesses, including, without

15   limitation, any release of information or speech activities CONCERNING the VA, medical care and

16   treatment for veterans or the adjudication of SCDDC claims.

17   **REQUEST FOR PRODUCTION NO. 57:**

18      The institution or conduct of special or supplemental reviews of SCDDC claims by the VA

19   Central Office, including reviews of approvals of grant or denial of service connection for PTSD or

20   TDIU, "second signature" requirements, or special review of prior grants of service connection, and

21   all MEETINGS and COMMUNICATIONS CONCERNING the same.

22   **REQUEST FOR PRODUCTION NO. 58:**

23      Document preservation instructions and measures based upon the filing of this action, any

24   reported violations of such instructions or measures, and all COMMUNICATIONS CONCERNING

25   the same.

26   **REQUEST FOR PRODUCTION NO. 59:**

27      Congressional inquiries regarding the care or treatment of SCDDC claims of veterans with

28   PTSD or mental health disorders and all responses to the same.

1 **REQUEST FOR PRODUCTION NO. 60:**

2      Any analysis of possible measures to reduce VA budget outlays for SCDDC and/or mental

3 health care, including re-review of previously granted SCDDC or PTSD claims, and changes in

4 eligibility, substantive requirements or rating criteria.

5 **REQUEST FOR PRODUCTION NO. 61:**

6      Instances of alleged or confirmed misconduct or improper actions by a VA employee,

7 regarding productivity, production or timeliness respecting a veteran or a veteran's claim, including,

8 without limitation, dismissals or disciplinary action taken.

9 **REQUEST FOR PRODUCTION NO. 62:**

10      Disputes between any Union and the VA concerning alleged misconduct regarding the

11 productivity, production and timeliness of VA employees.

12 **REQUEST FOR PRODUCTION NO. 63:**

13      Changes or proposed changes in the requirements or rules for attorneys or agents to practice

14 before the VA, BVA or CAVC, and all MEETINGS and COMMUNICATIONS CONCERNING the

15 same.

16 **REQUEST FOR PRODUCTION NO. 64:**

17      The VA's investigation and actions taken in response to claims of malpractice or other

18 veterans' complaints about service officers or representatives.

19 **REQUEST FOR PRODUCTION NO. 65:**

20      The VA's central office's supervision, statistical analysis of, or monitoring of grants of

21 service connection for PTSD and appeals of PTSD grant decision or requests for increased ratings at

22 its regional offices and all actions taken with respect to regional offices exhibiting higher than

23 average grant rates or any perceived statistical abnormalities.

24 **REQUEST FOR PRODUCTION NO. 66:**

25      The substantive content of application and problems experienced with the Clinician's Guide

26 provisions regarding PTSD, including, without limitation, Chapter 14 regarding PTSD.

27

28

**REQUEST FOR PRODUCTION NO. 67:**

The production or productivity standards, goals, or requirements for personnel involved in deciding SCDDC claims at regional offices and at the BVA, and for employees assigned to provide health care for veterans and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 68:**

Studies, reports, analyses, or predictions of the number and percentages of existing and future veterans from OEF/OIF likely to file SCDDC and or PTSD claims.

**REQUEST FOR PRODUCTION NO. 69:**

Studies, reports, analyses or predictions of the numbers and percentages of veterans from OEF/OIF likely to seek health care for PTSD or other mental health disorders.

**REQUEST FOR PRODUCTION NO. 70:**

The adequacy of past, present and future staffing levels at the DVB and VHA to handle anticipated numbers of returned or returning OEF/OIF veterans, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 71:**

Reports, studies, information and examples of the issuance of less than honorable discharges to soldiers exhibiting symptoms of PTSD or mental health disorders by the armed services, and/or their eligibility for SCDDC and VA medical care.

**REQUEST FOR PRODUCTION NO. 72:**

Any link between PTSD and violent or illegal behavior or conduct by soldiers, including reports, studies, information and examples.

**REQUEST FOR PRODUCTION NO. 73:**

Data CONCERNING the incidence of, estimates, projections or instances of suicides and attempted suicides amongst OIF/OEF veterans.

**REQUEST FOR PRODUCTION NO. 74:**

MEETINGS and COMMUNICATIONS within the VA or between the VA and any third party CONCERNING the June 2007 Report of the Department of Defense Task Force on Mental Health.

1  **REQUEST FOR PRODUCTION NO. 75:**

2  The DOLE/SHALALA REPORT, and all MEETINGS and COMMUNICATIONS

3  CONCERNING the same.

4  **REQUEST FOR PRODUCTION NO. 76:**

5  Those DOCUMENTS that mention Plaintiffs or Plaintiffs' Counsel.

6  **REQUEST FOR PRODUCTION NO. 77:**

7  The DoD Task Force On Mental Health dated June 2007, and all COMMUNICATIONS and

8  MEETINGS CONCERNING the same.

9  **REQUEST FOR PRODUCTION NO. 78:**

10  Reports I, II, III and IV of the Mental Health Advisory Team (MHAT) for OEF and/or OIF by

11  the office of the Surgeon General and all COMMUNICATIONS CONCERNING the same.

12  **REQUEST FOR PRODUCTION NO. 79:**

13  COMMUNICATIONS and MEETINGS between the Defendants and the Department of

14  Medicine CONCERNING PTSD or its medical definition, symptoms, rating, diagnosis, or treatment.

15  **REQUEST FOR PRODUCTION NO. 80:**

16  Plans or proposals to privatize medical care for veterans in general or for PTSD and/or mental

17  health disorders, and all COMMUNICATIONS CONCERNING the same.

18  **REQUEST FOR PRODUCTION NO. 81:**

19  COMMUNICATIONS and MEETINGS of the VA's Seamless Transition Task Force also

20  known as Task Force on Seamless Transition, as well as minutes, reports, surveys, recommendations,

21  opinions, projects and working files, and all MEETINGS and COMMUNICATIONS

22  CONCERNING the same.

23  **REQUEST FOR PRODUCTION NO. 82:**

24  COMMUNICATIONS and MEETINGS between the Defendants and the Congress, other

25  members of the Bush Administration and/or the VAIG CONCERNING actual or predicted budget

26  deficits and/or supplemental appropriations for FY 2005, FY 2006, or FY 2007.

27

28

**REQUEST FOR PRODUCTION NO. 83:**

Consultant or third-party studies, evaluations or reports CONCERNING mental health services for veterans, including, but not limited to, services for PTSD, current patient load, claim load and costs, as well as projected patient load, claim load and costs, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 84:**

COMMUNICATIONS and MEETINGS between DEFENDANTS and Altarum Institute of Ann Arbor, Michigan CONCERNING mental health services for veterans.

**REQUEST FOR PRODUCTION NO. 85:**

PTSD studies and evaluations of PTSD regulations conducted by the Institute of Medicine and all COMMUNICATIONS and MEETINGS regarding the same.

**REQUEST FOR PRODUCTION NO. 86:**

Rules, practices, regulations, or guidelines CONCERNING how the VA addresses conflicting diagnoses or opinions between doctors or medical personnel employed by the VBA and the VHA regarding a diagnosis of a mental disorder, including PTSD, and MEETINGS and COMMUNICATIONS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 87:**

COMMUNICATIONS and MEETINGS between Defendants and the Veterans Disability Benefits Commission CONCERNING SCDDC, medical care for veterans, PTSD or the content of the Commission's Reports.

**REQUEST FOR PRODUCTION NO. 88:**

The Veterans Disability Benefits Commission Report entitled "Honoring the Call to Duty," and all COMMUNICATIONS CONCERNING the report and/or its recommendations.

**REQUEST FOR PRODUCTION NO. 89:**

COMMUNICATIONS and MEETINGS CONCERNING the following GAO reports:

| GAO REPORT # | DATE |
|---|---|
| GAO-02-806 | August 2, 2002 |
| GAO-05-125 | February 2005 |
| GAO-05-287 | February 2005 |
| GAO-05-160 | March 2005 |
| GAO-05-444T | March 17, 2005 |
| GAO-05-1052T | September 28, 2005 |
| GAO-06-207T | October 27, 2005 |
| GAO-06-149 | December 9, 2005 |
| GAO-06-362 | March 31, 2006 |
| GAO-06-397 | May 2006 |
| GAO-06-794R | June 30, 2006 |
| GAO-06-119T | September 28, 2006 |
| GAO-07-66 | November 2006 |
| GAO-07-98 | December 2006 |
| GAO-07-410R | May 16, 2007 |
| GAO-07-906R | May 25, 2007 |
| GAO-07-985T | June 12, 2007 |
| Testimony (DoD and VA Observations on Efforts to Improve Health Care and Disability Evaluations for Returning Servicemembers) | September 26, 2007 |

**REQUEST FOR PRODUCTION NO. 90:**

COMMUNICATIONS and MEETINGS CONCERNING the following VA Inspector General reports:

| OIG REPORT # | DATE |
|---|---|
| Rpt. #01-02124-71 | March 21, 2002 |
| Rpt. # 04-02499-63 | January 6, 2005 |
| Rpt. # 04-02974-90 | February 25, 2005 |
| Rpt. # 04-03359-105 | March 16, 2005 |
| VAOIG Semiannual Report to Congress | April 1, 2005-September 30, 2005 |
| Rpt. # 05-00765-137 | May 19, 2005 |
| Rpt. # 05-00839-156 | June 24, 2005 |
| Rpt. # 05-01226-211 | September 29, 2005 |
| Rpt. # 05-02531-18 | November 3, 2005 |
| Rpt. # 05-01838-41 | December 8, 2005 |
| Rpt. # 06-00012-49 | January 5, 2006 VA |
| Rpt. # 05-02926-64 | January 30, 2006 |
| Rpt. # 05-00734-67 | January 31, 2006 |
| Rpt. # 05-01229-71 | February 2, 2006 |
| Rpt. #05-03053-77 | February 3, 2006 |
| Rpt. # 05-01514-96 | March 3, 2006 |
| Rpt. # 05-03219-103 | March 14, 2006 |
| VAOIG Semiannual Report to Congress | April 1, 2006-September 30, 2006 |
| Rpt. # 06-00511-131 | April 17, 2006 |
| Rpt. # 05-03096-137 | May 2, 2006 |
| Rpt. #05-01818-165 | July 12, 2006 |
| Rpt. # 05-03281-168 | July 17, 2006 |
| Rpt. # 06-00741-173 | July 21, 2006 |
| Rpt. # 05-01232-174 | July 24, 2006 |

| OIG REPORT # | DATE |
|---|---|
| Rpt. #05-3571-187 | August 11, 2006 |
| Rpt. # 06-01706-209 | September 14, 2006 |
| Rpt. # 06-00008-237 | September 29, 2006 |
| Rpt. # 06-03479-07 | October 19, 2006 |
| Rpt. # 06-01721-32 | November 27, 2006 |
| Rpt. # 07-00641-40 | December 6, 2006 |
| Rpt. # 06-01133-39 | December 8, 2006 |
| Rpt. # 06-02822-45 | December 15, 2006 |
| Rpt. # 07-00157-97 | March 14, 2007 |
| Rpt. # 07-01349-127 | May 10, 2007 |
| Rpt. # 07-00616-199 | September 10, 2007 |
| Rpt. #07-00616-199 | September 10, 2007 |

**REQUEST FOR PRODUCTION NO. 91:**

The interpretation and application of the Medical Care Statute as defined in Paragraph 91 of the Complaint, and procedures, policies, guidelines and MEETINGS CONCERNING the same.

**REQUEST FOR PRODUCTION NO. 92:**

Record retrieval problems and delays relating to the DVA's request of records from the U.S. Army and Joint Services Records Research Center and other federal agencies or sources in connection with SCDDC or PTSD claims.

**REQUEST FOR PRODUCTION NO. 93:**

The standards, requirements and time frame for the conduct of a Compensation and Pension examination, as described in paragraphs 98-99 of the Complaint.

1   **REQUEST FOR PRODUCTION NO. 94:**

2       The organizational tree or structure of the DVA, including the DVB, NCA (National

3   Cemetery Association), Readjustment Counseling Services, VBA, BVA, each outpatient clinic or

4   hospital, and the IDENTITY of each person holding each position.

5   **REQUEST FOR PRODUCTION NO. 95:**

6       Shortcomings, deficiencies, problems, or comments CONCERNING the Rating Guide and/or

7   its application to PTSD claims, and all MEETINGS and COMMUNICATIONS CONCERNING the

8   same.

9   **REQUEST FOR PRODUCTION NO. 96:**

10      The number of appeals, and percentage of claimants seeking a hearing at each stage of the

11  Complete Claim Cycle Period, as defined in the Complaint, starting with the Regional Office.

12  **REQUEST FOR PRODUCTION NO. 97:**

13      The number and percentage of SCDDC and PTSD claims remanded by the BVA and CAVC

14  between 2000 and present.

15  **REQUEST FOR PRODUCTION NO. 98:**

16      The number and content of subpoenas and/or subpoenas *duces tecum* issued by the VA, and

17  the percentage of claims where subpoenas were issued between 2000 and present.

18  **REQUEST FOR PRODUCTION NO. 99:**

19      Audit reports for each regional office, outpatient clinic and hospital, and MEETINGS and

20  COMMUNICATIONS CONCERNING the same.

21  **REQUEST FOR PRODUCTION NO. 100:**

22      COMMUNICATIONS and MEETINGS between Defendants and staff or members of the

23  House or Senate Veterans Affairs Committees CONCERNING PTSD, SCDDC, the rating guide,

24  health care for veterans, personality disorder discharges, suicide, and/or adjudication or health care

25  system delay.

26

27

28

1  **REQUEST FOR PRODUCTION NO. 101:**

2      Instances in which Defendants failed to spend funds appropriated by Congress for mental

3  health care and services or medical care for veterans, including, without limitation, the dates,

4  amounts, and totals.

5  **REQUEST FOR PRODUCTION NO. 102:**

6      Suicide prevention, detection, screening, and/or treatment programs administered by YOU or

7  under contract with YOU.

8  **REQUEST FOR PRODUCTION NO. 103:**

9      The military records and VA claim files of all veterans known by you to have committed

10  suicide, including, but not limited to any of the veterans listed on Attachment "A" whose names are

11  followed by an asterisk.

12  **REQUEST FOR PRODUCTION NO. 104:**

13      The military service and medical records of all military personnel who received personality

14  disorder discharges between January 1, 2000 and present.

15  **REQUEST FOR PRODUCTION NO. 105:**

16      Studies, analyses, or discussion of the effect of any VA strategic, program, or policy decisions

17  or alternatives upon the VA budget, and all MEETINGS and COMMUNICATIONS CONCERNING

18  the same.

19  **REQUEST FOR PRODUCTION NO. 106:**

20      The VA's Monthly Performance Reviews from January 1, 2002 to the present.

21  **REQUEST FOR PRODUCTION NO. 107:**

22      Projections, estimates, scenarios, or discussions of the expected changes in the veteran

23  population as a result of OEF/OIF, including, without limitation, projected impacts upon the VA

24  budget, adjudication system, and health care delivery system, and all MEETINGS and

25  COMMUNICATIONS CONCERNING the same.

26

27

28

1  **REQUEST FOR PRODUCTION NO. 108:**

2          Past, present and future staffing and hiring plans for mental health services for veterans,

3  including, without limitation, VA regional offices, VA medical centers and outpatient clinics, and

4  unfilled positions and all MEETINGS and COMMUNICATIONS CONCERNING the same.

5  **REQUEST FOR PRODUCTION NO. 109:**

6          Time frames and/or delays for obtaining stressor verification information regarding PTSD

7  claims such as deck logs from the Naval Historical Society or military records from the Armed

8  Services or other repositories.

9  **REQUEST FOR PRODUCTION NO. 110:**

10          DOCUMENTS that mention any of the authorities in the Appendix to the Complaint. *See*

11  Complaint pp. 70-73.

12  **REQUEST FOR PRODUCTION NO. 111:**

13          DOCUMENTS received by or authored by David Chu, Under Secretary for Personnel and

14  Readiness, U.S. Department of Defense, respecting any proposed reduction of veterans' and retirees'

15  benefits and/or increases in weapon programs, and all MEETINGS and COMMUNICATIONS

16  CONCERNING the same.

17  **REQUEST FOR PRODUCTION NO. 112:**

18          Names and the IDENTITY of all Iraq and Afghanistan veterans as maintained as part of the

19  Gulf War Master Record.

20  **REQUEST FOR PRODUCTION NO. 113:**

21          The lists, compilations, printouts, or files showing the IDENTITY of Iraq and Afghanistan

22  war veterans as compiled by the DoD and/or VA between 2000 and present.

23  **REQUEST FOR PRODUCTION NO. 114:**

24          Death certificates for all deceased Iraq and Afghanistan veterans whose cause of death or

25  contributory cause of death is listed as suicide.

26  **REQUEST FOR PRODUCTION NO. 115:**

27          Copies of all death certificates for veterans, as shown in dependency and indemnity

28  compensation portion of the CPMR (the Compensation and Pension Service Master Record),

1   including, without limitation, active and terminated records, where such certificates show suicide or

2   possible suicide as a cause or contributing cause of death.

3   **REQUEST FOR PRODUCTION NO. 116:**

4       Projections prepared by Price Waterhouse Coopers, YOUR budget staff, or other contractors

5   CONCERNING the past, present and/or future number, type, diagnosis, and expenditures associated

6   with OIF and OEF and SCDDC and/or PTSD claims.

7   **REQUEST FOR PRODUCTION NO. 117:**

8       Data and information concerning PTSD claims and/or claimants or recipients as stored in the

9   VETSNET computer system.

10  **REQUEST FOR PRODUCTION NO. 118:**

11      The IDENTITY of all active service members from OIF/OEF that have committed suicide.

12  **REQUEST FOR PRODUCTION NO. 119:**

13      A list of all active armed services suicides and computer printouts showing the IDENTITY of

14  soldiers serving in Iraq and/or Afghanistan and a list of servicemembers or survivors receiving

15  Service Member Group Life Insurance.

16  **REQUEST FOR PRODUCTION NO. 120:**

17      Surveys, data, studies, compilations, or analyses of information CONCERNING mental

18  health problems or disorders amongst OIF and OEF veterans or soldiers.

19  **REQUEST FOR PRODUCTION NO. 121:**

20      VA Monthly Performance Reviews prepared by the Office of Performance Analysis and

21  Integrity between 2000 and present.

22  **REQUEST FOR PRODUCTION NO. 122:**

23      Minutes, summaries, memoranda, and videotapes of regional office director MEETINGS and

24  teleconferences, and/or the Office of Field Operations.

25  **REQUEST FOR PRODUCTION NO. 123:**

26      COMMUNICATIONS and MEETINGS CONCERNING the August 21, 2007 Litigation

27  Hold Memo, including, without limitation, e-mails or other COMMUNICATIONS sent to Michael

28

Case No. C-07-3758-SC
VCS and VUFT's First Set of Requests for Production of Documents
wc-134178

26

1  G. Daugherty or Christopher McNamee regarding good faith cost estimates and other information

2  and responses thereto.

3  **REQUEST FOR PRODUCTION NO. 124:**

4  Allegations, statements, reports, charges or discussions of whether or not the VA applies or

5  has claim processing quotas for adjudication personnel or quotas or other limitations upon the grant

6  of SCDDC for PTSD or other disabilities or conditions.

7  **REQUEST FOR PRODUCTION NO. 125:**

8  Reports, drafts, correspondence, analyses and other COMMUNICATIONS CONCERNING

9  studies prepared by the Institute for Defense Analyses and/or David Hunter or VA disability or

10  SCDDC payments, and all MEETINGS and COMMUNICATIONS CONCERNING the same.

11  **REQUEST FOR PRODUCTION NO. 126:**

12  The working files and computer files, including, without limitation, e-mails of all witnesses

13  listed in the Initial Disclosures of any parties who are or become the subject of deposition notices

14  and/or subpoenas in this action.

15  **REQUEST FOR PRODUCTION NO. 127:**

16  The success rates for VA claims and appeals to the BVA, CAVC, and/or Federal Circuit for

17  claimants representing themselves compared to claimants represented by veterans service officers,

18  agents, and attorneys.

19  **REQUEST FOR PRODUCTION NO. 128:**

20  Those documents identified in Section B of your initial disclosures dated October 18, 2007.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **REQUEST FOR PRODUCTION NO. 129:**

2    Those documents responsive to these requests that are maintained in the personal or working

3    files of each witness listed on Defendants Initial Disclosures dated October 18, 2007.

4    Dated: October 19, 2007                    GORDON P. ERSPAMER
                                                 ARTURO J. GONZALEZ
5                                                HEATHER A. MOSER
                                                 BILL D. JANICKI
6                                                STACEY M. SPRENKEL
                                                 MORRISON & FOERSTER LLP
7

8                                        By: _____

9                                             Gordon P. Erspamer

10                                           Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 101 Ygnacio Valley Road, Suite 450, California 94596. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on the date hereof, I served a copy of:

**VETERANS FOR COMMON SENSE AND VETERANS UNITED FOR TRUTH, INC.'S FIRST AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

☐ BY FACSIMILE [Code Civ. Proc sec. 1013(e)] by sending a true copy from Morrison & Foerster LLP's facsimile transmission telephone number (925) 946-9912 to the fax number(s) set forth below, or as stated on the attached service list. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile transmissions, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Morrison & Foerster LLP for transmission.

☒ BY U.S. MAIL [Code Civ. Proc sec. 1013(a)] by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 101 Ygnacio Valley Road, Walnut Creek, California 94596-8130 in accordance with Morrison & Foerster LLP's ordinary business practices. I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

☐ BY OVERNIGHT DELIVERY [Code Civ. Proc sec. 1013(d)] by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 101 Ygnacio Valley Road, Walnut Creek, California 94596-8130 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster I LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

☐ BY PERSONAL SERVICE [Code Civ. Proc sec. 1011] by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary

course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered to the document's addressee (or left with an employee or person in charge of the addressee's office) on the same date that it is placed at Morrison & Foerster LLP's mailroom.

Please note: If you check this box, you must follow up the next business day with an amended proof containing the name and signature of the person actually effecting service. This amended proof must be filed with the court.

☒ BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6] by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(s) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6.

**Steven Y. Bressler, Esq.**
**Trial Attorney, Civil Division, Federal Programs Branch**
**United States Department of Justice**
**P.O. Box 883**
**Washington, DC 20044**

Executed at Walnut Creek, California, this 19th day of October.

_Jill Haskins_
Jill Haskins

# ATTACHMENT A

*Veterans for Common Sense et al. v. Nicholson et al.*
No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

# ATTACHMENT A

Please Note: The asterisk ("*") symbol, as applied below, indicates
the individual has committed suicide.

| Fname | Lname | City | State |
|---|---|---|---|
| David | Adams | near Chicago | IL |
| Susan | Avila-Smith | | |
| Justin | Bailey* | Los Angeles | CA |
| Chris | Bain | | |
| Fred | Ball | Camp Pendleton | CA |
| Debra | Banaszak* | Iraq | |
| Douglas | Barber* | | AL |
| Sargent | Binkley | Los Altos | CA |
| Jesus | Bocanegra | McAllen | TX |
| Jerry | Boler | Caledonia | MI |
| Howard | Books | Stacy | MN |
| Zachary | Bowen* | New Orleans | |
| Timothy | Bowman* | | IL |
| Edward | Brabazon* | Iraq | |
| Michael | Bramer* | | NC |
| Greg | Braun* | | WI |
| Jeffrey | Braun* | Iraq | |
| Kate | Bulson | Muskegon | MI |
| Charles | Call* | | WV |
| Dominic | Campisi* | | PA |
| Keri | Christensen | near Denver | CO |
| Don | Clinger | Jacksonville | NC |
| James Curtis | Coon* | Walter Reed | |
| John | Cooney | Jacksonville | NC |
| Jason | Cooper* | Des Moines | IA |
| Richard | Corcoran* | Fort Bragg | |
| Justin | Covert* | Butler Township | OH |
| Darryl | Coyes | Mesa | AZ |
| Jeans | Cruz | Bronyes | NY |
| Chris | Dana* | Montana | |
| Gloria | Davis* | | |
| Robert | Decouteaux* | | NY |
| Brock | Delcambre* | New Iberia | LA |
| Ken | Dennis* | Renton | WA |
| Zack | Dick | Somerset | KY |
| Michael | Dickey* | | |
| James | Dinella | near Chicago | IL |

*Veterans for Common Sense et al. v. Nicholson et al.*
No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

## ATTACHMENT A

Please Note:  The asterisk ("*") symbol, as applied below, indicates
the individual has committed suicide.

| Fname | Lname | City | State |
|---|---|---|---|
| Josh | Dobbelstein | near Chicago | IL |
| Mark Stephen | Dobson* | Iraq | |
| Kevin | Elmer* | Lafayette | LA |
| David | Fickel* | | MN |
| John R. | Fish* | Paso Robles | CA |
| Brandon | Floyd* | Fort Bragg | |
| Chris | Forcum* | | OR |
| John | Frasso* | Nescopeck | PA |
| Brandon | Floyd | Fort Bragg | |
| Chris | Forcum | | OR |
| Keli | Frasier | Clifton | CO |
| Leslie | Frederick* | Tacoma | |
| Brian | Frost* | Torrington | CT |
| Christopher | Gearhart | Cape Coral | FL |
| Mary | Gentile* | Lacey | WA |
| Ann | Gholz | Vancouver | WA |
| Michael | Gold | Barrington | VT |
| Julian | Goodrum | Knoyesville | TN |
| Michael | Goss | Corpus Christi | TX |
| Curtis | Greene* | Fort Riley | |
| Eric Ryan | Grossman* | | CA |
| David | Guindon* | Manchester | NH |
| Marshall | Gutierrez* | | |
| Robert | Guy* | Iraq | |
| Byron | Hancock | Bryan | TX |
| Jason | Harvey | | |
| Kyle | Hemauer* | Afghanistan | |
| Derek | Henderson* | Louisville | KY |
| Jeffrey | Henthorn* | Iraq | |
| Frank | Herrman | Chestnut Ridge | NY |
| William | Howell* | | CO |
| Kristiaan | Hughes | Fort Knoyes | KY |
| Robert | Hunt* | Houston | |
| Rebecca | Jarabek* | Youngstown | OH |
| James | Jenkins* | San Diego | |
| Adam | Kelly* | Las Vegas | NV |
| Bill | Keyes | Albany | NY |
| Denise | Lannaman* | Queens | NY |

*Veterans for Common Sense et al. v. Nicholson et al.*
No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

## ATTACHMENT A

Please Note:  The asterisk ("*") symbol, as applied below, indicates
the individual has committed suicide.

| Fname | Lname | City | State |
|---|---|---|---|
| Josh | Lansdale | Kansas City | MO |
| Ryan | LeCompte | Lower Brule | SD |
| Samuel | Lee* | Iraq | |
| Jeffrey | Lehner* | | CA |
| Steven Michael | Logan* | | DE |
| Aleyes | Lotero | Miami | FL |
| Jeffrey | Lucey* | Belcher | MA |
| Jacob | Martin | | |
| Kevin | McCarty* | | |
| Andre | McDaniel* | Colorado Springs | CO |
| Brian | McKeehan* | Fort Eustis | |
| James | Melchor* | Portsmouth | VA |
| Brent | Messick | Salt Lake | UT |
| Dylan | Meyer* | Augusta | GA |
| Linda | Michel* | [near Albany] | NY |
| Chad | Miller | | |
| Eric | Miller | Lancaster | SC |
| James Blake | Miller | Pike County | KY |
| John | Miner | | VT |
| Willy James | Moore* | Pascagoula | MI |
| Nicholas | Morin | Temecula | CA |
| Tom | Nevins | Ahwatukee Foothills | AZ |
| Bill | Nichols | Jacksonville | NC |
| Rigoberto | Nieves* | Fort Bragg | |
| Joshua | Omvig* | Grundy Center | IA |
| Walter | Padilla* | Colorado Springs | CO |
| Mike | Parker | | |
| David | Payne* | Norman | OK |
| Michael | Pelkey* | Fort Sill | OK |
| Abbie | Pickett | | WI |
| Noah Charles | Pierce* | | |
| Javier | Pina | Linden | CA |
| Deyester | Pitts | Louisville | KY |
| Georg-Andreas | Pogany | | |
| David | Potter* | Iraq | NCW |
| William Neal | Price* | Ogden [Ft. Riley] | KS |

*Veterans for Common Sense et al. v. Nicholson et al.*
No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

# ATTACHMENT A

Please Note: The asterisk ("*") symbol, as applied below, indicates
the individual has committed suicide.

| Fname | Lname | City | State |
|---|---|---|---|
| Tina | Priest* | Iraq | |
| Bernardo | Ratliff* | Columbus | OH |
| Brandon | Ratliff | Columbus | OH |
| Brian Jason | Rand* | Jacksonville | NC |
| Andres | Raya* | | CA |
| Saxxon | Rech* | Lynden | WA |
| Jessica | Rich* | | CO |
| Adrian | Richard | | LA |
| Benny | Riggins* | | |
| Sean | Rodriguez-Street | Camp Pendleton | CA |
| John | Ruocco* | Camp Pendleton | CA |
| O.J. John B. | Santa Maria | Daly City | CA |
| Rob | Sarra | | |
| Mike | Saye | Mesa | AZ |
| Gary | Scaggs | Louisville | KY |
| Jason | Scheuerman* | | |
| Jacob | Schick | Gretna | LA |
| Donald Louis | Schmidt | Chillicothe | Ill. |
| Jonathon | Schulze* | | MN |
| Jeremy | Seeley* | | KY |
| Stephen | Sherwood* | Fort Collins | CO |
| Stephen | Sirko* | | |
| Jeffrey | Sloss* | | SC |
| Corey | Small* | Iraq | |
| Richard | Smith | Tehachapi | CA |
| Walter | Smith | Tooele | UT |
| Alexis | Soto-Ramirez* | Walter Reed | |
| Thomas | Stroh* | Fort Lewis | WA |
| Joseph | Suell* | Iraq | |
| Suzanne | Swift | Fort Lewis | WA |
| Paul | Thurman | | |
| Michael | Torok* | | IL |
| Jon | Town | Findlay | OH |
| Richard | Tugwell | Hampton | VA |
| Andrew | Velez* | Afghanistan | |
| Travis | Virgadamo* | Las Vegas | NV |
| Kenneth | Wagner | Highland Springs | VA |

*Veterans for Common Sense et al. v. Nicholson et al.*
No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

## ATTACHMENT A

Please Note:  The asterisk ("*") symbol, as applied below, indicates
the individual has committed suicide.

| Fname | Lname | City | State |
|---|---|---|---|
| Allen | Walsh | Tucson | AZ |
| Mark | Warren* | Iraq | |
| William Ellery | Weiss* | San Diego | CA |
| Colonel Ted | Westhusing* | Biap | Iraq |
| Boyd | Wicks, Jr.* | Wilmington | DE |
| Kyle | Williams* | | AZ |
| Jeremy | Wilson* | [Fort Carson] | CO |
| Crystal | Witte | Florence | CO |
| Donald Wade | Woodward* | Lancaster | PA |

PETER D. KEISLER
Assistant Attorney General
SCOTT N. SCHOOLS
Interim United States Attorney
RICHARD LEPLEY
Assistant Branch Director
DANIEL BENSING D.C. Bar No. 334268
STEVEN Y. BRESSLER D.C. Bar No. 482492
KYLE R. FREENY California Bar No. 247857
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 305-0693
Facsimile: (202) 616-8460
Email: Daniel.Bensing@USDOJ.gov

Attorneys for Defendants Hon. Gordon H. Mansfield, the U.S. Department of Veterans Affairs, Hon. James P. Terry, Hon. Daniel L. Cooper, Hon. Bradley G. Mayes, Hon. Michael J. Kussman, Pritz K. Navara, the United States of America, Hon. Michael B. Mukasey, and Hon. William P. Greene, Jr.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, )<br><br>Plaintiffs, )<br><br>v. )<br><br>Hon. GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs, *et al.*, )<br><br>Defendants. ) | No. C 07-3758-SC<br><br>**DECLARATION OF THOMAS G. BOWMAN** |

I, Thomas G. Bowman, declare:

1.      I am employed as the Chief of Staff of the U.S. Department of Veterans Affairs (VA). The information contained in this declaration is based on my personal knowledge and information made available to me in my official capacity.

2.      Following my retirement from the Marine Corps as a colonel in October 1999, I

served as senior counsel to the Committee on Government Reform of the U.S. House of Representatives until February 2002, when I joined VA. At VA, I served as Executive Assistant and Acting Assistant Secretary for Public and Intergovernmental Affairs before leaving in June 2003 to serve as State Court Administrator for the Rhode Island Judiciary and Chief of Staff to the Chief Justice of the Rhode Island Supreme Court.

3.     I returned to VA in June 2004 to become the Deputy Assistant Secretary for Congressional and Legislative Affairs. In August 2004 I was appointed Deputy Chief of Staff. On October 12, 2005, I was appointed Chief of Staff for VA.

4.     In my official capacity I work with the Secretary and Deputy Secretary to manage day-to-day operations of VA, the federal government's second-largest Cabinet department, with more than 247,000 employees at more than 1,300 points of service including Regional Offices, VA medical centers, outpatient clinics, Vet Centers and national cemeteries throughout the country. As Chief of Staff, I am familiar with VA's operations and organizations.

5.     I am aware of this litigation and of the defendants' Motion to Dismiss all of the plaintiffs' claims, filed on September 25, 2007, and set for hearing before the Court on December 14, 2007. I am also aware that on October 18 and 19, 2007, the two plaintiff organizations served 129 Requests for Production (RFP) on defendants including VA.

6.     I am aware that on October 23, 2007, VA's Department of Justice (DOJ) counsel met with more than 20 VA staff members representing the offices potentially implicated in this lawsuit, including the Chiefs of Staff for both the Veterans Health Administration (VHA) and Veterans Benefits Administration (VBA). The purpose of this meeting was to identify offices within VA likely to have information relevant to the plaintiffs' requests. DOJ counsel requested that the offices identified as potentially having responsive information estimate the cost of responding to plaintiffs' requests in terms of the time required, the monetary expenditure required, and opportunity costs of complying.

7.     I have also been advised that, given the ambiguity of some of the plaintiffs' requests, the limited time to respond, the size of the agency and the fact that many different

employees were assigned to the task of developing cost estimates, the assumptions and methodologies used in developing the estimates might vary. Moreover, VA employees attempted to identify the offices most likely to have responsive information but, because of the broad and vague nature of many of the requests, some estimates may not account for all costs associated with the 129 requests. VA staff did not attempt to estimate the costs of responding to certain requests that were patently irrelevant or sought unreleasable information. Nevertheless, based on the good faith estimates provided by VA staff and program offices interpreting the RFPs, I believe that these estimates conservatively capture the rough magnitude of the burden that would be placed on VA if the Department is required to respond to the plaintiffs' broad production requests. We estimate that the cost of complying with 27 of plaintiffs' 129 RFPs is more than $1 million dollars each and that the cost of complying with 21 of these is estimated at more than $2 million dollars each.

     8.     To fulfill plaintiffs' document requests would require many time-consuming electronic and manual searches of computer systems.

          a. For example, plaintiffs seek "All DOCUMENTS CONCERNING any one or more of the [requests for production]." See RFP pg. 8. Plaintiffs have defined "document" to include "e-mail or electronic mail." See RFP, Definition 2. Read literally, plaintiffs' requests will require VA to search all of its e-mail boxes for responsive documents. Moreover, plaintiffs make no effort to identify personnel who may be in possession of these items. Given the size of VA and the ubiquitous nature of e-mail, the information sought by plaintiffs could be located anywhere in VA's more than 320,000 e-mail boxes. I am told by VA information technology staff that in order to conduct a search of the active e-mail system for messages containing particular words or phrases, each mailbox would need to be searched separately. Such searches involve connecting to an individual employee's mailbox, conducting a search, and copying any responsive records; a process estimated to take between five and ten minutes per mailbox, excluding the time required for setup and export of messages. I have been

informed that given the ambiguity in the plaintiffs' multiple, broad requests and VA's size, conducting e-mail searches will place a substantial burden on VA's information technology resources. Additionally, each VA employee would be required to read plaintiffs' 129 paragraph request for production and then manually search his or her work space for responsive materials. It is my opinion as Chief of Staff, that conducting such a broad based search will divert valuable resources necessary to provide benefits and services to veterans and survivors.

b. Based on the estimates received, complying with requests 16, 17, 31, 32, 38, 103, 104, and 115 will require a search of individual claims files, which are maintained at VA Regional Offices and VA's Records Management Center. Another nineteen requests (request numbers 1-15; 2; 96-98) may require individual searches of files. VA staff estimate that responding to these requests will cost millions of dollars. For example, in response to DOJ's request for cost estimates of complying with RFP 1, the Board of Veterans' Appeals' (BVA) response provides that BVA's electronic database containing the relevant information lacks the capacity to identify the disease or injury on which of the underlying claim for which dependency and indemnity compensation (DIC) (i.e., compensation for service-connected death) is based. In order to satisfy this request, which seeks databases, lists, and printouts showing pending service connected death or disability compensation claims (SCDDC) based on PTSD or other mental disorders, BVA employees would have to manually search each claims file to identify DIC, cause of death claims, or other compensation claims based on PTSD or other mental disorders. BVA estimates it would cost nearly $2.4 million to produce the information requested by RFP 1 alone.

c. Similarly, many of VA's records are stored at the agency's 57 Regional Offices and the Records Management Center (RMC) in St. Louis, Missouri. Many of plaintiffs' requests would require electronic and/or manual searches of records at those offices. For example, RFP 115 seeks copies of all death certificates for veterans in DIC

claims in which the death certificates show suicide or possible suicide as a cause or contributing cause of death. Although VA does not have existing reports that would provide that information, it is possible that VBA has responsive materials in claims files (*i.e.* death certificates). Therefore, to comply with plaintiffs' request would require VA to write and run a program to attempt to locate an estimated 439,000 claim files at the Regional Offices and the RMC.[1]  Identified files would then have to be retrieved from the Regional Office and RMC file banks by GS-4 file clerks. VBA estimates that the files could be pulled at a rate of 100 per hour (4,390 hours). Once retrieved, GS-10s at each of the 57 Regional Offices and RMC would review the files to identify and copy death certificates that have suicide listed as a contributory cause of death. VBA estimates that at a rate of six per hour, it would take 73,167 hours to review the folders and make the copies. Based on the cost estimate provided to me by VBA, responding to plaintiffs' RFP 115 could cost VBA $2.5 million. This figure does not reflect the opportunity costs, *i.e.*, lost productivity in adjudicating claims while employees are diverted to reviewing claims files. It is my opinion as the Chief of Staff that diverting resources from claims adjudication will have a detrimental impact on VA's ability to adjudicate benefits claims from veterans and their survivors.

9.     In addition to the cost and workload burden on VA, plaintiffs' request also raises serious privacy concerns, especially for those requests seeking medical treatment files related to mental health services. Congress has accorded significant protections to such records, see e.g. 38 U.S.C. §§ 5701, 7332, in view of the potential harm that disclosure may have on patients and the physician-patient relationship. For example, plaintiffs' RFP 31 and 120 potentially involve records held by the 209 Vet Centers nationwide. Vet Centers provide readjustment counseling services to combat veterans to assist in the transition from military to civilian life. Services

---

1 This figure reflects VBA's estimate as to the number of claims files that will contain information on veterans' deaths since January 1, 2000. VBA staff based this estimate upon the number of active Dependency and Indemnity Compensation (DIC) files (329,000) plus an estimate of the conforming records from the 1.1 million inactive records in the system.

provided by the Vet Centers includes, among other things, counseling, group counseling, bereavement counseling, and medical referrals. Vet Center program officials have conservatively estimated that Vet Center paper files contain counseling records for more than 2.5 million veterans. In addition, much of this information is potentially covered by the psychotherapist-patient privilege. Vet Center program administrators have stated that producing documents from the Vet Centers would violate VA's 28-year policy guaranteeing strict confidentiality for services rendered by not releasing records without the veteran's consent. Vet Center program administrators are concerned that such a disclosure would undermine the Vet Center program's hard won trust with the combat veteran population and could cause serious barriers to care for new veterans needing readjustment counseling services. Based on the opinions provided by Vet Center program officials, my understanding of the nature of the Vet Center model, and my experience with the veteran community, I believe that requiring VA to produce information related to treatment records for mental health services could have a negative impact on veterans' willingness to seek mental health care services from VA.

10. Plaintiffs' requests for veterans' records and related correspondence will also require a search of records at VA's nearly 1,300 sites of care including 153 hospitals, 135 nursing homes, 724 Community Based Outpatient Clinics, 209 Vet Centers, and 46 Domiciliary Residential Rehabilitation Treatment Programs. Over 5.5 million individual patients are seen at VA facilities each year. VA conducted nearly 54 million outpatient visits and operated 54,000 inpatient beds in fiscal year (FY) 2006. VHA employs 210,000 individuals throughout the healthcare system, 59 percent (123,900) of whom provide direct patient care. Requiring clinicians to search their files for, e.g., information related to "diagnostic criteria for PTSD applied by VA," RFP 33, "document preservation instructions and measures based upon the filing of this action," RFP 58, or specific information about all potential PTSD patients would significantly burden the VA health system and distract employees, particularly health care providers, from delivering health care services to veterans.

11. Recently, VA's patient population has evolved to include Operation Enduring

Freedom /Operation Iraqi Freedom (OEF/OIF) veterans. Of the 751,273 OEF/OIF veterans separated through October 2007, 263,909 have obtained health care in a VA facility since FY 2002. VA operates the nation's only Polytrauma System of Care in support of the needs of severely injured OEF/OIF veterans. Requiring health care providers in VA's Polytrauma Centers to produce documents related to the request for production would distract VA health care providers from delivering the critical level of care necessary for these OEF/OIF veterans.

12.    Plaintiffs' first Request for Production of documents would divert enormous staff and resources from VA and would prevent VA from timely providing benefits and health care to veterans and their survivors. The Chief of Staff of VHA has advised me that requiring VA to fulfill the request for production in its present form would have an adverse impact on VHA in the context of VHA's four missions: clinical care, research, education and support to the Department of Defense during national emergencies. To the degree that health care professionals (and their support staff) are involved in the retrieval of information related to this request, care provided to veterans will be significantly delayed and the quality of health care for those veterans will be significantly impacted. Our assessment is that health care professionals (and their support staff) will be significantly involved in the retrieval of information related to this request.

13.    Similarly, VA's ability to timely provide veterans benefits through VBA will be significantly and adversely affected by the impact of the labor-intensive reviews and searches that would be required to respond to plaintiffs' request for production. VBA administers programs that provide financial and other forms of assistance to veterans and their survivors including compensation, pension, survivors' benefits, rehabilitation and employment assistance, education assistance, home loan guaranties, and life insurance. Within VBA, the Compensation and Pension Service administers disability compensation and dependency and indemnity compensation benefit programs. This fiscal year, VA will pay compensation and dependency and indemnity compensation benefits totaling nearly $37.3 billion dollars to over 3.2 million veterans and survivors. VA will also pay disability and death pension benefits totaling nearly

$3.8 billion dollars to 513,000 veterans and survivors.

14.     The time required to search for the information requested by plaintiffs will detrimentally impact VA's responsibilities to claimants.  Disability claims from returning war veterans, as well as from veterans of earlier periods, have increased 45 percent between 2000 and 2007.  VBA projects that disability claims in 2008 will increase to an estimated 840,000.  The increasing claims volume has significantly increased VBA's inventory of pending claims (now over 400,000) and the length of time veterans must wait for decisions on their claims (averaging 177 days in October 2007).

15.     Over the past year, VBA has been aggressively hiring additional staff to address its growing workload, improve the timeliness of decisions, and expedite processing of claims from OIF/OEF veterans.  This request for production would divert many of our regional office employees from their primary mission of delivering benefits to veterans and their survivors to searching records and reviewing files.  Similarly, new employees, who require more than two years to become proficient, would lose valuable training time if tasked with responding to the RFP.  Although the subject of this litigation is service connected death and disability compensation, were VBA employees required to search for the information sought in the RFP, all programs administered by VBA would be adversely affected because VBA employees generally adjudicate all types of benefits claims.  Overall, this would have a negative effect on our efforts to increase resources devoted to claims processing and expedite OIF/OEF claims.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 9, 2007.

THOMAS G. BOWMAN

# ORIGINAL

GORDON P. ERSPAMER (CA SBN 83364)
GErspamer@mofo.com
STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
MORRISON & FOERSTER LLP
101 Ygnacio Valley Road, Suite 450
P.O. Box 8130
Walnut Creek, California 94596-8130
Telephone: 925.295.3300
Facsimile: 925.946.9912

SIDNEY M. WOLINSKY (CA SBN 33716)
SWolinsky@dralegal.org
MELISSA W. KASNITZ (CA SBN 162679)
MKasnitz@dralegal.org
JENNIFER WEISER BEZOZA (CA SBN 247548)
JBezoza@dralegal.org
KATRINA KASEY CORBIT (CA SBN 237931)
KCorbit@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Telephone: 510.665.8644
Facsimile: 510.665.8511

**[see next page for additional counsel for Plaintiffs]**

Attorneys for Plaintiff(s)
VETERANS FOR COMMON SENSE, and
VETERANS UNITED FOR TRUTH, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETERANS FOR COMMON SENSE, and VETERANS UNITED FOR TRUTH, INC., | Case No.    C-07-3758-SC |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT WITNESSES** |
| v. | |
| GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs, *et al.*, | (Class Action) |
| Defendants. | Complaint Filed July 23, 2007 |



1  **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2  ARTURO J. GONZALEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  HEATHER A. MOSER (CA SBN 212686)
   HMoser@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  BILL D. JANICKI (CA SBN 215960)
   WJanicki@mofo.com
8  MORRISON & FOERSTER LLP
   400 Capitol Mall, Suite 2600
9  Sacramento, California 95814
   Telephone: 916.448.3200
10 Facsimile: 916.448.3222

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTCE that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

3    Plaintiffs VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC. will

4    take the depositions upon oral examination of Defendants. The depositions will take place at the

5    offices of Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105. The depositions

6    will begin on the dates and times indicated on the attached chart, and will continue from day to day

7    thereafter until completed.

8        The depositions will be taken before a notary public authorized to administer oaths in the

9    State of California. In addition to being recorded by stenographic method, the deposition testimony

10   may be digitally video recorded. Such video recording may be used by Plaintiffs at trial.

11       Please take further notice that the deponents are requested to produce copies of all documents

12   responsive to each document request served by Plaintiffs in this action which are found in each

13   deponent's working files, computer work stations, or other personal files, to the extent they have not

14   been identified and produced previously as part of Defendants' production.

15

16   Dated: November 2, 2007              GORDON P. ERSPAMER
                                          ARTURO J. GONZALEZ
17                                        HEATHER A. MOSER
                                          BILL D. JANICKI
18                                        STACEY M. SPRENKEL
                                          MORRISON & FOERSTER LLP
19

20

21   By: _____
                                          Gordon P. Erspamer
22
                                          Attorneys for Plaintiffs
23

24

25

26

27

28

# DEPOSITION SCHEDULE

| Name | Title | Deposition Date & Time |
|---|---|---|
| Ronald Aument | Deputy Under Secretary for Benefits, U.S. Department of Veterans Affairs | January 16, 2008 9:30 a.m. |
| Gary Baker | Director of Business, Veterans Health Administration, U.S. Department of Veterans Affairs | February 26, 2008 9:30 a.m. |
| Thomas G. Bowman | Chief of Staff, U.S. Department of Veterans Affairs | February 15, 2008 9:30 a.m. |
| John Brown | Director, Seamless Transition Office | February 5, 2008 9:30 a.m. |
| Dr. John Cho | Director, Fort Carson Medical Center Fort Carson, Colorado | January 25, 2008 9:30 a.m. |
| David Chu | Under Secretary for Personnel & Readiness, U.S. Department of Defense | January 15, 2008 9:30 a.m. |
| Daniel Cooper | Under Secretary, Veterans Benefits Administration, U.S. Department of Veterans Affairs | March 25 & 26, 2008 9:30 a.m. |
| Dr. Gerald Cross | Principal Deputy Under Secretary for Health, U.S. Department of Veterans Affairs | January 11, 2008 9:30 a.m. |
| Dr. Cutolo | Chief of Staff, James A. Haley VA Medical Center in Tampa, Florida | January 9, 2008 9:30 a.m. |

| Name | Title | Deposition Date & Time |
|------|-------|------------------------|
| Adm. Patrick Dunne | Assistant Secretary of Policy and Planning, U.S. Department of Veterans Affairs | February 27, 2008<br>9:30 a.m. |
| Laurie E. Ekstrand | Director of Health Care,<br>U.S. Government Accountability Office | January 10, 2008<br>9:30 a.m. |
| Dr. Scott Fairchild | Welcome Home Vets, Inc./ Operation Standup | February 1, 2008<br>9:30 a.m. |
| William F. Feeley | Deputy Under Secretary for Health for Operations and Management, U.S. Department of Veterans Affairs | March 14, 2008<br>9:30 a.m. |
| Matthew J. Friedman | Executive Director-National Center for PTSD,<br>U.S. Department of Veterans Affairs | March 6, 2008<br>9:30 a.m. |
| Lawrence Gottfried | Former U.S. Department of Veterans Affairs attorney | January 30, 2008<br>9:30 a.m. |
| William P. Greene, Jr. | Chief Judge of the United States Court of Appeals for Veterans Claims | March 27 & 28, 2008<br>9:30 a.m. |
| Paul J. Hutter | General Counsel, U.S. Department of Veterans Affairs | March 11, 2008<br>9:30 a.m. |
| Col. Bob Ireland | Psychiatrist, United States Air Force | February 8, 2008<br>9:30 a.m. |
| Dr. Ira Katz | Chief Patient Care Services Officer, U.S. Department of Veterans Affairs Deputy | March 7, 2008<br>9:30 a.m. |

| Name | Title | Deposition Date & Time |
|---|---|---|
| Peter D. Keisler | Acting Attorney General of the United States | April 10 & 11, 2008 9:30 a.m. |
| Steve Keller | Senior Deputy Vice Chairman, Board of Veterans' Appeals | February 7, 2008 9:30 a.m. |
| Dr. Steven Knorr | Director of Mental Health, Evans Army Community Hospital, Ft. Carson, Colorado | March 18, 2008 9:30 a.m. |
| Dr. Michael Kussman | Under Secretary of Health, Veterans Health Administration | April 8 & 9, 2008 9:30 a.m. |
| Gordon H. Mansfield | Acting Secretary of Veterans Affairs | April 15 & 16, 2008 9:30 a.m. |
| Bradley Mayes | Director, Compensation & Pension Service, U.S. Department of Veterans Affairs | April 1 & 2, 2008 9:30 a.m. |
| Jack McCoy | Former Associate Deputy Under Secretary for Benefits, Veterans Benefits Administration, U.S. Department of Veterans Affairs | March 13, 2008 9:30 a.m. |
| William McLemore | Deputy Assistant Secretary, Intergovernmental Affairs, U.S. Department of Veterans Affairs | January 24, 2008 9:30 a.m. |
| Mike McLendon | Former Deputy Assistant Secretary for Policy, Planning and Preparedness, U.S. Department of Veterans Affairs | February 12, 2008 9:30 a.m. |

| Name | Title | Deposition Date & Time |
|---|---|---|
| Lois Mittlestaedt | Chief of Staff for the Under Secretary for Benefits, Veterans Benefits Administration, U.S. Department of Veterans Affairs | February 28, 2008 9:30 a.m. |
| Gen. Robert Mixon | Commander of Fort Carson, Colorado | March 5, 2008 9:30 a.m. |
| Maj. Scott Moran | Psychiatrist, Walter Reed U.S. Army Hospital | January 23, 2008 9:30 a.m. |
| Pritz Navara | Former Veteran Service Center Manager, Oakland Regional Office, U.S. Department of Veterans Affairs | February 20, 2008 9:30 a.m. |
| Frank Q. Nebeker, Esq. | Former Chief Judge, United States Court of Appeals for Veterans Claims | January 29, 2008 9:30 a.m. |
| George J. Opfer | Inspector General, U.S. Department of Veterans Affairs | March 12, 2008 9:30 a.m. |
| Dr. Michael Pantaleo | Psychiatrist, U.S. Army | February 29, 2008 9:30 a.m. |
| Gen. Jeff Phillips | Public Affairs officer, U.S. Department of Defense | March 4, 2008 9:30 a.m. |
| Lt. Col. Elspeth Ritchie | U.S. Army Psychiatrist | February 13, 2008 9:30 a.m. |
| Mark Russell | Navy Commander, Iwakuni, Japan | January 8, 2008 9:30 a.m. |
| Jill Rygwalski | Former U.S. Department of Veterans Affairs attorney | January 31, 2008 9:30 a.m. |

| Name | Title | Deposition Date & Time |
|------|-------|------------------------|
| Raymond Sullivan | Executive Director, Office of Information and Technology Field Operations, U.S. Department of Veterans Affairs | February 22, 2008 9:30 a.m. |
| James P. Terry | Chairman, Board of Veterans Appeals, U.S. Department of Veterans Affairs | April 3 & 4, 2008 9:30 a.m. |
| William F. Tuerk | Under Secretary of Memorial Affairs, U.S. Department of Veterans Affairs | February 14, 2008 9:30 a.m. |
| Dr. George Van Buskirk | Chief of Staff, Bay Pines VA Medical Center, St. Petersburg, Florida | January 17, 2008 9:30 a.m. |
| Michael Walcoff | Associate Deputy Under Secretary of Field Operations, U.S. Department of Veterans Affairs | February 21, 2008 9:30 a.m. |
| Ulrike Willimon | Veteran Service Center Manager, Oakland Regional Office, U.S. Department of Veterans Affairs | January 18, 2008 9:30 a.m. |
| Gen. Stephen Xenakis, Ret. | Supervisor, U.S. Army's Medical Centers in the United States | February 6, 2008 9:30 a.m. |
| Dr. Al Batres | Director, Readjustment Counseling Service, U.S. Department of Veterans Affairs | March 19, 2008 9:30 a.m. |

**CERTIFICATE OF SERVICE**

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 101 Ygnacio Valley Road, Suite 450, California 94596. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on the date hereof, I served a copy of:

**PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT WITNESSES**

☐ BY FACSIMILE [Code Civ. Proc sec. 1013(e)] by sending a true copy from Morrison & Foerster LLP's facsimile transmission telephone number (925) 946-9912 to the fax number(s) set forth below, or as stated on the attached service list. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile transmissions, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Morrison & Foerster LLP for transmission.

☒ BY U.S. MAIL [Code Civ. Proc sec. 1013(a)] by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 101 Ygnacio Valley Road, Walnut Creek, California 94596-8130 in accordance with Morrison & Foerster LLP's ordinary business practices. I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

☐ BY OVERNIGHT DELIVERY [Code Civ. Proc sec. 1013(d)] by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 101 Ygnacio Valley Road, Walnut Creek, California 94596-8130 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster I LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

☐ BY PERSONAL SERVICE [Code Civ. Proc sec. 1011] by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered

☐    BY PERSONAL SERVICE [Code Civ. Proc sec. 1011] by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered to the document's addressee (or left with an employee or person in charge of the addressee's office) on the same date that it is placed at Morrison & Foerster LLP's mailroom.

Please note: If you check this box, you must follow up the next business day with an amended proof containing the name and signature of the person actually effecting service. This amended proof must be filed with the court.

☒    BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6] by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(s) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6.

**Steven Y. Bressler, Esq.**
**Trial Attorney, Civil Division, Federal Programs Branch**
**United States Department of Justice**
**P.O. Box 883**
**Washington, DC 20044**
**Steven.Bressler@usdoj.gov**

Executed at Walnut Creek, California, this 2nd day of November, 2007.

_____
Kathy Beaudoin