GORDON P. ERSPAMER (CA SBN 83364)
GErspamer@mofo.com
MORRISON & FOERSTER LLP
101 Ygnacio Valley Road, Suite 450
P.O. Box 8130
Walnut Creek, California 94596-8130
Telephone: 925.295.3300
Facsimile: 925.946.9912

SIDNEY M. WOLINSKY (CA SBN 33716)
SWolinsky@dralegal.org
JENNIFER WEISER BEZOZA (CA SBN 247548)
JBezoza@dralegal.org
KATRINA KASEY CORBIT (CA SBN 237931)
KCorbit@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Telephone: 510.665.8644
Facsimile: 510.665.8511

[see next page for additional counsel for Plaintiffs]

Attorneys for Plaintiff(s)
VETERANS FOR COMMON SENSE, and
VETERANS UNITED FOR TRUTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VETERANS FOR COMMON SENSE, and VETERANS UNITED FOR TRUTH, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES B. PEAKE, M.D., Secretary of Veterans Affairs, *et al.*,<br><br>Defendants. | Case No.   C-07-3758-SC<br><br>**CLASS ACTION**<br><br>**REPLY EXPERT DECLARATION OF CHAD PETERSON IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:   March 3, 2008<br>Time:   10:00 a.m.<br>Ctrm:   1, 17th Floor<br><br>Complaint Filed July 23, 2007 |

Case No. c07-3758
EXPERT DECL. OF C. PETERSON IN SUPT. OF PLS.' MOTION FOR A PRELIM. INJ.

1

**ADDITIONAL COUNSEL FOR PLAINTIFFS:**

ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
HEATHER A. MOSER (CA SBN 212686)
HMoser@mofo.com
STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
PAUL J. TAIRA (CA SBN 244427)
PTaira@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

BILL D. JANICKI (CA SBN 215960)
WJanicki@mofo.com
MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600
Sacramento, California 95814
Telephone: 916.448.3200
Facsimile: 916.448.3222

# EXPERT DECLARATION OF CHAD PETERSON, MD/ PH.D.

I, Chad Peterson, declare:

1. The facts in this declaration are based on my personal knowledge or else represent my professional opinion, based on my experience and reliance on relevant resources in my field of expertise.

2. I am a practicing psychiatrist with experience working with combat veterans with PTSD both at VA medical facilities and through The Coming Home Project. While employed with VA, I served as the Medical Director for the Post-Traumatic Stress Disorder Group; the Director of the Telepsychiatry Program; and the Coordinator of the OIF/OEF Outreach program at the San Francisco VA Medical Center. In this capacity, I am familiar with the actual experience of veterans who seek mental health care from a VA hospital. My experience and credentials, including my CV, are set out more fully in the earlier declaration I submitted in support of Plaintiffs' Motion for Preliminary Injunction.

3. I have read the Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and the declarations of Antonette Zeiss, Ph.D. (hereafter "Zeiss Declaration") and Tony Guagliardo (hereafter "Guagliardo Declaration"). In general, I observed that these declarations contain many vague statements and virtually no data. In addition, there are a number of inconsistencies and open questions present in VA's assertions through these documents. Because of this, these declarations do not demonstrate whether or to what extent VA's protocols and/or new initiatives actually benefit veterans with PTSD, nor do they provide assurances that additional action is unnecessary to reduce the risk of suicide among returning veterans.

Case No. c07-3758
EXPERT DECL. OF C. PETERSON IN SUPT. OF PLS.' MOTION FOR A PRELIM. INJ.

1

## The So-Called Grievance Procedure for Medical Decisions

4. The Guagliardo Declaration describes protocols which VA asserts provide a process for veterans to challenge decisions regarding care provided at VA medical facilities. First, I note that Mr. Guagliardo is an administrator, not a clinician. Thus, it is unsurprising that he describes protocols as they are written, without any information on whether or how they are utilized in practice. His information is a mechanical rundown that does not indicate how or whether information is communicated to veterans who may need it, how frequently protocols described are utilized, or to what result.

5. Specifically, there is nothing in the material submitted by Mr. Guagliardo that speaks to what a veteran can do to challenge on-the-spot medical care denials. Paragraph 11 of the Guagliardo Declaration states that a veteran dissatisfied with a medical determination could appeal the decision to her or his treatment team. However, the process described does not give any information on what recourse veterans may have if they are denied the opportunity to see a clinician to be evaluated for care. Based on the information provided by VA, there appears to be no avenue for recourse whatsoever for a veteran seeking urgent treatment who is told by a receptionist that the mental health clinic is closed or who is otherwise denied an appointment or turned away from receiving care.

6. In my experience, I have seen some veterans drop out of treatment rather than seek to appeal when they are dissatisfied with the treatment they are receiving or feel that their treatment needs are not being met. This possibility is not discussed in the material provided by VA.

7. The Guagliardo Declaration contains no indication regarding the way in which the treatment team grievance policy is communicated to veterans, except to note that it is posted in medical facilities, nor does it provide any information from VA as to whether veterans are aware that such a policy exists. Most importantly, the Guagliardo Declaration contains no data indicating the

Case No. c07-3758
EXPERT DECL. OF C. PETERSON IN SUPT. OF PLS.' MOTION FOR A PRELIM. INJ.

2

extent to which its informal grievance protocol is utilized or the extent to which veterans have successfully obtained a different course of treatment as a results of such a grievance process.

### Availability of Mental Health Care for Veterans

8. The Zeiss Declaration speaks in generalities regarding the availability of mental health care, but provides little or no data on the effectiveness of the programs and protocols Dr. Zeiss describes. Without such data, there is no way to determine whether VA is effectively providing the services it claims to offer, particularly regarding its ability to respond effectively to veterans who are at risk of suicide. The generalities offered by Dr. Zeiss cannot overcome the information, available in popular media reports, among clinicians, and in ongoing peer-reviewed research, that suicide is, and continues to be, a significant problem for returning OEF/OIF veterans.

9. Dr. Zeiss states that "the number of veterans who are not able to be scheduled for an outpatient mental health appointment within 30 days has steadily declined over the last year." Zeiss Declaration at ¶12. However, the declaration contains no data to substantiate this claim, and I would anticipate that a regional breakdown would show that there are substantial discrepancies in the availability of mental health care in various parts of the country. In particular, I understand that veterans in rural areas are still much more likely than those in urban areas to face long delays, and that many rural areas generally remain underserved.

10. Dr. Zeiss admits that some clinics are not staffed with full time mental health professionals, and states that this is due to low demand. Zeiss Decl. at ¶ 10. She does not note that these clinics without full time staff tend to be rural clinics, although that was my experience during my time at VA. However, many new veterans come from these rural areas, which are highly represented in the military. VA has provided no information indicating that it has done an analysis of the geographic distribution of mental health care providers and compared it with a geographic distribution of veterans needing mental health services. Nor has the VA provided any information

regarding wait times for appointments at these rural, community-based clinics, which are more likely to be understaffed.

11. In some recognition of the problems facing rural clinics, VA touts its expanding telemental health program as an alternative resource for care. Zeiss Declaration at ¶ 10. While this is a promising development, in my experience, wait times for disbursement of funds, equipment, and private, dedicated space, all necessary to establish an effective telemental program, can be excessive. VA provides no data to show the effectiveness of this system, which I have seen struggling to get off the ground. If this system were effectively in place to provide mental heath care, VA should provide data indicating how many locations have telemental services that are genuinely available, and how many veterans are served through telemental health care.

12. Dr. Zeiss indicates that VA has recently adopted a mental health triage policy to respond to veterans with urgent mental heath needs. Under this new policy, which was put in place in 2007, VA medical facilities are supposed to provide veterans a "mental health triage evaluation" within 24 hours, and, following such evaluation, to provide immediate care if an urgent need is identified, and to generally provide follow up care within 14 days. Zeiss Decl. at ¶ 11. Once again, the Zeiss Declaration describes VA's policies, but fails to provide any data to show whether or not they have been effectively implemented, or whether immediate treatment is, in fact, provided uniformly. Similarly, Dr. Zeiss provides no data regarding the availability or usage of fee-based or contract care as supplements to in-house mental health services at VA facilities, despite indicating that VA cannot comply with its own triage policy, at least in some areas, without such assistance. In the meantime, anecdotal and media information continue to suggest that the risk of suicide among veterans continues at crisis levels.

13. Dr. Zeiss also discusses VA's policy for following up with veterans who miss their scheduled mental health appointments. Zeiss Decl. at ¶ 13. However, once again, there are no data

provided to demonstrate that VA protocols are actually being followed, nor is there any information provided to show that they are tracking the implementation or success of this initiative. VA could easily provide such information, showing what is actually happening to veterans in need of care; however, it has failed to do so.

14. Paragraph 14 of the Zeiss Declaration is dismissive of legitimate concerns of veterans that VA is not offering a broad enough array of treatment options that would make veterans more comfortable. For example, when I worked at the VA Medical Center in San Francisco, the primary forms of mental health care offered to veterans were group therapy and/or medication; individual therapy was discouraged, even though the research literature on PTSD shows no superiority in efficacy of group over individual treatment. For some veterans, especially those freshly returning from combat, individual therapy would be a more appropriate clinical option. PTSD is a subtle and complex mental illness, and the analogy offered by Dr Zeiss between PTSD and gallbladder disease (which she is licensed neither to diagnose nor treat) is extremely concerning in its black-and-white pattern of thinking, as well as in its portrayal of the veteran as unsophisticated and unreasonably demanding. Regardless, the limited treatment options, and stress by VA of therapeutic treatments that are low cost and less demanding of staff, show that at least some VA medical facilities lack patient-oriented care.

15. Dr. Zeiss also discusses VA's Suicide Hotline, which was first instituted in 2007. Zeiss Declaration at ¶ 21. While VA is asserting that this new program shows that veterans' needs are being met, Dr. Zeiss' description of the Suicide Hotline in fact demonstrates that veterans at risk of suicide have extraordinary unmet needs. The Suicide Hotline is a newly instated program, in place only for about six months. As such a new program, it is unclear just how many veterans are even aware of its existence (and VA provides no information about how it has been publicized).

Case No. c07-3758
EXPERT DECL. OF C. PETERSON IN SUPT. OF PLS.' MOTION FOR A PRELIM. INJ.                    5

Nevertheless, it has received a very high number of calls, suggesting a lack of services otherwise available to veterans.

16. Despite the high volume of calls to the Suicide Hotline, the data VA provides about its responses to such calls are so vague as to be essentially meaningless. Dr. Zeiss mentions referrals, but does not provide information on who ultimately receives these referrals or the follow up care that the parties receiving the referrals provide. *See* Zeiss Declaration at ¶ 21. She also mentions "rescues," *id.*, which is not a clinical term with any widely understood meaning; it is not evident what this means, or what follow up is provided to veterans who are "rescued." Overall, there is no meaningful information provided about the care given to veterans who use the Suicide Hotline.

### Plaintiffs' Proposed Order

17. Without reliable data from VA regarding the efficacy of its initiatives and programs, the only information available on care for veterans at risk of suicide is made up of the stories of individual veterans and clinicians, and the information available through the media. *See, e.g., Report on Veterans and Suicide* (CBS television broadcast, Nov. 13, 2007); OFFICE OF DISEASE PREVENTION AND EPIDEMIOLOGY, OREGON DEP'T OF HUMAN SERVICES, VIOLENT DEATHS IN OREGON: 2005 (2007); Dana Priest, *Soldier Suicides at Record Level: Increase Linked to Long Wars, Lack of Army Resources*, WASH. POST, Jan. 31, 2008, at A1. I understand that these have been submitted as exhibits to the declaration of Arthur Blank, filed concurrently. That data indicates that VA is continuing to fail to meet the needs of veterans at risk, and that additional intervention is needed.

18. I have read the Plaintiffs' Revised Proposed Order which is being submitted with their reply papers, and I believe that it is reasonable from a clinical standpoint and that it could be implemented by VA (and its implementation could be monitored). If the order were put into place and implemented, I believe that it would save the lives of veterans who are currently at risk of committing suicide.

Case No. c07-3758
EXPERT DECL. OF C. PETERSON IN SUPT. OF PLS.' MOTION FOR A PRELIM. INJ.                                       6

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 4, 2008 at Oakland, CA.

_____
Chad Peterson, M.D., Ph.D.

\\Server\cases\VCS.VA\Pleadings\PI Motion\Declarations\reply\Peterson_decl_reply.doc