Calendar No. 790

| 100TH CONGRESS 2d Session | SENATE | REPORT No. 100-418 |
| --- | --- | --- |

# VETERANS' ADMINISTRATION ADJUDICATION PROCEDURE AND JUDICIAL REVIEW ACT

## R E P O R T

OF THE

## COMMITTEE ON VETERANS' AFFAIRS UNITED STATES SENATE

TO ACCOMPANY

## S. 11

together with

## ADDITIONAL VIEWS



JULY 7, 1988.—Ordered to be printed.

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1988

86-627

〈763-3

# CONTENTS

|  | Page |
|---|---|
| Committee Amendments | 1 |
| Introduction | 20 |
| Summary of S. 11 as reported: Summary of provisions | 22 |
| Discussion: | |
| Title I: Adjudication Procedures and Changes to the Board of Veterans' Appeals | 31 |
| A. Adjudication Procedures | 31 |
| 1. Codification of VA Adjudication Procedures | 32 |
| 2. Development of the Administrative Record | 37 |
| 3. Study of Methods to Speed Claims Resolution | 39 |
| B. The Board of Veterans' Appeal | 40 |
| 1. Appointment and Removal of the Chairman and Board Members | 41 |
| 2. More Control of BVA Operations by the Chairman | 42 |
| 3. BVA Favorable Determinations | 43 |
| 4. Medical Opinions and Physician Board Members | 43 |
| 5. Hearings Before Travel Board Sections | 45 |
| 6. Elimination of Bonuses | 46 |
| 7. Timeliness | 47 |
| Title II: Veterans' Administration Rule Making | 47 |
| Title III: Judicial Review | 49 |
| A. Background | 49 |
| B. Provisions of the Committee Bill | 51 |
| C. Availability of Judicial Review of Veterans' Administration Regulations | 51 |
| D. Right of Review in Individual Cases | 53 |
| E. Scope of Review | 55 |
| F. Remand Provision | 62 |
| G. Sunset Provision | 62 |
| Title IV: Attorneys' Fees | 62 |
| A. Background | 62 |
| B. Fees for Attorney Representation at the VA and the BVA | 65 |
| C. Fee Approved for Attorney Representation in Court | 68 |
| D. Punitive Award of Attorneys' Fees | 68 |
| E. Ancillary Attorneys' Fees Provisions | 69 |
| F. National Association of Radiation Survivors vs. Walters | 69 |
| Miscellaneous | 70 |
| Venue for Judicial Review | 70 |
| Cost estimate | 71 |
| Regulatory Impact Statement | 77 |
| Tabulations of Votes Cast in Committee | 79 |
| Agency Reports | 80 |
| Additional Views of Senators Frank H. Murkowski, Strom Thurmond, and Robert T. Stafford | 111 |
| Additional Views of Senator Alan Cranston | 128 |
| Changes in Existing Law Made by S. 11 as Reported | 132 |
| Appendix | 154 |

(III)

16

71 of such title, be considered to be a statement of the case as required by such paragraph (1).

(2) In not more than three other geographic areas, the Chairman is authorized to provide for an enhanced schedule of visits, on at least a quarterly basis each year, by a panel or panels of the Board to conduct formal recorded hearings pursuant to section 4002 of such title in such areas.

(c) Not later than 6 months after the completion of such study, the Administrator and the Chairman of the Board of Veterans' Appeals, as appropriate, shall report to the Congress on the results of the study, including an evaluation of the cost factors associated with each alternative studied and with any appropriate further implementation thereof, the impact on the workload of each regional office involved in such study, and the impact on the annual caseload of the Board resulting from each alternative studied, together with any recommendations for administrative or legislative action, or both, as may be indicated by such results.

SEC. 110. Section 3010(i) is amended—
    (1) by inserting "(1)" after "(i)"; and
    (2) by adding at the end the following new paragraph:
"(2) Whenever any disallowed claim is reopened and thereafter allowed on the basis of new and material evidence in the form of official reports from the department of the Secretary concerned, the effective date of commencement of the benefits so awarded shall be the date on which an award of benefits under the disallowed claim would have been effective had the claim been allowed on the date it was disallowed.".

## TITLE II—VETERANS' ADMINISTRATION RULE MAKING

SEC. 201. (a) Subchapter II of chapter 3 is amended by adding at the end the following new section:

## "§ 223. Rule making

"(a) For the purposes of this section—
    "(1) the term 'regulation' includes—
        "(A) statements of general policy, instructions, and guidance issued or adopted by the Administrator; and
        "(B) interpretations of general applicability issued or adopted by the Administrator; and
    "(2) the term 'rule' has the same meaning as is provided in section 551(4) of title 5.

"(b) Notwithstanding the provisions of subsection (a)(2) of section 553 of title 5, the promulgation of rules and regulations by the Administrator, other than rules or regulations pertaining to agency management or personnel or to public property or contracts, shall be subject to the requirements of section 553 of title 5.

"(c) Rules and regulations issued or adopted by the Administrator shall be subject to judicial review as provided in subchapter II of chapter 71 of this title.".

(b) The table of sections at the beginning of such chapter is amended by adding after the item relating to section 222 the following new item:
"223. Rule making."

## TITLE III—JUDICIAL REVIEW

SEC. 301. Section 211(a) is amended by striking out "sections 75, 784" and inserting in lieu thereof "sections 775 and 784 and subchapter II of chapter 71 of this title".

SEC. 302. (a) Chapter 71 is further amended—
    (1) by inserting after the table of sections the following new heading:

## "SUBCHAPTER I—GENERAL";

and
    (2) by adding at the end thereof the following new subchapter:

## "SUBCHAPTER II—JUDICIAL REVIEW

## "§ 4025. Right of review, commencement of action

"(a) For the purposes of this chapter—
    "(1) 'final decision of the Board of Veterans' Appeals' means—
        "(A) a final determination of the Board pursuant to section 4004 (a) or (b) of this title; or

payable for a period subsequent to the date of the final decision of the Administrator, the Board of Veterans' Appeals or court making such award.

"(f) The provisions of this section shall apply only to cases involving claims for benefits under the laws administered by the Veterans' Administration, and such provisions shall not apply in cases in which the Veterans' Administration is the plaintiff or in which other attorneys' fee statutes are applicable.

"(g) For the purposes of this section—

"(1) the terms 'final decision of the Board of Veterans' Appeals' and 'claim for benefits' shall have the same meaning provided for such terms, respectively, in section 4025(a) of this title; and

"(2) claims shall be considered as resolved in a manner favorable to the claimant when all or any part of the relief sought is granted.

"(h) In an action brought under section 4025 of this title, the court may award to a prevailing party, other than the Administrator, reasonable attorneys' fees and costs in accordance with the provisions of section 2412(d) of title 28.".

SEC. 402. Section 3405 is amended—

(1) by striking out "or" after "title,"; and

(2) by inserting a comma and "or (3) with intent to defraud, in any manner willfully and knowingly deceives, misleads, or threatens a claimant or beneficiary or prospective claimant or beneficiary under this title with reference to any matter covered by this title" before "shall".

## TITLE V—EFFECTIVE DATES

SEC. 501. This Act and the amendments made by this Act shall take effect on the first day of the first month beginning not less than 180 days after the date of enactment of this Act.

SEC. 502. A civil action authorized in subchapter II of chapter 71 of title 38, United States Code (as added by section 302(a) of this Act) may be instituted to review decisions of the Board of Veterans' Appeals rendered on or after April 1, 1987.

Amend the title so as to read:

To amend title 38, United States Code, to establish certain procedures for the adjudication of claims for benefits under laws administered by the Veterans' Administration; to apply the provisions of section 553 of title 5, United States Code, to rulemaking procedures of the Veterans' Administration; to provide for judicial review of certain decisions of the Board of Veterans' Appeals; to provide for the payment of reasonable fees to attorneys for rendering legal representation to individuals claiming benefits under laws administered by the Veterans' Administration; and for other purposes.

## INTRODUCTION

S. 11 the proposed "Veterans' Administration Adjudication Procedure and Judicial Review Act", was introduced on January 6, 1987, by Senator Alan Cranston, Chairman of the Committee, and 25 original cosponsors. Since then, 6 other Senators have joined as cosponsors.

S. 11 as introduced had five titles: Adjudication Procedures, Veterans' Administration Rule-making, Judicial Review, Attorneys' Fees, and Effective Dates. It would amend title 38, United States Code (U.S.C.), to establish certain procedures for the adjudication of claims for benefits under laws administered by the Veterans' Administration, apply the provisions of section 553 of title 5, U.S.C., to rulemaking procedures of the Veterans' Administration, provide for judicial review of certain final decisions of the Administrator of Veterans' Affairs, and provide for the payment of reasonable fees to attorneys for rendering legal representation to individuals claiming benefits under laws administered by the Veterans' Administration.

21

S. 2292, the proposed "Veterans' Judicial Review Act", was introduced on April 18, 1988, by Senator Murkowski, Ranking Minority member of the Committee

S. 2292 as introduced would apply the provisions of section 553 of title 5, U.S.C., to rulemaking procedures of the Veterans' Administration, provide for judicial review of regulations, provide for the payment of reasonable fees to attorneys for rendering legal representation to individuals in connection with challenges to VA rules and regulations and make changes in the operation of the Board of Veterans' Appeals to increase its authority and foster its independence.

On April 28, 1988, the Committee held a hearing on judicial review legislation—S. 11 and S. 2292. Testimony was received from the following witnesses: Honorable John F. Kerry, United States Senator from Massachusetts; Honorable Thomas A. Daschle, United States Senator from South Dakota; Susan Bennett, Esq.; Eugene Fidell, Esq.; Keith Rosenberg, Esq.; Mr. E. Phillip Riggin, Director of the National Legislative Commission, The American Legion; Mr. James N. Magill, Director of the National Legislative Service, Veterans of Foreign Wars of the United States; Mr. John F. Heilman, National Legislative Director, accompanied by Joseph Zengerle, Esq., Disabled American Veterans; Mr. R. Jack Powell, Executive Director, Paralyzed Veterans of America; Mr. Richard E. O'Dell, Vice Presdient and Chairman, Committee on Advocacy, accompanied by Mr. Paul S. Egan, Legislative Director, Vietnam Veterans of America; Mr. Frank E. G. Weil, National Secretary, American Veterans Committee; Dr. Dorothy Legarreta, Ph.D, of California, President, National Association of Radiation Survivors; Mr. J. Thomas Burch, Jr., Chairman, accompanied by Mr. William Bennett, General Secretary, National Vietnam Veterans Coalition; Mr. Philip Cushman of Oregon, Chairman, accompanied by Mr. Sidney Cooper of New York, National Legislative Director, Veterans for Due Process; Honorable Morris S. Arnold, Judge, U.S. District Court of the Western District of Arkansas, and Honorable Stephen S. Breyer, Judge, U.S. Court of Appeals for the First Circuit, both representing the Judicial Conference of the United States.

The following witnesses submitted written testimony in conjunction with the April 28 hearing: Mr. Charles R. Jackson, Vice President of Governmental Affairs, The Non-Commissioned Officers Association of the United States of America; Jerry L. Mashaw, Esq., William Nelson Cromwell, Esq., Professor of Law, Yale University; Thomas M. Boyd, Esq., Acting Assistant Attorney General, U.S. Department of Justice; Antonio J. Califa, Esq., Legislative Counsel, and Morton H. Halperin, Esq., Director, the American Civil Liberties Union.

On June 9, 1988, the Committee held an oversight hearing focusing in on the operations of the Board of Veterans' Appeals (BVA). Testimony was received from the following witnesses regarding BVA operations: Kenneth Eaton, Esq., Chairman, accompanied by Roger K. Bauer, Esq., Vice Chairman, Mr. Ronald Aument, Special Assistant to the Chairman, and Jan Donsbach, Esq., Legal Assistant, Board of Veterans' Appeals; Mr. E. Phillip Riggin, Director, National Legislative Commission, accompanied by Mr. Philip Wilkerson, Assistant Director, National Veterans Affairs and Rehabili-

49

while it questions the need for this provision, it has no serious objection to having such compliance made mandatory.

### TITLE III: JUDICIAL REVIEW

#### A. Background

The pros and cons of Judicial Review have been explored at considerable length in the past, and they will not be extensively discussed again here. They have been the subject of much discussion at hearings held before this Committee on June 3, August 25, August 31, September 21, and October 10 of 1977, February 22 and March 22 of 1979, July 15, 1981, March 23, 1983, and April 28, 1988, as well as at hearings before the House Committee on Veterans' Affairs on November 13 and November 19, 1980, July 21 and July 26, 1983, and May 4, June 4, 25, 1986, and were reviewed fairly comprehensively by this Committee in its reports on S. 330 (S. Rept. No. 96–178, 96th Cong., 1st Sess. 35–45 (1979)), on S. 349 (S. Rept. No. 97–466, 97th Cong., 2d Sess.), and on S. 367 (S. Rept. No. 99–100, 99th Cong., 1st Sess.). The Committee's views on the merits of judicial review have not substantially changed since that time, although one concern—that the preclusion of review contained in section 211(a) might ultimately be declared unconstitutional—may no longer be as compelling.[1]

The Committee continues to believe that (1) inasmuch as administrative determinations concerning virtually all other Federal benefits are subject to judicial review (the only significant exception

---

[1] The Committee's concern at the time was based on uncertainty about the possible future application of the landmark Supreme Court decision in Johnson v. Robison, 415 U.S. 361 (1974) (section 311(a) does not bar Federal courts from deciding the constitutionality of veterans' benefits legislation).

Since that time, however, case law has developed generally interpreting Johnson v. Robison broadly, and section 211(a) narrowly, so as to avoid "the specter of unconstitutionality". Kirkhuff v. Cleland, 683 F. 2d 544 (1982); See de Magno v. United States, 636 F.2d 714 (D.C. Cir. 1980). The Supreme Court's analysis in Johnson v. Robison has been construed to permit review of the constitutionality of the VA's procedural policies, as in Plato v. Roudebush, 397 F. Supp. 1295 (D. Md. 1975), Devine v. Cleland, 616 F.2d 1080 (9th Cir. 1980), Dumas v. Cleland, 486 F. Supp. 149 (D. Vt. 1980), Jackson v. Congress of the United States, 558 F. Supp. (D.C.N.Y. 1983), Marozsan v. United States, 635 F. Supp. 578 (N.D. Ind. 1986), Winslow v. Walters, 815 F. 2d 1114 (7th Cir. 1987), and Zayas v. Veterans' Administration, 666 F. Supp. 361 (D. Puerto Rico 1987). In addition, most Federal courts of appeals that have addressed the question have held that section 211(a) does not preclude judicial review on the issue of whether a particular VA regulation was promulgated in excess of the Administrator's statutory authority. This line of cases started with Wayne State University v. Cleland, 590 F.2d 627 (6th Cir. 1978), and continued with Merged Area X (Education) v. Cleland, 604 F.2d 1075 (8th Cir. 1979), and University of Maryland v. Cleland, 621 F.2d 1002 (9th Cir. 1980). The Court of Appeals for the District of Columbia Circuit has not directly addressed the issue but appears similarly inclined—see Carter v. Cleland, 643 F.2d 1 (D.C. Cir. 1980), and Ralpho v. Bell, 569 F.2d 607 (D.C. Cir. 1977)—while the Court of Appeals for the Fifth Circuit has taken a contrary view and limited Johnson v. Robison to challenges to the constitutionality of a statute, in Anderson v. Veterans' Administration, 559 F.2d 935 (5th Cir. 1977). As discussed later, the decision of the Court of Appeals for the District of Columbia Circuit in Gott v. Walters, 756 F. 2d 902 (D.C. Cir. 1985), holding that section 211(a) bars review of regulations promulgated by the VA, has been decertified.

Section 211(a) has also been held to be ineffective as a bar in cases concerning the validity of an affirmative VA action against an individual—such as a set-off against insurance benefits in order to recover a claim asserted against an individual by the VA, as in de Magno, supra—expressly in order to avoid giving section 211(a) what the court felt would have been an unconstitutional reading. See DiSilvestro v. United States, 405 F.2d 150 (2d Cir. 1968). Otherwise, section 211(a) continues to be construed so as to preclude review of individual factual determinations or even of agency rules and practices that are nonbinding on the BVA. Compare Carter, supra, with Gott v. Nimmo, supra. On the other hand, it still remains a possibility that, in a pure individual benefits context, a court may be confronted with a factual determination so shocking that it would feel compelled to reach the constitutional question and invalidate, on due process grounds, the section 211(a) bar on its face. (See de Magno, supra at 722, n. 13.)

50

being, under 5 U.S.C. § 8128(b), determinations concerning benefits under the Federal Employees Compensation Act), it is both unjustifiable and fundamentally unfair to deny to veteran claimants such a common and highly valued right; (2) although such disparate treatment may at one time have been justifiable on the basis that veterans' benefits were considered to be, as stated in *Hahn* v. *Gray*, 203 F.2d 625, 626 (D.C. Cir. 1953), "mere gratuities," this notion must be considered to have been substantially eroded by the decision in *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), in which the Supreme Court held that welfare benefits are more in the nature of a right than a privilege for purposes of due process protections; and (3) although the Committee has great confidence in the competence and good faith of the individual adjudicators and the adjudicative bodies within the VA, there is and will inevitably continue to be some proportion of cases, however small, that are wrongly decided by the BVA, where the only hope for correcting the resulting injustice lies in judicial review.

The Committee emphasizes that its attitude toward judicial review should not be construed as a major criticism of the way claims are presently adjudicated by, or veterans represented before, the VA. Rather, it reflects a faith in the system of checks and balances embodied in Federal court review, a system which can only enhance the likelihood that the truth will be found and a correct and just decision reached, and which, at the very least, will help overcome the perception, in some claimants' minds, that the present claims adjudication process is unfair in denying veterans their "day in court." As was stated by Mr. Ronald Simon on behalf of The National Veterans Law Center at the Committee's hearing on July 15, 1981:

> The existence of a Supreme Court does not imply the inadequacy, arbitrariness, or wrongness of the lower courts. Nor does the existence of the judicial system imply the wrongness or illegality of the other branches. The existence of the courts and legal system of which they are a part is merely the way in which disputes are resolved in our society. . . .
>
>   Unfortunately, the prohibition against judicial review has led to a special status for the VA in the minds of veterans and the public. The product of the prohibition against judicial review is mistrust, suspicion and lack of confidence . . . Review by the courts would provide an explanation of decision-making and a ventilation of the frustrations of veterans.

Thus, in light of all the relevant considerations, the Committee continues to believe that providing an opportunity for those aggrieved by VA decisions to have such decisions reviewed by a court, in a manner similar to that enjoyed by claimants before almost all other Federal agencies, is necessary in order to provide such claimants with fundamental justice. To continue to inform claimants before the VA that benefits to which they are entitled by law could be wrongly denied and that there is no remedy for such a wrongful denial, is no longer a viable position. In addition, the Committee believes that judicial review, by opening the decisions of the VA to

court scrutiny, will have a salutary effect on such decisions and on the VA decisionmaking process in general by involving the judiciary as a check on agency actions. Although the VA has a unique and vital mission of providing service to our Nation's veterans and their survivors, it is, at the same time, a large and complex Federal agency, and providing an opportunity for independent outside review of the processes and procedures of the agency should prove beneficial to those with claims or other matters before the VA.

Finally, the Committee believes that VA claimants in all parts of the country should have uniform access to the judicial system rather than having to litigate before various district courts and appellate court panels the questions of whether and to what extent section 211(a) operates as a bar in a particular case.[2] Not only does this litigation consume considerable time and money of the claimant—as well as of the government—but it has and may continue to yield conflicting results on the jurisdictional question. This lack of uniformity is further aggravated by the Department of Justice's continued practice of raising the section 211(a) bar in cases where no individual adjudications are involved.

### B. Provisions of the Committee Bill

Although the Committee has long believed that providing opportunity for judicial review was an appropriate action, it has also been concerned that the specific formula chosen must reflect the Committee's intention to retain the BVA as the primary, expert arbiter of VA claims matters. The Committee is aware of the criticism of the experience in cases appealed to court involving disability benefits under the Social Security Act, and particularly of concerns that have been expressed in that regard that reviewing courts have felt too free to substitute their judgment for that of the administrative tribunal, without having seen or heard the witnesses and without the expertise of the administrative decisionmakers.

The Committee believes that such a situation must be avoided in relation to VA claims, and the provisions of the Committee bill have been framed accordingly.

### C. Availability of Judicial Review of Veterans' Administration Regulations

In the Committee report accompanying S. 367, the Committee addressed the issue of whether section 211(a) of title 38, United States Code, the provision of law which bars court review of certain VA decisions under certain laws administered by it, acts as a bar to review of VA actions that involve only regulations and not individual claims for benefits. At that time, as in previous reports, the Committee expressed the view that section 211(a) did not bar such court review, although the Committee noted that the 2-to-1 decision by a 3-judge panel of the U.S. Court of Appeals for the District of Columbia Circuit, in *Gott* v. *Walters*, 756 F.2d 902 (D.C. Cir., 1985) held that review of regulations was barred by section 211(a). Subsequent to the filing of that report, the panel's decision in the *Gott*

---

[2] *See generally* footnote 1, *supra*, and materials cited therein.

52

case was decertified as part of a settlement prior to a rehearing by the Court of Appeals sitting *en banc*. Thus, this decision no longer has any precedential value.

This issue of the reviewability of VA regulations has been addressed in two other Federal Courts of Appeals cases. In *Traynor* v. *Turnage*, 791 F.2d 226 (1986), the Court of Appeals for the Second Circuit held that section 211(a) was a bar to review of regulations, and in *McKelvey* v. *Turnage*, 792 F.2d 194 (1986), the Court of Appeals for the District of Columbia Circuit held that it was not. Both cases involved veterans who had not exhausted their G.I. Bill educational assistance benefits within 10 years following their military service—the so-called "delimiting period" under section 1662(a)(1) of title 38. Under that section, a veteran may obtain an extension of the delimiting period if he or she was prevented from using G.I. Bill benefits by a "physical or mental disorder which was not the result of his or her own willful misconduct". Traynor and McKelvey sought to receive benefits after the expiration of their delimiting periods on the ground that they were disabled by alcoholism during much of that time. The VA ruled that the veterans had suffered from "primary" alcoholism, that is, alcoholism which is unrelated to an underlying psychiatric disorder, and under a VA regulation (38 CFR 3.301(c)(2)) is considered "willful misconduct", and that they, therefore, were not entitled to extensions. Each brought suit challenging the VA regulation as violating section 504 of the Rehabilitation Act of 1973, which, as amended in 1978, prohibits federal programs from discriminating against handicapped persons solely because of their handicaps. Under the Rehabilitation Act, alcoholism is considered a handicap.

Appeals were taken from the decisions noted above and the Supreme Court, on April 20, 1988, issued its decision in *Traynor* v. *Turnage* (which has been joined with *McKelvey* v. *Turnage*, 99 L. Ed. 2d 618, 108 S. Ct. 1372, 56 U.S.L.W. 4319). The Court construed the language of section 211(a) precluding review of the Administrator's decisions "under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors" as being inapplicable to the Rehabilitation Act and held that review of the validity of a VA regulation under that law was not barred. However, the Court did not specifically address whether section 211(a) bars judicial review of the validity of a VA regulation under a law described in that section. In footnote 9, however, the Court, noting that four circuits allow such review, stated:

> "[P]etitioners submit that, in the four Circuits that have held that section 211(a) does not bar judicial review of statutory challenges to Veterans' Administration regulations, only eight such challenges have been filed. See Brief for Petitioners 46–47, n. 32 (citing *American Federation of Government Employees, AFL–CIO* v. *Nimmo*, 711 F.2d 28 (CA4 1983); *Plato* v. *Roudebush*, 397 F. Supp. 1295 (Md. 1975); *Tinch* v. *Walters*, 573 F. Supp. 346 (ED Tenn. 1983), aff'd 765 F.2d 599 (CA6 1985); *Taylor* v. *United States*, 385 F. Supp. 1035 (ND Ill. 1974), vacated and remanded, 528 F.2d 60 (CA7 1976); *Arnolds* v. *Veterans' Administration*,

507 F. Supp. 128 (ND Ill. 1981); *Burns* v. *Nimmo*, 545 F. Supp. 544 (Iowa 1982); *Waterman* v. *Roudebush*, No. 4–77–Civ. 70 (Minn. 1979)).

Although this reference suggests no disagreement with the holdings of the lower courts permitting court challenges to VA regulations, the Committee does not believe that any inference that may be drawn from this footnote is sufficient assurance that veterans will uniformly be or regulation may be brought by any "interested party", and that term is defined, with respect to a VA rule or regulation, as "any person substantially affected by such rule or regulation". Since 1 U.S.C. 1 provides that "[in] defining the meaning of any Act . . . of Congress, . . . the word 'person' may extend and be applied to partnerships and corporations . . .", the Committee provision is intended to include incorporated veterans' organizations where some of their members are so affected.

The Committe bill contains one restriction on the scope of review of VA rules and regulations: A court would not be permitted to direct or otherwise order that any part of a disability rating schedule issued or adopted by the Administrator be modified. It is the Committee's intention that a court should not substitute its judgment for that of the Administrator as to what rating a particular type of disability should be assigned. For example, if a veteran was assigned a service-connected disability rating of 10 percent by the BVA and in court argued that his or her disabling condition (condition A) is as disabling as that of condition B which has a disability rating of 30 percent under the rating schedule, the court would be prohibited from changing the veteran's rating from 10 percent to 30 percent because the veteran would, in effect, be asking the court to rewrite the provisions of the rating schedule to classify condition A at the 30-percent rate In this situation, there would be no underlying factual disagreement as to the disabling condition itself, only as to where it should fall on the rating schedule. In contrast, if the BVA assigned a veteran a disability rating of 30 percent and the veteran went to court to argue that his or her rating was incorrect because the facts underlying the BVA's decision were determined incorrectly (for instance, arguing that the rating should be 50 percent because the facts demonstrate that the extension of his or her leg was limited to 45 degrees—not the 20-degree limitation the BVA found—and under the rating schedule, a 45-degree limitation is rated at 50 percent and not 30 percent), the court could modify the decision (after the appropriate mandatory initial remand to the BVA to reconsider its finding and decision).

### D. Right of Review in Individual Cases

Section 302 of the Committee bill would provide for judicial review of a final decision of the Administrator adverse to a claimant in a matter involving a claim for benefits under any law administered by the VA. An action to commence such a review would have to be brought within 180 days of the date the notice of the Board's decision was mailed to the claimant pursuant to section 4004 of title 38, as proposed to be amended by section 105 of the Committee bill. The term "claim for benefits" would be defined to include not only decisions relating to an initial claim for benefits,

54

but also decisions concerning a reduction in the amount of a bene-
fit, or a suspension or termination of benefits. The purpose of this
provision is to address a judicial inclination, exhibited prior to the
1970 amendment of section 211(a) of title 38, to define "claim for
benefits" to include only the claim as initially filed and not any
challenge to—or request for—subsequent VA action thereon.

 Final action of the Administrator, a prerequisite to bringing an
action under the authority proposed in the Committee bill, would
be defined to include not only a decision on the merits pursuant to
section 4004(a), as proposed to be amended by section 105 of the
Committee bill, but also a refusal to reopen a claim pursuant to
section 4004(b), as proposed to be amended by section 105 of the
Committee bill, or a refusal—on the basis of nonconformity with
present chapter 71 provisions relating to the form or manner of ap-
peals action, pursuant to present section 4008, or a lack of timeli-
ness, pursuant to present section 4005—to consider a claim. Of
course, the Committee bill specifies that if a court reviews a final
decision rendered on a basis other than the merits of the claim, its
review would be restricted to a review of the lawfulness of the
Board's action on that basis and it could not consider the merits of
the claim, but would have to return the matter to the Board for a
decision on the merits if it held the Board's action unlawful.

 In connection with the availability of judicial review of VA bene-
fits decisions, concern has been expressed about the discrimination
inherent in the current state of Federal law that allows individuals
receiving post-service benefits from the Armed Services to obtain
judicial review of decisions denying their applications for benefits
but bars individuals receiving benefits from the VA from obtaining
judicial review of VA decisions. Under current law, many veterans
have the option of receiving benefits for a service-connected disabil-
ity from the Service department concerned or from the VA. The
amount of disability-retirement provided by the Service depart-
ments depends upon the veteran's base pay at the time of separa-
tion or retirement. The VA's system provides disability compensa-
tion tied to the amount of disability and not the veteran's military
rate of pay. A veteran generally may not receive both military re-
tirement pay and VA compensation except to the extent that a vet-
eran waives a portion of his or her military retirement pay in
order to receive VA compensation in an amount equal to the
amount of retirement pay waived. Decisions made in the military
retirement program are reviewable in the U.S. District Courts or
the U.S. Claims Court after administrative remedies are exhausted,
whereas, under section 211(a) of title 38, decisions by the VA re-
garding benefits are not reviewable outside the VA.

 The effect of this disparate treatment is that higher ranking
military officers who generally find it beneficial to elect to receive
military retirement disability benefits rather than VA disability
compensation have an avenue of judicial recourse open to them
which is denied to enlisted personnel and lower ranking officers for
whom VA disability compensation is generally the more beneficial
benefit.

 The Committee also notes that concerns were raised at the hear-
ing regarding the availability of appellate review of decisions of the
Department of Medicine and Surgery (DM&S) concerning the fur-

nishing of health care services. In discussions with the VA, it has become apparent that some DM&S decisions are currently appealable to the BVA, while the majority are not. The Committee shares the concerns about the availability and appropriateness of appellate review with respect to DM&S decisions and will continue its consideration of the many complex issues involved with a view toward widening the review that is available. One promising approach that the Committee urges the VA to consider is the establishment of a regional pilot program where prompt recourse could be had locally to some objective and qualified appellate entity with respect to various types of DM&S decisions.

### E. Scope of Review

In framing the fudicial review provisions of the bill, the Committee's single greatest concern was defining the scope of review to be applied by a reviewing court. As discussed above, the Committee is keenly aware of the criticism of the experience with court review of disability claims under the Social Security Act, and the Committee wishes to prevent such a situation from arising in the area of VA claims cases.

In its effort to address this situation, the Committee has examined numerous potential formulations of the scope of review, and the provision contained in the present bill is the third such formulation to have actually been incorporated into this legislation since its introduction in the 95th Congress.

The first formulation was the "substantial evidence" test presently applied under the Administrative Procedure Act generally and, in particular, in social security disability cases. In its agency report on S. 364, 95th Congress, the VA advocated "that the scope of review of individual cases should be based on the substantial evidence test" and S. 330, as introduced in the 96th Congress, included that formula in the scope of review provision. Under that test, as set forth in the Administrative Procedure Act (5 U.S.C. 706), a court is required to set aside an agency decision "unsupported by substantial evidence". However, the exact meaning of that phrase and court application of it have been far from clear or consistent. There has been substantial criticism that courts use this standard in reviewing disability claims cases under the Social Security Act so as to freely substitute their judgment for that of the Secretary. As Professor Kenneth Culp Davis noted:

> Whatever impression a literal-minded reader may get form the words in the statute book, the plain reality is that the substantial-evidence rule as the courts apply it is a variable. K.C. Davis, Administrative Law Text 530 (3d ed. 1972).

Based on a review of the testimony received at the hearings on S. 330 and concerns expressed by various commentators, including cautions presented by the VA in its 1979 testimony, the Committee rejected the "substantial evidence" test.

Consideration was given to replacing it with a formula that was then (during the 96th Congress) being proposed by the Administration for review of disability cases under the Social Security Act,

56

under which questions of law would be subject to review but not questions of fact. However, the Committee was quite concerned that this formula—might be far easier to describe than to apply in actual practice. It is the Committee's view that most VA cases, while involving resolution of factual issues, present a mixture of legal and factual questions. For example, a claim for service-connected compensation could require resolution of some simple factual issues, such as whether the veteran had the requisite service in the Armed Forces and whether, in fact, the veteran is currently suffering from a disability. However, the same claim could also require the application of a complex rating schedule to the apparent disability to determine the degree of service-connection, which would not be a simple factual determination. Likewise, the decision as to the time of the onset of the disability might be very difficult if the veteran's military records did not contain a clear statement describing an occurrence during the period of service—again, a question that is not simply factual in its makeup, expecially if the disability in question is listed in present section 321, which provides for statutory presumptions of service-connection if the disability became manifest within a stated period of time after the end of the individual's period of service.

In addition, the same claim for service-connected compensation could ultimately be resolved on the basis of the legal sufficiency of evidence relating to a factual matter—for example, whether particular affidavits from individuals with whom the veteran served, relating to an alleged occurrence, are sufficient to support a finding of service connection in the absence of any supporting evidence in the veteran's military records—another situation in which a formula permitting review of legal questions while precluding review of questions of fact might prove unworkable. A court, feeling bound by the precise terms of such a preclusion, might refuse to review mixed questions of law and fact so as to avoid any review of a factual issue thereby leaving a claimant with incomplete judicial review; or a court might feel free to examine all questions on the record by characterizing some facet of a particular question as legal, thereby allowing review, under no significant restraints. As Professor Kenneth Culp Davis has written, describing civil actions for damages:

> In any particular case the question whether the defendant was negligent may be a question of fact or a question of law or both, depending on whether the parties are in dispute about what the defendant did or whether they agree on what he did and are in dispute about the legal consequences, or both. The same kind of analysis can be made of all questions of application of legal concepts to facts.
> K.C. Davis, Administrative Law Text 545 (3d ed. 1972).

For these reasons, the Committee decided against including a provision permitting review of questions of law only.

The version of S. 330 that was finally marked up, reported by the Committee and passed by the Senate in September 1979 contained a scope of review provision that would have permitted review of the Administrator's findings of fact, but would have allowed them to be reversed only if they were determined to be arbitrary and ca-

pricious or to constitute an abuse of the Administrator's discretion. In addition S. 330 included a provision specifying that, even on a finding by the reviewing court that a BVA factual determination was arbitrary or capricious or constituted an abuse of discretion, the court would not have been authorized to reverse the Administrator's determination on the issue without first remanding the case, for a time-limited period, to the Administrator, so as to provide the Administrator with the opportunity to reconsider or substantiate the record. This formula was intended to strike a balance between the proper functions of the reviewing court and the Administrator by permitting the court to exercise its own judgment in resolving issues of law but restricting narrowly the court's review of questions of fact.

It was this standard to review that was contained in title III of S. 349, as introduced in the present Congress. The Committee felt, however, that some further refinement and clarification of this standard was necessary. Accordingly, section 302 of the Committee bill contains a totally new scope-of-review formulation for factual determinations made by the BVA: That a finding of fact made in connection with an individual benefits determination may be set aside by a reviewing court only when it is so utterly lacking in a rational basis in the evidence that a manifest and grievous injustice would result if it were not set aside. The Committee bill retains the automatic remand provision from S. 330.

Although it continues to favor a very restrictive standard of review for factual questions, the Committee was concerned that use of the "arbitrary and capricious" formulation might result in some substantial confusion as to its precise meaning and application. As far as its application is concerned, the Committee notes that the "arbitrary and capricious" standard was directly derived from the Administrative Procedure Act, at title 5, United States Code, section 706(2)(A). However, the "arbitrary and capricious standard was generally intended to be applied in the review of fact determinations made in rulemaking processes—not those made in individual claims adjudications. Thus, the Committee is concerned that, if that standard were lifted out of the rulemaking context and made applicable to court review of factual findings in veterans' claims adjudications, courts might not appreciate the narrowness of the scope of review intended by the Committee in light of the special circumstances surrounding the VA adjudications process.

But more importantly, the "arbitrary and capricious" standard has been the subject of a considerable amount of judicial confusion concerning its precise meaning. One interpretation—that favored by the Committee in its report on S. 330—is that the "arbitrary and capricious" standard represents a narrower judicial inquiry than is available under the "substantial evidence" test. As the Supreme Court stated in *Abbot Laboratories v. Gardner*, 387 U.S. 136, at 143 (1967), in discussing the APA provisions relating to scope of review:

The act as it was finally passed compromised the matter by allowing an appeal on a record with a "substantial evidence" test, affording a considerably more generous judi-

58

cial review than the "arbitrary and capricious" test available in the traditional injunctive suit.

There is also some support for the conclusion that the "arbitrary and capricious" standard calls for a broader judicial inquiry than is available under the "substantial evidence" test. This review originated with the Supreme Court's statement in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, at 416 (1971) that an administrative decision may be found to be arbitrary and capricious when it appears to have been based on a "clear error of judgment." The confusion has arisen from the similarity of this language to the "clearly erroneous" test used to review the factual findings of a trial court sitting without a jury—a test which is treated in the case law as permitting a broader judicial inquiry than even the "substantial evidence" test. The Court added to this confusion by stating in *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 284, (1974), that "though an agency's finding may be supported by substantial evidence . . . it may nonetheless reflect arbitrary and capricious action."

Still a third supportable point of view is that there is no real difference between the "arbitrary and capricious" and "substantial evidence" tests. This view seems to derive primarily from the Supreme Court's use of similar terms to define the two tests: The latter encompasses such evidence as a "reasonable mind" would accept as persuasive (see *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)), while the former requires such evidence as would furnish a "rational basis" for the agency action (see *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, *supra* at 290).

The present status of the relative scopes of these two tests has been summarized by Professor Kenneth Culp Davis as follows:

> The practical question for administrative law is whether the substantial evidence test and the arbitrary or capricious test are equivalents or whether they differ, and, if they differ, which one calls for broader review. Four possibilities and a quick reason for each are: (1) The Overton Park language is inadvertent, so that the Supreme Court's remark in the Abbott case, long accepted by all, continues, and the substantial evidence test means "more generous" review than the arbitrary or capricious test. (2) Exactly the opposite is the law, for the Court in Overton Park treated the arbitrary or capricious test as equivalent to the clearly erroneous test, which has consistently been treated by the courts as calling for a broader judicial inquiry than is proper under the substantial evidence test. (3) The two tests became equivalents, because some law makes one broader than the other but some law makes the other broader than the one. (4) Refined differences in the two tests do not matter, because all federal judges understand the broad theory that they should refrain from substitution of judgment except on questions of law on which they are especially qualified, and the degree of intensity of review of other questions inevitably depends far more on other factors than on somewhat unreal refinements in the

formulas; a judge who gets the impression that an administrator has been conscientious, careful, and fair is unlikely to make a full inquiry into the possibility that a judgment may be "clearly wrong," whereas a judge who has reason for little confidence in an administrator may come close to substituting judgment.

K.C. Davis, Administrative Law in the Seventies 649 (1976).

Thus, the Committee was concerned that the "arbitrary and capricious" standard, if incorporated into this judicial review legislation, would carry with it this confused body of law. Moreover, although the Committee might include language in its report expressing with great clarity its intentions regarding the scope or definition of the standard, the Committee recognizes some risk that a reviewing court, confronted with a scope of review provision identical to a familiar APA provision, might feel no compulsion to look as far as the legislative history, following the settled judicial doctrine of statutory construction that only those statutes which are of doubtful meaning are subject to the process of statutory interpretation. (See *Jay v. Boyd*, 351 U.S. 345 (1956), Sutherland Statutory Construction § 45.02 (3d.ed. 1973)).

The new scope of review provison added by the Committee amendment to S. 349—"so utterly lacking in a rational basis in the evidence that a manifest and grievous injustice would result if (the finding) were not set aside"—represents an effort to address these concerns. It is not patterned after any scope of review provision in any existing statute (the Committee notes, however, that the phrase "rational basis" is derived from case law using that phrase in articulating a narrow construction of the "arbitrary and capricious" standard, as in *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc. supra*, at 283, 285, and 290), largely in order to increase the likelihood that the Committee's intention to allow only a very narrow review of factual determinations in individual benefits adjudications will be followed by the courts and will not be frustrated by judicial practice developed in other contexts. The Committee emphasizes its view that judicial review of VA decision presents a unique situation in several respects—most notably, the informal nature of proceedings before the VA, and the availability of free representation by skilled service officers of the major national veterans' organizations—and that a central theme in drafting this legislation has been to preserve those unique and desirable aspects as much as possible while enhancing them by the addition of a right of judicial review. Moreover, by framing a new standard of review, the Committee expects that, to the extent that the Committee's intentions regarding the scope of review are not plain on the face of the statute, reviewing courts will seek clarification from the legislative history of this legislation, thus simplifying to some extent the court's task of ascertaining the precise meaning of the provision and avoiding the risk that it will be given an unduly broad interpretation.

This new scope-of-review provision is intended to permit a reviewing court to reverse a VA claims decision on the basis of a finding of fact made in the adjudication process only when the court is certain that the decision was wrong. It is intended to be a

substantially narrower standard than the "substantial evidence" test. It is intended to afford the maximum possible deference to the BVA's expertise as an arbiter of the specialized types of factual issues that arise in the context of claims for VA benefits, while still recognizing and providing for the possibility of error in BVA factual determinations, and the need, however seldom it may arise, for some avenue of redress against glaring errors. The Committee strongly believes that some form of meaningful factual review is an essential component of any scheme to afford to veterans a comparable measure of the judicial review rights now afforded to claimants for virtually all other Federal benefits.

The Committee notes that, although this standard of review for factual findings is new, the other major scope of review provisions contained in proposed section 4026(a)(1) through (a)(3) are derived specifically from section 706 of the APA. Thus, it is the Committee's intention that the court shall have the same authority as it would in cases arising under the APA to review and act upon questions other than matters of material fact made in reaching a decision on an individual claim for VA benefits—such as questions concerning the validity of a rule or regulation, (including the application of the "arbitrary and capricious" standard to a challenge to an agency factual determination made in the context of issuing a rule or regulation) constitutional challenges, or challenges to VA procedures. The principal substantive differences from section 706 of the APA are the substitution of the new "rational basis" test of the "substantial evidence" test and the initial remand requirement applicable to such factual review situations, as well as the express preclusion of trial de novo by the reviewing court and the elimination of the requirement that the court review the whole administrative record, both of which are discussed below.

In addition to providing for a narrow scope of review of factual findings in individual benefits adjudications, the Committee bill includes several other provisions intended to give deference to the BVA's role as the final, expert arbiter of fact. Proposed section 4026(a) of title 38 contains a provision, as mentioned above, specifying that, even on a finding by the reviewing court that a BVA factual determination lacked a sufficient rational basis, the court may not reverse the determination on the issue without first remanding the case, for a time-limited period, to the BVA, which shall then have an opportunity to reconsider or substantiate the record.

Moreover, another change from S. 349 as introduced is that the court would not be required to review the entire administrative record, as is presently the case under section 706 of the APA, but only such portions as the parties bring to the court's attention in support of their arguments. The entire record would of course be before the court pursuant to subsection (d) of proposed section 4025 of title 38 and subject to review in the event that the court wishes to examine portions of the record other than those cited by the parties. The purpose of this provision is to minimize the burden imposed on reviewing courts by this legislation and to preserve judicial time and resources, by generally relying on the parties to identify and focus attention on the issues and the relevant factual elements.

61

The Committee is aware that some commentators have suggested that allowing a court any review of the facts in a case would ultimately encourage a de novo review and court substitution of its findings on factual determinations for that of the administrative decision maker. However, the Committee believes that such a result is highly unlikely—especially in light of the specific preclusion, set forth in subsection (c) of proposed section 4026 of title 38, of trial de novo by the court on the Administrator's findings of fact—and the totally new scope-of-review provisions, and suggests that this view indicates a belief that reviewing courts will not follow Congressional mandates in conducting statutorily-authorized review of administrative proceedings. The Committee does not accept such a view and believes that a court, using the standards set forth in the Committee bill, will not disturb findings of fact made by the BVA unless it determines that such findings are clearly lacking a rational basis in the evidentiary record. Even upon making such a finding, the Committee would stress, the court would be required to return the matter to the Administrator for a further opportunity to reconsider the record or to substantiate the finding in question. .

A final provision included in the Committee bill under the scope-of-review provisions in section 302 would incorporate a reference to the "rule of prejudicial error" as included in the APA (5 U.S.C. 706) so as to limit still further a court's role on review. Acting in accordance with the prejudicial error rule, a court should pass over errors in the record of the administrative proceedings that the court finds not to be significant to the outcome of the matter. As the U.S. Court of Appeals for the Ninth Circuit noted in *NLRB* v. *Seine and Line Fishermen's Union of San Pedro*, 374 F.2d 974, 881 (9th Cir. 1967):

> [A] court, on review of an administrative determination, should I take due amount of the rule of prejudicial error. Procedural irregularities are not per se prejudicial; each case must be determined on its individual facts and, if the errors are deemed to be minor and insubstantial, the administrative order should be enforced notwithstanding.

Thus, by an express inclusion of a reference to the rule of prejudicial error, the Committee is suggesting that a reviewing court should consider reversal only after determining that the identified error caused substantial prejudice to the claimant's case.

At the June 9, 1988, hearing, the Honorable Morris S. Arnold, Judge, U.S. District Court for the Western District of Arkansas and the Honorable Stephen S. Breyer, Judge, U.S. Court of Appeals for the First Circuit, testified on behalf of the Judicial Conference of the United States. During questioning, Senator DeConcini, then Acting Chairman at Senator Cranston's request and in his absence, asked them:

Judges, do you believe the standard for factual review as articulated in S. 11 would invite you to substitute your judgment for what the Board of Veterans' Appeals has rendered?"
Judge Breyer No.
Judge Arnold No.

Senator De Concini then asked:

62

Do you think then that you would be required to use a more stringent judgment?
Judge Breyer Stringent in the sense that it would be very, very, very, very hard to overturn what the VA did
Judge Arnold Yes, almost impossible.

Given this testimony, the Committee believes that it has succeeded in drafting a standard of review narrow enough to discourage judges from substituting their judgment for that of the BVA.

### F. Remand Provision

Section 302 of the Committee bill contains provisions authorizing an additional form of remand, in addition to the one discussed above in connection with the scope-of-review provisions, that would apply once a matter has been appealed to court.

The provision would require a court to remand a matter when either party applies for leave to adduce further evidence and shows good cause for the requested remand.

The other remand provisions in S. 11 as introduced were deleted as unnecessary: The first would have required a court to remand the case to the BVA, upon its request, after the appeal was filed but before the Administrator had answered, for a single reconsideration, with such reconsideration to be completed within 90 days of the remand or the matter would be returned to the court. The second would have permitted the court, in its discretion, to remand a case at any time after the Administrator files an answer. The court has this authority inherently.

### G. Sunset Provision

Section 302 of the Committee bill would provide that the jurisdiction of Federal courts to review decisions of the VA relating to claims for benefits as provided for in the new subchapter II of chapter 71 added to title 38 by the Committee bill will not apply to claims for benefits, the initial claim for which is filed with the Administrator pursuant to present section 3001(a) after the end of the fifth fiscal year following the fiscal year in which the Act becomes effective. This 5-year "sunset" provision on new claims is designed to require a thorough Congressional evaluation of the operation and effects of the new judicial review provisions before they are made permanent or are further extended.

Although the Committee recognizes that "sunset" provisions are normally associated with specific programmatic rather than procedural efforts, the Committee believes that, particularly in light of the implications of permitting judicial review for the VA's procedures, the 5-year "sunset" provision provides an important safeguard to ensure further Congressional scrutiny of the full impact of the changes made by the Committee bill.

### TITLE IV: ATTORNEYS' FEES

#### A. Background

Title IV of the Committee bill contains provisions that would substantially revise the current title 38 provision that generally limits to $10 the amount an attorney may receive for representing an individual in connection with a claim for benefits (present sec-