1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   Interim United States Attorney
3  RICHARD LEPLEY
   Assistant Branch Director
4  DANIEL BENSING D.C. Bar No. 334268
   JAMES SCHWARTZ D.C. Bar No. 468625
5  KYLE R. FREENY California Bar No. 247857
   Attorneys
6  United States Department of Justice
   Civil Division, Federal Programs Branch
7
   P.O. Box 883
8  Washington, D.C.  20044
   Telephone:  (202) 305-0693
9  Facsimile:  (202) 616-8460
   Email: Daniel.Bensing@USDOJ.gov
10
   Attorneys for Defendants Hon. James B. Peake, the U.S. Department of Veterans Affairs, Hon.
11 James P. Terry, Hon. Daniel L. Cooper, Bradley G. Mayes, Hon. Michael J. Kussman, Ulrike
   Willimon, the United States of America, Hon. Michael B. Mukasey, and Hon. William P.
12 Greene, Jr.

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                          SAN FRANCISCO

16
   VETERANS FOR COMMON SENSE and      )
17 VETERANS UNITED FOR TRUTH,          )   No. C 07-3758-SC
                                       )
18          Plaintiffs,                )   **DEFENDANTS' WITNESS LIST FOR**
                                       )   **THE MARCH 3, 2008 PRELIMINARY**
19      v.                             )   **INJUNCTION HEARING AND**
                                       )   **RESPONSE TO PLAINTIFFS' REQUEST**
20 Hon. JAMES B. PEAKE, Secretary of   )   **FOR DOCUMENTS**
   Veterans Affairs, et al.,           )
21                                     )
            Defendants.                )
22                                     )
                                       )
23 _____    )

24                          **Introduction**

25      During the telephonic status conference on February 11, 2008, the Court made the

26 reasonable and routine request that parties outline the scope of testimony each intended to

27 present at the preliminary injunction hearing scheduled for March 3.  Defendants' witnesses at

28 the preliminary injunction hearing will address the three central issues presented by plaintiffs'

1  motion: the availability of mental health care for veterans suffering from post traumatic stress

2  disorder (PTSD), the expenditure of funds appropriated for mental health care by the Department

3  of Veterans Affairs (VA) and the rights of veterans to question or appeal the decisions of the

4  VA and the medical judgments made by VA mental health professionals. See II.A, infra.

5  Defendants anticipate that the direct and cross examination of these witnesses will require no

6  more than one day.

7      Unfortunately, the plaintiffs did not follow the Court's direction. The Court directed the

8  plaintiffs to outline the factual showing they intended to present, permitting defendants to

9  respond three days later after plaintiffs had made that showing. Instead of providing *any*

10  indication of what issues they would address, they merely listed 26 individuals, with no proffer

11  of testimony. Plaintiffs identify *seventeen* government employees, most located in Washington,

12  DC, that they want to appear at the preliminary injunction hearing. Several of these individuals

13  are not employed by VA or even in the Executive Branch of the Federal Government. Plaintiffs

14  do not even attempt to justify their unreasonable request, providing *no* indication of why they

15  believe these individuals have indispensable information to the issues before the court on the

16  preliminary injunction motion. Indeed, some of those identified do not appear to have any

17  connection to the straightforward and narrow issues presented by the motion for preliminary

18  injunction. This effort to conduct trial by surprise is contrary to the Court's request and seems

19  calculated to avoid fair joinder of the issues.

20  **I.    Factual Issues to be Resolved at the Preliminary Injunction Hearing**

21      Defendants submit that the following factual issues are presented by plaintiffs' Motion

22  for Preliminary Injunction:

23  1. Funding Issues

24      A. Whether, in either Fiscal Years (FY) 2005, 2006 or 2007, the VA failed to spend any

25  funds that Congress specifically mandated be expended on programs to address the mental health

26  needs of veterans.

27      B. Whether, in FY 2008, VA will fail to spend all funds that Congress specifically

28  mandated must be expended on programs to address the mental health needs of veterans.

1     C. Whether in FY 2008 VA will fail to fund any specific program or activity relating to

2     mental health for veterans, that Congress has specifically directed be funded.

3     2. <u>Access to Medical Care Issues</u>

4     Whether the VA has systematically (<u>i.e.</u> as a regular pattern and practice of agency action,

5     as opposed to randomly or occasionally) failed to comply with 38 U.S.C. § 1710 relating to the

6     provision of mental health care for veterans suffering from PTSD.[1]

7     3. <u>Procedures for Review of VA Decisions Relating to Mental Health Care for Veterans</u>

8     <u>Affected by PTSD</u>

9     What appeals and other remedies are available to a veteran suffering from PTSD who

10     contends that he has not timely received appropriate mental health care from VA.

11     **II.    Defendants' Witness List and Objection to Plaintiffs' Witnesses**

12     **A.    <u>Defendants' Witness List</u>**

13     Because of plaintiffs' gamesmanship, defendants obviously cannot outline the precise

14     scope of the evidence that they will present in defense. Nevertheless, defendants anticipate

15     calling the following witnesses to testify on the subjects described:

16     **1. Dr. Gerald Cross, the Principal Deputy Under Secretary for Health, U.S. Department of**

17     **Veteran Affairs -**  Dr. Cross will give an overview of Veteran Health Administration, its budget

18     and its goals as they relate to providing mental health care to veterans with PTSD.

19     **2. Dr. Ira Katz, Deputy Chief Patient Care Services Officer for Mental Health, U.S.**

20     **Department of Veteran Affairs -**

21     Dr. Katz will address VA policy regarding medical care for veterans in need of Mental

22     Health treatment, including veterans with PTSD.  Specifically, he will discuss how the policy is

23     created and implemented as well as how the current VA Mental Health Initiative is providing

24     expanded care for veterans in need of mental health care. He will also discuss VA suicide

25     prevention programs.

26

27     [1]The Court recognized in it Opinion of January 10, 2008 that it is precluded from

28     entertaining challenges to individual adverse determinations by the VA relating to medical care. <u>See</u> 38 U.S.C. § 511. Defendants do not concede that 38 U.S.C. §1710 provides an entitlement to medical care.

Defendants' Witness List ( No. C 07-3758-SC)              3

1  **3. Antonette Zeiss, Ph.D. - Deputy Chief Consultant, Office of Mental Health Services,**

2  **Patient Care Services, U.S. Department of Veteran Affairs** - Dr. Zeiss will address VA

3  policy regarding medical care for veterans in need of Mental Health care, including veterans with

4  PTSD.   Dr. Zeiss will also address recent policy changes and initiatives in the treatment of

5  Mental Health by the VA.

6  **4. Dr. Jeff Murawsky, Chief Medical Officer VISN 12, U.S. Department of Veteran Affairs**

7  - Dr. Murawsky will address Mental Health treatment and care at the VA treatment centers as

8  well as the clinical appeals process available to veterans.  Dr. Murawsky will also address

9  differences between the treatment and appeals process available at VA treatment centers

10  compared to those available in the private sector.

11  **5. Paul Kearns - VHA Chief Financial Officer, U.S. Department of Veteran Affairs** -  Mr.

12  Kearns will address VHA appropriations from Congress and the manner in which VHA is

13  permitted to spend its appropriated funds.  He will also discuss the VHA budget and spending for

14  Mental Health treatment, including PTSD treatment, in previous years, current spending

15  projections and plans for future spending.

16      Defendants reserve the right to call rebuttal witnesses.

17  **B.**    **The Court Should Strike Plaintiffs' Anonymous Witnesses**

18      Plaintiffs' witness list presents a second problem as well.  As the Court knows, plaintiffs

19  have sought to hide the identity of certain witnesses from defendants by not serving on

20  defendants the complete and unredacted declarations that it has filed with the Court.  The issue of

21  whether such *ex parte* testimony[2] should be considered by the Court based on unsubstantiated

22  allegations of possible retaliation by VA that allegedly occurred twenty years ago, and the

23  *subjective* fears of witnesses, has been briefed and is scheduled for hearing on March 7.  See D.E.

24  56.  Because defendants do not have this testimony, they are unable to review VA records to test

---

26  [2]Plaintiffs' claim that these declarations are not *ex parte* because they have been shared
   with Department of Justice litigation counsel is disingenuous.  There is no possible way for
27  Department of Justice counsel to investigate or check the accuracy of claims without access to
   defendants' files, which obviously cannot occur without defendants' knowledge.  Nor would
28  litigation counsel have the expertise to evaluate the import of such facts even if they could be
   obtained.

1    the claims or provide explanatory context for the allegations.[3]   For this reason alone, the Court

2    should not permit secret witnesses testify at the preliminary injunction hearing.

3         In any event, the secret witnesses apparently do not have relevant testimony for the issues

4    presented by the preliminary injunction motion, but rather, appear to be an attempt by plaintiffs

5    to appeal to emotion or attract media attention.  Although plaintiffs have refused to proffer the

6    subject matter of these witnesses' testimony, it may be deduced from the available redacted

7    declarations that these witnesses will testify to the deleterious effects of PTSD and claim various

8    types of poor or delayed care by VA in their individual cases.  While the accuracy of the claims

9    of inadequate actions by VA cannot be determined by defendants or the Court without context,

10   the importance of prompt treatment of veterans with PTSD, particularly if suicidal, and the

11   ramifications if left untreated, is undisputed by defendants.  Defendants' declarant, Dr. Zeiss has

12   testified at length regarding the efforts by VA in the last several years to direct more resources

13   toward prompt and comprehensive treatment for these veterans.  See Zeiss Decl. ¶¶ 11-21.[4] In

14   light of the fact that there is no dispute over the seriousness of PTSD or the need for prompt

15   treatment of veterans with suicidal ideation, there is no benefit to be gained from this testimony.

16   When balanced against the patent unfairness to defendants of permitting unidentified witnesses

17   to testify and the likely provocative nature of the testimony, the Court should bar these witnesses

18   from testifying at the preliminary injunction hearing and not consider the declarations that

19   plaintiffs have submitted *ex parte*.

20

21

22

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [3] In another unjustifiable action, plaintiffs submitted with their preliminary injunction
25   reply papers a declaration by yet another unidentified individual.  What is more, this witness has
     absolutely no fear of retaliation as she is not a veteran and testifies only about her son who is no
26   longer living.

27   [4]Even plaintiffs admit that VA agrees with them about the importance of this issue.  In
     support of this motion plaintiffs have submitted the declaration of Dr. Arthur Blank who
28   discusses the rates of suicide among veterans of Iraq and Afghanistan and states that "VA
     recognizes the significance of the issue."  Blank Decl at ¶ 30.

1

2          **C.     Plaintiffs' Witnesses**

3              The five employees of the VA who have been designated as witnesses by defendants[5] will

4     be able to address the three factual issues before the Court on the motion for preliminary

5     injunction: (1) whether the VA has violated Congressional appropriations statutes by failing to

6     utilize funds mandated for mental heal needs; (2) whether the VA has systematically failed to

7     provide required mental health services to veterans with PTSD; and (3) whether the Due Process

8     clause requires that any additional or different procedures be available to veterans in the event of

9     a denial of care.

10             Defendants are under no obligation to produce as witnesses the nine additional current or

11    former VA employees designated by plaintiffs,[6] who are neither parties, nor within the subpoena

12    power of the Court.[7]  Nor are defendants under any obligation to produce employees of the

13    Government Accountability Office, an entity within the Legislative Branch.[8]  Plaintiffs' refusal to

14    describe what relevant testimony these individuals might be able to offer ensures that there is no

15    showing that their testimony would assist the Court in resolving the issues.

16    **III.    Documents and Discovery Issues**

17             On October 19, 2007, plaintiffs served a First Set of Requests for Production of

18    Documents on defendants consisting of 129 separate requests, seeking an enormous range of

19    material allegedly related to how the VA provides services to veterans with PTSD.  On

20    ────────────────

21        [5]Three of defendants' witnesses are also on plaintiffs' witness list (Antonette Zeiss, Paul
      Kerns and Ira Katz).  Defendants do not intend to call Tony Guagliardo (who provided a
22    declaration), but will make him available if plaintiffs request his testimony.

23        [6]Michael J. Kussman, Belinda J. Finn, Kara Ziven, Han Kang, Gary Baker, John Brown,
      Frances M. Murphy, Michael McLendon, Marcus Nemuth, Sean Zielinski.
24

25        [7]Plaintiffs also seek the testimony of defendant Michael J. Kussman, the Under Secretary
      for the Veterans Health Administration; however he is an improperly-named defendant in this
26    APA action and in any event, defendants will produce his deputy, Principal Deputy Under
      Secretary for Health Dr. Gerald Cross to testify on the operations of the Veteran Health
27    Administration.

28        [8]Laurie E. Ekstrand, Daniel Bertoni and Cynthia Bascetta.  (Plaintiffs have incorrectly
      identified Ms. Bascetta as a VA employee.)

1   November 16, 2007, plaintiffs served a Second Set of Requests for Production of Documents

2   seeking an additional 62 categories of documents.  See Attachment A (plaintiffs' 191 RFPs and

3   defendants' responses and objections thereto).  As is evident from even a cursory review,

4   plaintiffs' RFPs are so broad and numerous that the review and production of responsive

5   documents will entail a massive effort by VA staff, IT professionals as well as attorneys and

6   paralegals.

7        The VA employs approximately 256,000 staff and maintains 57 Regional Offices, 209

8   Vets Centers, 153 hospitals, 135 nursing homes, 724 Community Based Outpatient Clinics, and

9   46 Domiciliary Residential Rehabilitation Treatment Programs, all or nearly of which are likely

10  to have records relevant to the provision of services to veterans who suffer from PTSD.   The VA

11  provides numerous and significant services to veterans with PTSD, and consequently the staff at

12  its approximately 1300 care-providing facilities will be required to search for documents

13  responsive to PTSD issues.  Defendants estimate that plaintiffs' are seeking a universe of

14  documents that may run into the hundreds of thousands of pages.

15       The RFPs are neither narrowly drafted nor confined to materials relevant to plaintiffs'

16  cognizable claims in this case.  Many of plaintiffs other requests seek the most marginally-

17  relevant material, such as communication with Congress, training videos and job qualifications

18  for staff.  Even the categories of documents plaintiffs have identified as allegedly relevant to their

19  Motion for Preliminary Injunction sweep far broader than the issues of whether VA is spending

20  funds on mental health as directed by Congress and whether mental health care is available.  For

21  example, documents relating to priority levels for health care (Plaintiffs' Designation of

22  Witnesses at 6)  are governed by a regulation, 38 C.F.R. § 17.36, and so outside the scope of this

23  case.  Requests for the entire National Mental Health Database or similar databases, (id. at 4),

24  encompasses an enormous amount of electronic material, much of which may not be relevant and

25  all of which requires the entry of a Privacy Act Order.   In essence, plaintiffs 211 RFPs seek

26  every document maintained by the VA (as well as some in the custody of the Defense

27  Department and the Court of Appeals for Veterans Claims) related in any way to claims for

28  benefits or  health care by veterans suffering from PTSD as well as, for some requests,

1    information beyond even those expansive bounds.[9]

2        On November 11, 2007, defendants moved for a protective order staying all discovery

3    pending a ruling on defendants' Motion to Dismiss, which had been filed on September 25, 2008

4    and was set for a hearing on December 14, 2007.  Plaintiffs vehemently opposed that motion,

5    insisting that, notwithstanding the well-established practice of avoiding unnecessary discovery

6    while a motion to dismiss was pending, a stay of even a few weeks was totally unacceptable.  At

7    the conclusion of the hearing on the hearing on the defendants' Motion to Dismiss on December

8    14, this Court orally granted defendants motion to stay discovery, noting that "I'm not going to

9    spin my wheels if I don't have jurisdiction."  Transcript of December 14, 2008 Hearing at 60-61.

10        Shortly after the Court's January 10, 2008 ruling denying in part defendants' Motion to

11    Dismiss and lifting the stay of discovery, defendants wrote to plaintiffs and suggested a

12    teleconference between the parties to discuss discovery issues. See January 15, 2008 letter from

13    Daniel Bensing to Gordon Erspamer (Attachment B, hereto).   In that letter, defendants informed

14    plaintiffs that defendants intended to file responses and objections to plaintiffs' 191 outstanding

15    RFPs by February 11, 2008 – 30 days from the Court's Order lifting the stay on discovery. Id.

16    Defendants noted that, given the enormous scope of plaintiffs' RFPs and the probable volume of

17    responsive material, defendants anticipated producing non-objectionable materials in a rolling

18    production of documents "over an extended period." Id.  Defendants also invited plaintiffs to

19    suggest "the order in which categories of material will be produced."   Id.

20        By letter dated, January16, 2008 plaintiffs accepted defendants' offer and requested that

21    defendants attempt to provide documents responsive to thirteen of their 191 RFPs prior to the

22    date by which plaintiffs had to file their reply in support of their motion for preliminary

23    injunction, which, at that time, was February 6, 2008.  In response defendants made a major

24    effort to identify responsive and nonprivileged documents that, notwithstanding the absence of a

25    Privacy Act order, could be produced within that very short time fame. On February 4, 2008,

26

27    ─────────────────────

28        [9]In the same time frame, on November 2, 2007, plaintiffs also, without consultation with
     defendants counsel as required by Local Rule 30-1, served notices of deposition for 46
     depositions of defendants' employees and former employees.

1  defendants sent plaintiffs, by Federal Express, a CD containing approximately 2000 pages of

2  documents, responsive to three of plaintiffs' RFPs (RFP numbers 35, 73 and 102), consisting

3  primarily of internal VA studies of veteran suicide issues, as well as internal guidelines,

4  memoranda and other documents relevant to VA's response to the problem of veteran suicide.

5  Defendants also asserted certain Objections to those three requests, noting that, in the limited

6  time available to them, defendants had not been able to complete a comprehensive search for all

7  responsive documents.

8      As promised, on February 11, 2008, defendants served plaintiffs with a comprehensive

9  set of responses and objections to all 191 of plaintiffs' RFPS.  See Attachment A.  Currently,

10  defendants are in the process of hiring a litigation contractor (retained by the Civil Division's

11  Office of Litigation Support and compensated by the VA) to organize, electronically image,

12  redact where necessary, copy into electronic and paper media, and then produce nonprivileged

13  documents responsive to plaintiffs 211 RFPs.[10]  Defendants' preliminary estimate is that the costs

14  of document production will exceed one million dollars.  Because so much of the material

15  plaintiffs seek is at best marginally relevant and unlikely to be probative, the burden of

16  production must be weighed against the usefulness of the material.  Should plaintiffs continue to

17  refuse to set reasonable limits on the material sought, a fair allocation of production costs

18  between the plaintiffs and defendants will have to be made.

19      It is against this backdrop that the Court should evaluate plaintiffs' "request that the Court

20  enter an order . . . requiring the production of the documents requested herein in the requested

21  electronic format by Friday, February 22, 2008."  Plaintiffs' Designation of Witnesses at 7.  The

22  Court should ignore this "request."  The proper method for obtaining an "order" is by filing a

23  "motion," see Fed. R. Civil P. 7(b), at which point defendants will have an opportunity to file an

24  Opposition raising issues of appropriate scope of discovery, including burden, relevance and

25  privilege.  Moreover, to the extent that plaintiffs' claims are brought under the waiver of

26  sovereign immunity provided by the Administrative Procedure Act, the validity of the challenged

27

28      [10]On February13, 2008, plaintiffs served a Third Set of Requests for Production of
Documents seeking an additional 20 categories of documents.

1  agency action must be resolved on the administrative record of those actions, not some new

2  record made in the reviewing court. Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743

3  (1985) ("[T]he focal point for judicial review [in actions arising under the APA] should be the

4  administrative record already in existence, not some new record made initially in the reviewing

5  court." quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).[11]

6       Defendants have produced documents relevant to plaintiffs' motion for preliminary

7  injunction and will produce as much additional relevant material as is reasonably possible before

8  the March 3, 2008 hearing.   Defendants will also be prepared to discuss discovery issues at that

9  hearing; however the scope of discovery should be resolved through a motion to compel.

13  Dated February 19, 2008                    Respectfully Submitted,

14                                             JEFFREY S. BUCHOLTZ
                                               Acting Assistant Attorney General
15                                             JOSEPH P. RUSSONIELLO
                                               Interim United States Attorney
16                                             RICHARD LEPLEY
                                               Assistant Branch Director

18                                             /s/ Daniel Bensing
                                               DANIEL BENSING D.C. Bar # 334268
19                                             JAMES SCHWARTZ D.C. Bar # 468625
                                               KYLE R. FREENY California Bar #247857
                                               Attorneys, U.S. Department of Justice
20                                             P.O. Box 883
                                               Washington, D.C. 20044

                                               Counsel for Defendants

27      [11]Defendants are producing documents without waiving their APA limitation to record

28  review argument.  Defendants recognize that many categories of documents sought by plaintiffs' RFPs would be included in the administrative record or records of the agency action being challenged by plaintiffs.