JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JOSEPH P. RUSSONIELLO
United States Attorney
RICHARD LEPLEY
Assistant Branch Director
DANIEL BENSING D.C. Bar No. 334268
JAMES J. SCHWARTZ D.C. Bar. No. 468625
KYLE R. FREENY California Bar No. 247857
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-5108
Facsimile:  (202) 616-8460
Email: Kyle.Freeny@USDOJ.gov

Attorneys for Defendants Hon. James B. Peake, the U.S. Department of Veterans Affairs, Hon. James P. Terry, Hon. Daniel L. Cooper, Hon. Bradley G. Mayes, Hon. Michael J. Kussman, Ulrike Willimon, the United States of America, Hon. Michael B. Mukasey, and Hon. William P. Greene, Jr.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH,<br><br>Plaintiffs,<br><br>v.<br><br>Hon. JAMES B. PEAKE, Secretary of Veterans Affairs, *et al.*,<br><br>Defendants. | No. C 07-3758-SC<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANT WILLIAM P. GREENE, JR.** |

Case No. C 07-3758-SC
Supplemental Memorandum in Support of Motion to Dismiss Claims Against Defendant William P. Greene, Jr.

Plaintiffs' attempt to change the nature of their claims against Chief Judge William P. Greene of the United States Court of Appeals for Veterans Claims ( the CAVC) does not change the outcome; he should be dismissed as a defendant in this proceeding.

In the Complaint, plaintiffs put this Court and the defendants on notice that they were suing Chief Judge Greene not in his "judicial capacity" but rather in his "official capacity" as an administrator.  Given this averment by plaintiffs, the government reasonably concluded that any claims against Chief Judge Greene were, in reality, claims against the United States. <u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682, 695 (1949) (suit against federal official in his official capacity is a suit against the United States); accord <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963); <u>Hawaii v. Gordon</u>, 373 U.S. 57, 58 (1963).  As a claim against the United States, the government moved to dismiss it on the basis of sovereign immunity.

When faced with the insurmountable barrier of sovereign immunity in defendants' motion to dismiss, plaintiffs tried to transform their claim, and challenge Chief Judge Greene's actions in his judicial capacity.  In this situation, plaintiffs argued that dicta in <u>Larson</u> provided an exception to sovereign immunity when a federal officer acted wholly without authority.  See <u>Larson</u>, 337 U.S. at 690.  In response to this new argument, defendants explained in their Reply why the <u>Larson</u> exception is of dubious vitality and wholly inapplicable to plaintiffs' claims. Defendants further explained that even if the exception were applicable here, plaintiffs' claim would still be barred by judicial immunity.  Defendants now explain why at greater length.

Judicial immunity has long protected judges from law suits challenging how they decide their cases or manage their dockets.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."  <u>Pierson v. Ray</u>, 386 U.S. 547, 553-554 (1967).  Since first formally recognizing this doctrine in 1872, see <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335 (1872), the Supreme Court has routinely applied this doctrine even in cases where a judge in all likelihood acted maliciously or corruptly.  <u>Pierson</u>, 386 U.S. at 554 (immunizing judge who violated criminal defendants civil rights).  A primary rationale for the doctrine is to ensure that judges decide cases on principle in the public interest and not be intimidated by the threat of liability

from a potential future suit. Id.; Ferri v. Ackerman, 444 U.S. 193, 203 (1979). Equally important as liberating a judge from liability, however, is freeing the judge from having to respond to the suit itself. Ferri, 444 U.S. at 203 n.20 (quoting Barr v. Matteo, 360 U.S. 564, 571-572 (1959)). In other words, judicial immunity is absolute, granted to keep judges from diverting their time, energy, and focus away from their adjudicative duties to respond to a lawsuit. Id. Thus, the doctrine cannot be overcome by allegations or proof that a judge has acted improperly, for the existence of that fact cannot be established without formal discovery and trial, thereby permitting the diversion of judicial time, energy, and focus that the doctrine is designed to prevent. Mireles v. Waco, 502 U.S. 9, 11 (1991).

Initially cast in terms of immunizing judges against suits for damages, the doctrine also bars actions seeking injunctive and declaratory relief. Though Pulliam v. Allen, 466 U.S. 522 (1984), permitted a suit to enjoin a state judge for violating the United States Constitution, the Ninth Circuit has wholly barred suits seeking to enjoin federal judges for similar alleged violations. Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1392-94 (9th Cir. 1987). In Mullis, the court reasoned that declaratory and injunctive suits against federal judges are improper, as a federal litigant would always have an adequate remedy at law – especially via direct appeal or a writ of mandamus – for any mistake a federal judge might make. Id. at 1392. As the Ninth Circuit reasoned, given these readily available remedies, to permit a district court to enjoin a coordinate or subordinate court would amount to a "horizontal appeal," while permitting it to enjoin a court of appeals would amount to "reverse review" of the superior tribunal. Id. at 1392-93. Such collateral attacks would be inimical to the well-ordered operation of the judiciary. Id. at 1393; accord Forrester v. White, 484 U.S.219, 225 (1988) (noting purpose of judicial immunity is to prevent collateral attacks on judicial decisions). Accordingly, suits against federal judges are barred in this Circuit no matter whether the suit seeks damages or seeks injunctive, declaratory, or other equitable relief. Moore v. Brewster, 96 F.3d 1240, 1243-44 (9th Cir. 1996).[1]

---

[1] Since Mullis, Congress has abrogated much if not all of Pulliam, by restricting suits against state judges under 42 U.S.C. § 1983 to only declaratory judgment actions. Federal Courts Improvement Act, Pub. L. No. 104-317, 110 Stat. 3847 (1996). Accordingly, even other United

1   Judicial immunity fully applies to Chief Judge Greene in general and to his role as lead
2   Judge of the CAVC. It is well-settled that judicial immunity fully protects Article I judges. See
3   Mullis, 828 F.2d at 1388 (holding Article I bankruptcy judges immune from suit); see also
4   McSmith v. Chasez, 2007 WL 1097400 (E.D. La. Feb. 22, 2007) (United States magistrate judge
5   immune from suit); Harpole v. United States, 2000 WL 1868952 (D. Alaska Nov. 3, 2000)
6   (United States Tax Court judge held immune). The critical inquiry is whether a person is acting
7   in an adjudicative capacity. Butz v. Economou, 438 U.S. 478, 512-513 (1978). Thus, in Butz,
8   the Supreme Court held that even administrative law judges were entitled to judicial immunity.
9   Id. at 512-513; cf. Pierson, 386 U.S. at 549 (municipal police justice held immune). Here, Chief
10  Judge Greene and the other CAVC judges are fully entitled to judicial immunity so long as they
11  satisfy the criteria for the doctrine.

12  There are just two criteria that need to be satisfied for judicial immunity to apply. First, a
13  judge must not be acting in the clear absence of jurisdiction. Mireles, 502 U.S. at 11. Absence
14  of jurisdiction is to be distinguished from a judge acting in excess of his jurisdiction. For
15  example, if a probate judge with jurisdiction over only wills and estates adjudicated a criminal
16  matter, the judge would be acting in absence of jurisdiction. Stump v. Sparkman, 435 U.S. 349,
17  357 n.7 (1978). But a criminal court judge who convicted a defendant of a non-existent crime,
18  id., or convicted a defendant without an affidavit conferring jurisdiction over the offense charged,
19  O'Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir. 1981), would merely be acting in
20  excess of his jurisdiction. A judge who merely exceeds his jurisdiction is still fully entitled to
21  judicial immunity. Id. Here, plaintiffs' assertions that the CAVC should adjudicate claims faster
22  and more favorably to veterans fall wholly within the statutory grant of jurisdiction to CAVC.
23  Consequently, it is clear that Chief Judge Greene cannot be said to have acted in the absence of
24  jurisdiction.

---

States Circuit Courts of Appeals that were initially skeptical of the holding in Mullis now concede that the judicial immunity doctrine bars suits seeking injunctive relief against federal judges. Johnson v. McCuskey, 72 Fed. Appx. 475, 477 (7th Cir. 2003). No court of appeals currently holds otherwise. See Newsome v. Merz, 17 Fed. Appx. 343, 345 (6th Cir. 2001); Bolin v. Story, 225 F. 3d 1234, 1242 (11th Cir. 2000).

1    The claims against Chief Judge Greene also satisfy the second criteria, that the challenged
2 matter constitutes a judicial act. <u>Mireles</u>, 502 U.S. at 12.  Whether something is a judicial act
3 depends on a functional analysis: is the act one normally performed by a judge and did the parties
4 have an expectation that they would be dealing with the judge in a judicial capacity? <u>Mireles</u>,
5 502 U.S. at 12.  Thus, when a court acts legislatively to prescribe rules of conduct for the bar, it
6 may be protected by legislative immunity, but not by judicial immunity.  <u>Supreme Court of
7 Virginia v. Consumers Union of the United States, Inc.</u>, 446 U.S. 719, 734 (1980).  Similarly,
8 when a judge discharges an employee in his role as employer, he is not entitled to judicial
9 immunity. <u>Forrester</u>, 484 U.S. at 229.  Here, however, plaintiffs' allegations squarely challenge
10 judicial acts by Chief Judge Greene.  Adjudication is the quintessential judicial act, lying at the
11 very core of judicial immunity.  <u>See Id</u>. at 225-227 (noting that judicial immunity protects judges
12 from vexatious litigation from disgruntled litigants).  So, too is the claim that the CAVC should
13 decide cases faster.  Control of a court's docket, as well as its internal procedures, is so
14 intimately tied to the adjudicative function that such control itself is a judicial function.  <u>In re
15 Castillo</u>, 297 F.3d 940, 951 (9th Cir. 2002); <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 66 (2d Cir.
16 1997).  Thus, all the claims alleged against Chief Judge Greene are judicial acts that are protected
17 from collateral challenge in this Court by the doctrine of judicial immunity.

18    In conclusion, to the extent sovereign immunity does not bar plaintiffs' claims against
19 Chief Judge Greene, judicial immunity does.  Plaintiffs cannot invoke the dicta in <u>Larson</u>, for
20 even if it were viable, it cannot apply to federal judicial officers.  Judges are cloaked with
21 absolute immunity for their judicial acts.  This immunity bars suits such as this seeking
22 injunctive or declaratory relief for alleged constitutional or statutory violations, and fully applies
23 to the judicial acts complained of in the Complaint.  Plaintiffs' judicial relief is properly limited
24 to the remedies already available through the judicial system: invocation of the CAVC's own
25 procedures for expediting appeals under Rule 47, direct appeal to the United States Court of
26 Appeals for the Federal Circuit for individual decisions that plaintiffs believe are mistaken, and
27 petitions for a writ of mandamus to that court for appeals that are inordinately delayed.
28

## CONCLUSION

For all the foregoing reasons and for the reasons set forth in defendants' original and reply memoranda, this Court should grant Chief Judge Greene's motion to dismiss him as a defendant in this lawsuit, and the Court should dismiss plaintiffs' claims against Chief Judge Greene with prejudice.

Dated March 10, 2008

Respectfully Submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOSEPH P. RUSSONIELLO
United States Attorney

RICHARD LEPLEY
Assistant Branch Director

 /s/ Kyle R. Freeny
KYLE R. FREENY California Bar #247857
DANIEL BENSING D.C. Bar # 334268
JAMES J. SCHWARTZ D.C. Bar. No. 468625
U.S. Department of Justice, Civil Division
P.O. Box 883
Washington, D.C. 20044

Counsel for Defendants

Case No. C 07-3758-SC
Supplemental Memorandum in Support of Motion to Dismiss Claims Against Defendant William P. Greene, Jr.

5