1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   Interim United States Attorney
3  RICHARD LEPLEY
   Assistant Branch Director
4  DANIEL BENSING D.C. Bar No. 334268
   JAMES SCHWARTZ D.C. Bar No. 468625
5  KYLE R. FREENY California Bar No. 247857
   Attorneys
6  United States Department of Justice
   Civil Division, Federal Programs Branch
7
   P.O. Box 883
8  Washington, D.C.  20044
   Telephone:  (202) 305-0693
9  Facsimile:  (202) 616-8460
   Email: Daniel.Bensing@USDOJ.gov
10
   Attorneys for Defendants Hon. James B. Peake, the U.S. Department of Veterans Affairs, Hon.
11 James P. Terry, Hon. Daniel L. Cooper, Bradley G. Mayes, Hon. Michael J. Kussman, Ulrike
   Willimon, the United States of America, Hon. Michael B. Mukasey, and Hon. William P.
12 Greene, Jr.

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO

16
   VETERANS FOR COMMON SENSE and       )
17 VETERANS UNITED FOR TRUTH,          )   No. C 07-3758-SC
                                       )
18         Plaintiffs,                 )   **[PROPOSED] ORDER ESTABLISHING**
                                       )   **DISCOVERY OBLIGATIONS IN**
19     v.                              )   **CONNECTION WITH APRIL 21, 2008**
                                       )   **HEARING**
20 Hon. JAMES B. PEAKE, Secretary of   )
   Veterans Affairs, *et al.*,         )
21                                     )
           Defendants.                 )
22                                     )
                                       )
23 _____)

24

25         UPON CONSIDERATION of the parties' proposed discovery orders, defendants' letter

26 to the Court of March 11, 2008 and the whole record herein,

27         The Court enters the following Order to establish the scope of discovery prior to the April

28 21, 2008 evidentiary hearing in this action.

**I. Documents to be Produced to Plaintiffs by Defendants.**

A.  In open court, on the morning of March 6, 2008, plaintiffs proffered "Plaintiffs' Designation of Documents and Exhibits" identifying the discovery that they requested (attached), subject to plaintiffs' right to amend and modify the request based on information learned from the testimony of defendants' witnesses during the hearing on March 6, 2008.   Based upon that representation by plaintiffs, defendants shall produce to plaintiffs, on the schedule set forth in paragraph I.F, herein, and subject to the Protective Order entered by the Court on March 7, 2008, the following documents to the extent that they exist, excluding any responsive documents for which defendants have or will assert privilege or which are prohibited by law from being disclosed:

1.  Incident reports and/or incident briefs prepared following a suicide or attempted suicide of any veteran who was receiving medical care from the Department of Veterans Affairs (VA), or who had requested medical care from the VA, as described by Dr. Cross, for all suicides occurring from January 1, 2005 to the present, and any compilations of data or information about such suicides or attempted suicides.

2.  The suicide tracking database described on pages 44-45 of the VA OIG Report 06-03706-126, Healthcare Inspection: Implementing the Veterans Health Administration's (VHA) Mental Health Strategic Plan Initiatives for Suicide Prevention, as described during the testimony of Dr. Cross.

3.  VHA training manuals or training programs relating to national and VISN-level policies for: (a) screening of patients who present to any VHA medical facility with medical or psychiatric issues; and (b) making a determination as to whether such individuals are in need of emergent or urgent care.

4.  Suicide data compilations underlying the Han Kang study of suicide among OEF/OIF veterans, as described by Dr. Cross.

5.  Data compilations, studies, reports or other substantive communications compiling

VHA statistics regarding suicides or attempted suicides of any veteran who was receiving medical care from the VA, or who had requested medical care from the VA, for fiscal years 2005 to present, including without limitation all data compilations resembling documents produced by defendants and labeled VA003-00001459-VA00300001463, VA003-00001488-VA003-00001491, VA000027-VA000034, or VA000001-VA000002.

6. The VHA portion of VA's Monthly Performance Reviews, such as those described in the testimony of Dr. Cross, from October 2007 to March 2008.

7. The Long Journey Home Reports on the Treatment of Posttraumatic Stress Disorder in the Department of Veterans Affairs, for fiscal years 2006 and 2007 (including the most current draft of the fiscal year 2007 report, if the final report is not published and available for production by April 11, 2008), and any underlying data compilations relating to these reports.

8. The National Mental Health Performance Monitoring System Final Reports for fiscal years 2005, 2006 and 2007, (including the most current draft of the fiscal year 2007 report, if the final report is not published and available for production by April 11, 2008).

9. The VA study (or the most recent draft) entitled "Barriers and Facilitators to Treatment-Seeking for PTSD," the existence of which was testified to by Dr. Cross in the April 12, 2007 Senate Hearing to Receive Testimony on the Departments of Defense and Veterans Affairs Disability Rating Systems and Transition of Service Members from the Department of Defense to the Department of Veterans Affairs.

10. Studies and reports on workload by type of mental health professional, including workload per psychiatrist and workload per psychologist, at the VISN or national VA level.

11. Documents and substantive communications regarding Suicide Prevention Coordinator conference calls, reports, or meetings, as described by Dr. Zeiss in her testimony, maintained by Dr. Zeiss, Dr. Katz and Jan Kemp, Ph.D., National Suicide Prevention Coordinator, but not documents maintained by each of approximately 153 suicide coordinators.

12. Quarterly Reports by Dr. Han Kang, from the inception of such reports, or January 1, 2005, whichever is later, regarding OEF/OIF separated veterans who have sought mental health care at VA, as described by Dr. Zeiss in her testimony.

13.  Outpatient patient satisfaction survey reports for FY 2006 to present.

14.  "Secret Shopper" reports as described by Dr. Zeiss in her testimony.

15.  Policies and directives regarding VHA's Patient Advocacy program, including but not limited to Patient Advocate handbooks and/or training materials.

16.  Reports or studies tracking or monitoring the number and resolution of complaints alleging that the VHA did not provide adequate or timely mental health care at VA medical facilities.

17.  Substantive communications regarding the CBS study on veteran suicide.

18.  Regular monthly reports regarding the suicide hotline, as discussed in the testimony of Dr. Zeiss.

19.  Office of Policy and Procedure quarterly reports on suicides as discussed by Dr. Zeiss from the inception of the preparation of such quarterly reports or January 1, 2005, whichever is later.

20.  Monthly reports regarding electronic wait lists and/or patient waiting times for mental health appointments, including printouts related to such reports by VISN, from January 1, 2007 to March 1, 2008, as described by Dr. Murawsky in his testimony.

21. Reports and studies generated by the Northeast Program Evaluation Center regarding suicide and PTSD from January 1, 2005 to the present.

22.  Reports and studies regarding delays or timing in the adjudications of claims for benefits and/or service-connection, from January 1, 2005 to the present at the regional office level, the Board of Veteran Appeals (BVA), and United States Court of Appeals for Veterans Claims (CAVC) and the most directly relevant underlying data for such reports and studies, available to the VA.  Chief Judge Greene, of the CAVC shall not be required to respond to this request.

23.  Training manuals and all operating procedures, policies or protocols regarding the medical reviews relating to service-connection determinations in the adjudications process, where the alleged disability is related to a mental health diagnosis.

24.  Data compilations or reports regarding average claims processing times at the

1   regional office level, at the BVA and at CAVC, available to the VA.  Chief Judge Greene, of the

2   CAVC shall not be required to respond to this request.

3       25.  Written protocols or guidelines provided to intake staff or appointment schedulers

4   regarding what actions to take when interviewing a veteran who: (a) states that he or she is

5   suicidal or in distress; or (b) appears to the intake staff or appointment scheduler to be suicidal or

6   in distress, regardless of whether the veteran himself or herself makes such assertion.

7   Defendants shall produce such protocols or guidelines prepared or issued by: (a) VA Central

8   Office (i.e. the VA's headquarters in Washington D.C.); and (b) each of the VA's 21 VISNs;

9   however, VA need not produce such protocols or guidelines prepared or issued by each of VA's

10  153 Medical Centers.

11      26.  Suicide data compilations gathered or prepared by VA's Center of Excellence at

12  Canandaigua, NY, from January 1, 2005 to present, and any final report(s) regarding this

13  information, (or the most recent draft report as of April 11, 2008 if no final report is available).

14      27.  Reports, studies and data compilations regarding the creation of a "suicide flag" in

15  the VA;s electronic medical record (VISTA) to identify patients who are a potential risk to

16  themselves others, as described by Dr. Zeiss in her testimony.

17      28.  Reports (or the most recent draft of any such report) regarding the Uniform Mental

18  Health Package identified by Dr. Katz in his testimony.

19      29.  Reports and spreadsheets regarding veteran suicides by geographic region, as

20  identified by Dr. Katz in his testimony, including but not limited to reports relied upon to identify

21  suicide "hot spots."

22      30.  Serious Mental Illness Treatment Research and Evaluation Center (SMITREC)

23  reports regarding veteran suicide rates, including but not limited to reports reflecting suicide rates

24  by the VHA facility and/or VISN, from January 1, 2005 to the present as described by Dr. Katz in

25  his testimony.

26

27      B.  As used herein, the words or phrases such as data, data compilations, reports, studies,

28  policies, protocols, substantive communications, shall be construed to have their ordinary,

1  common sense meaning and not any meaning or construction ascribed to them in the pleadings,

2  correspondence or discovery documents of any party.

3

4      C.1  Defendants shall produce electronic documents  in TIFF images (electronic images

5  of paper documents) and will produce associated Concordance load files (permitting some degree

6  of computerized search of the documents produced).  Defendants need not produce all of the

7  twenty-nine electronically-searchable data fields requested by plaintiffs in their letter of October

8  10, 2007.  Instead, defendants shall satisfy their obligations by producing Concordance load files

9  that permit documents to be searched by: available metadata that can be automatically extracted,

10  and machine-generated full-text.  Defendants are not required to change the format or

11  configuration of electronic data in response to plaintiffs' requests.  Paper documents will be

12  scanned and produced in standard PDF format.

13      C.2.  If, due to the volume of documents identified in response to plaintiffs' document

14  production requests, defendants are unable to produce all documents in the format ordered in

15  paragraph C.1, defendants shall provide written notice to plaintiffs and defendants may produce

16  documents in a PDF or native format.

17

18      D.  Unless a load file that contains source information is provided, see ¶ C.1, defendants

19  shall provide source logs, identifying the office and employee who produced each document or

20  category of documents produced.  Such source logs shall be produced to plaintiffs within seven

21  days of when the document or category of documents is produced.

22

23      E.  Defendants shall prepare privilege logs which shall be served on plaintiffs within

24  fourteen days of when the privileged documents are produced to defendants' litigation contractor.

25

26

27      F.  Unless otherwise agreed by the parties, all documents shall be produced in the form of

28  electronic copies of the documents, placed on a compact disc, and transmitted to plaintiffs by

1  Federal Express for next day, morning delivery.  Defendants shall act expeditiously and take all

2  reasonable steps to produce documents to plaintiffs on a rolling production and shall produce

3  responsive documents that have been collected and are available for production on the following

4  dates:

5         March 21, 2008

6         March 28, 2008

7         April 4, 2008

8         April 11, 2008

9         April 17, 2008.

10

11        G.  Any direction herein that defendants produce a draft of a document shall not be

12  construed as overruling defendants' assertion of their right not to produce pre-decisional drafts of

13  documents based on the deliberative process privilege or any other privilege with respect to any

14  other documents.

15

16  **II.      Depositions By Plaintiffs**

17        Plaintiffs may take eleven depositions (the number of depositions identified on by

18  plaintiffs in Court on March 6, 2007 as the number of depositions necessary to prepare for the

19  April 21, 2008 hearing, <u>see</u> Attachment A at 4-5) prior to the April 21, 2008 Hearing from

20  among the following eighteen deponents (as identified on Plaintiffs' Designation of Documents

21  and Depositions, D.E. (169):

22

23  1.  **William Feeley**, Deputy Under Secretary for Health for Operations and Management, U.S.

24  Department of Veterans Affairs

25

26  2.  **Robert Rosenheck, M.D.,** Director Northeast Program Evaluation Center

27

28  3.  **Marcus Nemuth, M.D.,** Director, Psychiatry Emergency Service, VA Puget Sound Health

1  Care System

2

3  4. **Frances M. Murphy, M.D.,** Former Deputy Under Secretary for Health Policy Coordination

4

5  5. **Larry Dewey, M.D.,** Chief Psychiatry Service, VA Medical Center, Boise, Idaho

6

7  **VA's Person Most Knowledgeable on the following topics, under Rule 30(b)(6):**

8

9  6.  All VA policies, procedures and practices that inform the treatment of veterans with mental

10 health issues, including but not limited to suicidal veteran and veterans suffering from PTSD.

11

12 7.  The result of VA's "secret shopper" program.

13

14 8.  Calculation of appointment wait times for both new and existing VA patients based on

15 "desired dates" in VA's VistA program.

16

17 9.  VHA's electronic waiting lists and the policies and procedures for creation and maintenance

18 of patient waiting lists.

19

20 10.  Tracking of VA suicide data and incident reports related to suicides and attempted suicides.

21

22 11. **Daniel Cooper,** Under Secretary for Benefits, Veterans Benefits Administration, U.S.

23 Department of Veterans Affairs.

24

25 12. **Bradley Mayes,** Director, Compensations & Pension Service, U.S. Department of Veterans

26 Affairs.

27

28 13. **Ronald Aument**,, former Deputy Under Secretary for Benefits, U.S. Department of Veterans

Affairs.

14. **Tom Pamprim**, Deputy Director for Policy and Procedures, Veterans Benefits Administration, U.S. Department of Veterans Affairs.

15. **Jack McCoy**, Former Associate Deputy Under Secretary for Benefits, Veterans Benefits Administration, U.S. Department of Veterans Affairs.

**VA's Person Most Knowledgeable on the following topics, under Rule 30(b)(6):**

16. VA's incentive compensation system and any investigations of VA employees known or suspected to have tampered with or destroyed any document or portion of a veteran's claim file.

17. VA Central Office's supervision, statistical analysis of, or monitoring of grants of service connection for PTSD and appeals of PTSD grant decision or request for increased rating at its regional offices and all actions taken with respect to regional offices exhibiting higher than average grant rates or any perceived statistical abnormalities.

18. The methods of calculation of the times SCDDC claims are pending at each stage of the proceeding from regional office level through Federal Circuit, the actual amount of times those claims have been pending at each level, and the grant rates for those claims.

Plaintiffs shall notify defendants of the identity of their proposed deponents within three days of this Order.

**III. Documents to be Produced to Defendants by Plaintiffs**

Plaintiffs shall act expeditiously and take all reasonable steps to produce non-privileged documents in response to defendants' thirty Requests for Production of Documents (attached

1   hereto) on a rolling production.  Plaintiffs shall produce responsive documents, in the same

2   manner as is set forth in section **I, herein**, that have been collected and are available for

3   production on the following dates:

4        March 21, 2008

5        March 28, 2008

6        April 4, 2008

7        April 11, 2008

8        April 17, 2008.

9   Plaintiffs shall also comply with the obligations to provide source logs and privilege logs, as set

10  forth in paragraphs I.D and I.E, herein.  Unless otherwise agreed by the parties, all documents

11  shall be produced in the form of electronic copies of the documents, placed on a compact disc,

12  and transmitted to defendants by Federal Express for next day, morning delivery.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2    **IV. Depositions by Defendants**

3    Defendants may take the following depositions of plaintiffs prior to the April 21, 2008 hearing:

4        1.  A Rule 30(b)(6) deposition of plaintiff Veterans for Common Sense generally

5    inquiring about the allegations in the complaint.

6        2.  A Rule 30(b)(6) deposition of plaintiff Veterans United for Truth  generally inquiring

7    about the allegations in the complaint.

8        3.  Paul Sullivan, Executive Director of Veterans for Common Sense.

9

10

11

12        It is SO ORDERED, this ___ day of March, 2008

13

14    _____

15              Hon. Samuel J. Conti

16              UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28