**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETERANS FOR COMMON SENSE and VETERANS UNITED FOR TRUTH, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES B. PEAKE, Secretary of Veterans Affairs, et al., <br><br> Defendants. | No. C-07-3758 SC <br><br> [~~PROPOSED~~] ORDER ESTABLISHING DISCOVERY OBLIGATIONS IN CONNECTION WITH APRIL 21, 2008, <u>HEARING</u> |

After considering both parties' proposed discovery orders and additional filings related to these orders, the Court enters the following Order to establish the scope of discovery prior to the April 21, 2008, hearing.

**I.   Documents to be Produced to Plaintiffs by Defendants.**

   A.   Defendants shall produce to plaintiffs, on the schedule set forth in paragraph I.F, herein, and subject to the Protective Order entered by the Court on March 7, 2008, the following documents to the extent that they exist, excluding any responsive documents for which defendants have or will assert privilege or which are prohibited by law from being disclosed:

       1.   Incident reports and/or incident briefs prepared following a suicide or attempted suicide of any veteran who was receiving medical care from the Department of Veterans Affairs

1  (VA), or who had requested medical care from the VA, as described
2  by Dr. Cross, for all suicides occurring from January 1, 2005 to
3  the present, and any compilations of data or information about
4  such suicides or attempted suicides.

5      2.  The suicide tracking database described on pages
6  44-45 of the VA OIG Report 06-03706-126, Healthcare Inspection:
7  Implementing the Veterans Health Administration's (VHA) Mental
8  Health Strategic Plan Initiatives for Suicide Prevention, as
9  described during the testimony of Dr. Cross.

10      3. VHA training manuals or training programs relating to
11 national and VISN-level policies for: (a) screening of patients
12 who present to any VHA medical facility with medical or
13 psychiatric issues; and (b) making a determination as to whether
14 such individuals are in need of emergent or urgent care.

15      4.  Suicide data compilations underlying the Han Kang
16 study of suicide among OEF/OIF veterans, as described by Dr.
17 Cross.

18      5.  Data compilations, studies, reports or other
19 substantive communications compiling VHA statistics regarding
20 suicides or attempted suicides of any veteran who was receiving
21 medical care from the VA, or who had requested medical care from
22 the VA, for fiscal years 2005 to present, including without
23 limitation all data compilations resembling documents produced by
24 defendants and labeled VA003-00001459-VA00300001463,
25 VA003-00001488-VA003- 00001491, VA000027-VA000034, or
26 VA000001-VA000002.

27      6.  The VHA portion of VA's Monthly Performance Reviews,

-2-

such as those described in the testimony of Dr. Cross, from October 2007 to March 2008.

7. The Long Journey Home Reports on the Treatment of Posttraumatic Stress Disorder in the Department of Veterans Affairs, for fiscal years 2006 and 2007 (including the most current draft of the fiscal year 2007 report, if the final report is not published and available for production by April 11, 2008), and any underlying data compilations relating to these reports.

8. The National Mental Health Performance Monitoring System Final Reports for fiscal years 2005, 2006 and 2007, (including the most current draft of the fiscal year 2007 report, if the final report is not published and available for production by April 11, 2008).

9. The VA study (or the most recent draft) entitled "Barriers and Facilitators to Treatment-Seeking for PTSD," the existence of which was testified to by Dr. Cross in the April 12, 2007 Senate Hearing to Receive Testimony on the Departments of Defense and Veterans Affairs Disability Rating Systems and Transition of Service Members from the Department of Defense to the Department of Veterans Affairs.

10. Studies and reports on workload by type of mental health professional, including workload per psychiatrist and workload per psychologist, at the VISN or national VA level.

11. Documents and substantive communications regarding Suicide Prevention Coordinator conference calls, reports, or meetings, as described by Dr. Zeiss in her testimony, maintained by Dr. Zeiss, Dr. Katz and Jan Kemp, Ph.D., National Suicide

-3-

1 Prevention Coordinator, but not documents maintained by each of
2 approximately 153 suicide coordinators.
3   12. Quarterly Reports by Dr. Han Kang, from the
4 inception of such reports, or January 1, 2005, whichever is later,
5 regarding OEF/OIF separated veterans who have sought mental health
6 care at VA, as described by Dr. Zeiss in her testimony.
7   13. Outpatient patient satisfaction survey reports for
8 FY 2006 to present.
9   14. "Secret Shopper" reports as described by Dr. Zeiss
10 in her testimony.
11   15. Policies and directives regarding VHA's Patient
12 Advocacy program, including but not limited to Patient Advocate
13 handbooks and/or training materials.
14   16. Reports or studies tracking or monitoring the
15 number and resolution of complaints alleging that the VHA did not
16 provide adequate or timely mental health care at VA medical
17 facilities.
18   17. Substantive communications regarding the CBS study
19 on veteran suicide.
20   18. Regular monthly reports regarding the suicide
21 hotline, as discussed in the testimony of Dr. Zeiss.
22   19. Office of Policy and Procedure quarterly reports on
23 suicides as discussed by Dr. Zeiss from the inception of the
24 preparation of such quarterly reports or January 1, 2005,
25 whichever is later.
26   20. Monthly reports regarding electronic wait lists
27 and/or patient waiting times for mental health appointments,
28

-4-

1  including printouts related to such reports by VISN, from January
2  1, 2007 to March 1, 2008, as described by Dr. Murawsky in his
3  testimony.
4        21.  Reports and studies generated by the Northeast
5  Program Evaluation Center regarding suicide and PTSD from January
6  1, 2005 to the present.
7        22.  Reports and studies regarding delays or timing in
8  the adjudications of claims for benefits and/or
9  service-connection, from January 1, 2005 to the present at the
10 regional office level, the Board of Veteran Appeals (BVA), and
11 United States Court of Appeals for Veterans Claims (CAVC) and the
12 most directly relevant underlying data for such reports and
13 studies, available to the VA. Chief Judge Greene, of the CAVC
14 shall not be required to respond to this request.
15       23.  Training manuals and all operating procedures,
16 policies or protocols regarding the medical reviews relating to
17 service-connection determinations in the adjudications process,
18 where the alleged disability is related to a mental health
19 diagnosis.
20       24.  Data compilations or reports regarding average
21 claims processing times at the regional office level, at the BVA
22 and at CAVC, available to the VA. Chief Judge Greene, of the
23 CAVC shall not be required to respond to this request.
24       25.  Written protocols or guidelines provided to intake
25 staff or appointment schedulers regarding what actions to take
26 when interviewing a veteran who: (a) states that he or she is
27 suicidal or in distress; or (b) appears to the intake staff or

-5-

appointment scheduler to be suicidal or in distress, regardless of whether the veteran himself or herself makes such assertion. Defendants shall produce such protocols or guidelines prepared or issued by: (a) VA Central Office (i.e. the VA's headquarters in Washington D.C.); and (b) each of the VA's 21 VISNs; however, VA need not produce such protocols or guidelines prepared or issued by each of VA's 153 Medical Centers.

26. Suicide data compilations gathered or prepared by VA's Center of Excellence at Canandaigua, NY, from January 1, 2005 to present, and any final report(s) regarding this information, (or the most recent draft report as of April 11, 2008 if no final report is available).

27. Reports, studies and data compilations regarding the creation of a "suicide flag" in the VA;s electronic medical record (VISTA) to identify patients who are a potential risk to themselves others, as described by Dr. Zeiss in her testimony.

28. Reports (or the most recent draft of any such report) regarding the Uniform Mental Health Package identified by Dr. Katz in his testimony.

29. Reports and spreadsheets regarding veteran suicides by geographic region, as identified by Dr. Katz in his testimony, including but not limited to reports relied upon to identify suicide "hot spots."

30. Serious Mental Illness Treatment Research and Evaluation Center (SMITREC) reports regarding veteran suicide rates, including but not limited to reports reflecting suicide rates by the VHA facility and/or VISN, from January 1, 2005 to the

-6-

1  present as described by Dr. Katz in his testimony.

3      B.  As used herein, the words or phrases such as data, data
4  compilations, reports, studies, policies, protocols, substantive
5  communications, shall be construed to have their ordinary, common
6  sense meaning and not any meaning or construction ascribed to them
7  in the pleadings, correspondence or discovery documents of any
8  party.

10     C.1  Defendants shall produce electronic documents in TIFF
11 images (electronic images of paper documents) and will produce
12 associated Concordance load files (permitting some degree of
13 computerized search of the documents produced). Defendants need
14 not produce all of the twenty-nine electronically-searchable data
15 fields requested by plaintiffs in their letter of October 10,
16 2007. Instead, defendants shall satisfy their obligations by
17 producing Concordance load files that permit documents to be
18 searched by: available metadata that can be automatically
19 extracted, and machine-generated full-text. Defendants are not
20 required to change the format or configuration of electronic data
21 in response to plaintiffs' requests. Paper documents will be
22 scanned and produced in standard PDF format.

24     C.2.  If, due to the volume of documents identified in
25 response to plaintiffs' document production requests, defendants
26 are unable to produce all documents in the format ordered in
27 paragraph C.1, defendants shall provide written notice to

-7-

plaintiffs and defendants may produce documents in a PDF or native format.

D.  Unless a load file that contains source information is provided, see ¶ C.1, defendants shall provide source logs, identifying the office and employee who produced each document or category of documents produced. Such source logs shall be produced to plaintiffs within seven days of when the document or category of documents is produced.

E.  Defendants shall prepare privilege logs which shall be served on plaintiffs within fourteen days of when the privileged documents are produced to defendants' litigation contractor.

F.  Unless otherwise agreed by the parties, all documents shall be produced in the form of electronic copies of the documents, placed on a compact disc, and transmitted to plaintiffs by Federal Express for next day, morning delivery. Defendants shall act expeditiously and take all reasonable steps to produce documents to plaintiffs on a rolling production and shall produce responsive documents that have been collected and are available for production on the following dates:
   March 21, 2008
   March 28, 2008
   April 4, 2008
   April 11, 2008
   April 17, 2008.

-8-

G. Any direction herein that defendants produce a draft of a document shall not be construed as overruling defendants' assertion of their right not to produce pre-decisional drafts of documents based on the deliberative process privilege or any other privilege with respect to any other documents.

**II. Depositions By Plaintiffs**

Plaintiffs may take eleven depositions (the number of depositions identified on by plaintiffs in Court on March 6, 2007 as the number of depositions necessary to prepare for the April 21, 2008 hearing, see Attachment A at 4-5) prior to the April 21, 2008 Hearing from among the following eighteen deponents (as identified on Plaintiffs' Designation of Documents and Depositions, D.E. (169):

1. **William Feeley,** Deputy Under Secretary for Health for Operations and Management, U.S. Department of Veterans Affairs

2. **Robert Rosenheck, M.D.,** Director Northeast Program Evaluation Center

3. **Marcus Nemuth, M.D.,** Director, Psychiatry Emergency Service, VA Puget Sound Health Care System

4. **Frances M. Murphy, M.D.,** Former Deputy Under Secretary for Health Policy Coordination

5. **Larry Dewey, M.D.,** Chief Psychiatry Service, VA Medical Center, Boise, Idaho

**VA's Person Most Knowledgeable on the following topics, under Rule 30(b)(6):**

-9-

6. All VA policies, procedures and practices that inform the treatment of veterans with mental health issues, including but not limited to suicidal veteran and veterans suffering from PTSD.

7. The result of VA's "secret shopper" program.

8. Calculation of appointment wait times for both new and existing VA patients based on "desired dates" in VA's VistA program.

9. VHA's electronic waiting lists and the policies and procedures for creation and maintenance of patient waiting lists.

10. Tracking of VA suicide data and incident reports related to suicides and attempted suicides.

11. **Daniel Cooper**, Under Secretary for Benefits, Veterans Benefits Administration, U.S. Department of Veterans Affairs.

12. **Bradley Mayes**, Director, Compensations & Pension Service, U.S. Department of Veterans Affairs.

13. **Ronald Aument,** former Deputy Under Secretary for Benefits, U.S. Department of Veterans Affairs.

14. **Tom Pamprim,** Deputy Director for Policy and Procedures, Veterans Benefits Administration, U.S. Department of Veterans Affairs.

15. **Jack McCoy,** Former Associate Deputy Under Secretary for Benefits, Veterans Benefits Administration, U.S. Department of Veterans Affairs.

**VA's Person Most Knowledgeable on the following topics, under Rule 30(b)(6):**

16. VA's incentive compensation system and any investigations of

-10-

VA employees known or suspected to have tampered with or destroyed any document or portion of a veteran's claim file.

17.   VA Central Office's supervision, statistical analysis of, or monitoring of grants of service connection for PTSD and appeals of PTSD grant decision or request for increased rating at its regional offices and all actions taken with respect to regional offices exhibiting higher than average grant rates or any perceived statistical abnormalities.

18.   The methods of calculation of the times SCDDC claims are pending at each stage of the proceeding from regional office level through Federal Circuit, the actual amount of times those claims have been pending at each level, and the grant rates for those claims.

Plaintiffs shall notify defendants of the identity of their proposed deponents within three days of this Order.

### III.   Documents to be Produced to Defendants by Plaintiffs

Plaintiffs shall act expeditiously and take all reasonable steps to produce non-privileged documents in response to defendants' thirty Requests for Production of Documents (attached hereto) on a rolling production. Plaintiffs shall produce responsive documents, in the same manner as is set forth in section I, herein, that have been collected and are available for production on the following dates:

   March 21, 2008
   March 28, 2008
   April 4, 2008

-11-

1        April 11, 2008

2        April 17, 2008.

Plaintiffs shall also comply with the obligations to provide source logs and privilege logs, as set forth in paragraphs I.D and I.E, herein. Unless otherwise agreed by the parties, all documents shall be produced in the form of electronic copies of the documents, placed on a compact disc, and transmitted to defendants by Federal Express for next day, morning delivery.

**IV.   Depositions by Defendants**

Defendants may take the following depositions of plaintiffs prior to the April 21, 2008 hearing:

1.   A Rule 30(b)(6) deposition of plaintiff Veterans for Common Sense generally inquiring about the allegations in the complaint.

2.   A Rule 30(b)(6) deposition of plaintiff Veterans United for Truth generally inquiring about the allegations in the complaint.

3.   Paul Sullivan, Executive Director of Veterans for Common Sense.

IT IS SO ORDERED.

Dated: March 13, 2008

_____
UNITED STATES DISTRICT JUDGE

-12-