

**U.S. Department of Justice**
Civil Division, Federal Programs Branch

**Via First-Class Mail**   **Via Overnight Delivery**
P.O. Box 833                      20 Massachusetts Ave., NW
Washington, D.C. 20044   Washington, D.C. 20001

---

Kyle R. Freeny                Tel:  (202) 514-5108
Trial Attorney                 Fax:  (202) 616-8460

April 4, 2008

Honorable Samuel Conti
USDC, Northern District
450 Golden Gate Avenue
Courtroom 1, 17th Floor
San Francisco, CA 94102

      RE: Veterans for Common Sense v. Mansfield, (N.D. Cal. No. C-07-3758)

      By: Efiling and Telefax

Dear Judge Conti:

      Although styled as a complaint about the pace of document production, plaintiffs' April 2, 2008 letter, revised April 3, 2008 (Docket Entry 180), asks, without acknowledging it, for reconsideration of the Court's earlier ruling excluding from discovery sensitive veteran medical information protected by statute from disclosure.  Even should the Court decide to revisit its decision, it could not afford the blanket relief plaintiffs seek because Congress has mandated a case-by-case balancing test for each instance of disclosure of this type of information.  Plaintiffs' claim not to have sufficient materials to conduct the depositions that they scheduled is based in large part on this material.  Furthermore, plaintiffs have incorrectly characterized the documents they have already received, failed to inform the Court that they know they will receive <u>today</u> several of the items they request, and insist that documents with sensitive veteran medical information redacted be produced immediately, even though this is neither possible nor in the interest of veterans.

**A.  Sensitive Medical Information Protected by Statute**

      Plaintiffs wrongly state that "Defendants are obligated by the Court's Discovery Order to produce these documents." Plfs' April 2 ltr at 3-4.   Plaintiffs' attempt to characterize the non-disclosure of protected documents as "withholding" of responsive documents ignores both the Court's rulings and the law.  At the end of the last hearing on March 6, 2008, plaintiffs specifically requested the Court to enter at order making a finding under 38 U.S.C. § 7332 that information regarding sensitive veterans medical history should be disclosed in this case and the Court expressly refused to do so.  (Transcript at 821-824).  To avoid confusion on this issue, Defendants' proposed discovery order and the order subsequently adopted by the Court expressly states on the first page that defendants need not produce "documents for which defendants have or will assert privilege or which are <u>prohibited by law from being disclosed</u>."

Docket Entry 174 at 1:23-25 (emphasis added).

First, Plaintiffs complain that defendants have not produced the "suicide data underlying the Han Kang study of suicide among OEF/OIF veterans (*See* Discovery Order, Category 4) or the SMITREC suicide database (Discovery Order, Category30)." Plfs' April 2 ltr at 2, Docket Entry 180. Defendants informed plaintiffs that they are prohibited by law from disclosing the underlying data, see 42 U.S.C. § 242m(d), which were obtained through agreements with other agencies that do not permit use of the data for any purpose other than the authorized research. See Letter from Freeny to Moser, April 1, 2008 (Defs. 4/1 Letter), Docket Entry 180-5 (Ex. C).

Second, plaintiffs state that defendants have not produced data "compilations." Plfs' April 2 ltr at 2, Docket Entry 180. In fact, defendants have already produced to plaintiffs data *compilations* from the Kang suicide study, and they have assured plaintiffs that although they cannot produce the underlying SMITREC data, they will produce the SMITREC reports containing de-identified data. See Defs. 4/1 Letter at 2, Docket Entry 180-5.

Third, with regard to "suicide issue briefs" (i.e. reports about individual suicides or attempted suicides, which may discuss individual veterans' diagnosis of or treatment for substance abuse, HIV, or sickle cell anemia), plaintiffs fail to inform the Court that they have been told several times, by phone and by letter, that defendants are without authority, and even subject to criminal penalties, were they to release protected information contained therein. See Letter from Freeny to Moser, March 17, 2008 (a true correct copy of which is attached as Exhibit A); Letter from Freeny to Moser, March 21, 2008 (a true and correct copy of which is attached as Exhibit B). Plaintiffs' real disagreement is with Congress, not with defendants, as Congress has expressly prohibited VA from releasing this information except under very narrow circumstances. See 38 U.S.C. § 7332.

Even those suicide issue briefs that can be released because they do not contain reference to substance abuse or other protected disorders must first be carefully reviewed to make this determination. Contrary to plaintiffs' assertion, defendants have already informed plaintiffs that some suicide issue briefs not protected by § 7332 have been identified and cleared for production today. See Defs. 4/1 Letter, Docket Entry 180-5 at 2. In addition, plaintiffs' assertion that *they* proposed redacting suicide issue briefs to permit their production is also incorrect. Plfs' April 2 ltr at 5, Docket Entry 180. In fact, defendants made this proposal by telephone on or about March 11, 2008, in an effort to accommodate plaintiffs' expressed interest in the documents. The redaction process is a painstaking one that requires careful review of documents, including the hidden metadata associated with them, to ensure that the privacy of veterans with substance abuse problems is fully protected. Plaintiffs' complaint that this process is not proceeding as fast as they would like simply ignores the reality of the situation.

Defendants submit that suicide issue briefs – which deal with individual veterans' receipt of care rather than VA's system-wide policies for providing that care – are of minimal relevance to this case, and unnecessary to prepare for depositions of VA officials regarding agency

policies. Nevertheless, defendants are doing everything possible to try to make suicide issue briefs available to plaintiffs without compromising veterans' extremely sensitive information or violating Congressional mandates.

Moreover, a blanket court order for the disclosure of § 7332-protected documents would not be sufficient to authorize their release by law. Rather, this Court would need to conduct a balancing of interests with respect to each and every protected document, after first permitting the veteran and the relevant VA facility to providing written input to the court. 38 U.S.C. § 7332(b)(2)(D); 38 C.F.R. § 1.493. As with the suicide data protected from disclosure by 42 U.S.C. § 242m, plaintiffs proposed order would direct VA to violate its obligations under 38 U.S.C. § 7332.

**B. Defendants' Document Production Efforts**

As the Court knows, plaintiffs have repeatedly propounded extremely broad discovery requests throughout this case. Without addressing the probity or relevance of the most recently requested documents, which is doubtful in defendants' view, defendants proposed to produce as much as they believed was feasible in the time available. See Docket Entry 170. Certainly, if plaintiffs had requested a more focused document production, defendants would have been able to move more quickly.

As defendants have advised plaintiffs, the multi-step process to produce documents to plaintiffs is underway. See Defs. 4/1 Letter at 1, Docket Entry 180-5. This requires defendants to collect, copy, send to Washington, DC, put on an automated database specifically requested by plaintiffs, review for privilege, review for Privacy Act protection so the documents can be appropriately marked, and review for coverage under specific veterans' information protection statutes under pain of criminal prosecution. To do this as fast as possible, defendants have retained the document processing contractor CACI, which has extensive experience with litigation discovery, and has allocated up to $5,000,000 so that the speed of production will not be limited by its cost. In addition, as plaintiffs have been told, numerous attorneys throughout Veterans Affairs have been detailed to review the documents to accelerate the process as much as possible. See Defs. 4/1 Letter at 1, Docket Entry 180-5.

Several factors have affected the pace of document production. First, and most important, because the production process involves information for which unauthorized disclosure is a crime, careful controls are required. Second, counsel for defendants have been occupied with dealing with plaintiffs' attempt to seek additional discovery outside the scope of the Court's discovery order, which have ranged from serving defendants with lengthy interrogatories to serving the U.S. Court of Appeals for Veterans Claims with a document subpoena that directly contravenes this Court's discovery order. See Docket Entry, at 5:13-15; 22-23 ("Chief Judge Greene, of the CAVC shall not be required to respond to this request."). (A true correct copy of plaintiffs' subpoena is attached as Exhibit C, and a true correct copy of defendants' response is attached as Exhibit D). Third, lead counsel Dan Bensing has

unfortunately contracted pneumonia and has not been able to work any of the past week.  This has required that depositions he was prepared to defend this week be shifted to others.  Fourth, plaintiffs' almost daily complaints about the discovery process have required numerous written responses that have diverted the government's limited resources from document production efforts.

As noted, several of plaintiffs specific complaints are disengenuous as they are aware that they will have the documents by today.  Here's another example.  Defendants informed plaintiffs that, although they believe they have already produced the Mental Health Strategic Plan, specifically mentioned in Plfs. April 2 ltr at 2, Docket Entry 180, a second copy of that document in this Friday's production.  <u>See</u> Defs. 4/1 Letter at 1-2, Docket Entry 180-5.

It is not possible given the volume of documents implicated in the discovery order to specify the exact dates on which every document or type of document will be produced.  Documents are being produced as quickly as they can be reviewed and, unless plaintiffs have expressed particular interest in certain documents, they are not pre-reviewed to be produced in a particular order.  For that reason, it is particularly misplaced for plaintiffs to complain that the thousands of pages they have received of analyses of VA services are "self-serving" to defendants.  The fact that available documents do not support plaintiffs allegations hardly makes the documents less relevant.  In any event, the document production process has been established and plaintiffs will likely soon be complaining that they have too many documents to review.

In sum, because defendants are not "withhold[ing]" documents, Plfs' April 2 ltr at 4, or engaged in a "willful failure too comply with this Court's discovery order" Plfs' April 2 ltr at 1, the proposed order plaintiffs have submitted is meaningless in asking that defendants be ordered to produce documents "forthwith."  Since the stay of discovery was lifted in January, plaintiffs estimate that defendants have produced 18,807 pages of documents to plaintiffs.  Defendants will be producing another 3,947 pages of documents as part of this Friday's production, bringing the total to 22,754.  As explained above, this crash effort has consumed and will continue to require a massive amount of agency time and money.  Since defendants are producing documents as fast as physically possible, plaintiffs' proposed order, even if entered, would make no difference.

                                              Sincerely,


                                              Kyle R. Freeny

cc: Gordon Erspamer