April 7 Transcript

Volume 1

Pages 1 - 56

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAMUEL CONTI

Veterans for Common Sense, and         )
Veterans United for Truth, Inc.,       )
                                       )
        Plaintiffs,                    )
                                       )
   vs.                                 )   NO. C 07-3758-SC
                                       )
James B. Peake, M.D., Secretary        )
of Veterans Affairs, et al.,           )
                                       )   San Francisco, California
        Defendants.                    )   Monday
                                       )   April 7, 2008
_____)   10:00 a.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:           Morrison & Foerster
Veterans for Truth,      425 Market Street
Inc.:                    San Francisco, California  94105-2482
                         (415) 268-7000
                         (415) 268-7522 (fax)
              BY:        HEATHER A. MOSER
                         NATALIE NAUGLE

For Plaintiffs           Disability Rights Advocates
Veterans United for      2001 Center Street, Fourth Floor
Truth; Veterans for      Berkeley, California  94704-1204
Common Sense:            (510) 665-8644
                         (510) 665-8511 (fax)
              BY:        SID WOLINSKY

(Appearances Continued On Next Page)

Reported By:    Lydia Zinn, CSR #9223, RPR
                Official Reporter - U.S. District Court

2

1   APPEARANCES (CONT'D)
    For Defendant          United States Department of Justice
2   U.S. Department of     Civil Division, Federal Programs Branch
    Veterans Affairs:      20 Massachusetts Avenue, NW
3                          Room 6104
                           Washington, D.C.  20001
                                Page 1

```
                      April 7 Transcript
 4                        (202) 514-3492
                          (202) 616-8460 (fax)
 5            BY:     RICHARD G. LEPLEY
                      KYLE RENEE FREENY
 6
     For Defendant        U.S. Department of Veterans Affairs
 7   U.S. Department of   810 Vermont Avenue, NW
     Veterans Affairs:    Washington, D.C.  20420
 8                        (202) 273-8666
                          (202) 273-6404 (fax)
 9            BY:     CHRISTOPHER P. MCNAMEE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                     Lydia Zinn, CSR,  RPR
                          Official Reporter - U.S. District Court
                                          (415)  531-6587
```

3

1           THE CLERK:  Calling Civil 07-3758, Veterans for

2   Common Sense, et al., versus James Peake, et al.

3           Counsel, please state your appearance for the record.

4           MS. FREENY:  Good morning, your Honor.  Heather Moser

5   of Morrison Foerster, for the plaintiffs.  Good morning.

6           THE COURT:  Good morning.

April 7 Transcript

3  way to cut the Order to a reasonable level.
4           The first is the suicide incident briefs; that
5  they -- first thing they start with, one: they're not
6  relevant, because they have all the specific veterans'
7  information. And if you redact all that out, there's really
8  nothing left. And they aren't going to let them come up with a
9  suicide rate, because they're not going to see many of them,
10 because they're entirely protected by law, and we could not
11 produce any of them.
12          And we actually had -- we put together, I think,
13 seven or eight.
14          THE COURT: If I was to cut it down the way you say,
15 do they have the -- I would like them to have the rates per
16 year, if you have that statistics.
17          MR. LEPLEY: You know, Mr. Erspamer testified or
18 announced what he thought the rates were at the first hearing
19 in this case. Our witnesses testified during the preliminary
20 injunction what those rates were.
21          Now there's a lot of different views on what those
22 rates are, but the evidence of what the rates are is already in
23 the record. They have that. And we can debate what the
24 relevance of it is and who's right, but that's already there.
25          The other trouble with the incident briefs is they

1  really aren't relevant to the issues before the Court. They go
2  to specific veterans' experiences. And that isn't what's
3  before the Court.
4           You're looking at the policies of -- whether the VA
5  has a policy in place that is unlawful. And these don't really

April 7 Transcript

9  this case is about.
10      So we think that's a whole category of documents --
11 hundreds of thousands of documents -- that really aren't
12 relevant to this case. And to process them is going to take a
13 lot of money, a lot of time, and really is not going to serve
14 any purpose.
15      But we want -- you know, one thing I wanted to make
16 sure the Court is aware of is we -- you know, we've put on 63
17 attorneys reviewing it. In my 20 years of representing the
18 United States, I've never seen an agency jump this fast; but
19 they are trying to meet that deadline of April 17th. And I
20 think we'll come pretty darn close to doing it. If we can --
21      THE COURT: You're telling me -- you say you've given
22 them -- they have the information on the rates of suicide. Is
23 that what you're saying?
24      MR. LEPLEY: There certainly is a lot of data already
25 in this record and documents we've turned over that cover that.

                      Lydia Zinn, CSR,  RPR
              Official Reporter -  U.S. District Court
                          (415)   531-6587

36

1       Whether they have every single document that might
2  address the rate -- no, I wouldn't go that far, your Honor.
3  And I don't mean to suggest that.
4       THE COURT: Well, what about this suicide tracking
5  they're talking about?
6       MR. LEPLEY: The SMITREC data, are we talking about?
7  Which suicide tracking does the Court refer --
8       THE COURT: They were talking about some suicide
9  tracking data they wanted. Is that the same thing as the
10 suicide rate?
11      MS. FREENY: Your Honor, I believe the suicide

April 7 Transcript

12  tracking database is one of the two databases that we told
13  plaintiffs earlier this week -- and we submitted in the letter
14  to this Court -- that the agency cannot lawfully release.
15  That's actually -- it's -- it's underlying data, so it's
16  individually identifiable data on the individuals who committed
17  suicide. That would be the number two, I believe, in the
18  Court's Order, but we are prohibited by 42 U.S.C. 242 M.D. from
19  releasing that information.
20       We did tell plaintiffs that we would release the
21  reports. And we -- and we will. And I expect they would
22  release them on Friday. That would be not the underlying data,
23  but the reports about the data. And they will get that data.
24       THE COURT: When?
25       MS. FREENY: Just not the individual data on: this

                          Lydia Zinn, CSR, RPR
                 Official Reporter - U.S. District Court
                              (415) 531-6587

                                  37

1  guy committed suicide on this date, and this guy committed
2  suicide on this date.
3       THE COURT: How about the -- you were -- she was
4  talking about something about the VA has money, but they're not
5  being utilized. Seems to me we went over that in the
6  preliminary injunction. Didn't we go over all of that?
7       MS. FREENY: We did, your Honor. And I think what
8  was established was that VA operates under a lump-sum
9  appropriation, which means under the Supreme Court case --
10  Lincoln v. Vigil -- that the agency has discretion to spend
11  that money, so long as they're meeting their statutory
12  obligations, as they see fit.
13       So the appropriations, it would seem, don't change --
14       THE COURT: Well, I think that's something --