

**U.S. Department of Justice**
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Richard G. Lepley
*Assistant Director*

Tel:    (202) 514-3492
Fax:    (202) 616-8187

April 11, 2008

**BY: E-filing**

Honorable Samuel Conti
United States District Court, Northern District
450 Golden Gate Avenue
Courtroom 1, 17th Floor
San Francisco, CA 94102

  RE: <u>Veterans for Common Sense v. Peake</u> (N.D. Cal. No. C-07-3758)

Dear Judge Conti:

  Plaintiffs seek both reconsideration of the Court's ruling that defendants need not produce suicide issue briefs, which are short descriptions about individual suicides or suicide attempts, and additional discovery of root cause analyses performed by VA. The Court was given sample issue briefs to examine at the April 7 hearing after which it concluded that they did not need to be produced because they concern individual cases. <u>See</u> Transcript of April 7 Hearing at 39:5-43:3. (William Feeley draft deposition transcript excerpts attached as Exhibit A.) Because these documents do not discuss aggregated suicide data nor shed light on VA's policies or practices, and if ordered to be produced after redaction would significantly delay the trial, plaintiffs request for reconsideration should be denied. With respect to the root cause analyses plaintiffs now seek, they may not be produced as a matter of law.

  First, plaintiffs assert that they need these suicide issue briefs to establish that the rate of suicide for veterans is "substantially disproportionate to suicide rates among non-veterans." Plaintiffs' proffer establishes the irrelevance of these documents. Even if the suicide incident briefs could establish this fact (and they cannot as explained below), plaintiffs would come no closer to showing that VA has a policy or practice of turning away veterans. This case is not about whether suicide among veterans is a serious concern (just as it is in the population at large); that is undisputed. It is about whether VA's response to veteran suicides violates a statutory mandate.

  Second, plaintiffs' contention that the deposition testimony of William Feeley proves the documents' probative value is similarly flawed. Although defendants note that Mr. Feeley testified that suicide issue briefs may contain "recurring themes," they fail to note that the recurring themes he later enumerated had nothing to do with VA's policies or practices of

providing care. Rather, as Mr. Feeley testified, the "themes" that could be gleaned from the accounts of suicide in these briefs were gun ownership, the use of alcohol, and the use of drugs, depression, and PTSD, see Transcript at 163:8-164:10; 167:13-168:19. Plaintiffs also fail to acknowledge that Mr. Feeley testified that the majority of suicides described in these issue briefs could not have prevented. Id. at 329:23-330:2.

Third, the fact that many of these suicide issue briefs discuss veterans' abuse of alcohol or drugs raises serious legal issues for their review and disclosure. As defendants explained to the Court at the April 7 hearing, a large proportion of the suicide issue briefs are protected from disclosure by 38 U.S.C. § 7332 because they identify individual veterans as having been diagnosed with or treated for substance abuse disorders. Section 7332 provides that a court may order the release of such information only after weighing specific factors on a case by case basis. 38 U.S.C. § 7332(b)(2)(D). Therefore, the Court cannot issue the kind of blanket order sought by plaintiffs for the release of all suicide issue briefs. Indeed, the regulations implementing § 7332 require that, prior to a court order, notice and an opportunity to be heard must be given to each veteran whose records are sought and to each relevant medical facility. 38 C.F.R. § 1.493. Plaintiffs again simply ignore this requirement.

Fourth, any attempt to extrapolate broad statistical principles from these brief narratives of tragic events would fall far short of meeting the admissibility requirements of Rule 702. Although suicide issue briefs could be released if *all* information that might be used to identify a veteran were redacted, this would strip them of what little useful information they might have because defendants would need to redact dates, locations, identifying information like ages and military service, as well as specific details about a veteran's treatment that might be used to identify the veteran with reference to other publically available information. See 38 C.F.R. § 1.461(a)(i). Because only a fraction of the briefs would contain substantive information that could be provided to plaintiffs even after time-consuming redaction, neither plaintiffs nor epidemiological experts would be able to draw meaningful conclusions about the data in the aggregate.

Fifth, plaintiffs' proposal would require a significant delay in the resolution of this action. At the recent hearing, defendants advised the Court that redaction of the over 15,000 pages of such documents,(many of which are iterations of the same issue brief) would pose a substantial burden on VA, especially given the exacting care necessary to ensure that § 7332 – which imposes criminal penalties for violations – is strictly complied with. See 38 C.F.R. § 1.463. This burden is greatly disproportionate to the probative value of issue briefs containing significant redactions. Moreover, none of the documents could be released prior to painstaking review and redaction of sensitive information – a task that could not be completed in weeks, much less the several days that plaintiffs propose.

Finally, plaintiffs raise for the first time the issue of "root cause analysis." Plaintiffs have merged the categories of "issue briefs" and "root cause analyses," which are not the same. An issue brief is an internal administrative document, and does not constitute a confidential quality assurance record. A root cause analysis is a quality assurance record, *i.e.*, the activity that generated the record was conducted by VA specifically to improve the quality of health care, the

activity which generated the document was previously designated in writing as a quality assurance activity which could produce confidential documents, and the document identifies patients or health care professionals. VA is prohibited from releasing root cause analyses by 38 U.S.C. § 5705, which protects quality assurance documents. See also 38 U.S.C. § 17.501. *Utterback v. United States*, (W.D.Ky. 1987) (motion to compel denied for VA quality assurance documents).[1/] Congress has afforded to these documents strong protection to ensure that investigations into medical incidents can be conducted with absolute candor. Each root cause analysis is initiated with a memorandum by VA setting forth the confidential and protected nature of the findings. A copy of one of these initiating memoranda can be provided to the Court under seal if it would be of assistance. Although Congress provided limited circumstances under which these documents can be disclosed, a court order is not one of them. See 38 U.S.C. § 5705(b)(1). Moreover, as with the issue briefs, root cause analyses involve clinical events rather than aggregate data or policies.

The documents plaintiffs seek are not probative of the claims alleged by plaintiffs and are protected from disclosure by law. Even for the subset of documents for which redaction would be possible, the value of the information that could be released is far outweighed by the burden the redaction effort would impose, and it would require a significant delay in the resolution of this proceeding. For these reasons, defendants request that the Court deny plaintiffs' latest request for reconsideration of its recent ruling on the scope of document production, and decline to expand the scope of discovery to cover root cause analyses.

Sincerely,

Richard G. Lepley

---

[1/] The decision cites 38 U.S.C. § 3305, which was later renumbered as 38 U.S.C. § 5705. Pub. L. 102-40, § 402(b)(1), 105 Stat 187, 238-39 (1991).