

**U.S. Department of Justice**

Civil Division

_____

*Washington, D.C. 20530*

March 11, 2008

The Honorable Samuel J. Conti
United States District Judge
Northern District of California
450 Golden Gate
San Francisco, Cal. 94102

      Re: <u>VCS v. Peake</u>, (C-07-3758-SC)

Dear Judge Conti:

      Defendants write to aid the Court by briefly identifying the substantive differences between plaintiffs' proposed document production order (D.E. 169) and defendants' proposed order, entered today (D.E. 170). More critically, defendants bring to the Court's attention the limitations on the ability of defendants, even with the assistance of a private litigation contractor, to produce the enormous volume of data plaintiffs have requested from VA's electronic databases in the time available before the April 21, 2008 trial.

      The Department of Veterans Affairs has set aside $ 5 million from its discretionary funds to retain the services of a litigation contractor, CACI, Inc., and so should be able to respond to all of plaintiffs' legitimate document production requests. Defendants' proposal – a rolling production from Friday March 21 through Thursday, April 17, is designed to provide plaintiffs with almost all, if not all, non-privileged documents responsive to their requests prior to the hearing.

A.     The Practical Limitations on Defendants' Ability to Produce Documents

      The most serious problem with the feasibility of responding to plaintiffs' requests in the time allotted is plaintiffs' repeated request for "all data" relating to certain subject matters. The VA maintains numerous electronic databases that contain an enormous volume of potentially relevant data and it is unrealistic to believe that VA can identify the portions of these databases that are relevant (in particular those relating to mental health care and claims), segregate out

−2−

responsive data, and then translate or transfer that data to a format usable by the parties' counsel in the time available.  In addition, the overwhelming majority of this data relates to individual claim files, which are not relevant to this action.  Consequently, defendants' Proposed Order limits production to reports, studies and data compilations, i.e. discrete documents presenting data from VA's databases.  Counsel for the parties have discussed this issue and will continue to do so.

A second difficulty is the feasibility of plaintiffs' requests that electronically-stored information be produced in plaintiffs' preferred electronic format.  Electronic documents may contain hundreds if not thousands of pieces of metadata, including information about the file size, date of creation, last date a file was printed, and other properties of the data. See Sedona Principles: Best Practices and Recommendations for Addressing Electronic Document Production 3 (2d ed. 2007). This information is notoriously unreliable, see id. at 4. In addition to being incredibly burdensome to produce, metadata is in most cases "of limited evidentiary value, and reviewing it can waste litigation resources." Wyeth v. Impax Labs., Inc., 2006 U.S. Dist. LEXIS 79761, at *4 (D. Del. 2006); see also Ky. Speedway, LLC v. NASCAR, Inc., 2006 U.S. Dist. LEXIS 920, at *23 (D. Ky. Dec. 18, 2006) ("In most cases and for most documents, metadata does not provide relevant information.").

Defendants will attempt, at the outset of this document production, to produce documents in TIFF images (of electronic documents) with Concordance load files (permitting some degree of computerized search of the documents produced).  Defendants cannot agree to produce all of the twenty-nine electronically-searchable data fields requested by plaintiffs in their letter of October 10, 2007, as this information may not be available or able to be extracted automatically from produced documents.  Instead, defendants will produce – along with the TIFF images – electronic load files permitting, to the extent feasible, documents to be searched by: available and unprivileged metadata that can be extracted automatically, and machine-generated full text.

B.      Plaintiffs Have Expanded Their Document Request Beyond What Was Sought Last Week

1.  At the close of the hearing on March 5, 2008, the Court invited plaintiffs to provide a list of the categories of documents that they needed from defendants so that the Court could resolve document production issues.  On the morning of March 6, 2008, plaintiffs provided "Plaintiffs' Designation of Documents and Depositions" to counsel for defendants in Court,[1] and represented that this reflected all of the documents that plaintiffs needed, subject only to the right to request additional documents identified in the testimony of defendants' witnesses on March 6, 2008.  Defendants' proposed order includes 27 of 28 categories of documents contained on

---

[1]Attached.  Defendants' counsel have hand numbered the 27 bullet points identifying categories of documents to correspond to the numbered paragraphs in defendants' Proposed Order Establishing Discovery Obligations listing categories of documents to be produced.  D.E. 170.

−3−

plaintiffs' March 6, 2008 submission,[2] as well as three additional areas discussed by Dr. Katz in his testimony on March 6.

Without seeking permission, or even acknowledging that they had done so, however, plaintiffs also added 22 new categories of documents in their Proposed Order. D.E. 169 at 4-6. Because these new requests are far beyond what the parties and the Court discussed last Thursday, defendants have not included these new categories of material in their Proposed Order. Similarly, plaintiffs asked to take 11 depositions in their March 6 Designation, but now identify 18 deposition in their March 10 Proposed Order. Defendants' Proposed Order limits plaintiffs to eleven depositions.

2. Defendants' proposed Order limits production to documents dated after January 1, 2005, consistent with the Court's rulings, except where plaintiffs requested a later cut-off date.

3. Defendants have limited certain requests to information available at the national VA level, or the VISN level, and not documents maintained at every Medical Center due to the excessive burden of conducting a search of all local facilities.

4. Defendants' proposed order limits disclosure of "communications" to "substantive communications" to filter out insubstantial and irrelevant documents.

Finally, the "suicide tracking database," described in ¶ I.A.2 of defendants' Proposed Order was compiled in part from data obtained from the Centers for Disease Control and the City of New York pursuant to promises that the data produced would remain confidential. Defendants are investigating whether the Court's Protective Order provides a legal basis for disclosure of this material.

C.    Defendants' Discovery

Finally, defendants have added two provisions to the Order authorizing defendants to obtain discovery from plaintiffs. Attached to the Order is Defendants' Request for Production of Documents (served today), and, pursuant to those requests, defendants' Proposed Order directs plaintiffs to produce non-privileged documents relating to 30 specific, quoted allegations in their complaint or proposed Injunction, on the same schedule and on the same terms that apply to defendants' document production. Second, the proposed order authorizes defendants to take Rule 30(b)(6) depositions of the two plaintiff organizations as well as the deposition of the Executive Director of Veterans for Common Sense. Defendants have met and conferred with plaintiffs about these two requests but counsel for plaintiffs has stated that plaintiffs are not yet in a position to represent whether they will object.

---

[2]Plaintiffs dropped one category listed in their March 6 profer from their March 10 filing "All data underlying the 'cheat sheets' used by Dr. Cross in his testimony."

Should the Court desire additional information regarding either the **all data** point or on the **parameters of electronic data production**, defendants suggest that the Court hold a prompt telephonic hearing to resolve the issues.

Sincerely,

**Daniel Bensing**

Daniel Bensing
Senior Counsel
Federal Programs Branch

cc:    Heather Moser
       Gordon Erspamer
       Sidney Wolinsky

1  GORDON P. ERSPAMER (CA SBN 83364)
   GErspamer@mofo.com
2  ARTURO J. GONZALEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  HEATHER A. MOSER (CA SBN 212686)
   HMoser@mofo.com
4  STACEY M. SPRENKEL (CA SBN 241689)
   SSprenkel@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California 94105-2482
   Telephone: 415.268.7000
7  Facsimile: 415.268.7522

8  [see next page for additional counsel for Plaintiffs]

9  Attorneys for Plaintiffs
   VETERANS FOR COMMON SENSE and
10 VETERANS UNITED FOR TRUTH, INC.

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14 VETERANS FOR COMMON SENSE, and          Case No.    C-07-3758-SC
   VETERANS UNITED FOR TRUTH, INC.,
15                                         **CLASS ACTION**
                  Plaintiffs,
16                                         **PLAINTIFFS' DESIGNATION OF
        v.                                 DOCUMENTS AND DEPOSITIONS**
17
   JAMES B. PEAKE, M.D., Secretary of Veterans   Complaint Filed July 23, 2007
18 Affairs, et al.,

19                Defendants.

20

21

22

23

24

25

26

27

28

DOC. ABBREV. TITLE — CASE NO. C-07-3758-SC

sf-2478931

1 | **ADDITIONAL COUNSEL FOR PLAINTIFFS:**

2 | SIDNEY M. WOLINSKY (CA SBN 33716)
SWolinsky@dralegal.org
3 | JENNIFER WEISER BEZOZA (CA SBN 247548)
JBezoza@dralegal.org
4 | KATRINA KASEY CORBIT (CA SBN 237931)
KCorbit@dralegal.org
5 | DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
6 | Berkeley, California 94704-1204
Telephone: 510.665.8644
7 | Facsimile: 510.665.8511

8 | BILL D. JANICKI (CA SBN 215960)
WJanicki@mofo.com
9 | MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600
10 | Sacramento, California 95814
Telephone: 916.448.3200
11 | Facsimile: 916.448.3222

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's suggestion, Plaintiffs VETERANS FOR COMMON SENSE and

2    VETERANS UNITED FOR TRUTH, INC. hereby submit the following list of depositions and

3    documents necessary for the trial commencing April 21, 2007.

4    **I.    DOCUMENTS TO BE PRODUCED IN ADVANCE OF TRIAL**

5    In October, Plaintiffs served the first of a series of three sets of document requests to

6    Defendants. Up to and including through trial, Defendants have refused to produce[1] most of the

7    documentation testified to by the witnesses during the preliminary injunction hearing. Plaintiffs

8    propose that the protective order be resolved immediately and that Defendants begin immediate

9    production of the following targeted materials that we previously covered by document requests:

10    *(1)*    • Incident reports and/or incident briefs prepared following a veteran suicide or attempted

11            suicide for 2003 to the present, such as those described today in the testimony of Dr.

12            Cross, and any compilations or overviews of such data.

13    *(2)*    • The suicide tracking database described on pages 44-45 of the VA OIG Report 06-03706-

14            126, Healthcare Inspection: Implementing VHA's Mental Health Strategic Plan Initiatives

15            for Suicide Prevention, as described during the testimony of Dr. Cross.

16    *(3)*    • Any VHA training manuals or training programs, policies, procedures or any

17            communications of these training materials, policies, or procedures to med centers,

18            CBOCs, or Vet Centers or other health care facility. For example, VHA policies

19            establishing procedures by which patients who present at a VA medical center, CBOC,

20            Vet Center, or other health care facility, with medical or psychiatric problems are screened

21            to determine whether they are in need of emergent or urgent care.

22    _____

23    [1] The documents that Defendants did produce prior to and during the preliminary injunction
      hearing did not comply with acceptable practice under the Federal Rules governing electronic
      discovery. They were produced in large .pdfs stripped of any metadata or capacity to text search.

24    Also, Defendants refused to up to and including through the preliminary injunction hearing provide
      any specific source log for the documents produced and then proceeded to make foundation

25    objections at trial, despite that Plaintiffs had specifically asked for the source data to avoid such
      objections. Going forward, Plaintiffs expect production to comply with the requirements set forth in

26    Plaintiffs' letter of October 11, 2007, including the metadata showing the source from which the
      documents were collected, and, if such metadata is not available, a written log of the sources for the

27    individual documents.

28

DOC. ABBREV. TITLE — CASE NO. C-07-3758-SC                                                          1
sf-2478931

(4) • Suicide data underlying the Han Kang study of suicide among OEF/OIF veterans, as described by Dr. Cross.

(5) • Any data compilations, memos, or reports or other communications compiling VHA statistics regarding suicides or attempted suicides for fiscal years 2003 to present, including without limitation all data resembling VA003-00001459-VA003-00001463, VA003-00001488-VA003-00001491, VA000027-VA000034, or VA000001-VA000002.

(6) • The most recent Veterans Health Administration Monthly Performance Reviews, such as those described in the testimony of Dr. Cross, including those from October 2007 to present.

(7) • The most recent Long Journey Home Reports on the Treatment of Posttraumatic Stress Disorder in the Department of Veterans Affairs, including those for fiscal years 2006 to present, including fiscal year 2007 report due out in March, 2008, and any drafts or underlying data compilations relating to these reports.

(8) • The latest National Mental Health Performance Monitoring System Final Reports, including those for fiscal years 2005 to present.

(9) • A VA study entitled "Barriers and Facilitators to Treatment-Seeking for PTSD," the existence of which was testified to by Dr. Cross in the April 12, 2007 Senate Hearing to Receive Testimony on the Departments of Defense and Veterans Affairs Disability Rating Systems and Transition of Servicemembers from the Department of Defense to the Department of Veterans Affairs, and any underlying data for that report.

(10) • Any studies, reports or data on workload by type of mental health professional, including workload per psychiatrist and workload per psychologist.

(11) • All documents and communications regarding Suicide Prevention Coordinator conference calls, reports, or meetings, as described by Dr. Zeiss in her testimony.

(12) • Quarterly Reports by Dr. Han Kang regarding OEF/OIF separated veterans who have sought care at VA, as described by Dr. Zeiss in her testimony.

(13) • All outpatient patient satisfaction survey data and reports for FY 2006 to present.

(14) • "Secret Shopper" data and reports as described by Dr. Zeiss in her testimony.

(15) • All Patient Advocate handbook or training materials.

(16) • All data regarding tracking or monitoring of the number of complaints at VA medical facilities, and the resolution of such complaints.

(17) • All summaries of the CBS study on veteran suicide.

(18) • All regular monthly reports regarding suicide hotline breakdowns, as discussed in the testimony of Dr. Zeiss.

(19) • All Office of Policy and Procedure quarterly reports on suicides as discussed by Dr. Zeiss.

• All data underlying the "cheat sheets" used by Dr. Cross during his testimony.

(20) • All data regarding electronic waitlists and/or patient waiting times, including printouts of such data by VISN, as described by Dr. Murawsky in his testimony.

(21) • All data or reports generated by the Northeast Program Evaluation Center regarding suicide, PTSD or mental health.

(22) • All data and/or reports regarding delays or timing in the adjudication of claims for benefits and/or service-connection at the regional office level, the BVA, and CAVC.

(23) • All training manuals and all operating procedures, policies or protocols regarding the medical reviews relating to service-connection determinations in the adjudication process.

(24) • All data compilations or reports regarding average claims processing times at the regional office level, at the BVA and at CAVC.

(25) • Any written protocols or guidelines provided to intake staff or appointment schedulers regarding how to deal with veterans who are suicidal or are in distress, whether at the facility level or from the national office.

(26) • All information and data gathered in the CPRS Suicide Data Base being ported nationally by Center of Excellence at Canandaigua, NY, for fiscal years 2005 to present, and any draft or final report regarding the CPRS project, or the data gathered from that system.

(27) • All materials, correspondence, data and/or reports regarding the creation of a "suicide flag" for "at-risk" individuals as described by Dr. Zeiss in her testimony.

## II.   MINIMUM DEPOSITIONS NECESSARY FOR TRIAL

1    Without having sent the relevant documents, Plaintiffs cannot give a definitive list of

2    deponents. However, based on the knowledge to date and subject to adjustment once the documents

3    are produced, Plaintiffs propose the following witnesses, seven of whom have necessary information

4    relevant to medical issues, and four of whom have necessary information relevant to adjudication

5    issues.[2]

6    A.    **Medical Issues (VHA)**

7    - **William Feeley**, Deputy Under Secretary for Health for Operations and Management,

8    U.S. Department of Veterans Affairs.

9    - **Robert Rosenheck, M.D.**, Director, Northeast Program Evaluation Center

10    - **Marcus Nemuth, M.D.**, Director, Psychiatry Emergency Service, VA Puget Sound

11    Health Care System

12    - VHA person most knowledgeable (PMK) regarding calculation of "desired dates" for

13    VistA, patient wait times, and the electronic wait list.

14    - VHA person most knowledgeable (PMK) regarding tracking of VHA suicide data and

15    incident reports related to suicides and attempted suicides.

16    - **Frances M. Murphy, M.D.**, Former Deputy Under Secretary for Health Policy

17    Coordination

18    - **Larry Dewey, M.D.**, Chief Psychiatry Service, VA Medical Center, Boise, Idaho

19    B.    **Adjudication Issues (VBA)**

20    - **Ronald Aument**, former Deputy Under Secretary for Benefits, U.S. Department of

21    Veterans Affairs.

22    - **Daniel Cooper**, Under Secretary for Benefits, Veterans Benefits Administration, U.S.

23    Department of Veterans Affairs.

24    - **Bradley Mayes**, Director, Compensations & Pension Service, U.S. Department of

25    Veterans Affairs.

---

26    [2] On November 2, 2007, Plaintiffs noticed the depositions of 47 witnesses potentially relevant to this case. Several of the witnesses on this list were noticed for deposition. Plaintiffs will reissue

27    individual deposition notices for the listed witnesses, however.

28

DOC. ABBREV. TITLE — CASE NO. C-07-3758-SC                                                    4
sf-2478931

- **Jack McCoy**, Former Associate Deputy Under Secretary for Benefits, Veterans Benefits Administration, U.S. Department of Veterans Affairs.

Plaintiffs reserve the right to submit additional testimony through declarations. At least one week in advance of the depositions, Plaintiffs further request that the deponent produce copies of all documents responsive to each document request served by Plaintiffs in this action which are found in each deponent's working files, computer work stations, or other personal files, to the extent they have not been identified and produced previously as part of Defendants' production.

Dated: March 6, 2008

GORDON P. ERSPAMER
ARTURO J. GONZALEZ
HEATHER A. MOSER
STACEY M. SPRENKEL
MORRISON & FOERSTER LLP


By: _____

      Gordon P. Erspamer

      Attorneys for Plaintiffs