JUDITH Z. GOLD (State Bar No. 97098)
JEFFREY A. FINUCANE (State Bar No 244930)
DEREK KNERR (State Bar No. 252746)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
E-mail:  judith.gold@hellerehrman.com

Attorneys for *Amicus Curiae*
Swords to Plowshares and Vietnam Veterans of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETERANS FOR COMMON SENSE, a District of Columbia Nonprofit Organization; and VETERANS UNITED FOR TRUTH, INC., a California Nonprofit Organization, representing their members and a class of all veterans similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES B. PEAKE, M.D.,Secretary of Department of Veterans Affairs; et al.,<br><br>Defendants. | Case No.: C 07-3758 SC<br><br>**APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO FILE JOINT *AMICUS* BRIEF** |

Heller Ehrman LLP

**I.     INTRODUCTION**

Two not-for-profit organizations that have been serving American veterans of the United States military and their families for over thirty years -- Swords to Plowshares ("Swords"), and Vietnam Veterans of America, Inc. ("VVA"), both have expertise and experience with the matters in this case, and a compelling interest in its outcome. In the hope that a succinct presentation of their perspectives will be helpful to the Court, Swords and VVA respectfully request that they be allowed to file this joint brief as *amicus curiae*.

**II.    THE INTERESTS OF THE PROPOSED AMICI**

Both Swords and VVA were founded in the 1970s to serve some of the pressing needs of Vietnam War veterans. Returning from an unpopular war, many Vietnam veterans found themselves shunned by large segments of our society and virtually abandoned by the VA and other governmental institutions. In tens of thousands of cases, these veterans suffered from disabling psychological and neurological after-effects of their combat service, but Post Traumatic Stress Disorder ("PTSD") had yet to be widely recognized by the medical community. Many Vietnam veterans suffering from PTSD and similar disorders were left to fend for themselves, and wound up struggling to survive on subsistence wages, indigent, homeless, or dead from suicide. As Vietnam veterans grow older, these problems have become more and more serious.

Swords and VVA suggest that it is time to apply the lessons that this history teaches us. We now know, based upon the Vietnam experience, that neglecting the needs of returning veterans will ultimately create an enormous drain on the public purse, costing local, state, and federal taxpayers far more in the long run than it would cost to meet our obligations promptly. Now, in contrast to the Vietnam era, there is also a widely-shared consensus that we simply owe at least minimal economic support, and timely, adequate health care, to men and women who have been injured while serving our nation in combat. As a new wave of tens of thousands of injured veterans returns from the Middle East, it has become clear that the Court's intervention is urgently needed. The evidence is clear that without it, defendants will repeat the mistakes of the 1960s and 1970s, with tragic consequences.

Swords and VVA serve veterans who will be directly affected by the outcome of this case in

Heller Ehrman LLP

1
APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO FILE JOINT *AMICUS* BRIEF ; CASE NO. C 07-3758 SC

different ways. In the Bay Area community, Swords provides direct services and support to veterans with PTSD and other injuries. VVA focuses on policy and legislation relating primarily to the Vietnam veteran, as well as the newest generation of wartime veterans, and functions as a resource center and information clearinghouse. We provide further detail below.

### A. Swords To Plowshares

Swords to Plowshares is a San Francisco community-based, not-for-profit organization, that was founded in 1974 by recently-returned veterans of the combat in Vietnam. In many ways, its founders and current staff consider Swords to be a partner with the VA, able to provide community-based case management, employment training, housing, legal assistance and other kinds of support that the VA may not be able to provide. Annually, Swords provides such support to more than 1,500 homeless and low-income veterans, most of whom live in the San Francisco Bay Area.

Swords operates several programs that serve indigent veterans with mental health problems. These include a drop-in center that provides counseling for PTSD and other psychological disorders, case management, and referrals. Last year alone, Swords' Health and Social Services Unit served more than 1,000 veterans. Swords also operates transitional and long-term residential programs that serve over 200 Bay Area veterans with mental health issues at any given time -- many of whom would likely be homeless without these programs. In these programs, Swords provides intensive group and individual counseling, as well as other supportive services designed to help residents become stable and independent.

At its Treasure Island residential program, Swords receives *per diem* funding from the VA, of about $1 million annually. But Swords is not a medical facility, does not have doctors on staff, and cannot (for example) prescribe needed medication to the veterans it serves. Swords and the VA both exist to serve the needs of veterans. They communicate and cooperate effectively with one another on many projects, but it is the sad fact that for many veterans, the VA simply is not holding up its end of the partnership.

Swords confronts the consequences of the VA's failings for the City of San Francisco, as well as for veterans and their families, daily. These failings are placing extraordinary burdens on municipal, county, state, and private institutions that, unlike the VA itself, are in a state of fiscal

Heller Ehrman LLP

2
APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO FILE JOINT *AMICUS* BRIEF ; CASE NO. C 07-3758 SC

crisis. Swords receives a grant of about $500,000 per year from the City and County of San Francisco, but that is only a small fraction of the costs that are borne by the City. Many indigent veterans draw General Assistance (a county-funded stipend that is barely sufficient to meet a person's basic survival needs). Lacking any other viable option, indigent mentally ill veterans seek medical attention in the emergency rooms of county-funded hospitals. They crowd the city's homeless shelters and food banks and (because they are often prone to "homelessness offenses" like loitering and trespassing), they are a drain on law enforcement. Not-for-profit organizations like Swords, with finite resources, struggle to meet veterans' needs, but the need is overwhelming. Local taxpayers are in effect funding federal obligations; local public resources are being diverted from other seriously under-funded activities such as schools, fire and police services.

Swords also has first-hand experience with the human costs of the 600,000-plus backlog of unresolved claims for veterans' benefits, and with the average five-to-seven year wait time for deciding appeals -- matters that defendants do not dispute. Swords is one of the few organizations in the country that provides free legal representation to veterans seeking benefits. (Veterans are prohibited from paying attorneys to represent them before the VA in the initial stages. 38 U.S.C § 5904(c)(1)). Swords' attorneys have more than 60 years of combined experience in representing veterans and their families before the Department of Veterans' Affairs. In fact, Swords' Executive Director, Michael Blecker, who served in Vietnam, represented one of the first PTSD claimants, a Vietnam veteran. Although the VA had denied the existence of PTSD, psychiatric advances, based largely on the experiences of Vietnam veterans, persuaded the American Psychiatric Association to add PTSD to its Diagnostic and Statistical Manual of Mental Disorders in 1980, and the claim was finally sustained.

In the year ending June 30, 2007, Swords provided 338 veterans with free legal services; 31 veterans' cases were concluded. Were it not for the virtual paralysis infecting VA's adjudicatory system, many more cases would have been resolved, many more veterans would be receiving the income and health care benefits to which they are entitled, and Swords' resources for providing mental health services and other support to disabled veterans could stretch much further.

Heller Ehrman LLP

3
APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO FILE JOINT *AMICUS* BRIEF ; CASE NO. C 07-3758 SC

### B. Vietnam Veterans Of America

Vietnam Veterans of America is a national not-for-profit organization that was founded in 1978. Echoing the soldier's pledge to "leave no man behind" on the battlefield, VVA's motto is "Never again will one generation of veterans abandon another." VVA is the only national Vietnam veterans organization that is congressionally chartered and dedicated to Vietnam-era veterans and their families. It has over 50,000 individual members, 46 state councils, and 630 local chapters. VVA's purposes include studying, on a non-partisan basis, proposed legislation or regulations that may affect the welfare of the Vietnam-era veteran; developing public policy proposals designed to improve the quality of life of the Vietnam-era veteran; and assisting disabled veterans and their dependents.

VVA's PTSD Committee has specifically studied the incidence and effects of PTSD on soldiers returning from combat service, and the costs and benefits of effective treatment of PTSD by the VA health centers. This committee has provided legislative testimony on these subjects. It has also provided veterans with resource guides and self-help materials designed to assist veterans both in recognizing and finding treatment for service-connected mental health issues, and in presenting their claims for benefits to the VA.

VVA has extensively studied what works, and does not work, to help veterans suffering from PTSD. In testimony presented on February 17, 2005, to the VA Veterans Readjustment Committee, Thomas J. Berger, Ph.D, Chair of VVA's PTSD & Substance Abuse Committee, said:

> Evidence overwhelmingly supports the need for early intervention and treatment of PTSD and related mental health disorders not only for active duty troops and veterans but for their families as well. . . . Many of these men and women cannot be expected to reintegrate into their communities without access to appropriate mental health support services. . . . The Vet Centers, operated by the VA Readjustment Counseling Service (RCS), must obviously be a key player in this response, as only the Vet Centers have the legal authority to serve the families of veterans, as well as the acumen to serve [this] population. . . .

The VVA is also particularly knowledgeable about the societal costs of allowing the VA's claims adjudication and mental health services delivery systems to remain in disrepair, and about the relatively low costs and available resources to repair these systems so that veterans can receive the benefits to which they are entitled. In a 2005 statement to the House Committee on Veterans Affairs,

Heller
Ehrman LLP

4
APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO FILE JOINT *AMICUS* BRIEF ; CASE NO. C 07-3758 SC

VVA's National President, Thomas H. Corey, said that investment in the Vet Center program would "help keep veterans employed, and help keep their families together. . . . [and] have an immediate, measurable, and very visible impact."

VVA is also directly involved in the VA's claims adjudication process. VVA's Veterans Benefits Program (VBP) provides vitally needed assistance to veterans and their families in pursuit of VA benefits to which they are entitled. This assistance is delivered by VVA's well-trained and experienced cadre of 400 plus VA accredited service officers. These service officers represent claimants for VA benefits before the VA regional offices and before local BVA hearings. VVA also employs attorneys to represent appellants before the BVA in Washington, DC. In addition, its legal representation in federal courts has resulted in decisions that have had a significant impact on veterans benefits law.

Both VVA and Swords are vitally interested in this case: the Complaint alleges facts, many of them undisputed, that they confront every day, facts that are simply intolerable on constitutional, statutory, moral, and even economic grounds.

### C.     VVA and Swords Are Appropriate *Amici Curiae*

District courts have broad discretion to grant a non-party leave to appear as *amicus curiae* in the interest of "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co., Inc. v. Comm'r of Labor and Indus., State of Montana*, 694 F.2d 203, 204 (9th Cir. 1982). *Amicus* briefs are particularly "welcome" in cases "concerning legal issues that have potential ramifications beyond the parties directly involved or if the *amicus* has 'unique information or perspective that can help the court.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (quoting *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982) (organizational plaintiff could even establish standing to sue as plaintiff based upon a "drain on its resources" due to the challenged conduct).

VVA's and Swords' participation in the case will be minimal; they anticipate that it will be limited to this brief, unless the Court requests their views in the future. *See Natural Res. Defense Council v. Evans*, 243 F. Supp. 2d 1046, 1047 (N.D. Cal. 2003) (citing Schwarzer *et al*. *Federal Civil*

Heller
Ehrman LLP

5
APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO
FILE JOINT *AMICUS* BRIEF ; CASE NO. C 07-3758 SC

*Procedure Before Trial* at 7:168 and 170) (*amici* "may file briefs and may possibly participate in oral argument, but are not entitled to . . . participate at trial"); *NGV Gaming v. Upstream Point Molate,* 355 F. Supp. 2d at 1068 ("*amicus curiae* . . . has no control over the litigation . . . nor can it file any pleadings or motions").

The matters discussed above clearly give rise to a sufficiently compelling stake in this case to permit Swords and VVA limited involvement as *amici*.

### III.   CONCLUSION

For these reasons, Swords to Plowshares and Vietnam Veterans of America respectfully request that they be permitted to file the Joint *Amicus* Brief submitted herewith.

May 1, 2008                                Respectfully submitted,
                                           HELLER EHRMAN LLP

                                           By _____/s/_____
                                               Judith Z. Gold

                                           Attorneys for *Amici Curiae*: Swords to Plowshares and
                                           Vietnam Veterans of America

Heller Ehrman LLP

6
APPLICATION OF SWORDS TO PLOWSHARES AND VIETNAM VETERANS OF AMERICA FOR LEAVE TO FILE JOINT *AMICUS* BRIEF ; CASE NO. C 07-3758 SC